### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **M.D., et al.** | § | **CIVIL ACTION NO.  6:22-cv-002089** |
| | § | |
| **VERSUS** | § | |
| | § | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA BOARD OF REGENTS, et al.** | § | |
| | § | **MAGISTRATE JUDGE DAVID J. AYO** |

---

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF OF LSU PRESIDENTS, DR. FIELDON KING ALEXANDER, THOMAS C. GALLIGAN, JR. AND WILLIAM F. TATE, IV

---

Defendants, Dr. Fieldon King Alexander ("Alexander"), Thomas C. Galligan, Jr., ("Galligan") and William F. Tate, IV ("Tate") (collectively "Defendants" or "the LSU Presidents"), respectfully submit this Memorandum in Support of their Motion to Dismiss the First Amended Complaint ("Amended Complaint") filed on behalf of Plaintiffs, M.D., P.P., J.B., and Jane Does 1-100.

August 21, 2023

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**
/s/ Elizabeth Bailly Bloch
CHRISTINE S. KEENAN (No. 23293)
ERIC R. MILLER (NO. 21359)
ELIZABETH BAILLY BLOCH (No. 37591)
MARY KATHRYN GIMBER (No. 38748)
Special Assistants Attorney General
THE KULLMAN FIRM, APLC
4605 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana  70809
Telephone:  (225)906-4250
Facsimile:  (225)906-4230
CSK@kullmanlaw.com
EM@kullmanlaw.com
EBB@kullmanlaw.com
MKG@kullmanlaw.com
**Counsel for Defendants, Fieldon King Alexander, Thomas C. Galligan, Jr., And William F. Tate, IV**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION  ..............................................................................................................1

FACTUAL BACKGROUND .................................................................................................1

STANDARD FOR DISMISSAL ............................................................................................4

LAW AND ARGUMENT .....................................................................................................6

      I.      PLAINTIFFS' §1983 CLAIMS AGAINST THE LSU
             PRESIDENTS SHOULD BE DISMISSED AS UNTIMELY. ............................6

      II.     PLAINTIFFS CANNOT TOLL THE STATUTE OF LIMITATIONS. .................9

      III.    THE LSU PRESIDENTS ARE ENTITLED TO QUALIFIED
             IMMUNITY AS TO PLAINTIFFS' §1983 CLAIMS.  .........................................12

      IV.    PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A §1983 CLAIM
             AGAINST ALEXANDER, GALLIGAN AND TATE IN THEIR OFFICIAL
             CAPACITIES.  ....................................................................................................15

      V.     PLAINTIFFS' §1983 CLAIMS ARE BARRED BY
             DISCRETIONARY IMMUNITY.  ....................................................................17

CONCLUSION......................................................................................................................19

CERTIFICATE OF SERVICE .............................................................................................20

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*,
556 U.S. 622 (2009) .................................................................................................4, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................4, 5

*Burnette v. Brooks*,
250 F.3d740 (5th Cir. 2001) ...........................................................................................15

*Carey v. Piphus*,
435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)...............................................13

*Carter v. Haygood*,
892 So.2d 1261 (La. 2005) ...............................................................................................9

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ............................................................................................5

*Coleman v. Bd. Of Supervisors of Louisiana State Univ & Agric. & Mech. Coll.*,
CIV.A. 15-35-JJB, 2015 WL 3872256 (M.D. La. June 23, 2015) .................................15

*Doe 1 v. Baylor University*,
240 F. Supp.3d 646 (W.D. Tex. 2017)...............................................................................7

*Dominique v. St. Tammany Par.*,
2019-0452 (La. App. 1 Cir. 9/16/20), 313 So. 3d 307, 318....................................17, 18

*Dorsey v. Portfolio Equities, Inc.*,
540 F.3d 333 (5th Cir. 2007) ............................................................................................5

*Dugas v. City of Ville Platte*,
6:17-CV-00337, 2017 WL 6521660 (W.D. La. Nov. 17, 2017).......................................6

*Eastin v. Entergy Corp.*,
2003-1030 (La. 2/6/04), 865 So.2d 49.......................................................................10, 11

*Frame v. City of Arlington*,
657 F.3d 215 (5th Cir. 2011) ............................................................................................6

*Gregor v. Argenot Great Central Insurance Co.*,
2002-1138 (La. 5/20/03), 851 So. 2d 959 .......................................................................16

*Harlow v. Fitzgerald,*
457 U.S. 800 102 S.Ct. 2727  (1982) ........................................................................12

*Harrison v. United States,*
708 F.2d 1023, (5th Cir. 1983) ..................................................................................7

Herrera v. First National Insurance Company of America,
2015-1097 (La. App. 1st Cir. 6/3/16) 194 So. 3d 807 ..............................................16

*Jane Doe v.Bd. of Supervisors of the Univ. of La. Sys.,*
No. 3:22-cv-00338 (M.D. La. Filed May 25, 2022) ..................................................9

*Jones v. Alcoa, Inc.,*
339 F.3d 359 (5th Cir. 2003) ......................................................................................5

*Kentucky v. Graham,*
*473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)*..........................................16

