**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **M.D., et al.** | § | **CIVIL ACTION NO. 6:22-cv-002089** |
| | § | |
| **VERSUS** | § | |
| | § | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA BOARD OF REGENTS,** | § | |
| **LOUISIANA STATE UNIVERSITY** | § | **MAGISTRATE JUDGE DAVID J.** |
| **BOARD OF SUPERVISORS, et al.** | § | **AYO** |
| | § | |
| | § | |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS, DR. FIELDON KING ALEXANDER, THOMAS C.**
**GALLIGAN, JR. AND WILLIAM F. TATE, IV'S, MOTION TO DISMISS PLAINTIFFS'**
**FIRST AMENDED COMPLAINT**

---

Respectfully submitted,

**DORAN & CAWTHORNE, P.L.L.C.**

/s/ Pride J. Doran
Pride J. Doran (#25035)
Nahshon J. Route (#37848)
529 E. Landry Street (70570)
Post Office Box 2119
Opelousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
    nahshon@doranlawfirm.com

*Attorneys for the Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    Plaintiffs' claims are timely under the doctrine of *contra non valentem* . . . . . . . . . . . 4

          a.  Plaintiff's § 1983 claims are timely because Defendants took steps to prevent Plaintiffs from availing themselves of their causes of action . . . . . . . . . . 5

          b.  Plaintiffs' § 1983 claims are timely because Plaintiffs' claims were not known or reasonably knowable until they learned of Defendants' actions and inaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    II.   Defendants are not entitled to qualified immunity, or, alternatively, this Court should permit limited discovery for the purpose of identifying facts necessary for the Court to rule on this issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          a.  Defendants' actions violated Plaintiffs' clearly established constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          b.  This Court should defer its ruling on qualified immunity and allow for limited discovery to determine Defendants' subjective knowledge, what investigating steps they took, and what remedial measures, if any were implemented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III.  Plaintiffs' claims arising under 42 U.S.C. § 1983 are all against Defendants in their individual capacities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    IV.  Immunities available under state law are inapplicable to federal causes of action including those under 42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Doe v. Taylor Indep. Sch. Dist ("Taylor ISD")*, 15 F.3d 443 (5th Cir. 1994) (en banc). . . . . . . 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Howlett By & Through Howlett v. Rose*, 496 U.S. 356 (1990). . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank, PLC*, 594 F.3d 383 (5th Cir. 2010). . . . . . . . . 4

*Martinez v. State of Cal.*, 444 U.S. 277 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pearson v. Callahan*, 555 U.S. 223 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Tyson v. Sabine*, 42 F.4th 508 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Webb v. Livingston*, 618 Fed.Appx. 201 (5th Cir. 2015) (unpublished). . . . . . . . . . . . . . . . . . 13

**State Cases**

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138 (La. Ct. App. 2020). . . . . . . . . . . . . . . . . 5, 9

*Ashton v. United Parcel Serv.*, 147 So.3d 748 (La. Ct. App. 2014). . . . . . . . . . . . . . . . . . . . . . . 4

*Carter v. Haygood*, 892 So.2d 1261 (La. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Eastin v. Entergy Corp.*, 865 So.2d 49 (La. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113 (La. Ct. App. 2017). . . . . . . . . . . . . . . . 9

*MR Pittman Grp, LLC v. Plaquemines Parish Gov't*, 182 So.3d 322 (La. Ct. App. 2015). . . . . . . 5

*Wells v. Zadeck*, 89 So.3d 1145 (La. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Williams v. The Library*, 111 So.3d 356 (La. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Statutes**

20 U.S.C. § 1682, Title IX of the Educational Amendments Act of 1972. . . . . . . . . . . . . . . . . Passim

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**State Statutes**

La.–R.S. 9:2798.1(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

La.–R.S. 17:3551(H) (2015) (cited as "Act 172"). . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3 & Passim

**Federal Rules of Procedure**

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Plaintiffs respectfully submit this Memorandum in Opposition to Defendant Dr. Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV's (collectively "Defendants") Motion to Dismiss. Notably this is the second such motion by Defendants and is essentially a mirror of the original motion. Nevertheless, and as Plaintiffs previously agued: (1) their claims are timely[1] pursuant to the doctrine of *contra non valentem* and (2) Defendants are not entitled to qualified immunity. Accordingly, because Defendants' remaining grounds for dismissal are not applicable, their motion to dismiss should be denied.

