UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| M.D., et al. | § | CIVIL ACTION NO. 6:22-cv-002089 |
| | § | |
| VERSUS | § | |
| | § | JUDGE DAVID C. JOSEPH |
| LOUISIANA BOARD OF REGENTS, | § | |
| LOUISIANA STATE UNIVERSITY | § | MAGISTRATE JUDGE DAVID J. |
| BOARD OF SUPERVISORS, et al. | § | AYO |
| | § | |

**REPLY MEMORANDUM IN SUPPORT OF LSU PRESIDENTS', DR. FIELDON KING ALEXANDER, THOMAS C. GALLIGAN, JR. AND WILLIAM F. TATE, IV, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants, Dr. Fieldon King Alexander ("Alexander"), Thomas C. Galligan, Jr. ("Galligan") and William F. Tate, IV ("Tate") (collectively "Defendants" or "the LSU Presidents"), respectfully submit this Reply Memorandum in Support of their Motion to Dismiss the First Amended Complaint filed on behalf of Plaintiffs, M.D., P.P., J.B., and Jane Does 1-100. For the reasons set forth below, Plaintiffs' opposition is insufficient to overcome the objections raised in the LSU Presidents' Motion to Dismiss and the claims against them should be dismissed with prejudice.

**I.  PLAINTIFFS DO NOT DISPUTE THAT THE §1983 CLAIM AGAINST THE LSU PRESIDENTS IS UNTIMELY ON ITS FACE.**

The LSU Presidents seek to dismiss Plaintiffs' §1983 claim on the basis that it is untimely on its face. As set forth in the LSU Presidents' Motion, Plaintiffs' §1983 claim is subject to a one-year prescriptive period. *Dugas v. City of Ville Platte*, No. 6:17-CV-00337, 2017 WL 6521660, at *5 (W.D. La. Nov. 17, 2017), report and recommendation adopted, No. 6:17-CV-00337, 2017 WL 6521148 (W.D. La. Dec. 19, 2017). Plaintiffs allege that they were sexually assaulted on several different occasions between Spring 2015 and February 2021. Rec. Doc. 70, ¶¶ 98, 101, 123, 136,

1

141, 148, 155.[1] Specifically, Plaintiff J.B. alleges that she was the most recent of Silva's assault victims when she was raped on February 14, 2021. *Id.* ¶¶ 148, 151, 155. Plaintiffs did not file suit until July 13, 2022, more than one year, and up to seven years, after each of the alleged incidents of sexual assault. As such, Plaintiffs' §1983 claim against the LSU Presidents, subject to a one-year prescriptive period, are time barred and should be dismissed with prejudice.

## II.   PLAINTIFFS HAVE NOT ALLEGED FACTS SUFFICIENT TO WARRANT THE APPLICATION OF CONTRA NON VALENTUM.

Plaintiffs recognize that their §1983 claim against the LSU Presidents is untimely on its face. *Id.* ¶¶ 194-198. In an effort to maintain this claim, Plaintiffs make a strained argument that the Court should apply the doctrine of *contra non valentum*. Specifically, Plaintiffs contend that the doctrine of *contra non valentum* tolls the statute of limitations on their §1983 claim because the LSU Presidents "took efforts to conceal their malfeasance" and because Plaintiffs' claims were not "known or reasonably knowable." However, Plaintiffs' argument is not supported by their own allegations.

Plaintiffs' §1983 claim against the LSU Presidents is premised on the allegation that the "Defendants individually and collectively failed to abide by the requisites of Act 172…" as it relates to the reported assault by Silva on the LSU campus in the spring of 2015. Rec. Doc. 94, p. 2. And, further, "because Plaintiffs were not privy to the infrastructure Defendants used to implement Act 172, Plaintiffs allege they had no ability to know of Defendants' willful failures during the timeframe of Silva's assaults." *Id.*

---

[1] As noted in Defendants' Memorandum in Support of Motion to Dismiss Plaintiffs' First Amended Complaint, there are several instances of overlap with the paragraphs numbered 135-156 regarding P.P. and J.B. The factual allegations as to P.P. are contained in paragraphs 116-156 of the First Amended Complaint. The factual allegations as to J.B. begin directly following P.P.'s allegations but are numbered 135-181. Accordingly, there are at least two paragraphs in the First Amended Complaint both marked 135-156. Here, Defendants refer the Court to Paragraph 136 for the section of the First Amended Complaint under P.P. and then also to Paragraph 136 under the section for J.B. The references to Paragraphs 141, 148, and 155 are those under the section for J.B.

