Exhibit D

# Policy 1436 – Power-Based Violence and Title IX

**Revision Date:** 10/7/2021

**Last Review:** 10/7/2021

**Original Effective Date:** 3/1/2013

**Responsible Office:** Office of the President

**Reference:** ULS Policy Number S-II.XXI

---

## Policy

## Table of Contents

1.1 Policy Statement

1.2 Notice of Nondiscrimination

1.3 Legal Summary

2.0 Definitions

3.1 Applicable Scope

3.2 Title IX Coordinator

3.3 Independence and Conflict-of-Interest

3.4 Confidential Advisors

4.0 Reporting Power-based violence (including Title IX Sexual Harassment)

5.0 Supportive Measures

6.0 Statement of Parties' Rights

7.0 Emergency Removal

8.0 Promptness

9.0 Privacy

10.1 Mandatory Reporting for Employees

10.2 Employee's Failure to Report or False Reporting

10.3 Student's False Reporting

10.4 Confidential and Anonymous Reporting

10.5 Administrative Reporting

10.6 Time Limits on Reporting

11.0 Amnesty Policy

12.0 Romantic Relationships in Power Differentials

13.0 Retaliation

14.0 Transcript Withholding, Notation, and Communication

15.1 Initial Steps and Determination of Appropriate Procedures

15.2 Title IX Grievance Process (Process A)

15.3 Power-based violence grievance process (Process B)

15.4 Long-Term Remedies/Other Actions

16.0 Training

17.0 Recordkeeping

18.0 Revision of This Policy and Procedures

19.0 Data Publication

20.0 Memorandum of Understanding

21.0 Website Compliance

## 1.1 Policy Statement

Louisiana Tech University is committed to providing a learning, working and living environment that promotes personal integrity, civility and mutual respect.

This policy addresses the requirements of federal and state law, including Act 472 of the 2021 Legislative Session of the Louisiana Legislature (Act 472), Title IX of the Education Amendments of 1972 (Title IX) and Title VII of the Civil Rights Act of 1964 (Title VII), the Violence Against Women Act (VAWA), the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act), and other applicable laws.

## 1.2 Notice of Nondiscrimination

Louisiana Tech University does not discriminate against individuals on the basis of their race, sex, sexual orientation, religion, color, national or ethnic origin, age, disability, military service, covered veteran's status, or genetic information in its administration of education policies, programs, or activities; admissions policies; scholarship and loan programs; athletic or other University-administered programs; or employment.

## 1.3 Legal Summary

Title IX of the 1972 Education Amendments prohibits discrimination on the basis of sex in educational institutions, requires colleges and universities receiving federal funding to combat gender-based violence and harassment, and to respond to survivors' needs in order to ensure that all students have equal access to education.

The Clery Act requires policies and procedures for sexual assault and also requires timely warning and external reporting of crimes.

Section 304 of VAWA extended the Clery Act to include sexual assault, dating violence, domestic violence and stalking at higher education institutions.

Title IX, which articulates the fundamental anti-discrimination principle that underlies all of the above laws, states as follows:

> *No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.*

Act 472 sets forth processes and procedures for educational institutions to maintain safety and protection for students and employees from power-based violence. Power-based violence is defined as any form of interpersonal violence intended to control or intimidate another person through the assertion of power over the person. It includes but is more expansive than sexual misconduct and Title IX Sexual Harassment.

This policy is not intended to infringe upon or restrict rights guaranteed by the United States Constitution, including the right to free speech under the First Amendment or the due process clauses of the Fifth or Fourteenth Amendments.

# Definitions

## 2.0 Definitions

For purposes of this policy, the following terms will have corresponding definitions.

**Advisor**: A person chosen by a party or appointed by the University to accompany the party to meetings related to the resolution process, to advise the party on that process, and to conduct cross-examination for the party at a Title IX Sexual Harassment hearing, if any.

**Chancellor or President:** The chief executive officer of a public postsecondary education University.

**Coercion:** The use of express or implied threats, intimidation, or physical force, which places an individual in fear of immediate harm or physical injury or causes a person to engage in unwelcome sexual activity. Coercion also includes administering a drug, intoxicant, or similar substance with the intent to impair that person's ability to consent prior to engaging in sexual activity.

**Complainant:** An individual who is alleged to be the victim of behavior that could constitute power-based violence under this policy (or an individual who is alleged to be the victim of conduct that could constitute sexual harassment under Title IX) irrespective of whether a Formal Complaint has been filed.

**Confidential Advisor:** A person designated by a University to provide emergency and ongoing support to students who are alleged victims of power-based violence or Title IX Sexual Harassment.

**Consent:** Consent to engage in sexual activity must exist from beginning to end of each instance of sexual activity. Consent is demonstrated through mutually understandable words and/or actions that clearly indicate a willingness to engage in a specific sexual activity. Silence alone, without actions evidencing permission, does not demonstrate Consent. Consent must be knowing and voluntary. To give Consent, a person must be of legal age. Assent does not constitute Consent if obtained through coercion or from an individual whom the Alleged Offender knows or reasonably should know is Incapacitated. The responsibility of obtaining Consent rests with the person initiating sexual activity. Use of alcohol or drugs does not diminish one's responsibility to obtain Consent. Consent to engage in sexual activity may be withdrawn by any person at any time. Once withdrawal of Consent has been expressed, the sexual activity must cease. Consent is automatically withdrawn by a person who is no longer capable of giving Consent. A current or previous consensual dating or sexual relationship between the parties does not itself imply Consent or preclude a finding of responsibility.

