UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF LOUISIANA

PLAINTIFF(S):

| | | |
|---|---|---|
| M.D.,1 J.B., P.P, ) C/A No. and JANE DOES 1-100 | * * | |
| **Plaintiffs** | * * * | CIVIL ACTION NO. 6:22-cv-02089 |
| VERSUS | * | DISTRICT JUDGE: David C. Joseph |
| LOUISIANA BOARD OF REGENTS, LOUISIANA STATE UNIVERSITY BOARD OF SUPERVISORS, UNIVERSITY OF LOUISIANA SYSTEM BOARD OF SUPERVISORS, LAFAYETTE CONSOLIDATED GOVERNMENT, LAFAYETTE POLICE DEPARTMENT, JOSEPH SAVOIE, LES GUICE, FIELDON KING ALEXANDER, TOM GALLIGAN, WILLIAM F. TATE, THOMAS GLOVER, and JOHN/JANE DOE CHIEFS OF POLICE, individually and in their official capacities | * * * * * * * * * * * * * | MAGISTRATE JUDGE: David J. Ayo |
| **Defendants** | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF LOUISIANA BOARD OF REGENTS' MOTION TO DISMISS FTHIRD AMENDED COMPLAINT

MAY IT PLEASE THE COURT:

**Louisiana Board of Regents**, named defendant herein, submits the following memorandum in support of its *Motion to Dismiss Third Amended Complaint* pursuant to Fed.R.Civ.Proc. 12(b)(6), urging that plaintiffs have failed to state viable causes of action against

1

the Louisiana Board of Regents under Title IX, 20 U.S.C. § 1681(a); and that, on its face, the claims are time-barred.

As more fully explained below, Plaintiffs have failed to allege any action or failure on the part of the Board of Regents that could reasonably have led to the harm alleged. All alleged actions or failure to act that could have arguably prevented the alleged harm: (a) were not those of the Board of Regents; (b) were beyond the purview of the Board of Regents under even the most expansive reading of the law governing the Regents' powers and duties; and (c) occurred after the Board of Regents had carried out its duties under all applicable laws and regulations. Therefore, dismissal of the claims against the Board of Regents is warranted and appropriate under F.R.C.P. Rule 12(b)(6).

## I. FACTUAL BACKGROUND

The named (pseudonymously) Plaintiffs are three plaintiffs, MD, JB, and PP, along with Jane Does 1-100 who were allegedly victims of sexual assault and/or misconduct by Victor Silva, a former student at LSU and the University of Louisiana at Lafayette. Plaintiffs' allegations with regard to the Board of Regents are almost entirely contained within Paragraph 10 of their Third Amended Complaint (Doc. 101):

> "10. At all times relevant to this Complaint, Defendant Louisiana Board of Regents ("Defendant Board of Regents") has been a state agency, organized and existing pursuant to Louisiana law. Formed in 1974, the Board of Regents is responsible for coordinating all aspects university life for Louisiana public post-secondary education.[1] One of Defendant Board of Regents' fundamental roles is oversight, input and/or control over the annual budget of Louisiana's public post-secondary institutions. As such, Defendant Board of Regents had the ability to and did exercise control over the individual University Defendants as set forth more fully herein."

---

[1] As explained below, this is not an allegation of fact, but an erroneous legal conclusion patently inconsistent with all relevant constitutional and statutory provisions.

2

In addition, in paragraphs 35-54, Plaintiffs discuss the Board of Regents' actions in response to the Campus Accountability and Safety Act, (Act 172 of 2015), including implementing policies and encouraging the implementation of policies by the management boards.[2] Plaintiffs then go on to allege that an offender, Victor Silva, went "undetected."[3]

According to the Third Amended Complaint, Silva was first enrolled as a freshman at LSU and 2014 and allegedly was reported to Baton Rouge law enforcement for assault in his freshman year, and, after notification to LSU, transferred to the University of Louisiana at Lafayette ("Lafayette") where he was arrested by LSU police for assault in April, 2015. Plaintiffs note that an LSU email described Silva as a "frequent flier" and he was banned from the LSU campus, but allege that LSU failed to either provide information to the student body or Lafayette about Silva.