*King-White,*
804 F.3d (5th Cir., 2015) ............................................................................................6

Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,
594 F.3d 383 (5th Cir. 2010) ......................................................................................5

*Marin v. Exxon Mobil Corp.,*
48 So.3d 234 (La. 2010) ..............................................................................................9

*Meadours v. Ermel*
483 F.3d 417 (5th Cir. 2007) ....................................................................................13

*Meyers v. Textron, Inc.,*
540 F. App'x 408 (5th Cir. 2013) ................................................................................5

*Minnis v. Board of Sup'res of Louisiana State University and*
*Agricultural and Meghanical College,*
972 F.Supp 2d 878 (M.D. La. 2018).....................................................................12, 13

*Monell v. Dept of Social Services of City of New York,*
*436 U.S. 690 (1978)* ..................................................................................................16

*Moore v. La. Bd. Of Elementary & Secondary Educ.,*
743 F.3d 959 (5th Cir. 2014) ....................................................................................15

*Morgan v. Swanson,*
659 F.3d 359 (5th Cir. 2011) ....................................................................................13

*Nerren v. Livingston Police Dep't,*
86 F.3d 469 (5th Cir. 1996) ...........................................................................12, 13

*NiGen Biotech, L.L.C. v. Paxton,*
804 F.3d 389, (5th Cir. 2015) .................................................................................15

*Pastorek v. Trail*
*248 F.3d 1140 (5th Cir. 2001)* ...............................................................................15

*Pearson v. Callahan,*
555 U.S. 223, 129 S.Ct. 808 (2009).........................................................................12

*Piotrowski v. City of Houston,*
237 F.3d 567 (5th Cir. 2001) .....................................................................................7

*Spotts v. United States,*
613 F.3d 559 (5th Cir. 2010) .....................................................................................7

*Taylor v. Bailey Toll Mg. Co.,*
744 F.3d 944 (5h Cir. 2014 ..........................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 , 127 S.Ct. 2499 (2007)........................................................................5

*Washington v. City of Gulfport, Miss.,*
351 F. App'x 916 (5th Cir. 2009) ..............................................................................5

*Watts v. Graves,*
720 F.2d 1416 (5th Cir. 1983) ...................................................................................5

*Whitt v. Stepehens Cnty.,*
529 F.3d 278, (5th Cir. 2008) ....................................................................................8

*Will Michigan Dept of State Police,*
491 U.S. 58, 109 S.Ct. 2304 (1989)..........................................................................15

*Williams v. The Library,*
2012-0220 (La. App 1 Cir. 11/2/12) 111 So. 3d 356................................................11

Statutes and Other Authorities

Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 ............................ Passim

42 U.S.C. § 1983........................................................................................................... Passim

42 U.S.C. 1988(b)..................................................................................................................19

14th Amendment Substantive and Procedural Due Process ...........................................4, 12, 14, 18

La. R.S. 9:2798.1(B) ...........................................................................................................................16

LSA-R.S. 17:3351 ..................................................................................................................................1

Fed. R. Civ. P. 8(a)(2) ..........................................................................................................................4

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................4, 5

Louisiana Civil Code Article 3492 ......................................................................................................6

*Frank L. Maraist and Thomas C. Galligan,*
Louisiana Tort Law § 10-4(b), 22 (1996) ........................................................................................9

## INTRODUCTION

Plaintiffs, M.D. ("M.D."), P.P. ("P.P."), J.B. ("J.B."), (collectively, "Plaintiffs"), and Jane Does 1-100 ("Does 1-100") filed suit against the Louisiana Board of Regents, University of Louisiana Board of Supervisors, Joseph Savoie, Les Guice, Lafayette Consolidated Government, Lafayette Police Department, Thomas Glover, John/Jane Doe Chiefs of Police, Louisiana State University Board of Supervisors ("LSU"),[1] Galligan, Tate, and F. King Alexander, asserting claims pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq*. ("Title IX") and 42 U.S.C. § 1983. More particularly, Plaintiffs bring claims stemming from events of their respective sexual assaults by Victor Daniel Silva ("Silva"), a former student of LSU, University of Louisiana at Lafayette ("ULL"), and Louisiana Tech University ("Tech"). With respect to the LSU Presidents specifically, Plaintiffs assert only a single claim pursuant to §1983. The LSU Presidents now move to dismiss Plaintiffs' suit against the LSU Presidents on the basis that it is untimely and because Plaintiffs fail to plead a plausible claim upon which relief can be granted.

## FACTUAL BACKGROUND

Plaintiffs allege that sometime during 2014, when Silva was a student at LSU, an initial victim reported to Baton Rouge law enforcement that she was sexually assaulted by Silva, and Baton Rouge law enforcement notified LSU of the report. (Rec. Doc. 70, ¶¶ 63-64). Following this initial victim's report, Silva transferred from LSU to ULL, and despite LSU's knowledge of the initial victim's complaint, Plaintiffs allege LSU did not investigate the allegations or notify ULL that such allegations existed. *Id.* ¶¶ 65-66, 67. Silva was a student at ULL from late 2014 or early

---

[1] The correct entity with capacity to sue or be sued is the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College. See LSA-R.S. 17:3351.