## INTRODUCTION

Plaintiffs, M.D., P.P., J.B., and Jane Does 1-100 (collectively, "Plaintiffs"), filed suit against the Louisiana Board of Regents, University of Louisiana Board of Supervisors, Joseph Savoie, Les Guice, Lafayette Consolidated Government, Lafayette Police Department, Thomas Glover, John/Jane Doe Chiefs of Police, LSU, Thomas C. Galligan, Jr., William F. Tate, IV, and Fieldon King Alexander, asserting claims pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq*. ("Title IX") and 42 U.S.C. § 1983. In particular, Plaintiffs bring claims stemming from systemic Title IX failures and deprivations of due process related to sexual assaults perpetrated by Victor Daniel Silva, a former student within the post-secondary education system including LSU, University of Louisiana Lafayette, and Louisiana Tech University.

As set forth in the first amended complaint, the Louisiana General Assembly passed Act 172 in 2015. This legislation was intended to address significant deficiencies in how Louisiana

---

[1] As of the date of this filing, Plaintiffs have sought leave to file a Second Amended Complaint [Doc. 76] based upon new information that has come to light in the interim since Plaintiffs' First Amended Complaint. This information includes testimony from Defendants that bears directly on the timeliness of Plaintiffs' Complaint. Plaintiffs' Motion remains outstanding.

1

post-secondary institutions, in conjunction with law enforcement, addressed sexual assault and misconduct against students. [Doc. 70, First Amended Complaint, at ¶¶ 1-6; 34-35]. Act 172 mandated that post-secondary institutions and responding law enforcement agencies enter into formal agreements memorializing how these entities would communicate and coordinate with each other related to reports of sexual misconduct. *Id.* at ¶¶ 43-44. The purpose of this communication, and the overarching goal of Act 172, was to prevent and mitigate sexual assault and misconduct on campus and involving students, as well as to prevent students accused of misconduct at these post-secondary institutions from transferring undetected within Louisiana's post-secondary system. *Id.* at ¶ 45 ("Act 172 required institutions, such as the universities and law enforcement named in this complaint 'to execute a memorandum of understanding whereby the parties would clearly delineate responsibilities and share information in accordance with applicable federal and state confidentiality laws'").

In their first amended complaint, Plaintiffs allege that Defendants individually and collectively failed to abide by the requisites of Act 172 and the responsibilities incumbent upon them to protect students and foreseeable third parties from harm perpetrated against them by people like Victor Silva. Moreover, because Plaintiffs were not privy to the infrastructure Defendants used to implement Act 172, Plaintiffs allege they had no ability to know of Defendants' willful failures during the timeframe of Silva's assaults. In fact, and as it relates to the unknown Jane Does, Plaintiffs allege the concerted effort of Defendants to misdirect students and others into believing Defendants were appropriately enforcing policies and procedures related to sexual misconduct prevents these Plaintiffs from knowing the existence of any claims, even today. *Id.* at ¶¶ 194-198.

As acknowledged in a March 2021 letter written on behalf of Defendant Board of Regents, whatever Defendants' outward efforts to assure students and third parties that Defendants were in compliance with Act 172, internally, Defendants failed. In the letter issued to the Presidents of Louisiana's top four post-secondary institutions (including Defendants Alexander, Tate, and Galligan), Defendant Board noted:

> More needs to be done to protect students enrolled at Louisiana's post-secondary institutions from sexual misconduct. Specifically, we must all ensure enforcement of all sexual misconduct and related policies, implement sexual misconduct and prevention programs, and provide support services for students who raise allegations of sexual misconduct.