It is axiomatic that the LSU Presidents, who are being sued in their respective individual capacities, can only be held liable for their own conduct as it relates to Plaintiffs' allegations of wrongdoing. That is, President Alexander can only be held liable for President Alexander's actions (or inactions), President Galligan can only be held liable for President Galligan's actions (or inactions), and President Tate can only be held liable for President Tate's actions (or inactions). The incidents giving rise to the claims against LSU – the assaults by Silva on LSU's campus – occurred in the Fall of 2014 and the Spring of 2015. Rec. Doc. 70, ¶¶ 62-65, 68, 98-101. Act 172 did not become effective until June 23, 2015. *See* La. R.S. 17:3399.11. Thus, LSU had no obligations vis-à-vis Act 172 until June 23, 2015 – *after* the incidents with Silva on LSU's campus had already taken place, *after* Silva transferred from and was no longer a student at LSU, and *after* Silva had been arrested by the LSU Police Department on sexual assault charges related to Plaintiff M.D.'s Spring 2015 assault. Rec. Doc. 70, ¶¶ 62-69, 98-101. Further, Galligan served as LSU's Interim President from January 2020 until May 2021 and Tate became LSU's President in May 2021 – *years* after the incidents with Silva on LSU's campus had taken place. *Id.*, ¶¶ 14, 15. Thus, to the extent that Plaintiffs contend the LSU Presidents "failed to abide by the requisites of Act 172" with respect to the incidents involving Silva on LSU's campus and then attempted to conceal those failures – Plaintiffs' own allegations negate any such finding. Act 172 was not in effect at the time of the LSU incidents and neither Galligan nor Tate were employed at LSU when such incidents occurred.

With respect to Plaintiffs' argument that the LSU Presidents took efforts to conceal their malfeasance and, therefore, the Plaintiffs were prevented from learning of their claims, Plaintiffs have failed to meet their burdens. Plaintiffs do not offer any specific allegations as to how Alexander, Galligan or Tate, individually, concealed their individual alleged malfeasance in this

case (because there is none). It is insufficient for Plaintiffs to allege that all Defendants collectively engaged in some cover-up in order to avail themselves of the doctrine of *contra non valentum*. On a §1983 claim against an individual defendant in his personal capacity, the Plaintiffs must allege sufficient facts to show how the individual defendant engaged in efforts to conceal his specific wrongdoing. *Minnis v. Board of Sup'rs of Louisiana State University and Agricultural and Mechanical College*, 972 F.Supp. 2d 878 (M.D. La. 2018). Plaintiffs have not made that showing here.

With respect to Plaintiffs' argument that their §1983 claim was not "known or reasonably knowable," Plaintiffs again fail to establish that they are entitled to the application of *contra non valentum*. Plaintiffs argue that their §1983 claim – their only claim – against the LSU Presidents was not known or knowable because they "were summarily excluded from Defendants' system," and because the LSU Presidents represented that they "would take appropriate measures to investigate, report, and prevent sexual assault, and to otherwise abide by the mandates of Act 172." Rec. Doc. 94, p. 9. Such argument is nonsensical and contrary to law, as it effectively translates to the suspension of the statute of limitations period until a potential defendant notifies a potential plaintiff that they may have engaged in conduct or activity giving rise to a cause of action.

Moreover, Plaintiffs' efforts to distinguish *Eastin v. Entergy Corp.* and *Williams v. The Library* are unconvincing. The discrimination claims of the plaintiffs in *Eastin* and *Williams* accrued when they were made aware of their respective terminations. *Eastin v. Entergy Corp.*, 2003-1030 (La. 2/6/04), 865 So.2d 49; *Williams v. The Library*, 2012-0220 (La. App. 1 Cir. 11/2/12), 111 So.3d 356. In *Eastin*, the Court held that the plaintiffs were put on notice of the need to investigate their potential claims at the time in which they received notice of their terminations. That plaintiffs did not learn of possible illegal discriminatory motive behind their terminations

4

until some later date when other employees informed them of the alleged discriminatory motive did not relieve the plaintiffs of their duty to investigate. *Eastin*, 865 So.2d 49. The same reasoning applies here. Each Plaintiff knew of the wrongful conduct – the assault by Silva – when it occurred. Plaintiffs' claims – all claims – accrued at that time, and Plaintiffs were obligated to investigate their claims at that time. With respect to Plaintiff M.D. in particular, she was well aware of LSU's alleged involvement in her claims because she alleges that, immediately upon being assaulted by Silva, she sought assistance from LSU but to no avail. Rec. Doc. 70, ¶¶ 94-115. Likewise, Plaintiff P.P. knew of Silva's past before she voluntarily entered into a relationship with him in 2019. Further, she was aware that she had been sexually assaulted by Silva during the course of her relationship which ended no later than January of 2021. *Id.*, ¶¶ 123-141. With respect to Plaintiff J.B., she knew that she was sexually assaulted by Silva on February 14, 2021. *Id.* ¶¶ 148, 151, 155. She also spoke with P.P. and learned of her issues with Silva by March 2021. *Id.* ¶¶ 142, 168-173. All of the women were interviewed in March 2021 for the USA Today article that was published in May 2021. Thus, at the latest, all of the Plaintiffs in this case could or should have known of the facts supporting their claims by May 2021 – at the very latest.

Again, this lawsuit was not filed until July 13, 2022 – more than one year from the absolute latest date in which Plaintiffs' claim could have possibly accrued. The lawsuit is untimely on its face and the doctrine of *contra non valentum* cannot save it, as Plaintiffs cannot establish they are entitled to its application. Accordingly, Plaintiffs' claims against the LSU Presidents should be dismissed as untimely as a matter of law.