**Decision Makers:** individuals selected by the University and charged with determining responsibility for an allegation of power-based violence or Title IX Sexual Harassment.

**Decision-Maker Panel:** Refers to a panel of Decision Makers who have decision-making and sanctioning authority within the University's Title IX Grievance Process (Process A) and the Power-Based Violence Grievance Process (Process B).

**Employee**: An employee is defined as:

 i. An administrative officer, official, or employee of a public postsecondary education board or University.
 ii. Anyone appointed to a public postsecondary education board or University.
 iii. Anyone employed by or through a public postsecondary education board or University.
 iv. Anyone employed by a foundation or association related to a System Management Board or University.

The employee category does not include a student enrolled at a public postsecondary University unless the student works for the University in a position such as a teaching assistant or residential advisor.

**Final Determination:** A conclusion by the preponderance of the evidence standard that the alleged conduct occurred and whether it did or did not violate policy.

**Finding:** A conclusion by the preponderance of the evidence standard that the alleged prohibited conduct did or did not occur as alleged.

**Formal Complaint:** A signed document filed by a Complainant or signed by the Title IX Coordinator alleging power-based violence or retaliation and requesting the University investigate and possibly adjudicate the alleged issue. A third party who knows of or witnessed an incident of power-based violence but who did not suffer such conduct themselves may request that the University treat their third-party Report as a Formal Complaint. The University can also convert a Report to a Formal Complaint if the University determines that, in order to meet its Title IX obligations to provide a safe and nondiscriminatory environment for the broader University community, it must take further steps to address and resolve the matter and/or, for Title IX Sexual

Harassment, where the Report itself satisfies the Title IX requirements of a Formal Complaint. For purposes of alleged misconduct that satisfies the jurisdictional requirements of Title IX, see Formal Complaint in the Title IX Grievance Process.

**Grievance Process Pool:** Includes any investigators, hearing officers, appeal officers and advisors who may perform any or all of these roles (though not at the same time or with respect to the same case).

**Informal Resolution:** A voluntary process that is separate and distinct from a University's investigation and adjudication processes that allows the parties (i.e., Complainant and Respondent) to reach a mutually agreeable resolution.

**Incapacitation:** An individual is considered to be incapacitated if, by reason of mental or physical condition, the individual is manifestly unable to make a knowing and deliberate choice to engage in sexual activity. Individuals who are asleep, unresponsive, or unconscious are incapacitated. Other indicators that an individual may be incapacitated include, but are not limited to, inability to communicate coherently, inability to dress/undress without assistance, inability to walk without assistance, slurred speech, loss of coordination, vomiting, or inability to perform other physical or cognitive tasks without assistance.

**Investigators:** Individuals designated by the Title IX Coordinator to conduct an investigation of alleged power-based violence or Title IX Sexual Harassment. The Investigators will be trained individuals who objectively collects and examines the facts and circumstances of potential violations of this Policy and documents them for review. The Investigators will be neutral and will not have a conflict of interest or bias against the Complainant or Respondent, or Complainants and Respondents generally.

**Mandatory Reporter:** An individual who is obligated by law to report any knowledge they may have of power-based violence or Title IX Sexual Harassment. For purposes of this Policy, mandatory reporters include Responsible Employees. (See definition of Responsible Employee.) **All University employees are Mandatory Reporters, with the exception of Confidential Advisors.**

**Parties:** Include the Complainant(s) and Respondent(s), collectively.

**Power-based Violence:** Any form of interpersonal violence intended to control or intimidate another person through the assertion of power over the person, to include the following:

a. Dating violence (R.S. 46:2151(C)).

b. Domestic abuse and family violence (R.S. 46:2121.1(2) and 2132(3)). For the purpose of this Part, domestic abuse shall also include any act or threat to act that is intended to coerce, control, punish, intimidate, or exact revenge on the other party, for the purpose of preventing the victim from reporting to law enforcement or requesting medical assistance or emergency victim services, or for the purpose of depriving the victim of the means or ability to resist the abuse or escape the relationship.

c. Nonconsensual observation of another person's sexuality without the other person's consent, including voyeurism (R.S. 14:283.1), video voyeurism (R.S. 14:283), nonconsensual disclosure of

a private image (R.S. 14:283.2), and peeping tom activities (R.S. 14:284).

d. Sexual assault (R.S. 14:41, 42 through 43.5, 89, 89.1, and 106).

    i. Sexual Battery (14:43.1)

    ii. Misdemeanor sexual battery (14:43.1.1)

    iii. Second degree sexual battery (14:43.2)

    iv. Oral sexual battery (14:43.3)

    v. Female genital mutilation (14:43.4)

    vi. Intentional exposure to HIV (14:43.5)

    vii. Crime against nature (14:89)

    viii. Aggravated Crime against nature (14:89.1)

    ix. Obscenity (14:106)

e. Sexual exploitation means an act attempted or committed by a person for sexual gratification, financial gain, or other advancement through the abuse of another person's sexuality including prostituting another person (R.S. 14:46.2 and 82 through 86).