Plaintiffs further allege that following the April 15, 2015 arrest and assault allegations, Lafayette placed Silva on probation and ordered that he complete a behavior management program, but made no other monitoring requirements. It is further alleged that while Silva was not accused of any additional on-campus crimes from 2015 to 2018, he was reported for sexual offenses to the Lafayette Police Department on at least three occasions and that the Lafayette Police Department did not report these incidents to Lafayette. Silva transferred in 2018 to Louisiana Tech, according to the Second Amended Complaint with no reflection of probationary status with Lafayette or mentions from LSU. Plaintiffs go on to allege accusations of sexual assault at Tech, following which he transferred back to Lafayette in 2018.

---

[2] Two of these supervising boards, the Louisiana State Board of Supervisors and the University of Louisiana System Board of Supervisors are also named defendants in this case.
[3] Complaint, ¶ 55-93.

Against this backdrop, plaintiffs have alleged that in 2015 the Louisiana Legislature passed Act 172 expressly designed to prevent sexual abuse on college campuses by mandating communication, cross-training and coordination between Louisiana's public post-secondary institutions and law enforcement, and that pursuant to that legislation, the Louisiana Board of Regents, as well as other entities implemented policies which were inadequate to prevent the abuse complained of.

As far as particular plaintiffs go, plaintiff M.D. is alleged to have entered LSU in August of 2014 as a freshman, the same year Silva entered LSU. The allegations are that in the Spring of 2015, MD encountered Silva at an LSU fraternity event while Silva was no longer at LSU. MD was allegedly assaulted by Silva, reported the event and was subsequently expelled due to poor academic performance that Spring. She alleges she was expelled on pretext, and her dismissal was really retaliation for reporting Silva's assault.

Plaintiff PP, enrolled at University of Louisiana Lafayette in 2016 and first encountered Silva in chemistry classes in 2019. It is alleged that PP heard Silva was used as an example as a case study on serial rapists in psychology classes, and then at some point, Silva pursued PP, and by May of 2020 started dating PP and they even moved in together.

It is alleged that Silva subsequently assaulted Jane Roe, PP's friend, and specifically that in August or September 2020 Silva was intimate with PP when she was intoxicated. According to the Petition, the PP/Silva relationship ended in January of 2021. Nevertheless, in February 2021, PP compared notes with GB, and was subsequently contacted by USA Today as a result of the investigation concerning the Husch Blackwell report, in March of 2021.

Finally, JB was not a student at all. She was alleged to be working for a private employer in Arkansas in 2020 where Silva was also employed as a process engineer. After JB resigned

4

from her job in February 2021, it is alleged that on Valentine's Day 2021 Silva raped JB. They continued to date, it is alleged that if Act 172 of 2015 had been properly enforced, Silva would not have been allowed to get the job and thus have access to JB.

Through its original *Complaint*, plaintiff asserted three causes of action against Louisiana Board of Regents, <u>all</u> sounding under Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681 *et seq*. The *Third Amended Complaint* is no different, although it has expanded the causes of action under Title IX from three (3) to five (5), now asserting claims under Title IX sounding in of "heightened risk/deliberate indifference" and "heightened risk/institutional policy."

These are distinctions without a difference as it pertains to the instant matter.

## II. <u>LAW AND ARGUMENT</u>

### A. *RULE 12(B)(6) STANDARD*

To withstand a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[4] Put another way, a Court must be able to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[5] This plausibility standard requires more than pleading the sheer possibility that a defendant has acted unlawfully.[6] Thus, even if the allegations in the Complaint are true, if they cannot support a claim to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties in the Court."[7]

---

[4] *Doe v. Covington County School District*, 675 F.3d 849, 854 (5th Cir. 2012).
[5] *Id.*
[6] *Id.* at 678.
[7] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Further, the United States Supreme Court has noted that Rule 12(b)(6) requires dismissal of a lawsuit whenever a claim is based on an invalid legal theory:

> "Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,'... a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one." *Brooks v. Amgen, Inc.*, No. 18-00657, 2019 WL 507491, at *2 (M.D. La. Feb. 8, 2019), *quoting Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal citations omitted).