2015 until sometime in 2018. *Id.* ¶¶ 68, 84. In 2018, Silva transferred from ULL to Louisiana Tech ("Tech"). *Id.* ¶ 84.  Less than two months after transferring to Tech, another student reported Silva to Tech's Title IX office accusing him of sexual assault. *Id.* ¶ 86. Within days of these allegations, he withdrew from Tech and returned to ULL as a student. *Id.* ¶¶ 87-88.

Plaintiff M.D. was a student at LSU during the 2014-2015 academic school year. *Id.* ¶¶ 94-98. She claims that she was sexually assaulted by Silva in the Spring 2015 semester. *Id.* ¶¶ 98, 101. M.D. claims that she reported the sexual assault to LSU's Title IX office, but that LSU declined to initiate an investigation or provide her with the mental health resources she requested. *Id.* ¶¶ 104-106. M.D. further alleges that her reporting Silva to the Title IX office prompted a referral to LSU Police Department, but that the Title IX office otherwise told her to resolve the matter herself. *Id.* ¶ 106. Silva was arrested on charges of sexual assault by the LSU Police Department in April 2015 and booked into the East Baton Rouge Parish Jail. *Id.* ¶ 68.  M.D. alleges that LSU's perceived lack of consideration of her safety led to a significant increase in her anxiety, and ultimately to her diagnosis of PTSD. *Id.* ¶¶ 111, 113.

Plaintiff P.P. was a student at ULL in 2019 when she first met Silva. *Id.* ¶ 117. She was aware of at least one other sexual assault case against Silva and had heard rumors from many other students that Silva had a history of sexual assault. *Id.* ¶ 118. However, P.P. alleges that she discounted this information, in part, due to the lack of official action taken against Silva. *Id.* ¶ 119. Plaintiff ignored "red flags" and other alarming behavior of Silva until August 2020, when her friend informed her that Silva had sexually assaulted her. *Id.* ¶¶ 126-129. After coming to terms with Silva's behavior and emotional abuse, P.P. ended her relationship with Silva in January 2021. *Id.* ¶¶ 141. In February 2021, P.P. and J.B. connected and shared their experiences related to Silva with one another. *Id.* ¶ 142. The following month, P.P. was contacted by USA Today reporter,

Kenny Jacoby, about an investigation he was doing on Silva and the Louisiana higher education system. *Id.* ¶ 143. Jacoby's article was published on May 26, 2021.[2]

Plaintiff J.B. met Silva in late 2020 when working as an environmental safety manager at a private employer in Searcy, Arkansas. Silva was working at the same company as a process engineer. *Id.* ¶¶ 135-136. There are no allegations that Silva was a student of or affiliated with any university at this point in time. In the months that followed, Silva persistently pursued a relationship with J.B. *Id.* ¶¶ 145. In February 2021, J.B. started a new job with a different employer. *Id.* ¶ 147. Because they were no longer coworkers, and because J.B. allegedly felt bad for Silva, J.B. finally agreed to go on a date with Silva on Valentine's Day in 2021. *Id.* ¶ 148. Silva showed up to J.B.'s apartment several hours late, after all restaurants were closed, with several bottles of wine. *Id.* ¶ 151. After having two glasses of wine over the course of several hours, the next thing J.B. recalls is Silva leading her to her bedroom and raping her. *Id.* ¶¶ 152-155. After connecting with P.P., J.B. asked Silva why his behavior had been increasingly more alarming over the preceding months, and he stated that it was due to an upcoming news article about him. *Id.* ¶¶ 168-169. J.B. then searched online for more information about Silva and found additional details of his history of sexual assault. *Id.* ¶ 170.

The unidentified Does 1-100 merely allege they were students at Defendant Universities and were victims of sexual assault or misconduct perpetrated by Silva and other unnamed offenders. *Id.* ¶ 10.  Does 1-100 also allege these offenders were never prosecuted or appropriately sanctioned. *Id.*

On July 13, 2022, more than seven years after M.D.'s alleged incident with Silva; more than one year after P.B. ended her relationship with Silva; more than one year after J.B.'s alleged

---

[2] *See https://www.usatoday.com/in-depth/news/investigations/2021/05/26/louisiana-officials-skirted-law-meant-curb-campus-sex-crimes/7048845002/.*

incident with Silva; and more than one year after Kenny Jacoby's USA Today article, this lawsuit was filed.  Does 1-100 do not allege any factual allegations regarding when and where they were students and who else perpetrated their alleged assaults. Therefore, Does 1-100 have not sufficiently alleged a claim for relief as a matter of law and any discussion of their supposed allegations hereinafter is not warranted.