*Id.* at ¶ 41, quoting a letter from Defendant Board of Regents to the Defendant Presidents, March, 2021.

This letter all but confirms that Defendants failed to appropriately adopt and implement sufficient measures during the timeframe that such measures could have prevented harm to the Plaintiffs. Yet, and as alleged in the first amended complaint, despite Defendants' failures, Defendants nevertheless continued to receive Title IX funding during the interim of Plaintiffs' tenure at Defendants, Alexander, Tate, and Galligan's, respective post-secondary institutions. Defendants also outwardly represented that they were in compliance with Act 172, by, for example, adopting policies and memoranda against "power-based violence." *Id.* at ¶¶ 46-50.

Defendants now move to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging (1) that Plaintiffs' action is untimely, (2) that Defendants are entitled to qualified immunity, (3) that Plaintiffs' 18 U.S.C. § 1983 claims should be dismissed to the extent that they are brought against Defendants in their official capacities, and (4) that they are entitled to discretionary immunity under Louisiana law. However, Plaintiffs' action is timely pursuant to the doctrine of *contra non valentem*, Defendants are not entitled to qualified immunity, and

3

Defendants' remaining grounds for dismissal are inapplicable. Thus, Defendants' motion should be denied.

## STANDARD

A motion to dismiss for failure to state a claim should be denied where a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."). In other words, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund*, 594 F.3d at 387. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.   Plaintiffs' claims are timely under the doctrine of *contra non valentem***

"In Louisiana, the doctrine of *contra non valentem* is a jurisprudential doctrine under which prescription on a cause of action may be suspended." *Ashton v. United Parcel Serv.*, 147 So.3d 748, 752 (La. Ct. App. 2014); *see also Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) ("To soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which

means that prescription does not run against a person who could not bring his suit."). Louisiana Courts recognized four categories of *contra non valentem*:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
> (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138, 1149 (La. Ct. App. 2022). "These categories allow 'the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.'" *M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312, 321 (La. Ct. App. 2015) (internal quotation marks omitted) (quoting *Wells v. Zadeck*, 89 So.3d 1145, 1150 (La. 2012)). Accordingly, the Louisiana Supreme Court has indicated that *contra non valentem* should be viewed through the lens "that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, **that which favors maintaining, as opposed to barring, an action should be adopted**." *Carter*, 892 So.2d at 1268. (emphasis added).

### a. Plaintiffs' § 1983 claims are timely because Defendants took steps to prevent Plaintiffs from availing themselves of their causes of action

The "third category of *contra non* applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." *Id*. at 1269. Stated differently, this category encompasses

> situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.

5

*Id.* As such, this category is implicated "when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction." *Anding*, 342 So.3d at 1149.

In their first amended complaint, Plaintiffs allege that they had no opportunity to learn of the harm caused by Defendants because Defendants took efforts to conceal their malfeasance in implementing Act 172. Plaintiffs further assert that Defendants failed to abide by internal policies and procedures related to sexual misconduct, failed to make mandatory reports and undertake appropriate investigations, and failed to enforce rules related to sexual misconduct. Plaintiffs have alleged that they had no reason to suspect that Defendants were failing to abide by LSU's internal policies and procedures, nor could Plaintiffs have had reason to suspect that Defendants were not properly reporting or investigating sexual misconduct. Instead, and as alleged in the pleadings, Plaintiffs reasonably relied on Defendants' representations that they would abide by Louisiana law, and that relevant parties at LSU would abide by their responsibility to conduct appropriate investigations as contemplated by policies, procedures, and other resources. [Doc. 70, First Amended Complaint, at ¶¶ 194-198].