### III. PLAINTIFFS CANNOT OVERCOME THE DEFENSE OF QUALIFIED IMMUNITY.

Plaintiffs have not, and cannot, allege facts sufficient to demonstrate that the LSU Presidents violated Plaintiffs' clearly established rights, and, therefore, cannot overcome the LSU

Presidents' defense of qualified immunity.

"[I]n order to defeat the [individual defendants'] qualified immunity defense, [Plaintiffs'] complaint must allege facts that, if true, show that each defendant violated [their] rights by acting in a way that he or she should have known was unlawful." *Minnis*, 972 F.Supp. 2d at 885. "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that *every* reasonable official would understand that what he is doing violates the law." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (internal quotations and citations omitted) (emphasis in original). Additionally, each defendant's actions must be evaluated individually. *Minnis*, 972 F.Supp. 2d at 885; *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007). "Because vicarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that *each* Government-official defendant, through the official's own *individual* actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Importantly, the purpose of Section 1983 is to compensate a person for injuries caused by the deprivation of constitutional rights. *See Carey v. Piphus*, 435 U.S. 247, 254, 98 S. Ct. 1042, 1047, 55 L. Ed. 2d 252 (1978). Plaintiffs' First Amended Complaint does not meet this standard.

Plaintiffs' §1983 claims against the LSU Presidents are nothing more than general and conclusory assertions that the Defendants failed "to comply with the administrative requirements of Title IX and their own Title IX policies…" Rec. Doc. 70, ¶249. Despite Plaintiffs' assertions otherwise, a review of the First Amended Complaint in its entirety, and in particular paragraphs 34-181, leads to the same conclusion: Plaintiffs have not pled a single, specific allegation of wrongdoing against Alexander, Tate, or Galligan individually or that they violated a clearly established constitutional right.

Plaintiffs' alternative argument with regard to whether the LSU Presidents are entitled the

defense of qualified immunity – that the Court should defer its ruling on this defense and allow for Plaintiffs to conduct limited discovery – plainly ignores binding precedent. In *Carswell v. Camp*, the Fifth Circuit explicitly overruled *Lion Boulos v. Wilson*, 834 F.2d 504 (5th Cir. 1987) and its progeny, and held that:

> [T]he district court abused its discretion by deferring its ruling on qualified immunity and subjecting the immunity-asserting defendants to discovery in the meantime. Where public officials assert qualified immunity in a motion to dismiss, a district court ***must*** rule on the immunity question at that stage. It cannot defer that question until summary judgment. Nor can it permit discovery against the immunity-asserting defendants before it rules on their defense.
> \*\*\*
> When defendants assert qualified immunity in a motion to dismiss, the district court may ***not*** defer ruling on that assertion. It may ***not*** permit discovery – "cabined or otherwise" – against immunity-asserting defendants before it has determined plaintiffs have pleaded facts sufficient to overcome the defense. The rule is that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation – full stop. Although our court previously carved out a "narrow exception" to this rule, we now make clear the rule admits for ***no exception***.

37 F.4th 1062, 1066-67 (5th Cir. 2022) (internal citations and quotations omitted) (emphasis added). Accordingly, Plaintiffs are not entitled to limited discovery related to whether the LSU Presidents are entitled qualified immunity.

IV. **TO THE EXTENT PLAINTIFFS RELY ON STATE LAW, DISCRETIONARY IMMUNITY APPLIES.**

While Defendants acknowledge that La. R.S. 9:2798.1 does not preclude liability for claims brought pursuant to Section 1983, Plaintiffs' allegations against the LSU Presidents are grounded in theories of negligence and/or their alleged failure to comply with Act 172 (*i.e.*, failure to adequately implement procedures and mechanisms and to perform statutory duties). To the extent that Plaintiffs are attempting to saddle the LSU Presidents with liability through any state law theories of liability, including negligence under Civil Code 2315, any such liability is barred by La. R.S. 9:2798.1.

WHEREFORE, for the reasons cited herein, and in their motion to dismiss, Defendants Dr. Fieldon King Alexander, Thomas C. Galligan, Jr. and William F. Tate, IV respectfully request that this Court grant their motion to dismiss as prayed for herein.

Dated: September 18, 2023

Respectfully submitted,

*/s/Elizabeth Bailly Bloch*
**CHRISTINE S. KEENAN** (No. 23293)
**ERIC R. MILLER** (No. 21359)
**ELIZABETH BAILLY BLOCH** (No. 37591)
**MARY KATHRYN GIMBER** (No. 38748)
THE KULLMAN FIRM APLC
4605 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana  70809
Telephone: (225) 906-4250
Facsimile: (225) 906-4230
Email:  EM@kullmanlaw.com
            CSK@kullmanlaw.com
            EBB@kullmanlaw.com
            MKG@kullmanlaw.com

**Counsel For Defendants, Dr. Fieldon King Alexander, Thomas C. Galligan, Jr. and William F. Tate, IV**

## CERTIFICATE

I hereby certify that I have, on this 18th day of September 2023, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

*/s/ Elizabeth Bailly Bloch*
Elizabeth Bailly Bloch