    i. Human trafficking (14:46.2)

    ii. Prostitution (14:82)

    iii. Prostitution of person under 18 (14:82.1)

    iv. Purchase of commercial sexual activity (14:82.2)

    v. Solicitation for prostitutes (14:83)

    vi. Inciting prostitution (14:83.1)

    vii. Promoting prostitution (14:83.2)

    viii. Prostitution by massage (14:83.3)

    ix. Sexual massages (14:83.4)

    x. Pandering (sexual) (14:84)

    xi. Letting premises for prostitution (14:85)

    xii. Enticing persons into prostitution (14:86)

f. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal, physical, or inappropriate conduct of a sexual nature when the conduct explicitly or implicitly affects an individual's employment or education, unreasonably interferes with an individual's work or educational performance, or creates an intimidating, hostile, or offensive work or educational environment and has no legitimate relationship to the subject matter of a course or academic research.

g. Stalking (R.S. 14:40.2) and cyberstalking (R.S. 14:40.3).

h. Unlawful communications (R.S. 14:285).

i. Unwelcome sexual or sex- or gender-based conduct that is objectively offensive and has a discriminatory intent.

**Power-Based Violence Grievance Process**: "Process B: A method of formal resolution designated by the University to address conduct that falls outside the scope of Title IX jurisdiction but meets the definition of power-based violence herein.

**Preponderance of the Evidence:** The standard of evidence used for determination of responsibility of policy violations; whether it is more likely than not that the Respondent violated the policy as alleged.

**Process A:** means the Title IX Grievance Process defined above and detailed in **Process A**.

**Process B:** means the Power-Based Violence Grievance Process used for resolving reports/complaints of power-based violence that are outside of the scope of Title IX jurisdiction as detailed in the **Process B**.

**Remedies:** Post-finding actions directed to the Complainant and/or the community as mechanisms to address safety, prevent recurrence, and restore access to the University's educational program.

**Resolution:** The result of an informal or Formal Grievance Process.

**Respondent:** An individual who has been accused in a Report or Formal Complaint of conduct that could constitute power-based violence prohibited under this Policy (or, under the Title IX Grievance process, an individual alleged to be the perpetrator of conduct that could constitute Title IX Sexual Harassment).

**Responsible Employee:** An employee who receives a direct statement regarding or witnesses an incident of power-based violence or Title IX Sexual Harassment. Responsible Employees do not include an employee designated as a Confidential Advisor pursuant to R.S. 17:3399.15(B) or an employee who has privileged communications with a student as provided by law.

**Retaliation:** Acts or attempted acts for the purpose of interfering with any report, investigation, or proceeding under this Policy, or as retribution or revenge against anyone who has reported power-based violence or who has participated (or is expected to participate) in any manner in an investigation, or proceeding under this policy. Prohibited retaliatory acts include, but are not limited to, intimidation, threats, coercion, or discrimination. Title IX prohibits Retaliation. For purposes of this Policy, an attempt requires a substantial step towards committing a violation.

**Sanction:** A consequence imposed by the University on a Respondent who is found to have violated this policy.

**Standards of Conduct:** The University's Standards of Conduct for students, faculty and staff.

**System:** A Louisiana public postsecondary management board.

**System President:** The president of a public postsecondary education system.

**Supportive Measures:** Non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the parties before or after the filing of a Formal Complaint or where no Formal Complaint has been filed. Such measures are designed to restore or preserve equal access to the education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or deter sexual harassment.

Supportive Measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

**Title IX Coordinator:** The individual designated by a public postsecondary education University as the official for coordinating the University's efforts to comply with and carry out its responsibilities under Title IX of the Education Amendments of 1972 and Act 472 the 2021 Regular Legislative Session of the Louisiana Legislature.

**Title IX Grievance Process:** "Process A." A process for addressing and resolving a "Formal Complaint" that satisfies requirements set forth in 34 C.F.R. §106.30. See accompanying Title IX Grievance Process for key terms.

**Title IX Sexual Harassment:** For the purposes of determining whether power-based violence will be treated as a potential violation of Title IX in accordance with the Title IX Grievance Procedure, Title IX sexual harassment means conduct on the basis of sex that satisfies one or more of the following:

A. An employee of the University conditioning the provision of an aid, benefit, or service of the recipient on an individual's participation in unwelcome sexual conduct;

B. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity; or

C. "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)(A)(v), "dating violence" as defined in 34 U.S.C. 12291(a)(10), "domestic violence" as defined in 34 U.S.C. 12291(a)(8), or "stalking" as defined in 34 U.S.C. 12291(a)(30).

**Title IX Team:** Refers to the Title IX Coordinator, Deputy Title IX Coordinators, and any member of the Grievance Process Pool.

**University:** A public postsecondary education University, Louisiana Tech University.

**Victim**: An individual who, after all due investigation and/or adjudication, has been found to be the target of power-based violence or Title IX Sexual Harassment.

# Procedures

## 3.1 Applicable Scope

The comprehensive scope of this policy includes policies and procedures to address both power-based violence (which includes sexual misconduct) and Title IX Sexual Harassment. It is intended to inform and guide individuals who have been affected by power-based violence or Title IX Sexual Harassment, whether as a Complainant, a Respondent, or a witness and to provide fair and equitable procedures for all parties. It is applicable to conduct that occurs both on and off campus.

Power-based violence is a broader term that covers gender/sex-based misconduct beyond the Title IX Regulations' "Sexual Harassment" definition.