When a Complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."[8]

A plaintiff cannot simply submit an "unadorned, the defendant-unlawfully-harmed-me accusation,"[9] and while factual allegations may be accepted as true for purposes of a 12(b)(6) motion, legal conclusions are not. *Id.*

### B. Plaintiffs Fail to State a Cause of Action Against the Board of Regents Under Title IX

Preliminarily, it should be noted that plaintiffs have attempted to assert Title IX claims under Counts I, II, III, IV and V of the Third Amended Complaint for deliberate indifference, hostile environment and otherwise, against both the Board of Regents and the respective LSU and University of Louisiana Board of Supervisors.

However, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activities **receiving Federal financial**

---

[8] *Brooks*, 2019 WL 507491, at *2 (quoting, *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007), quoting, *Twombly*, 550 U.S. at 558).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

assistance."[10] "**Title IX reaches institutions and programs that receive federal funds**, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals ..."[11] Furthermore, "[t]he majority of courts considering this issue also has concluded that only a grant recipient can violate Title IX.[12]

***In the instant case, Plaintiffs have not, and cannot allege that the Louisiana Board of Regents is a federal aid recipient.*** Instead, as provided for in La.R.S. 17:3129, the Board of Regents receives proposed budgets from the various schools and makes recommendations based on them to the governor and the legislature.

The Board of Regents further submits that these claims are <u>inappropriately pled</u>, insofar as the Board of Regents has no supervisory role over any of the alleged actions of the entities or individuals involved, nor is it allowed one under the Louisiana State Constitution.[13] The Board of Regents was created by La. Const. Art. 8, §5, which delineates the powers of the Board of Regents and then specifies that all powers not specifically vested are **reserved** to the Board of Supervisors of the various schools:

> **(D) Powers.** ... The Board of Regents shall have the following powers, duties, and responsibilities relating to public institutions of postsecondary education:

---

[10] 20 U.S.C. § 1681(a) (1993) (Emphasis added). *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1010 (5th Cir.1996), *disapproved of by Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629; 119 S.Ct. 1661; 143 L.Ed.2d 839 (1999).

[11] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257; 129 S.Ct. 788, 796; 172 L.Ed.2d 582 (2009) (emphasis added, citations omitted).

[12] *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1018–19 (7th Cir.1997) (citations omitted).

[13] *See generally Louisiana Public Facilities Auth. v. All Tax Payers, Prop Owners, Citizens of State of La & Non-Residents owning property are subject to taxation therein*, 2003-2738 (La. App. 1 Cir. 12/23/03), 868 So. 2d 124, 135, *Writ denied* Sub Nom. *Louisiana Pub. Facilities Auth. v. All Taxpayers, Prop Owners, Citizens of the State of La.*, 2004-0213 (La. 3/11/04), 869 So. 2d 801; *see also Lewis v. Louisiana State University*, 21-198 (M.D. La. Dec. 2, 2021), 2021 W.L. 575 2239, *9.

(1) To revise or eliminate an existing degree program, department of instruction, division, or similar subdivision.

(2) To approve, disapprove, or modify a proposed degree program, department of instruction, division, or similar subdivision.

(3)(a) To study the need for and feasibility of creating a new institution of postsecondary education, …

(4) To formulate and make timely revision of a master plan for postsecondary education. ….