In their lawsuit, Plaintiffs seek to hold several past and present LSU President's liable for the alleged assaults perpetrated by Victor Daniel Silva.  More specifically, Plaintiffs' claim against LSU Presidents Alexander, Galligan and Tate is found in Count IV of the Amended Complaint entitled, "Violation of 42 U.S.C. § 1983 and the 14th Amendment Substantive and Procedural Due Process."  *Id.* ¶¶ 239-257.  In their Amended Complaint, Plaintiffs bring a §1983 claim against Alexander, Galligan and Tate alleging that the LSU Presidents violated the 14th Amendment by failing to fulfill their duties "as the highest-ranking member" on campus to prevent sexual assaults and misconduct on LSU's campus. *Id.* At ¶¶246-252.  Plaintiffs' First Amended Complaint alleges no new allegations or causes of action against the LSU President. Rather it amends the Original Complaint to name the proper Chief of Police for the Lafayette Police Department and to allege new causes of action against the Lafayette Defendants. *Id.* ¶¶23, 25, 45, 258-300. Therefore, the LSU Presidents submit this motion to dismiss the Amended Complaint, and as set forth more fully below, Plaintiffs' §1983 claim still fails as a matter of law.[3]

## STANDARD FOR DISMISSAL

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); 12(b)(6). In order to survive a Rule 12(b)(6) motion,

---

[3] See Rec. Doc. 76. Plaintiffs have moved for leave to amend their claims a third time, but the motion for leave remains pending. As such, the First Amended Complaint is the operative pleading.

a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555 (quotation marks, citations and footnotes omitted).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499 (2007)).

Additionally, a motion to dismiss for failure to state a claim under Rule 12(b) (6) is a valid means to raise a statute of limitations defense if the defense clearly appears on the face of the

complaint. *Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 918 (5th Cir.2009); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003).   And, even more specifically, "[t]he statute of limitations [applicable to a § 1983 claim] may serve as a proper ground for dismissal under Federal Rule of Civil Procedure 12(b)(6)."   *Watts v. Graves*, 720 F.2d 1416, 1423 (5th Cir.1983).

An application of the foregoing standard mandates dismissal of Plaintiffs' claims against the LSU Presidents as a matter of law.

## LAW AND ARGUMENT

### I.   PLAINTIFFS' §1983 CLAIMS AGAINST THE LSU PRESIDENTS SHOULD BE DISMISSED AS UNTIMELY.

"A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Toll Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014).   In this case, Plaintiffs present only a single claim against the LSU Presidents – a §1983 claim.   As set forth more fully below, this claim is untimely on its face.

"Federal law does not establish a statute of limitations for Section 1983 claims; therefore, federal courts hearing Section 1983 claims must borrow a relevant statute of limitations from the forum state. Section 1983 claims are best characterized as personal injury actions; therefore, federal courts borrow the forum state's law governing the prescription of personal injury claims. In Louisiana, personal injury claims are governed by Civil Code Article 3492, which provides for a one-year prescriptive period. Consequently, Louisiana's one-year prescriptive period governs the plaintiffs' Section 1983 claims." *Dugas v. City of Ville Platte*, No. 6:17-CV-00337, 2017 WL 6521660, at *5 (W.D. La. Nov. 17, 2017), report and recommendation adopted, No. 6:17-CV-00337, 2017 WL 6521148 (W.D. La. Dec. 19, 2017).

6

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while [the Court] borrow[s] the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'" *King-White*, 803 F.3d at 762 (5th Cir. 2015) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). "[U]nder federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). "Awareness of the existence of the injury and causation does *not* mean actual knowledge; rather, all that must be shown is the existence of circumstances that would lead a reasonable person to investigate further." *Doe 1 v. Baylor University*, 240 F. Supp.3d 646, 663 (W.D. Tex. 2017) (internal quotations, citations, and punctuation omitted) (emphasis in original). "Thus, for awareness of causation, a plaintiff 'must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection …or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury." *Id.* (quoting *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)).

Plaintiffs knew of their respective injuries at the time in which they each occurred. More particularly, M.D. was aware of her injuries and the potential causal connection to the LSU Presidents' acts or omissions in the Spring of 2015, as she alleges that LSU's response to her reporting of being sexually assaulted by Silva was inadequate (Rec. Doc. 70, ¶¶ 94-115). As to Plaintiff P.P., she was aware of facts that would lead a reasonable person to conclude that there

was a causal connection between her injury and Defendants' acts or omissions even before her injury occurred. P.P. alleges that as of late 2019, she was aware of at least one sexual assault case against Silva through an acquaintance, that many students in her academic program knew of rumors regarding Silva's history of sexual assault, that other engineering students had reported Silva to the program director, and that a professor in ULL psychology department had allegedly used Silva as a case study on serial rapists. *Id.* ¶¶ 116-121. P.P. alleges that she was sexually assaulted by Silva throughout her relationship with him, which spanned from May 2020 until January 2021. *Id.* ¶¶ 123-141. Accordingly, P.P. had requisite awareness as to both her injuries and a potential causal connection by January 2021, at the latest. Finally, J.B. alleges that she was assaulted by Silva in February 2021, and that by the following month, she had connected with P.P., learned of the investigation related to the USA Today article published in May 2021, and learned details about Silva's other victims and history of sexual assault. *Id.* ¶¶ 135-175. Therefore, J.B.'s claims accrued, and the prescriptive period began to run in March 2021, at the latest.