Defendants' reliance on *Eastin v. Entergy Corp.*, 865 So.2d 49 (La. 2004) is misplaced. In *Eastin*, in response to age discrimination claims brought by eleven plaintiffs, the defendant filed an exception of prescription. *Id*. at 51. The Louisiana Supreme Court ultimately found the plaintiffs were not entitled to application of *contra non valentem* because a plaintiff "sustains damage in a non-continuing discrimination case when the discriminatory decision is made and communicated to the employee." *Id*. at 54. Thus, "where the plaintiffs alleged absolutely no active role in determining if their terminations were for unlawful reasons and made no inquiry into the

6

reasons for their terminations, the plaintiff's delay in filing suit was not reasonable and does not merit the application of the doctrine of *contra non valentem*." *Id*. at 56.

In the instant case, the facts are distinguishable from *Eastin* in a fundamental way. Unlike the plaintiffs in *Eastin* who were notified of their termination by their employer, Defendants in the instant action concealed their failures to implement appropriate policies and procedures to prevent sexual misconduct. Defendants' misrepresentations directly inured to Defendants' benefit, as outwardly indicating compliance with Act 172 entitled Defendants' institutions to continue receiving Title IX funds.

Plaintiff were made to believe that Defendants were in compliance with state law. In addition, Plaintiffs were excluded from Defendants; internal process, actions, and inactions.[2] Defendants promulgated a closed system, within which there was no role for Plaintiffs despite the fact that Defendants' closed system directly impacted Plaintiffs' well-being. Plaintiffs' theory of the case rests on Defendants' conduct and as set forth in the four-corners of Plaintiffs' first amended complaint, Defendants took measures to ensure that Plaintiffs did not discover Defendants' malfeasance.

Defendants further attempt to avoid the application of *contra non valentem* by asserting that the Plaintiffs knew of their assaults at the time they were assaulted. This fact would be sufficient to conclude that the prescriptive period had run against Plaintiffs' assailant, but Victor Silva is not a party to this action. As to Defendants however, the mere fact that Plaintiffs were aware of Silva's attacks does not equate to notice of Defendants' failures to protect Plaintiffs from Silva. Defendants also assert that *contra non valentem* should not apply for one of the Plaintiffs

---

[2] Defendants' reliance on *Williams v. The Library*, 111 So.3d 356 (La. 2012), is similarly misplaced. Defendants again fail to appreciate the distinction between a plaintiff who was notified of his firing by the defendant and Plaintiffs who received no notice of Defendants' malfeasance.

7

because she believed she had not been provided with necessary services at the time.  However, this belief would not put Plaintiff M.D. on notice that Defendants failed to follow their own policies and procedures for preventing, reporting, and investigating sexual violence.  Defendants also assert that Plaintiffs are not entitled to application of the doctrine because a USA Today article describing Plaintiffs' experiences was published in May 2021.  The mere existence of an article, however, which generally discusses a central assailant, does not establish that Plaintiffs were aware of facts giving rise to their legal claims against Defendants. Moreover, the first amended complaint names unnamed Jane Does who were potentially assaulted by Victor Silva during the same timeframe and under the same circumstances, but who may not have reason to know of Defendants' coordinated failures. These individuals could not have known, nor could they have suspected that Defendants, in conjunction with the other chief officers at educational institutions and law enforcement entities across the state, had so utterly failed to abide by state law related to the protection of students on campus. Another of Silva's victims instituted an action against Defendants in May, 2022. This action also provided insight into potential claims. In any event, because this case alleges that Defendants concealed facts upon which Plaintiffs' claims rest, the focus of the Court's inquiry should not be upon the Plaintiffs. To this day, Defendants have not acknowledged the systemic failures leading to Silva's perpetration of abuse. The Court must therefore focus on Defendants' evasive conduct, which requires a stay to the prescriptive period.

Ultimately, Plaintiffs' first amended complaint plausibly alleges facts that demonstrate Defendants made efforts to conceal the facts underlying their lawsuit, the third category of *contra non valentem* operates to make Plaintiffs' § 1983 claims timely.