The accompanying Title IX Formal Grievance Process covers a narrower sub-set of conduct (i.e., Title IX Sexual Harassment) that must be addressed under a defined formal grievance process as required by the U.S. Department of Education under Title IX Regulations, effective August 14, 2020.  When power-based violence meets the criteria specified in the Title IX Regulations, it must be addressed under the Title IX Grievance Process, and not as power-based violence, to the extent the processes differ between the two.  (See 34 C.F.R. §106.44-.45.)

"Sexual Harassment" is defined in the Title IX Regulations (§106.30) as conduct on the basis of sex that satisfies one or more of the following:

1. The University's faculty or staff member/employee conditioning the provision of an aid, benefit, or service on an individual's participation in unwelcome sexual conduct;

2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to education programs or activities; or

3. Sexual assault, dating violence, domestic violence, or stalking. (See definitions)

The Title IX Grievance Process ("Process A") applies to the University's education program activity, which is defined by the Title IX Regulations to include locations, events, or circumstances in which the University exercises substantial control over both the Respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by the University.  Under the Title IX Regulations, the Title IX Grievance Process does not apply to any education program or activity that does not occur in the United States (§106.44(a)).

However, the Power-Based Violence Grievance Process ("Process B") applies to power-based violence that does not meet the definition of Title IX Sexual Harassment.

When the University receives a report power-based violence ("Report"), the Title IX Coordinator will determine whether the alleged conduct falls within the scope of power-based violence or Title IX Sexual Harassment.  If the alleged power-based violence satisfied the definition of Title IX Sexual Harassment, the Title IX Coordinator shall ensure investigation and adjudication in accordance with Process A.  However, if the alleged conduct meets the definition of power-based violence but does not satisfy the definition of Title IX Sexual Harassment, the Title IX Coordinator shall follow Process B.

See **Process A** and **Process B**.

Violations of this policy may lead to disciplinary action to include suspension or removal.  Every member of the University community is put on notice that a violation of this policy may subject an individual not only to institutional discipline but also to personal liability.

Moreover, this Policy applies to on-campus and off-campus power-based violence, including online or electronic conduct.

## 3.2 Title IX Coordinator

The Title IX Coordinator has the primary responsibility for coordinating the University's efforts related to the intake, investigation, resolution, and implementation of supportive measures to stop, remediate, and prevent power-based violence and Title IX Sexual Harassment, which includes sex discrimination, sexual misconduct, sexual harassment, and retaliation prohibited under this policy. The Title IX Coordinator is responsible for implementing and monitoring compliance with Title IX, VAWA and this Policy on behalf of the University. This includes coordination of training, education, communications, and administration of grievance procedures for the handling of suspected or alleged violations of this Policy.

The Title IX Coordinator is also responsible for maintaining documentation of all reports of incidents of sex discrimination, sexual misconduct and interpersonal violence, and for establishing a protocol for recordkeeping of such incidents.

## 3.3 Independence and Conflict-of-Interest

The Title IX Coordinator manages the Title IX Team and acts with independence and authority free from bias and conflicts of interest. The Title IX Coordinator oversees all resolutions under this policy and these procedures. The Members of the Title IX Team are trained to ensure they are not biased for or against any party in a specific case, or for or against Complainants and/or Respondents.

To raise any concern involving bias or conflict of interest by the Title IX Coordinator contact the University President at 318-257-3785. Concerns of bias or a potential conflict of interest by any other Title IX Team member should be raised with the Title IX Coordinator.

Reports of power-based violence or Title IX Sexual Harassment committed by the Title IX Coordinator should be reported to the University President at 318-257-3785. Reports of misconduct or discrimination committed by any other Title IX Team member should be reported to the Title IX Coordinator.

## 3.4 Confidential Advisors

Individuals wishing to obtain confidential assistance without making a report to the University may do so by speaking with a Confidential Advisor. Confidential Advisors (Counselors in the Counseling/Career Center) are trained and available to discuss incidents of sexual misconduct or interpersonal violence in confidence, and generally only report to the University that an incident occurred without revealing any personally identifying information. Disclosures to these trained confidential advisors **will not** trigger the University's investigation into an incident. In addition to providing confidential counseling, confidential advisors also provide emergency and ongoing support to individuals who have experienced sexual misconduct or interpersonal violence.

Prior to designating a person as a Confidential Advisor, the person shall complete a training program that includes information on power-based violence (including "sexual harassment" under Title IX, as well as other types of power-based violence falling outside Title IX's jurisdictional requirements), trauma-informed interactions, Title IX requirements, state law on power-based violence, and resources for victims. The Confidential Advisor shall also complete annual training relative to power-based violence and Title IX. The initial and annual training shall be developed by the Attorney General in collaboration with BOR and shall be provided through online materials.

The University's website shall provide the contact information for obtaining a Confidential Advisor.

The Confidential Advisor to an alleged victim of power-based violence shall inform the alleged victim of the following:

1. The rights of the alleged victim under federal and state law and the policies of the University;

2. The alleged victim's reporting options, including the option to notify the University, the option to notify local law enforcement, and any other reporting options;

3. If reasonably known, the potential consequences of those reporting options;

4. The process of investigation and disciplinary proceedings of the University;

5. The process of investigation and adjudication of the criminal justice system;

6. The limited jurisdiction, scope, and available sanctions of the University student disciplinary proceeding, and that it should not be considered a substitute for the criminal justice process;

7. Potential reasonable accommodations that the University may provide to an alleged victim; and

8. The name and location of the nearest medical facility where an alleged victim may have a rape kit administered by an individual trained in sexual assault forensic medical examination and evidence collection, and information on transportation options and available reimbursement for a visit to such a facility.