(5) To require that every postsecondary education board submit to it, at a time it specifies, an annual budget proposal for operational needs and for capital needs of each institution under the control of each board. …

**(E) Powers Not Vested.** *Powers of management over public institutions of postsecondary education not specifically vested by this Section in the Board of Regents are reserved* to the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, the Board of Supervisors of Southern University and Agricultural and Mechanical College, the Board of Trustees for State Colleges and Universities, the Board of Supervisors of Community and Technical Colleges, and any other such board created pursuant to this Article, as to the institutions under the control of each.[14]

Article VIII, § 6 and § 7 of the Louisiana Constitution create the Board of Trustees for the four higher education systems in the State, including the University of Louisiana System and the Board of Supervisors for the LSU System.[15] These constitutional provisions provide each Management Board with complete sovereignty over its own internal affairs, subject only to the specific powers vested by Article VIII, §5 in the Board of Regents – none of which include the authority to specify how allocated funds are to be distributed or used within respective universities. Most importantly, the powers of management over the day-to-day administration of the institutions, such as student affairs, investigations into Title IX complaints, disciplinary measures, all lie within the sole purview of the Management Boards and are entirely outside the realm of the Board of Regents' constitutional and

---

[14] La. Const. Ann. art. VIII, § 5 (Emphasis added)
[15] *Id.* at p. 3.

8

statutory powers. This is expressly stated in Article VIII, §5 (E) which vests in the Management Boards all powers not expressly vested in the Board of Regents. This same division of authority, vis a vis budgetary and fiscal matters, is established in Article VIII, §12:

> *Appropriations for the institutions of higher education shall be made to their managing boards.* The funds appropriated shall be administered by the managing boards and used solely as provided by law (emphasis added).

There is an obvious division of authority here. While the Board of Regents is designed to make discretionary, statewide policy decisions, the Management Boards are to manage the ministerial, day-to-day operational decisions for their respective member institutions, which includes student affairs, Title IX complaint investigations and resolutions, and disciplinary measures.[16] Neither can interfere with the other's duties unless the law explicitly allows. Thus, subsequent to the legislature's funding appropriation, any internal allocation of funds among the various programs and departments within a university is a matter properly reserved for its Management Board in accordance with the Legislative Appropriations Act and Budgetary Constraints, Art. VIII, Section 12.[17] Similarly, while the Board of Regents is authorized to develop sexual misconduct policies (which it did), the duty to implement such policies is squarely placed in each institution subject to the oversight of its Management Board.

In sum, the <u>only</u> involvement of the Board of Regents, even according to the Plaintiffs' own narrative, is to develop a funding formula and to promulgate sexual misconduct policies for all public postsecondary institutions in the state. That policy-making authority of the Board of Regents -- a coordinating board, not a management board -- ends

---

[16] *Id.* at ¶ 14.

[17] *See also Grave v. Bd. of Trustees for State Colleges & Universities*, 442 So.2d 598, 601 (La. App.1 Cir. 1983).

at a level far removed from the allegations of actions and failures of individuals embedded deep within the various levels of administration of the institutions in this case.[18]

Bluntly speaking, plaintiffs' statements in their Complaint that [all] of "[T]he University Defendants "were required to investigate allegations of sexual assault, abuse, and sexual harassment,"[19] are simply not true under Title IX or any other provision of the law. The Board of Regents has limited powers and authorities and cannot be held responsible for its failure to investigate, enforce Institutional policies or take actions beyond the scope of those authorities.[20] Under its Constitutional charter, as well as its enabling statute (La.R.S. 17:3121 *et seq.*) the Board of Regents simply has no authority to "investigate", that power, along with other management functions being explicitly reserved to the respective supervising boards, two of which are named defendants herein. Succinctly, speaking, Plaintiff has not pled a cause of action under Title IX against the Louisiana Board of Regents.