Accordingly, Plaintiffs' suit is untimely on its face. Plaintiffs allege that they were sexually assaulted on several different occasions between Spring 2015 and February 2021 (Rec. Doc. 70, ¶¶ 98, 101, 123, 136, 141, 148, 155).[4] Plaintiffs did not originally file suit until July 13, 2022, more than one year, and up to seven years, after each of the alleged incidents of sexual assault. As such, Plaintiffs' claims against Defendants should be dismissed with prejudice in their entirety as untimely.

---

[4] Alternatively, because Does 1-100's have not alleged any specific allegations regarding their alleged assaults or their identities their claims are untimely as well. *See Whitt v. Stephens Cnty.*, 529 F.3d 278, 282–83 (5th Cir. 2008) e.g. ("We have held, however, that an amendment to substitute a named party for a John Doe does not relate back under rule 15(c).") There appears to be some overlap with the paragraphs marked 136 regarding P.P. and J.B. Here, Defendants refer the Court to Paragraph 136 for the section of the Amended Complaint under P.P. and then also to Paragraph 136 under the section for J.B.

## II.     PLAINTIFFS CANNOT TOLL THE STATUTE OF LIMITATIONS.

Plaintiffs recognize that their lawsuit is untimely on its face. Therefore, in an effort to salvage their otherwise untimely claims, Plaintiffs contend that the statute of limitations should be tolled under the doctrine of *contra non valentem agree non currit perscriptio*. (Rec. Doc. 70, ¶ 196). Plaintiffs contend that they are entitled to avail themselves of the doctrine of *contra non valentum* because "Plaintiffs had no opportunity to know of the accruing harm, and could not have known of the harm" due to the intentional conduct of the Defendants." (Rec. Doc. 70 ¶¶194, 196). Plaintiffs allege that they were not made aware of "Defendants' failures" until May 2022 when a similar lawsuit was filed by another Silva victim in the Middle District of Louisiana, *Jane Doe v. Bd. Of Supervisors of the Univ. of La. Sys.*, No. 3:22-cv-00338 (M.D. La. Filed May 25, 2022). Plaintiffs' argument has no merit.

*Contra non valentem* is a jurisprudential doctrine whereby prescription is suspended when a person cannot file suit. *Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) (citing Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b), 22 (1996)). The Supreme Court of Louisiana has recognized four circumstances where the doctrine of *contra non valentem* is applied to suspend the running of prescription:

(1)     where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2)     where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;

(3)     where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

(4)     where the cause of action is neither known or reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant ("the discovery rule").

*Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 245 (La. 2010). *Contra non valentem* is only to be applied in exceptional circumstances and "will not exempt the plaintiff's claim from the running

of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." *Id*. at 245-46. "Further, 'prescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, ...even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damages as a result of the completed tortious act.'" *Id*. at 246.

Plaintiffs seem to argue that the third exception – the intentional conduct of the defendant – applies to their §1983 claims.  More specifically, Plaintiffs allege in Paragraph 194:

> …Plaintiffs had no opportunity to know of the accruing harm, and could not have known of the harm, because of the intentional and/or reckless actions, inactions, and omissions of the Defendants, including failing to abide by internal policies and procedures related ot sexual violence and misconduct, failing to make mandatory reports, failing to undertake appropriate investigations, and failing to rigorously enforce rules related to sexual misconduct.

And further, in Paragraph 195, Plaintiffs claim:

> Defendants undertook efforts to conceal their failures related to timely, effectively, and appropriately investigating, reporting, and following up, and to generally protect vulnerable students from harm.  Defendants' actions made it impossible for Plaintiffs to know the danger they were in or that Defendants could have prevented the harm but chose not to do so.

Plaintiffs' argument is unsupported by the jurisprudence.  In *Eastin v. Entergy Corp.*, 2003-1030 (La. 2/6/04), 865 So.2d 49, hundreds of plaintiffs filed age discrimination claims against their former employer, Entergy, arising out of a reduction in force.  With respect to eleven of the plaintiffs, Entergy filed an exception of prescription on the basis that the lawsuit had been filed more than one year after the eleven plaintiffs had been terminated.  In opposition to the exception, the eleven plaintiffs argued that the doctrine of *contra non valentum* applied to suspend prescription on their respective claims because they could not know that they were discriminated

against until they learned of the other discrimination claims by the other plaintiffs. The Supreme

Court rejected this argument finding that –

> …a "pattern" of discrimination is not required in order for an aggrieved plaintiff to have knowledge of his cause of action for age discrimination. The correct standard does not revolve around the knowledge of others who have filed suit, but relates to the plaintiff's reasonableness….
>
> ***
>
> …[l]earning of another's lawsuit or discriminatory practices occasioned upon another, do not give rise to one's own rights to or the knowledge that one has a cause of action. ***On the other hand, learning of one's own termination does give rise to the knowledge of a cause of action and starts the proverbial clock's ticking.***

865 So.2d at 56 (emphasis in original; emphasis added).

Following the reasoning in *Eastin*, the First Circuit has also rejected the "discovery rule"

in the LEDL context. In *Williams v. The Library*, 2012-0220 (La. App. 1 Cir. 11/2/12), 111 So.3d

356, the First Circuit upheld an exception of prescription dismissing a claim of race discrimination

as untimely. In *Williams*, the plaintiff fax-filed his lawsuit asserting a claim of race discrimination

on July 22, 2011. He had been terminated more than a year earlier on or before July 17, 2010.