> **b. Plaintiffs' § 1983 claims are timely because Plaintiffs' claims were not known or reasonably knowable until they learned of Defendants' actions and inactions**

Alternatively, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

"The fourth category of *contra non valentem*, commonly referred to as the discovery rule, provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Anding*, 342 So.3d at 1149. "Under the discovery rule, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Id.*; *see also Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113, 116 (La. Ct. App. 2017) (indicating that under the discovery rule, "prescription is suspended until the tort victim discovers or 'should have discovered' the facts upon which his or her cause of action is based"). "In these 'should have discovered' cases, the Supreme Court has focused on the reasonableness of the claimant's 'action or inaction.'" *Morgan*, 234 So.3d at 119.

Here, Plaintiffs could not have known of Defendants' acts and failures because Plaintiffs were summarily excluded from Defendants' system. Plaintiffs justifiably relied on Defendants' representations that Defendants would take appropriate measures to investigate, report, and prevent sexual assault, and to otherwise abide by the mandates of Act 172. Defendants continued to accept Title IX funds and Defendants publicly represented that they had entered into memoranda with law enforcement to mitigate and respond to sexual assault and misconduct involving students, or perpetrated by students. Meanwhile, unbeknownst to Plaintiffs, Defendants in fact failed to implement any such protective measures. As such, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

**II. Defendants are not entitled to qualified immunity or, alternatively, this Court should permit limited discovery for the purpose of identifying facts necessary for the Court to rule on this issue.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). Thus, "a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Id*.

### a. Defendants' actions violated Plaintiffs' clearly established constitutional rights

In determining whether a defendant is entitled to qualified immunity, courts engage in a two-step analysis. "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown []make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232 (internal citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*.

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (citation omitted). However, "[t]here need not be 'commanding precedent' that holds that the 'very action in question' is unlawful[.]" *Id*. at 236–37 (internal quotation marks omitted). Rather "the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations." *Id*. at 237 (internal quotation marks omitted).

Courts have consistently held that "[t]he substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quoting *Doe v. Taylor Indep. Sch. Dist. ("Taylor ISD")*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc)). "A violation of the right to bodily integrity follows from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' *Id*. at 517 (alteration in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

As established above, Plaintiffs had a clearly established right to bodily integrity at the time of the Defendants' malfeasance. The existence of Title IX and Louisiana's recent enactment of the Campus Accountability and Safety Act bolsters this conclusion. As the entities charged with administering these programs, it would be unreasonable to conclude that Defendants did not know that the failure to prevent, investigate and report sexual misconduct deprived students, including Plaintiffs, of their right to bodily integrity.

Defendants argue that Plaintiffs' allegations are "too vague and conclusory to overcome the defense of qualified immunity." In so doing, Defendants wholly ignore Plaintiffs' factual allegations laid out in paragraphs 34 through 181. In these paragraphs, Plaintiffs allege, *inter alia*, numerous instances of LSU and Defendants' failures to report or investigate sexual assault, to communicate with other universities and law enforcement regarding such assaults, and to act in a manner consistent with their policies, procedures, Title IX, and Louisiana's Campus Accountability and Safety Act.

Accordingly, when viewing the entirety of Plaintiffs' first amended complaint, rather than engaging in a narrow review of Count IV only, it is clear that Plaintiffs have alleged facts

11

demonstrating that Defendants violated Plaintiffs' clearly established rights. Accordingly, Defendants' motion to dismiss should be denied.

### b. This Court should defer its ruling on qualified immunity to allow limited discovery as to Defendants' subjective knowledge, what investigatory steps they took, and what remedial measures, if any, were implemented.

In the alternative, if this Court determines it does not have enough information to rule on Defendants' assertion of qualified immunity, the Court should order limited discovery to determine whether Defendants acted in an objectively reasonable manner.