The Confidential Advisor may, as appropriate, serve as a liaison between an alleged victim and the University or local law enforcement, when directed to do so in writing by an alleged victim who has been fully and accurately informed about what procedures shall occur if information is shared, and assist an alleged victim in contacting and reporting to a Responsible Employee or local law enforcement.

The Confidential Advisor shall:

1. be authorized by the University to liaise with appropriate staff at the University to arrange reasonable accommodations through the University to allow the alleged victim to change living arrangements or class schedules, obtain accessibility services, or arrange other accommodations;

2. Be authorized to accompany the alleged victim, when requested to do so by the alleged victim, to interviews and other proceedings of a campus investigation and University disciplinary proceedings;

3. Advise the alleged victim of, and provide written information regarding, both the alleged victim's rights and the University's responsibilities regarding orders of protection, no-contact orders, restraining orders, or similar lawful orders issued by a court of competent jurisdiction or by the University;

4. Not be obligated to report crimes to the University or law enforcement in a way that identifies an alleged victim or an accused individual, unless otherwise required to do so by law; and

5. To the extent authorized under law, provide confidential services to Any requests for accommodations made by a Confidential Advisor, as provided in this Section, shall not trigger an investigation by the University.

The University shall appoint an adequate number of Confidential Advisors as determined by the Board of Regents. Confidential Advisors are located at **Counseling Services**.

Counseling Services

Keeny Hall 310

318.257.2488

In the immediate aftermath of sexual misconduct such as sexual assault or rape, medical care and the collection of physical evidence are very important. The individual should not shower, bathe, or change clothes and may be taken to the hospital emergency room or Student Health Services.

Employees, students and non-students may also access assistance 24 hours a day, 7 days a week from the following:

**University Police Department:**

1104 Hergot Avenue

318.257.4018

Campus Police will notify a Confidential Advisor/Counselor on your behalf.

## 4.0 Reporting Power-Based Violence (including Title IX Sexual Harassment)

Anyone can report an incident of power-based violence to the University.  A "Reporter" can be any individual who reports to the University that they are a victim or survivor of power-based violence or that they have been affected by power-based violence (sometimes referred to as a "First-Party Reporter") or that they have knowledge of power-based violence happening to or affecting someone else (sometimes referred to as a "Third-Party Reporter").

The University strongly encourages all individuals to report incidents of power-based violence even if there is no intent to pursue a Formal Complaint.

Reports may be submitted in person, by phone, by mail, by email, or online through **Maxient**, and should be submitted to the Title IX Coordinator.  Anonymous online reporting is available through Maxient.

Mortissa D. Harvey

Director of Title IX Compliance

President's Office, Wyly Tower 1536

Phone: 318.257.5911

Email: **mharvey@latech.edu**

For any Report made, the alleged victim shall have a right to obtain a copy of any Report made that pertains to the alleged victim.

After making a Report, an individual may choose to file or request a Formal Complaint and pursue resolution under Process A or Process B as appropriate or, if applicable, an Informal Resolution involving the Respondent. The reporting individual may choose to be involved or not be involved in the University's investigation and any related proceedings or may choose to end involvement in the process.

A Report (verbal or written) will become a "Formal Complaint" if a First-Party Reporter files a written and signed document prepared by the Title IX Office with the Title IX Coordinator describing an incident of power-based violence and indicating that they want the University to take further steps, such as conducting a full investigation and possibly holding an adjudication to resolve the alleged issue. Following a Report and if the individual wishes to pursue a Formal Complaint, the reporting individual should meet with the Title IX Coordinator to provide a verbal description of the power-based violence which the Title IX Office will use to draft a written document that the individual will review, verify, and sign to constitute a Formal Complaint. The University can also convert a Report to a Formal Complaint if the University determines that, in order to meet its Title IX obligations to provide a safe and nondiscriminatory environment for the broader University community, it must take further steps to address and resolve the matter and/or, for Title IX Sexual Harassment, where the Report itself satisfies the Title IX requirements of a Formal Complaint.

## 5.0 Supportive Measures

Supportive Measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the parties to restore or preserve access to the University's education program, including measures designed to protect the safety of all parties or the University's educational environment, and/or deter power-based violence, including sexual harassment, sex discrimination, and/or retaliation.

The Title IX Coordinator promptly makes Supportive Measures available to the parties upon receiving a Report.

The University will maintain the privacy of the Supportive Measures, provided that privacy does not impair the University's ability to provide the Supportive Measures. The University will act to ensure a minimal academic impact on the parties to the extent possible in providing Supportive Measures. The University will implement measures in a way that does not unreasonably burden the other party. These actions may include, but are not limited to:

- Referral to counseling, medical, and/or other healthcare services

- Referral to community-based service providers

- Student financial aid counseling

- Education to the community or community subgroup(s)

- Altering campus housing assignment(s)

- Altering work arrangements for employees or student-employees

- Safety planning

- Providing campus safety escorts

- Providing transportation accommodations

- Implementing contact limitations (no contact orders) between the parties

- Academic support, extensions of deadlines, or other course/program-related adjustments

- Trespass or Be-On-the-Lookout (BOLO) order

- Class schedule modifications, withdrawals, or leaves of absence

- Increased security and monitoring of certain areas of the campus

- Any other actions deemed appropriate by the Title IX Coordinator

Violations of no contact orders will be referred to appropriate student or employee conduct processes for enforcement. An employee's or student's failure to comply with the terms of Supportive-Measure directives is a separate violation of the University Code of Conduct.