Plaintiffs' reconstituted *Deliberate Indifference, Hostile Environment and Heightened Risk* claims under Title IX fare no better. At best, Plaintiffs have alleged the Board of Regents' efforts to further Louisiana Education through its authorized powers failed to prevent the "Supervising Boards," in this case, the Louisiana State University Board of Supervisors and the

---

[18] Act No. 171 of 2015 did not change this allocation of responsibilities between the Board of Regents and the individual Institutions. Instead, that Act dictated that the Board of Regents: coordinate, report on, and publish a survey **to be administered by the Institutions** (La.R.S. 17:3351 H(1)(c)); require in its Uniform Policy on Sexual Assault **that the Institutions** and law enforcement agencies enter into a Memorandum of Understanding (La.R.S. 17:339.14); establish uniform policies, Best Practices and training materials; determine the number of "confidential advisors for each Institution to appoint; develop training programs for grievance procedures; and the Uniform Policy on Sexual Assault should require the Institutions to communicate with each other and withhold transcripts of students seeking to transfer pending disciplinary actions. (La.R.S. 17:339.15). Nowhere in this Act is there any duty or power imposed on the Board of Regents to do any **investigation or enforcement** with respect to students. .

[19] Complaint, ¶ 217.

[20] Additionally, it should be noted that plaintiff JB was not at any time a student at any of the various universities, and, under settled law, has no authority to bring a Title IX claim. *See generally Lewis v. Louisiana State University*, 21-198 (M.D. La. Dec. 2, 2021), 2021 WL5752239 at p. 18 ("a non-student plaintiff such as plaintiff in this case does not have a private right of action under Title IX to bring claims of sex-based employment discrimination including hostile environment claims").

University of Louisiana System Board of Supervisors from failing to violate Title IX. Merely referring to the University Defendants collectively throughout the Complaint fails to recognize the unique and separate roles, authorities and duties of each of the University Defendants, and given the Constitutional restrictions on the Louisiana Board of Regents, plaintiffs have failed to state a cause of action against it. See *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246 (2009) wherein the U.S. Supreme Court stated, *in dicta*, that Title IX reaches institutions and programs that receive federal funds, but has consistently been interpreted as not authorizing suit against school officials, teachers and other individuals. See, also *Tucker v. University of New Mexico Board of Regents*, 618 F. Supp 3d 1201 (USDC, N.M. 2022), wherein the United States District Court for the District of New Mexico dismissed a Title IX claim against the New Mexico Board of Regents based upon the absence of allegations that the Board of Regents received financial assistance as an institution, program or activity.

Put simply, the Board of Regents has no effective supervisory ability with regard to the individual circumstances regarding this case. The enumerated powers vested in the Board of Regents under Section 5(D) of Article VIII clearly identify the Board of Regents' duties of **statewide** planning, coordination and budget development. None of those powers extend, even indirectly, to the operation of any institution. Most significantly, all "powers of management over public institutions of postsecondary education" are reserved to the management boards. The management boards are the governing boards of the respective institutions placed under them, responsible for their member institutions' day-to-day operations.

Most importantly, the Board of Regents' role in fiscal matters pertains primarily to **state funds.** The Board of Regents develops a master plan, which includes a "formula for equitable distribution of [state] funds" to the institutions; the Board further submits its budget

11

**recommendations** and capital improvement **recommendations** to the legislature. *See* La. Const. Art. VIII, §5(D). Its budgetary powers are advisory to the legislature and the legislature has the ultimate authority over the actual appropriations of funds. The management boards have the authority over the expenditure of such funds appropriated to their institutions.

Given this constitutional framework of the legislature appropriating funds and management boards expending such funds for the operations of their institutions, Plaintiffs' claims of the Board of Regents' "control" over specific institutions are not just inflated, but patently baseless.

And again, as for federal funds, the Board of Regents is not a recipient of federal funds, and bears no responsibilities that would render it a proper defendant in the above-captioned Title IX case.