However, plaintiff argued that *contra non valentum* should save his claim of discriminatory

termination because he did not learn that his termination was motivated by racial animus until he

saw a post on Facebook several days after his termination indicating that race was a factor in his

termination. Relying on *Eastin,* the First Circuit found that "nothing prevented Mr. Williams from

asserting his cause of action within one year from his termination when he had learned of an

alleged discriminatory reason three hundred and sixty days before the prescriptive period ran." *Id.*

at 360.

The reasoning of *Eastin* and *Williams* applies with equal force here. M.D. knew that she

was assaulted by Silva in the Spring of 2015. She also believed that LSU's Title IX office failed

to provide her with necessary services at that time.  (Rec. Doc. 70 ¶¶ 95-115).  Likewise, P.P. knew about Silva's past before she voluntarily entered into a relationship with him in 2019.  Further, she was aware that she had been sexually assaulted by Silva during the course of her relationship which ended no later than January of 2021.  (Rec. Doc. 70, ¶¶123-141).  With respect to J.B., she knew that she was sexually assaulted by Silva on February 14, 2021. (Rec. Doc. 70, ¶¶148-155).  She also spoke with P.P. and learned of her issues with Silva by March 2021. (Rec. Doc. ¶173).  All of the women were interviewed by Jacoby in March of 2021 for the USA Today article that was published in May 2021.  Thus, at the latest, all of the Plaintiffs in this case could or should have known of the facts supporting their claims by May 2021 – at the very latest.  Further, Plaintiffs' claim against the LSU Presidents is premised on a failure to fulfill the obligations of Act 172, enacted in 2015.  Act 172 is a public record that is easily researched and has been readily available on the internet since its enactment. Despite being aware of the facts supporting their respective injuries and having access to facts that might articulate a theory of liability, this lawsuit was not filed until July 13, 2022 – more than one year after Kenny Jacoby's article appeared in USA TodayThe lawsuit is untimely on its face and the doctrine of *contra non valentum* does not save it.

Based on the foregoing facts and legal authority, Plaintiffs' claims against the LSU Presidents should be dismissed as untimely as a matter of law.

## III.    THE LSU PRESIDENTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFFS' §1983 CLAIMS.

Plaintiffs allege violations of 42 U.S.C. § 1983 against Alexander, Tate and Galligan, among others, in their individual capacities based on their alleged violations of the Due Process Clause of the 14th Amendment. (Rec. Doc. 70, ¶ 240). Plaintiffs' §1983 claims should be dismissed, however, as Alexander, Tate and Galligan are entitled to qualified immunity.

"Qualified immunity balances two important interests – the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009). "To achieve this balance, qualified immunity shields government officials from liability when they perform discretionary functions provided that their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Minnis v. Board of Sup'rs of Louisiana State University and Agricultural and Mechanical College*, 972 F.Supp. 2d 878, 884 (M.D. La. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). "If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity." *Id.* (citing *Nerren v. Livingston Police Dep't.*, 86 F.3d 469, 473 (5th Cir. 1996)).

> Assessing the defense of qualified immunity is a two-step process. First, using currently applicable constitutional standards, we determine whether the plaintiff has alleged the violation of a clearly established constitutional right. If so, we then decide if the defendant's conduct was objectively reasonable, because even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.

*Nerren*, 86 F.3d at 473 (internal quotations and citations omitted). "Thus, in order to defeat the [individual defendants'] qualified immunity defense, [Plaintiffs'] complaint must allege facts that, if true, show that each defendant violated [their] rights by acting in a way that he or she should have known was unlawful." *Minnis*, 972 F.Supp. 2d at 885. "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that *every* reasonable official would understand that what he is doing violates the law." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (internal quotations and citations omitted) (emphasis in original). Additionally, each defendant's actions must be evaluated individually. *Minnis*, 972 F.Supp. 2d at 885; *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir.

2007). "Because vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that *each* Government-official defendant, through the official's own *individual* actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676. Importantly, the purpose of Section 1983 is to compensate a person for injuries caused by the deprivation of constitutional rights. *See Carey v. Piphus*, 435 U.S. 247, 254, 98 S. Ct. 1042, 1047, 55 L. Ed. 2d 252 (1978)  Plaintiffs' Amended Complaint does not meet this standard.

Plaintiffs' §1983 claims against Alexander, Tate and Galligan are nothing more than general and conclusory assertions that the Defendants failed "to comply with the administrative requirements of Title IX and their own Title IX policies…"  (Rec. Doc. 70, ¶249).  Critically, Plaintiffs make no specific allegation of wrongdoing against either Alexander, Tate or Galligan individually or that they violated a clearly established *constitutional* right. For example, Plaintiffs allege that Alexander, Tate and Galligan, as the highest-ranking university official(s), were responsible for enforcing policies and procedures in place designed to prevent, detect, and correct sexual assault or misconduct, and that their failure to do so amounts to deliberate indifference and complete absence of care. (Rec. Doc. 70, ¶ 248). Similarly, Plaintiffs allege that the failure of the individual defendants, including Alexander, Tate and Galligan, to comply with administrative requirements of Title IX and their own Title IX policies amounted to deprivation of Plaintiffs' procedural and substantive due process rights. *Id*. ¶¶ 249-250. Such allegations are wholly insufficient and fail to include any particular conduct of any individual defendant that would demonstrate that Alexander, Tate or Galligan acted in a way that they knew was unlawful. Rather, Plaintiffs conflate violations of Title IX with violations of procedural or substantive due process under the 14th Amendment to the Constitution. And, here there are no facts to support the LSU Presidents violated a clearly established constitutional right.