"When reviewing a well-pleaded complaint and a defendant's motion to dismiss on the basis of qualified immunity, a district court may defer its qualified immunity ruling and order limited discovery when the court remains unable to rule on the immunity defense without further clarification of the facts." *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "In other words, a district court may elect the defer-and-discover approach when the defendant's immunity claim turns at least partially on a factual question that must be answered before a ruling can issue." *Id.* (internal quotation marks omitted).

In *Hinojosa*, the Fifth Circuit affirmed the district court's determination that it "was unable to rule on Defendants' qualified immunity claim because factual development was needed as to [Defendants'] 'knowledge, actions, omissions and/or policies in regards to TDCJ prison operations in times of extreme heat.'" *Id.* at 671. In affirming the district court's decision, the Fifth Circuit found the district court could not determine whether the defendants acted reasonably in light of clearly established law without answering the "factual questions of what [the d]efendants knew, when they knew it, and whether they investigated and considered possible remedial measures." *Id.* Additionally, the Fifth Circuit noted that the defendants' "knowledge is central to the deliberate

12

indifference element of Plaintiff's Eighth Amendment claim[,]" but also found their knowledge was "highly relevant to qualified immunity, because it bears heavily on the reasonableness of their actions." *Id*. The Court further explained that the qualified immunity analysis is "complicated when, as here, the deliberate indifference standard must be reconciled with the second prong's objective reasonableness standard." *Id*. at 672 (internal quotation marks omitted) (quoting *Webb v. Livingston*, 618 Fed. Appx. 201, 210 (5th Cir. 2015) (unpublished)). Thus, "in light of these complexities, [the Fifth Circuit has] observed that [a]dditional facts . . . are particularly important when evaluating the [reasonableness] prong of the qualified immunity test." *Id*. (internal quotation marks omitted) (second alteration in original) (quoting *Webb*, 618 Fed. Appx. at 210).

The considerations which supported limited discovery in *Hinojosa*, also apply to the facts at bar. If the Court determines it does not have enough information to rule on qualified immunity, it will need to resolve factual issues regarding whether Defendants were objectively reasonable in handling sexual violence occurring at LSU, including what Defendants knew, when they knew it, and whether they investigated and considered possible remedial measures. Moreover, Plaintiffs have alleged that Defendants acted with deliberate indifference in the manner in which they addressed sexual violence at LSU. Thus, as the Fifth Circuit has indicated, because claims of deliberate indifference make the determination of qualified immunity more complex, additional facts are necessary for the Court to evaluate the reasonableness prong of qualified immunity.

As such, if the Court determines it does not have enough facts to determine the issue of qualified immunity, it should defer its ruling on the issue and order limited discovery to make necessary factual determinations.

### III. Plaintiffs' claims arising under 42 U.S.C. § 1983 are alleged against Defendants in their individual capacities

Plaintiffs have clearly brought their 42 U.S.C. § 1983 claims against Defendants in their individual capacities. *See* [Doc. 70, First Amended Complaint, ¶240.] Accordingly, Defendants' request for dismissal on this ground should be denied.

### IV. Immunities available under state law are inapplicable to federal causes of action, including those under 42 U.S.C. § 1983

"The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 375 (1990). Accordingly, "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." *Martinez v. State of Cal.*, 444 U.S. 277, 284, n.8 (1980). "A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Id.*; *see also Howlett*, 496 U.S. at 375 ("If the District Court of Appeal meant to hold that governmental entities subject to § 1983 liability enjoy an immunity over and above those already provided in § 1983, that holding directly violates federal law.").

Defendants assert that they are entitled to discretionary immunity from 42 U.S.C. § 1983 claims pursuant to Louisiana law, specifically La.–R.S. 9:2798.1(B). Defendants further rely on Louisiana case law to support their contention. However, Defendants' argument is misplaced, as immunity created under state law cannot defeat a federal cause of action. *See Martinez*, 444 U.S. at 284, n.8 ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law.").

### CONCLUSION

Based on the foregoing, Defendants' motion to dismiss should be denied.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system this 11th day of September, 2023.

*/s/ Pride J. Doran*
Pride J. Doran