## 6.0 Statement of Parties' Rights

The rights of the parties involved in a power-based violence or Title IX Sexual Harassment complaint include but are not limited to the attached Statement of Parties' Rights. To the extent anything in the **Statement of Parties' Rights** conflicts with law or University or Board of Regent policy, the applicable law or policy will control.

## 7.0 Emergency Removal

The University can act to remove a Respondent entirely or partially from its education program or activities on an emergency basis when an individualized safety and risk analysis has determined that an immediate threat to the physical health or safety of any student or other individual justifies removal. This risk analysis is performed by the Title IX Coordinator in conjunction with the Tech Care.

In all cases in which an emergency removal is imposed, the student or employee will be given notice of the action and the option to request to meet with the Title IX Coordinator prior to such action/removal being imposed, or as soon thereafter as reasonably possible, to show cause why the action/removal should not be implemented.

This meeting is not a hearing on the merits of the allegation(s), but rather is an administrative process intended to determine solely whether the emergency removal is appropriate. When this meeting is not requested within five (5) business days, objections to the emergency removal will be deemed waived. A Complainant and their Advisor may be permitted to participate in this meeting if the Title IX Coordinator determines it is equitable to do so. This section also applies to any restrictions that a coach or athletic administrator may place on a student-athlete arising from allegations related to Title IX. There is no appeal process for emergency removal decisions.

A Respondent may be accompanied by an Advisor of their choice when meeting with the Title IX Coordinator. The Respondent will be given access to a written summary of the basis for the emergency removal prior to the meeting to allow for adequate preparation.

The Title IX Coordinator has sole discretion under this policy to implement or state an emergency removal and to determine the conditions and duration. Violation of an emergency removal under this policy will be grounds for discipline, which may include expulsion or termination.

The University will implement the least restrictive emergency actions possible in light of the circumstances and safety concerns. As determined by the Title IX Coordinator, these actions could include, but are not limited to: removing a student from a residence hall, temporarily re-assigning an employee, restricting a student's or employee's access to or use of facilities or equipment, allowing a student to withdraw or take grades of incomplete without financial penalty, authorizing an administrative leave, and suspending a student's participation in extracurricular activities, student employment, student organizational leadership, or intercollegiate/intramural athletics.

At the discretion of the Title IX Coordinator, alternative coursework options may be pursued to ensure as minimal an academic impact as possible on the parties.

## 8.0 Promptness

All allegations are acted upon promptly by University once it has received a Report. Formal Complaints can take 60-90 business days to resolve, typically. There are always exceptions and extenuating circumstances that can cause a resolution to take longer, but the University will avoid all undue delays within its control.

Any time the general timeframes for resolution outlined in University procedures will be delayed, the University will provide written notice to the parties of the delay, the cause of the delay, and an estimate of the anticipated additional time that will be needed as a result of the delay.

## 9.0 Privacy

The University will not share the identity of any individual who has made a Report or Formal Complaint of power-based violence or Title IX Sexual Harassment ; any Complainant, any individual who has been reported to be the perpetrator of sex discrimination, any Respondent, or any witness, except as permitted by the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. 1232g; FERPA regulations, 34 CFR part 99; or as required by law; or to

carry out the purposes of 34 CFR Part 106, including the conducting of any investigation, hearing, or grievance proceeding arising under these policies and procedures.

Only a small group of officials who need to know will typically be told about the Report or Formal Complaint. The group may include but is not limited to: Division of Student Affairs, University Police, Human Resources, Residential Life and the Medical Assistance Committee. Information will be shared as necessary with Investigators, Hearing Panel members/Decision-makers, witnesses, and the parties. The circle of people with this knowledge will be kept as tight as possible to preserve the parties' rights and privacy.

## 10.1 Mandatory Reporting for Employees

An employee who receives a direct statement regarding or witnesses an incident of power-based violence committed by or against a student, employee, or invitee to campus is a Responsible Employee (unless they are designated specifically as a Confidential Advisor). A Responsible Employee shall promptly report the incident to the University's Title IX Coordinator. (See definition of Responsible Employee.)

A Responsible Employee must report the following to the Title IX Coordinator:

1. The identity of the alleged victim;
2. The identity of the alleged perpetrator;
3. The type of power-based violence or retaliation alleged to have been committed;
4. Any other information about witnesses, location, date, and time that the incident occurred; and
5. Any other relevant information.

However, according to state law a Responsible Employee is not required to make a report if information involving power-based violence was received in the following circumstances:

1. During a public forum or awareness event in which an individual discloses an incident of power-based violence as part of educating others;
2. Disclosure made in the course of academic work consistent with the assignment; or
3. Disclosure made indirectly, such as in the course of overhearing a conversation.

If an individual chooses to make an initial report to an employee other than the Title IX Coordinator, that employee must refer the information to the Title IX Coordinator because the Title IX Office bears responsibility for responding to reports of power-based violence. Once the information is received by the Title IX Coordinator, it should constitute a Report.