### C. *Plaintiffs Title IX Claims are Time-Barred, Even Assuming the Allegations are Sufficient to State a Cause of Action Against the Board of Regents*

The law is well settled that a Title IX claim such as those brought by the plaintiffs in the instant case, are subject to the applicable state law limitations, specifically, in this case, La.C.C.P.art. 3492, and under settled 5th Circuit precedent, "[a] claim accrues when the plaintiff knows or has reason to know of the **injury** giving rise to the claim."[21] As detailed above, the instant suit was filed on July 13th, 2022, and **all** of the named plaintiffs, based upon their factual allegations, were injured and/or allegedly suffered from sexual assault by Silva more than one year prior to this date. Plaintiff MD alleges she was expelled in 2015.[22] Plaintiff PP's relationship

---

[21] *Sewell v. Monroe City School Board*, 974 F. 3d 577, 583 (5th Cir. 2020) (emphasis added) (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.2d 754, 759 (5th Cir.2015).
[22] Complaint, ¶¶ 107.

with Silva allegedly ended "around January 2021,"[23] and Plaintiff JB has alleged she told a former co-worker about Silva allegedly having raped her "on April 12, 2021,"[24] clearly establishing that all of the plaintiffs knew or should have known of their alleged injuries well prior to July 13, 2022.

The plaintiffs' Third Amended Complaint, in paragraphs 194 through 198, makes an effort to establish the applicability of the doctrine of *contra non valentem agree non currit prescriptio* under Louisiana law, complaining that they were unable to pursue their claims because of the purported (but unarticulated) affirmative actions of the alleged defendants, claiming some sort of cover-up. Despite the absence of any actual facts to support this baseless allegation; the fact remains that all of the alleged sexual assaults in this case occurred well more than one year prior to July 2022, and plaintiff's citation to a May 25th, 2022 filing in *Jane Doe v. The Board of Supervisors of the University of Louisiana Systems*, 3:22-cv-00338 (M.D. La.) is irrelevant. Plaintiffs were aware of the actual claimed injury more than one year prior to the deadline for filing this suit, which law is settled.[25] Even assuming that Plaintiffs' allegations were sufficient to state a cause of action against the Board of Regents, these claims are prescribed as matter of Louisiana law, and barred by applicable federal law regarding Title IX.

Finally, defendants respectfully urge that this Court take notice of the decision of the Middle District of Louisiana, Chief District Judge, Shelly Dick, in *Jane Doe No. 1 vs. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, et al*, No. 3:21-cv-00564-SDD-SDJ (M.D. La. Nov. 3, 2022). In this case, the District Court, at pages 29-32 specifically rejected precisely the *contra non valentem* claims made by plaintiff in the instant

---

[23] Complaint, ¶ 141.
[24] Complaint, ¶ 175.
[25] See *Lewis*, 2021WL5752239, at pp. 21-25 (Addressing RICO claims, in addition to Title IX claims).

case. The simple fact of this matter is that plaintiffs were aware of their injuries well prior to one year prior to the filing of this lawsuit, and, notwithstanding the fact that they may not have been aware of various individual entities that may have failed to prevent their damages, there is simply no applicable affirmative or fraudulent concealment alleged by plaintiffs in the above-captioned case so as to justify the dispensation of Louisiana's prescriptive statutes under the doctrine of *contra non valentem agere nulla currit praescriptio*, or, under federal law, the doctrine of fraudulent concealment.

### III. Conclusion

**CONSIDERING THE FOREGOING**, Defendant, Louisiana Board of Regents respectfully urges that this Court grant its Motion to Dismiss for failure to state a claim upon which relief can be granted, dismissing this lawsuit against them, with prejudice.

Respectfully Submitted,

**LIZ MURRILL
ATTORNEY GENERAL**

BY: ___/s/Darren A. Patin___
        **DARREN A. PATIN, #23244**
Special Assistant Attorney General
3445 North Causeway Blvd., Ste. 800
Metairie, Louisiana 70002
Telephone: (504) 836-6500
Facsimile: (504) 836-6565
*Counsel for Defendant, Louisiana Board of Regents*

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this **10th** day of **May, 2024**, served a copy of the foregoing pleading on counsel for all parties to this proceeding either by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Darren A. Patin*
_____
**DARREN A. PATIN**