In sum, the allegations in Plaintiffs' complaint are far too vague and conclusory to overcome the defense of qualified immunity and Plaintiffs' claims against the LSU Presidents should be dismissed with prejudice.

## IV. PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A §1983 CLAIM AGAINST ALEXANDER, GALLIGAN AND TATE IN THEIR OFFICIAL CAPACITIES.

While Plaintiffs' Amended Complaint seems to indicate that Alexander, Galligan, and Tate are being sued solely in their individual capacities, the allegations are not entirely clear on this point.  In Paragraph 246, Plaintiffs allege that Alexander, Galligan and Tate "were responsible for oversight of their universities and ensuring that the University Defendants' institutions complied with their legal obligations."  And, further, in Paragraph 248, Plaintiffs allege that "the University Defendants had policies in place related to the prevention, detection, and correction of sexual assault and misconduct" and that the LSU Presidents "as the highest-ranking members" of the university "were responsible for enforcement of these policies."  (Rec. Doc. 70, ¶248).  Plaintiffs further allege that based on their failure to "comply with the administrative requirements of Title IX and their own Title IX policies," the LSU Presidents "have created an unknown number of victims of sexual assault perpetrated by Victor Silva."  (Rec. Doc. 70, ¶¶249, 254).  Based on these allegations, Plaintiffs' §1983 claims against the LSU Presidents, to the extent they are filed against them in any official capacity, should be dismissed as a matter of law.

Plaintiffs allege that Alexander, Tate and Galligan are state actors and at all relevant times were acting under color of law.  In their official capacities, §1983 provides no relief.  As an initial matter, "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015)(quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th

Cir.2014)).  With respect to LSU and its employees, the Fifth Circuit has, in the past, considered the LSU Board of Supervisors an arm of the state.  *Pastorek v. Trail*, 248 F.3d 1140 (5th Cir.2001).  And, even further, Congress has not abrogated sovereign immunity with respect to § 1983 claims. *Will Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Coleman v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CIV.A. 15-35-JJB, 2015 WL 3872256, at *1 (M.D. La. June 23, 2015).  Consequently, Plaintiffs' §1983 claims against the LSU Presidents, in their official capacities, is barred by sovereign immunity.

Further, §1983 claims may only be asserted against "persons" and the jurisprudence is clear that a state official sued in his official capacity for money damages is not a "person" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989); *Burnette v. Brooks*, 250 F.3d 740 (5th Cir. 2001) ("[N]either a state not state officials acting in their official capacities are 'persons' under 42 U.S.C. § 1983.").

Further, it is axiomatic that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985), *citing*, *Monell,* 436 U.S. at 690, n. 55.  Indeed, official-capacity suits are nothing more than a "way of pleading an action against an entity of which an officer is an agent."  *Id.*  Here, Alexander, Galligan and Tate are employees of LSU and the Plaintiffs have sued Alexander, Galligan and Tate for conduct that occurred in connection with their employment as President of LSU.  Thus, Plaintiffs' suit against Alexander, Galligan and Tate in their official capacities is nothing more than a suit against LSU.  Since Plaintiffs have named LSU as a defendant in this litigation, there are no separate claims to be asserted against Alexander, Galligan and Tate in their official capacities as employees of LSU.

In sum, any claims against the LSU Presidents in their official capacities should be dismissed as a matter of law.

## V.    PLAINTIFFS' §1983 CLAIMS ARE BARRED BY DISCRETIONARY IMMUNITY.

La. R.S. 9:2798.1(B) provides, "Liability shall not be imposed on public entities *or their officers or employees* based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties. (emphasis added). The Louisiana Supreme Court has held that LSA-R.S. 9:2798.1 is "clear and unambiguous" and applies to "policymaking or discretionary acts when such acts are within the course and scope of ... lawful powers and duties." *Gregor v. Argenot Great Central Insurance Co.*, 2002-1138 (La. 5/20/03), 851 So. 2d 959, 967; *Herrera v. First National Insurance Company of America*, 2015-1097 (La. App. 1st Cir. 6/3/16), 194 So. 3d 807, 814, *writ denied*, 2016-1278 (La. 10/28/16), 208 So. 3d 885.

In their lawsuit, Plaintiffs allege that LSU and the LSU Presidents failed to notify ULL of Silva's alleged incidents on LSU's campus in 2014 and 2015.   As an initial matter, LSU investigated the first alleged incident and could not corroborate the allegations.   In this instance, there was no law that prescribed a certain action by anyone at LSU.   Thus, any decision LSU reached or any action the LSU Presidents took (or did not take) was within their discretionary authority and grounded in university policy.