If an employee believes an individual may intend to share any information regarding an instance of power-based violence, the employee should seek to confirm that the reporting party understands the employee's obligations as a mandatory reporter. If the reporting party would prefer to speak with a confidential resource, the employee should direct the reporting party to a confidential resource. **See Confidential Advisors at 3.4.**

## 10.2 Employee's Failure To Report or False Reporting

A responsible employee who is determined by the university's disciplinary procedures to have knowingly failed to make a report or, with the intent to harm or deceive, made a report that is knowingly false **shall be terminated**.

## 10.3 Student's False Reporting

Any student who knowingly and in bad faith makes a false accusation of power-based violence or retaliation of any form will be subject to an investigation for a potential violation of this policy and may be subject to disciplinary action.

## 10.4 Confidential and Anonymous Reporting

In accordance with state law, unless waived in writing by the alleged victim, the identity of an alleged victim of an incident reported under R.S. 17:3399.13 is confidential and not subject to disclosure except to:

1. A person employed by or under contract with the University to which the report is made, if the disclosure is necessary to conduct the investigation of the report or any related hearings;
2. A law enforcement officer as necessary to conduct a criminal investigation of the report;
3. A person alleged to have perpetrated the incident, to the extent required by law; or
4. A potential witness to the incident as necessary to conduct an investigation of the report.

**Note:** Consistent with FERPA's prohibition on re-disclosure of confidential information, any person who receives another person's confidential information solely as a result of participation in any investigation or proceeding under this Policy is prohibited from using or disclosing such confidential information outside of such forums without express consent or for any improper purpose. This provision only applies to other people's confidential information, as a party is never restricted from discussing their own experience. This provision does not apply to any information learned outside of an investigation or proceeding under this Policy.

An alleged victim shall be advised of the right to seek a Confidential Advisor. **See additional information pertaining to Confidential Advisors in 3.4**.

## 10.5 Administrative Reporting

The University's Title IX Coordinator and President are required to submit summarized reports on power-based violence and to publish those reports on the University's website.

Not later than October Tenth (10) and April Tenth (10) of each year, the Title IX Coordinator of the University shall submit to the President a written report on the reports received in accordance with the information required in the **BOR Policy Reporting Appendix**.

The Title IX Coordinator of the University shall immediately report to the President an incident reported to the Title IX Coordinator if the Title IX Coordinator has cause to believe as a result of the incident that the safety of any person is in imminent danger.

The President of the University shall submit a report to the University of Louisiana System Board of Supervisors and the System President within fourteen (14) days of receiving the report from the Title IX Coordinator in accordance with the information required in the **BOR Policy Reporting Appendix**.  The report shall be posted on the University's website.

## 10.6 Time Limits on Reporting

There is no time limitation on providing a Report to the Title IX Coordinator. However, if the Respondent is no longer subject to the University's jurisdiction and/or significant time has passed, the ability to investigate, respond, and provide remedies may be more limited or impossible.

Acting on Reports significantly impacted by the passage of time (including, but not limited to, the rescission or revision of policy) is at the discretion of the Title IX Coordinator, who may document allegations for future reference, offer Supportive Measures and/or remedies, and/or engage in informal or formal action, as appropriate.

## 11.0 Amnesty Policy

An individual acting in good faith who reports or assists in the investigation of a report of an incident of power-based violence, or who testifies or otherwise participates in a disciplinary process or judicial proceeding arising from a report of such an incident may not be subjected to any disciplinary action by the University in which the individual is enrolled or employed for any violation of the University's code of conduct reasonably related to the incident for which suspension or expulsion from the University is not a possible punishment.  This shall include but not be limited to nonviolent student conduct violations such as underage drinking, that is revealed in the course of making such a report.

Amnesty shall not apply to an individual who perpetrates or assists in the perpetration of power-based violence.

Individuals who participate in the reporting/investigation process, whether as the complainant or as a witness, are expected to provide truthful information in accordance with the University's Standards of Conduct. It is the policy of the University to provide amnesty for any student who reports in good faith, sexual violence. The University shall not sanction the student for a nonviolent student conduct violation, such as underage drinking, that is revealed in the course of such a report.

## 12.0 Romantic Relationships in Power Differentials

See **Policy 1450 – Consensual Relationships**.

# 13.0 Retaliation

Retaliation is expressly prohibited under this policy. Retaliation includes, but is not limited to, intimidation, harassment, threats, or other adverse action or speech against the person who reported the misconduct, the parties, and their witnesses.

The University expressly prohibits retaliation against anyone who: 1) in good faith reports what they believe is power-based violence, 2) cooperates with an investigation or proceeding under this policy, or 3) opposes conduct that they believe to violate this policy. However, an individual who reports an incident of power-based violence or participates in an investigation or proceeding and has perpetrated or assisted in the perpetration of committing the power-based violence reported, is still subjected to an investigation for a potential violation of this policy and may be subject to disciplinary action.

The University will not only take steps to prevent retaliation but will also take strong corrective action if it occurs. Anyone who believes they have been retaliated against should immediately report it to the Title IX Coordinator, who will treat it as a Report. Any individual found to have retaliated against another individual will be in violation of this policy and will be subject to disciplinary action. **Employees who are mandatory reporters (i.e., Responsible Employees) under this Policy are required to report retaliation.**

Anyone who knowingly makes a false accusation of unlawful discrimination, harassment, or retaliation of any form will be subject to an investigation for a potential violation of this policy and may be subject to disciplinary action, up to and potentially including termination for employees and expulsion for students.