In this regard, the case of *Dominique v. St. Tammany Par.*, 2019-0452 (La. App. 1 Cir. 9/16/20), 313 So. 3d 307, 318, <u>writ denied sub nom.</u>, 2020-01202 (La. 12/22/20), 307 So. 3d 1045, is instructive.   In *Dominique*, the plaintiffs filed suit against the St. Tammany Parish Sheriff's Department alleging that deputies were negligent in their handling of a complaint against an individual who was making verbal threats of causing harm to a local lawyer.   Specifically, the

plaintiffs, an employee of the lawyer and her husband, alleged that the deputies were put on notice that a former client, Rist, had made threats of his intent to shoot the lawyer who was his former divorce attorney.  The deputies went to Rist's home to speak with him and ascertain his mental condition and the accuracy of the alleged threats.  The deputies spoke with Rist and found him to be calm and polite.  Rist also denied any intent to cause harm.  The deputies left Rist in his home, where several guns were known to be located.  The following day, Rist went to the attorney's office, where one of the plaintiff's worked, and began to indiscriminately shoot rounds of gunfire in the office before turning the gun on himself.

The plaintiff, who was working in the office but not harmed, filed suit against the deputies claiming that they were negligent in their dealing with and investigating Rist on the day preceding the attack.  The deputies asserted the defense of discretionary immunity, which the trial court granted.  On appeal, the First Circuit affirmed the application of discretionary immunity:

> As to plaintiffs' claim that Lt. Brady breached a duty to attempt to identify Rist's potential victims and to warn them of the threats of violence made against them, we again note that this theory was specifically discussed and rejected in *Sarasino*. To impose the duty alleged by plaintiffs would have involved the allocation of additional resources to investigate the public records to determine which attorney had represented Rist, the identity of the judge or judges he had appeared before, and who was assigned to his divorce case. As such, these decisions concern the allocation of time and resources, matters that are within the discretion of the Sheriff and his policy decisions, for which he is statutorily immune. Moreover, as set forth above, when the deputies went to see Rist, he appeared rational, in touch with reality, and harmless. For these reasons, the wellness visit failed to create any additional duties and there was no reason to investigate further. *See Sarasino*, 215 So. 3d at 930 (This decision "clearly invokes the permissible exercise of policy decisions such as how to allocate and employ resources and manpower, and thus statutory immunity clearly applies to defeat plaintiffs' claim in this regard.").

In the present case, LSU had no affirmative obligation to notify ULL of any incident involving Silva during the 2014-2015 school year.  Regardless, LSU did notify ULL of Silva's arrest for rape. (Rec. Doc. 70, ¶¶ 69, 70). Like the deputies in *Dominque*, LSU's decision to

18

investigate allegations relating to Silva, how to investigate those allegations, and what to do with those findings are well within the discretionary authority of LSU and the LSU Presidents for which they are statutorily immune. Because Plaintiffs' First Amended Complaint fails to contain any specific allegations that would allow Plaintiffs to overcome this defense, they have failed to state a claim for which relief can be granted. On this basis, Plaintiffs' §1983 claims should be dismissed as a matter of law.

**<u>CONCLUSION</u>**

Plaintiffs' claims against Alexander, Galligan, and Tate, premised on § 1983 and violations of the 14th Amendment, should be dismissed with prejudice as they are untimely. If the Court finds that these claims are timely (which the LSU Presidents deny), Plaintiffs' §1983 claims should be dismissed with prejudice for failure to plead a plausible claim upon which relief may be granted. Further, the LSU Presidents are entitled to qualified and discretionary immunity. For these reasons, Plaintiffs' claims and suit against Dr. Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV should be dismissed with prejudice without leave to amend.

WHEREFORE, Defendants, Dr. Fieldon King Alexander, Thomas C. Galligan, and William F. Tate, IV pray M.D.'s, P.P.'s, J.B.'s and Jane Does 1-100's suit be dismissed with prejudice without leave to amend, attorney's fees be awarded to these Defendants under 42 U.S.C. 1988(b) as the prevailing parties, and for all other general and equitable relief.

Dated: August 21, 2023

Respectfully submitted,
**JEFF LANDRY**
**ATTORNEY GENERAL**

*/s/Elizabeth Bailly Bloch*

**CHRISTINE S. KEENAN** (No. 23293)
**ERIC R. MILLER** (No. 21359)
**ELIZABETH BAILLY BLOCH** (No. 37591)
**MARY KATHRYN GIMBER** (No. 38748)
Special Assistants Attorney General
THE KULLMAN FIRM APLC
4605 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana  70809
Telephone: (225) 906-4250
Facsimile: (225) 906-4230
Email: EM@kullmanlaw.com
          CSK@kullmanlaw.com
          EBB@kullmanlaw.com
          MKG@kullmanlaw.com


**Counsel For Defendants, Dr. Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV**


## CERTIFICATE

I hereby certify that I have, on this 21st day of August, 2023, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

*/s/ Elizabeth Bailly Bloch*
Elizabeth Bailly Bloch