# 14.0 Transcript Withholding, Notation, and Communication

The University has adopted **Policy 1437 – Power-Based Violence Transcript Withholding, Notation & Communication** in accordance with State law and Board of Regents and University of Louisiana System policy and will abide by Policy 1437 as applicable.

# 15.1 Initial Steps and Determination of Appropriate Procedures

After the University's Title IX Office has received a Report of alleged power-based violence, the Title IX Office should perform an initial assessment consistent with the information below prior to moving forward with an investigation (if one is required/requested) to determine whether the reported conduct meets the USDOE's jurisdictional and definitional requirements to be categorized as Title IX Sexual Harassment. If that initial assessment reveals that the alleged conduct **does** meet the definition of sexual harassment as contained within the USDOE's Title IX Regulations, the investigation should proceed pursuant to the Title IX Formal Grievance Process (Process A). If the alleged conduct **does not** meet the USDOE's definition of sexual harassment, the investigation should proceed pursuant to Process B.

# 15.2 Title IX Grievance Process (Process A)

Process A

# 15.3 Power-based violence grievance process (Process B)

Process B

# 15.4 Long-Term Remedies/Other Actions

Following the conclusion of the resolution process, and in addition to any sanctions implemented, the Title IX Coordinator may implement additional long-term remedies or actions with respect to the parties and/or the campus community that are intended to stop the power-based violence or Title IX Sexual Harassment, remedy the effects, and prevent reoccurrence.

# 16.0 Training

The University must ensure that Title IX Coordinators, investigators, decision-makers, confidential advisors, and Responsible Employees/Mandatory Reporters receive annual training within their respective roles in the Title IX process. Annual training should occur at new employee orientations and at the beginning of each calendar year. The University is required to maintain an updated list of employees trained.

# 17.0 Recordkeeping

The University will maintain for a period of at least seven years records of:

1. Each sexual harassment investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript required under federal regulation;

2. Any disciplinary sanctions imposed on the Respondent;

3. Any remedies provided to the Complainant designed to restore or preserve equal access to the University's education program or activity;

4. Any appeal and the result therefrom;

5. Any Informal Resolution and the result therefrom;

6. All materials used to train Title IX Coordinators, Investigators, Decision-makers, and any person who facilitates an Informal Resolution process. The University will make these training materials publicly available on the University's website.; and

7. Any actions, including any supportive measures, taken in response to a report or formal complaint of sexual harassment, including:

   a. The basis for all conclusions that the response was not deliberately indifferent;

b. Any measures designed to restore or preserve equal access to the University's education program or activity; and

c. If no supportive measures were provided to the Complainant, document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

The University will also maintain any and all records in accordance with state and federal laws.

## 18.0 Revision of this Policy and Procedures

This Policy and procedures supersede any previous policy(ies) addressing power-based violence and Title IX Sexual Harassment and will be reviewed and updated annually by the Title IX Coordinator. The University reserves the right to make changes to this document as necessary, and once those changes are posted online, they are in effect.

During the resolution process, the Title IX Coordinator may make minor modifications to procedures that do not materially jeopardize the fairness owed to any party, such as to accommodate summer schedules.

The Title IX Coordinator may also vary procedures materially with notice (on the University's website, with the appropriate effective date identified) upon determining that changes to law or regulation require policy or procedural alterations not reflected in this Policy and procedures.

If government laws or regulations change – or court decisions alter – the requirements in a way that impacts this document, this document will be construed to comply with the most recent government regulations or holdings.

## 19.0 Data Publication

Power-Based Violence Climate Survey – The University shall administer an anonymous and voluntary Power-Based Violence Climate Survey to its students once every three (3) years.  See **BOR Policy** for further details.

Campus Security Report – The University shall publish on its website a semiannual security report each April Tenth (10) and October Tenth (10). The report must include, at a minimum, all information relative to the Clery Act. See **BOR Policy** for further details.

Sex Crime Data Report – By February Fifteenth (15) of each year, the University's campus police department shall submit a report containing the information required in **Appendix C to the BOR Policy** to the System President, the University's President, and the University's Title IX Coordinator.  The University President shall ensure the report is posted on the University's website.

## 20.0 Memorandum of Understanding

The University shall enter into and maintain a written memorandum of understanding with applicable law enforcement agencies with criminal jurisdiction over the campus to clearly delineate responsibilities and share

information in accordance with applicable federal and state confidentiality laws. See **BOR Policy** for requirements of the memorandum of understanding.

## 21.0 Website Compliance

In addition to publishing the specified reports outlined in this policy, the University must list on its website:

1. Contact information for obtaining a Confidential Advisor;
2. Reporting options for alleged victims of power-based violence;
3. The process of investigation and disciplinary proceedings of the Institution;
4. The process of investigation and adjudication of the criminal justice system;
5. Potential reasonable accommodations that the University may provide to an alleged victim;
6. The telephone number and website address for a local, state, or national hotline providing information to victims of power-based violence, which shall be updated at least on an annual basis;
7. The name and location of the nearest medical facility where an individual may have a rape kit administered by an individual trained in sexual assault forensic medical examination and evidence collection, and information on transportation options and available reimbursement for a visit to such facility;
8. Each current memorandum of understanding between the Institution and local law enforcement and criminal justice agency located within the parish of the campus (12:15-13:5); and
9. Data publications as specified in this policy.