### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **M.D., et al.** | § | **CIVIL ACTION NO.  6:22-cv-002089** |
| | § | |
| **VERSUS** | § | |
| | § | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA BOARD OF REGENTS, et al.** | § | |
| | § | **MAGISTRATE JUDGE DAVID J. AYO** |

---

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FILED ON BEHALF OF LSU PRESIDENTS, DR. FIELDON KING ALEXANDER, THOMAS C. GALLIGAN, JR. AND WILLIAM F. TATE, IV

---

Defendants, Dr. Fieldon King Alexander ("Alexander"), Thomas C. Galligan, Jr., ("Galligan") and William F. Tate, IV ("Tate") (collectively "Defendants" or "the LSU Presidents"), respectfully submit this Memorandum in Support of their Motion to Dismiss the Proposed Third Amended Complaint ("Third Amended Complaint") filed on behalf of Plaintiffs, M.D., P.P., and J.B. (Doc. 101.)

May 10, 2024,

Respectfully submitted,
**LIZ MURRILL**
**ATTORNEY GENERAL**

/s/ Elizabeth Bailly Bloch
**CHRISTINE S. KEENAN** (No. 23293)
**ERIC R. MILLER** (No. 21359)
**ELIZABETH BAILLY BLOCH** (No. 37591)
**MARY KATHRYN GIMBER** (No. 38748)
Special Assistants Attorney General
THE KULLMAN FIRM, APLC
4605 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana  70809
Telephone:  (225)906-4250
Facsimile:  (225)906-4230
CSK@kullmanlaw.com
EM@kullmanlaw.com
EBB@kullmanlaw.com
MKG@kullmanlaw.com
**Counsel for Defendants, Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV**

EXHIBIT
B

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION  ............................................................................................................1

FACTUAL BACKGROUND.............................................................................................1

STANDARD FOR DISMISSAL........................................................................................5

LAW AND ARGUMENT ..................................................................................................7

      I.      PLAINTIFFS' §1983 CLAIMS AGAINST THE LSU
             PRESIDENTS SHOULD BE DISMISSED AS UNTIMELY. ..............................7

      II.     PLAINTIFFS CANNOT TOLL THE STATUTE OF LIMITATIONS. .................9

      III.    PLAINTIFFS' HAVE FAILED TO STATE A CLAIM UNDER §1983
             CLAIM AGAINST LSU PRESIDENTS. .............................................................19

      IV.    THE LSU PRESIDENTS ARE ENTITLED TO QUALIFIED
             IMMUNITY AS TO PLAINTIFFS' §1983 CLAIMS. ........................................23

      V.     PLAINTIFFS' §1983 CLAIMS ARE BARRED BY
             DISCRETIONARY IMMUNITY.  .......................................................................26

CONCLUSION..................................................................................................................28

CERTIFICATE OF SERVICE ..........................................................................................29

## <u>TABLE OF AUTHORITIES</u>

*Alexander v. Cockrell*,
294 F.3d 626, 629 (5th Cir. 2002) .............................................................................11

*Arocho v. Ohio University*,
No. 20-4239, 2022 WL 819734, at *3 (6th Cir. Mar. 18, 2022)....................................22

*Ashcroft v. Iqbal*,
556 U.S. 622 (2009) ....................................................................................................25

*Beckwith v. City of Houston*,
790 F. App'x 568, 570 (5th Cir. 2019)...........................................................15, 16, 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................6, 26

*Broussard v. Brown*,
599 F. App'x 188 (5th Cir. 2015)..................................................................................10

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979).....................................................................................................22

*Carey v. Piphus*,
435 U.S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)................................................24

*Carter v. Haygood*,
892 So.2d 1261 (La. 2005) ..........................................................................................10

*Chandler v. Phoenix Servs., L.L.C.*,
45 F.4th 807, 815 (5th Cir. 2022) .................................................................................12

*Collins v. City of Harker Heights, Tex.*,
503 U.S. 115, 120, 112 S. Ct. 1061, 117 L.Ed.2d 261 (1992)......................................20

*Doe v. Brown University*,
896 F.3d 127, 130 (1 Cir. 2018)....................................................................................22

*Doe 1 v. Baylor University*,
240 F. Supp. 3d 646 (W.D. Tex. 2017)...........................................................................7

*Dominique v. St. Tammany Par.*,
2019-0452 (La. App. 1 Cir. 9/16/20), 313 So. 3d 307, 318.....................................27, 28

*Dorsey v. Portfolio Equities, Inc.,*
540 F.3d 333 (5th Cir. 2007) ........................................................................6

*Dugas v. City of Ville Platte,*
6:17-CV-00337, 2017 WL 6521660 (W.D. La. Nov. 17, 2017)...........................7

*Eastin v. Entergy Corp.,*
2003-1030 (La. 2/6/04), 865 So.2d 49 ......................................................17, 18

*Frame v. City of Arlington,*
657 F.3d 215 (5th Cir. 2011) ........................................................................7

*Gregor v. Argenot Great Central Insurance Co.,*
2002-1138 (La. 5/20/03), 851 So. 2d 959 ......................................................25

*Harrison v. United States,*
708 F.2d 1023, (5th Cir. 1983) ......................................................................8

*Herrera v. First National Insurance Company of America,*
2015-1097 (La. App. 1 Cir. 6/3/16), 194 So. 3d 807......................................25

*In re Beef Indus. Antitrust Litig.,*
MDL Docket No. 248, 600 F.2d 1148, 1171 (5th Cir. 1979) .........................12

*In re Taxotere (Docetaxel) Prod. Liab. Litig.,*
995 F.3d 384, 389 (5th Cir. 2021) ...............................................................11

*Jane Doe v. Bd. of Supervisors of the Univ. of La. Sys.,*
No. 3:22-cv-00338 (M.D. La. Filed May 25, 2022) .......................................10

*Jones v. Alcoa, Inc.,*
339 F.3d 359 (5th Cir. 2003) ........................................................................6

*King-White v. Humble Independent School Dist.,*
804 F.3d 754 (5th Cir. 2015) ..................................................................7, 10

*Leffall v. Dallas Indep. Sch. Dist.,*
28 F.3d 521, 525 (5th Cir.1994......................................................................22

*Lewis v. United States,*
2019 WL 4738791, at *19 (M.D. La. Sept. 27, 2019)......................................6

*Marin v. Exxon Mobil Corp.,*
48 So.3d 234 (La. 2010) .............................................................................11

*Maze v. Garber,*

No. 6:19-CV-00953, 2020 WL 2892174, at *2 (W.D. La. June 1, 2020) ....................................20

*Meadours v. Ermel*
483 F.3d 417 (5th Cir. 2007) ...................................................................................................24

*Meyers v. Textron, Inc.,*
540 F. App'x 408 (5th Cir. 2013) ...............................................................................................6

*Minnis v. Board of Sup'res of Louisiana State University and*
*Agricultural and Meghanical College,*
972 F. Supp 2d 878 (M.D. La. 2018)........................................................................................24

*Morgan v. Swanson,*
659 F.3d 359 (5th Cir. 2011) ...................................................................................................24

*Nerren v. Livingston Police Dep't,*
86 F.3d 469 (5th Cir. 1996) .....................................................................................................24

*North Have Bd. Of Ed. v. Bell,*
456 U.S. 512, 520 (1982).........................................................................................................22

*Olabisiomotosho v. City of Houston,*
185 F.3d 521, 525 (5th Cir. 1999) ...........................................................................................20

*Oliver v. Scott,*
276 F.3d 736, 742 & n. 6 (5th Cir. 2002) ................................................................................25

*Owens v. Louisiana State Univ.,*
No. CV 21-242-WBV-SDJ, 2023 WL 2116030, at *1 (M.D. La. Feb. 17, 2023).......12, 13, 14, 15

*Papasan v. Allain,*
478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986).....................................................26

*Pearson v. Callahan,*
555 U.S. 223, 129 S. Ct. 808 (2009).........................................................................................23

*Piotrowski v. City of Houston,*
237 F.3d 567 (5th Cir. 2001) .....................................................................................................7

*Pitre v. Opelousas General Hosp.,*
530 So. 2d 1151, 1156 (La. 1988) ............................................................................................21

*Reynolds v. Titus Cnty.,*
No. 23-40700, 2024 WL 837040, at *3 (5th Cir. Feb. 28, 2024) .................................................10

*Scott v. Fiesta Auto Ctr. of San Antonio,*

273 F.3d 1095 (5th Cir. 2001) .......................................................................................22

*Southwestern Bell Telephone, LP v. City of Houston,*
529 F.3d 257, 260 (5th Cir. 2008) ...............................................................................20

*Spotts v. United States,*
613 F.3d 559 (5th Cir. 2010) ..........................................................................................7

*State of Tex. v. Allan Const. Co., Inc.,*
851 F.2d 1526, 1528 (5th Cir. 1988) ...........................................................................11

*Stovall v. Lena,*
2013 WL 5234113, at *3 (W.D. La. 2013) ...................................................................10

*Taylor v. Bailey Toll Mg. Co.,*
744 F.3d 944 (5h Cir. 2014) ...........................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 , 127 S. Ct. 2499 (2007) ...........................................................................6

*Thompkins v. Belt,*
828 F.2d 298, 303 (5th Cir. 1987) ...............................................................................25

*Washington v. City of Gulfport, Miss.,*
351 F. App'x 916 (5th Cir. 2009) ...................................................................................6

*Williams v. The Library,*
2012-0220 (La. App 1 Cir. 11/2/12), 111 So. 3d 356 ..................................................18

Statutes and Other Authorities

Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 ........................... Passim

42 U.S.C. § 1983 ............................................................................................................. Passim

42 U.S.C. 1988(b) ..............................................................................................................19

14th Amendment Substantive and Procedural Due Process ..........................................4, 12, 14, 18

La. R.S. 9:2798.1(B) ..........................................................................................................26

La. R.S 17:3215 ...................................................................................................................2

La. R.S. 17:3217 ..................................................................................................................2

La. R.S. 17:3351 ..................................................................................................................1

La. R.S. 17:3399.11
effective dates June 23, 2015-June 28, 2021 ...............................................................25

La. Civ. Code. art. 2315 ..............................................................................................21

Fed. R. Civ. P. 8(a)(2) ...................................................................................................6

Fed. R. Civ. P. 12(b)(2) .................................................................................................4

Fed. R. Civ. P. 12(b)(5) .................................................................................................4

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 4, 5, 6

Louisiana Civil Code Article 3492 ................................................................................7

*Frank L. Maraist and Thomas C. Galligan,*
Louisiana Tort Law § 10-4(b), 22 (1996) ...................................................................10

## INTRODUCTION

Plaintiffs, M.D. ("M.D."), P.P. ("P.P."), and J.B. ("J.B."), (collectively, "Plaintiffs"), filed suit against the Louisiana Board of Regents, University of Louisiana Board of Supervisors, Joseph Savoie, Les Guice, Lafayette Consolidated Government, Toby Aguillard, and John/Jane Doe Chiefs of Police, Louisiana State University Board of Supervisors ("LSU"),[1] Alexander, Galligan, and Tate, asserting claims pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and 42 U.S.C. § 1983. With respect to the LSU Presidents specifically, Plaintiffs assert only a single claim pursuant to §1983. (Doc. 101, ¶¶12-15, 279-301.) The LSU Presidents now move to dismiss Plaintiffs' suit against the LSU Presidents on the basis that it is untimely and because Plaintiffs fail to plead a plausible claim upon which relief can be granted.

## FACTUAL BACKGROUND

It is undisputed that Alexander was President of LSU from 2013 until late 2019/January 2020. (Doc. 101, ¶12).[2] Further it is undisputed that Galligan was Interim President of LSU from 2020-2021. *Id.* ¶33.[3] Also, it is undisputed that Tate became President of LSU in May 2021 and is the current President of LSU. *Id.* ¶14.[4] It is also undisputed that the Louisiana Legislature enacted passed the Campus Accountability and Safety Act, Act 172 ("Act 172") with an effective date of June 23, 2015. *Id.* 101, ¶33.[5] Lastly, LSU, Baton Rouge is part of the Louisiana State University

---

[1]     The correct entity with capacity to sue or be sued is the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College. See LSA-R.S. 17:3351.

[2]     *See also* https://www.lsu.edu/president/history.php (LSU, Office of the President, History, A Look Back, Past LSU Presidents)(last visited May 7, 2024.)

[3]     *Id.*

[4]     *See* https://www.lsu.edu/president/biography.php (LSU, Office of the President, Biography, William F. Tate, IV, LSU President)(last visited May 7, 2024.

[5]     *Se*e Act No. 172, Senate Bill 255, Louisiana Regular Session 2015; available at https://legis.la.gov/Legis/BillInfo.aspx?s=15RS&b=SB255&sbi=y (2015 Regular Session, SB255 by Senator J.P. Morrell.)(last visited May 7, 2024.); *See Yinerson, LLC v. Farmers Rice Milling Co., LLC*, No. CV 19-00407-BAJ-EWD, 2020 WL 5413776, at *1 (M.D. La. Sept. 9, 2020)(court may consider this referenced Act on a 12(b)(6) motion.

System which is a separate legislatively created entity from University of Louisiana System which controls and operates ULL and Louisiana Tech University ("Tech"). *See* La. R.S 17:3215; La. R.S. 17:3217. It is against this common knowledge that Plaintiffs bring their § 1983 claims against the LSU Presidents.

Plaintiffs allege that sometime during 2014, when Silva was a student at LSU, an initial victim reported to Baton Rouge law enforcement that Silva sexually assaulted her, and Baton Rouge law enforcement notified LSU of the report. (Doc. 101, ¶¶ 61-62). Following this initial victim's report and after a brief tenure at LSU, Silva transferred from LSU to ULL, and despite LSU's knowledge of the initial victim's complaint, Plaintiffs allege LSU did not investigate the allegations and should have notified ULL that such allegations existed. *Id.* ¶¶ 64-66. Silva was a student at ULL from late 2014 or early 2015 until sometime in 2018. *Id.* ¶¶ 66-67, 83. In 2018, Silva transferred from ULL to Louisiana Tech ("Tech"). *Id.* ¶ 83.  Less than two months after transferring to Tech, another student reported Silva to Tech's Title IX office accusing him of sexual assault. *Id.* ¶ 85. Within days of these allegations, Silva withdrew from Tech and returned to ULL as a student. *Id.* ¶¶ 86-87.

Plaintiff M.D. was a student at LSU during the 2014-2015 academic school year. *Id.* ¶¶ 94, 107. She claims that she was sexually assaulted by Silva, who she admits was no longer an LSU student, in the Spring 2015 semester. *Id.* ¶¶ 98, 101. M.D. claims that she reported the sexual assault to LSU's Title IX office, but that LSU declined to initiate an investigation or provide her with the mental health resources she requested. *Id.* ¶¶ 104-105. M.D. further alleges that her reporting Silva to the Title IX office prompted a referral to LSU Police Department ("LSU PD"), but that the Title IX office otherwise told her to resolve the matter herself. *Id.* ¶ 106. LSU PD arrested Silva on charges of sexual assault in April 2015 and booked him at the East Baton Rouge

Parish Jail. *Id.* ¶ 67-68. M.D. also alleges that Silva was banned from LSU's campus following her report of the sexual assault and Silva's subsequent arrest. *Id.* ¶¶110. M.D. alleges that LSU's perceived lack of consideration of her safety led to a significant increase in her anxiety, her failing grades ultimately resulting in her expulsion from LSU, and ultimately to her diagnosis of PTSD. *Id.* ¶¶ 111-115. M.D. does not plead any specific dates regarding her report to the Title IX office, nor when her academic probation occurred. *Id.* ¶¶103-104.

Plaintiff P.P. was a student at ULL in 2019 when she first met Silva. *Id.* ¶¶ 117-118.[6] P.P. began dating Silva in May 2020 and moved in with him shortly afterwards. *Id.* ¶¶124-125. P.P. alleges she was aware of at least one other sexual assault case against Silva and had heard several rumors about Silva's history of sexual assault. *Id.* ¶ 119, 126. However, P.P. alleges that she discounted this information, in part, due to the lack of official action taken against Silva. *Id.* ¶ 120. P.P. ignored the "red flags" and other alarming behavior of Silva until August 2020, when her friend informed her that Silva had sexually assaulted her. *Id.* ¶¶ 127-132. After coming to terms with Silva's behavior and emotional abuse, P.P. ended her relationship with Silva in January 2021. *Id.* ¶¶ 141. In February 2021, P.P. and J.B. connected and shared their experiences related to Silva. *Id.* ¶ 142. The following month, USA Today reporter, Kenny Jacoby, contacted P.P. about his investigation into Silva and Louisiana's higher education system. *Id.* ¶¶ 143-144. Jacoby's article was published on May 26, 2021.[7] P.P. makes no allegations that she nor Silva were students of LSU during her relationship with Silva or had any contact with LSU whatsoever during their relationship. P.P. makes no allegations that LSU nor the LSU Presidents were aware of her

---

[6]     Again, Plaintiffs have improperly numbered their Third Amended Complaint. Paragraphs 135-157 found at Doc. 101, pp.19-23, discuss P.P.'s factual allegations while another set of Paragraphs similarly numbered 135-181 found at Doc. 101, pp.23-26, discuss J.B.'s allegations. Where the LSU Presidents have cited paragraphs for P.P. and J.B., they do so with the understanding that the Court will review the corresponding paragraphs for the appropriate plaintiff.

[7]     *See*     https://www.usatoday.com/in-depth/news/investigations/2021/05/26/louisiana-officials-skirted-law-meant-curb-campus-sex-crimes/7048845002/.

encounters with Silva.

Plaintiff J.B. met Silva in late 2020 when working as an environmental safety manager at a private employer in Searcy, Arkansas. Silva was working at the same company as a process engineer. *Id.* ¶¶ 135-136. There are no allegations that Silva nor J.B. were students of or affiliated with any university, much less LSU. In the months that followed, Silva persistently pursued a relationship with J.B. *Id.* ¶¶ 145. In February 2021, after starting a new job, J.B. finally agreed to go on a date with Silva on Valentine's Day in 2021. *Id.* ¶¶ 147-148. Silva showed up to J.B.'s apartment several hours late and with several bottles of wine. *Id.* ¶ 151. After having two glasses of wine over the course of several hours, the next thing J.B. recalls is Silva leading her to her bedroom and raping her. *Id.* ¶¶ 152-155. J.B. also alleges that the next morning, she told Silva he did not have her consent to have sex with her. *Id.* ¶ 156. None of the events alleged by J.B. are alleged to have occurred at LSU nor that LSU or LSU Presidents were aware of J.B.'s encounters with Silva. Sometime in February 2021, J.B. connected with P.P. *Id.* ¶ 143 (P.P. paragraph). Then in March 2021, after learning Silva's first name was Victor, J.B. then searched online for more information about Silva and found additional details of his history of sexual assault. *Id.* ¶¶ 168-170.

On July 13, 2022, more than seven years after M.D.'s alleged incident with Silva; more than one year after P.P. ended her relationship with Silva; more than one year after J.B.'s alleged incident with Silva; more than a year after the publication of the Husch Blackwell report; and more than one year after Kenny Jacoby's USA Today article, Plaintiffs filed this lawsuit. (Doc. 1.) After several motions to dismiss filed by each of the Defendants in this matter, Plaintiffs amended their Complaint essentially alleging the same facts. (Doc. 70.) The defendants then each separately moved to dismiss the lawsuit based their prior 12(b)(2), 12(b)(5), and 12(b)(6) motions. (Docs. 19,

41, 49, 83, and 97.) On March 27, 2024, the Court issued an order denying the defendants' motions without prejudice as moot and reserving the Defendants' rights to reassert their motions while allowing Plaintiffs until April 29, 2024 to file another amended complaint. (Doc. 100.) On April 26, 2024, Plaintiffs filed their Proposed Third Amended Complaint. (Doc. 101, *et seq.*)

In the Third Amended Complaint, Plaintiffs have not alleged new facts, just legal conclusions, against the LSU Presidents failing to address the LSU Presidents' arguments in the Motion to Dismiss the First Amended Complaint. (Doc. 83.) Therefore, Plaintiffs' claims against the LSU Presidents should be dismissed outright for failing to comply with this Court's order. (Doc. 100; Doc. 101, ¶¶279-301; *Cf*. Doc. 70, ¶¶239-257; *Cf*. Doc. 1, ¶¶239-257.) Nevertheless, the LSU Presidents will address the Third Amended Complaint in whole. Plaintiffs seek to hold Alexander, Galligan and Tate liable under §1983 claim against in Count IV alleging that the LSU Presidents violated the 14th Amendment by failing to fulfill their duties "as the highest-ranking member" on LSU's campus. *Id.* ¶¶279-293.  Plaintiffs further allege they had a clearly established right to "bodily integrity" under the 14th Amendment's substantive and procedural due process clause, and the LSU Presidents' failure to prevent, investigate, and report sexual misconduct violated these established constitutional rights. *Id.* ¶¶ 293-296. Plaintiffs also allege the failures of the LSU Presidents to follow Act 172 and Title IX violated their rights under the 14th Amendment. *Id.* ¶294. Because the Plaintiffs claims are untimely, because they still fail to allege any factual allegations to hold each President individually liable under 42 U.S.C. § 1983, and because Act 172 was not in existence at the time Silva was student at LSU, Plaintiffs' claims against the LSU Presidents should be dismissed with prejudice. Plaintiffs' claims still fail as a matter of law.

## STANDARD FOR DISMISSAL

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set

forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); 12(b)(6). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555 (quotation marks, citations and footnotes omitted). Moreover, Plaintiffs must clearly plead their theories of liability and entitlement to relief. *See Lewis v. United States*, 2019 WL 4738791, at *19 (M.D. La. Sept. 27, 2019) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Lumping parties together is improper under federal court pleading standards under Fed. R. Civ. P. 8 and 12(b)(6) and makes it difficult for the Court to discern the parties' allegations before it and at issue. *Id.* A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint," but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007)); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007).

Additionally, a motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute of limitations defense if the defense clearly appears on the face of the complaint. *Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 918 (5th Cir. 2009); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). An application of the foregoing standard mandates dismissal of Plaintiffs' claims against the LSU Presidents as a matter of law.

## **LAW AND ARGUMENT**

**I.    PLAINTIFFS' §1983 CLAIMS AGAINST THE LSU PRESIDENTS SHOULD BE DISMISSED AS UNTIMELY.**

"A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Toll Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014).  In this case, Plaintiffs present only a single claim against the LSU Presidents – a § 1983 claim.  As set forth more fully below, this claim is untimely on its face.

Federal law does not establish a statute of limitations for § 1983 claims. Therefore, federal courts hearing § 1983 claims borrow the forum state's law. Here, that is Louisiana's one-year prescriptive period under La. Civ. Code art. 3492. *Dugas v. City of Ville Platte*, No. 6:17-CV-00337, 2017 WL 6521660, at *5 (W.D. La. Nov. 17, 2017), report and recommendation adopted, No. 6:17-CV-00337, 2017 WL 6521148 (W.D. La. Dec. 19, 2017). "Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and" accrual of a federal cause of action is a matter of federal law.'" *King-White v. Humble Independent School Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (*quoting Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). "[U]nder federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). "[A] plaintiff's awareness encompasses two elements: (1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)). "Awareness of the existence of the injury and causation does *not* mean actual knowledge; rather, all that must be shown is the existence of circumstances that would lead a reasonable person to investigate further." *Doe 1 v.*

*Baylor University*, 240 F. Supp. 3d 646, 663 (W.D. Tex. 2017) (cleaned up). "Thus, for awareness of causation, a plaintiff 'must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection …or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury." *Id.* (quoting *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)).

Plaintiffs knew of their respective injuries at the time in which they each occurred. M.D. was aware of her injuries and a potential causal connection to President Alexander's supposed acts or omissions in the Spring of 2015 because she alleged that LSU's response to her report was inadequate (Doc. 101, ¶¶ 104-106, 109).[8] As to Plaintiff P.P., she was aware of facts that would lead a reasonable person to conclude that there was a causal connection between her injury and Defendants' acts or omissions even before her injury occurred. P.P. alleges that as of late 2019, she was aware of at least one sexual assault case against Silva through an acquaintance, that many students in her academic program knew of rumors regarding Silva's history of sexual assault, that other engineering students had reported Silva to the program director, and that a professor in ULL psychology department had allegedly used Silva as a case study on serial rapists. *Id.* ¶¶ 119, 121, 122, 126. P.P. alleges that she was sexually assaulted by Silva throughout her relationship with him, which spanned from May 2020 until January 2021. *Id.* ¶¶ 124, 142. Accordingly, P.P. had requisite awareness as to both her injuries and a potential causal connection by January 2021, at the latest. Finally, J.B. alleges that she was assaulted by Silva in February 2021, and that by the following month, she researched Silva on the internet, found a Twitter thread by Silva's victims detailing his past sexual assaults, reached out to the author of this thread, connected with P.P., learned of the investigation related to the USA Today article published in May 2021, and by April

---

[8] Galligan and Tate were not Presidents at this time.

2021 told a former co-worker about the alleged assault by Silva. *Id.* ¶¶ 143 (P.P. paragraph), 148-156, 163-175. Therefore, J.B.'s claims accrued, and the prescriptive period began to run in March 2021, at the latest.

Accordingly, Plaintiffs' suit is untimely on its face. Plaintiffs allege that they were sexually assaulted on several different occasions between Spring 2015 and February 2021 (Rec. Doc. 101, ¶¶ 98, 101, 124, 137-139 (P.P. Paragraphs), 148, 155(J. B. Paragraphs). Plaintiffs did not originally file suit until July 13, 2022, more than one year, and up to seven years, after each of the alleged incidents of sexual assault and certainly upon knowledge of Silva's connection to LSU. As such, Plaintiffs' claims against the Defendants should be dismissed with prejudice in their entirety as untimely.

## II.   PLAINTIFFS CANNOT TOLL THE STATUTE OF LIMITATIONS.

Plaintiffs recognize that their lawsuit is untimely on its face.  Therefore, in an effort to salvage their otherwise untimely claims, Plaintiffs contend that the statute of limitations should be tolled under the doctrine of *contra non valentem* and equitable doctrine of fraudulent concealment. (Doc. 101, ¶¶ 194-204). But Plaintiffs' allegations here are combined as to **all** Defendants in this case and there are no specific facts alleging how Alexander, Galligan, or Tate concealed their unlawful actions or inactions or prevented Plaintiffs' from discovering their causes of actions. Yet, Plaintiffs contend that they are entitled to avail themselves of the doctrine of *contra non valentum* because "Plaintiffs had no opportunity to know of the accruing harm, and could not have known of the harm" due to the intentional conduct, failures, and disregard of Act 172 by **all** Defendants. *Id.* ¶¶ 194.  Plaintiffs also allege that not only did **all** Defendants conceal their actions or inactions but they also could not "know of [**all**] Defendants' failures" because they relied on **all** Defendants' representations they would take appropriate measures, and that their individual attacks by Silva

did not put them on notice of the ***Defendant* Board's**, not the LSU President's, failure to implement a protective system. *Id.* ¶¶197-199.

 Plaintiffs further allege that they were not made aware of "[**all**] Defendants' failures" until May 2022 when a similar lawsuit was filed by another Silva victim in the Middle District of Louisiana, *Jane Doe v. Bd. Of Supervisors of the Univ. of La. Sys.*, No. 3:22-cv-00338 (M.D. La. Filed May 25, 2022).  Plaintiffs also assert they learned new information as recent as November 9, 2022, about **all** Defendants' supposed willful misconduct from deposition testimony taken in a totally unrelated matter, *Owens v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, No. 3:21-cv-00242-WBV-SDJ (M.D. La.). But Doe's suit and the testimony do not provide Plaintiffs with any new information regarding the LSU Presidents' actions or inactions, especially given that one deponent was not an employee during the time the M.D., Silva and P.P. were students. *Id.*  ¶¶ 183, 186, 203; Docs. 101-6 and 101-7. Plaintiffs' arguments have no merit.

Because federal courts borrow the forum state's statute of limitations and because equitable tolling principles apply to § 1983 claims, "[c]ourts additionally 'borrow' the forum state's equitable tolling principles" in § 1983 actions. *Reynolds v. Titus Cnty.*, No. 23-40700, 2024 WL 837040, at *3 (5th Cir. Feb. 28, 2024) (quoting *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)); *King-White*, 803 F.3d at 764; *See Stovall v. Lena*, 2013 WL 5234113, at *3 (W.D. La. 2013). In Louisiana that is "suspension of prescription under the doctrine of *contra non valentem*" whereby prescription is suspended when a person cannot file suit *Broussard v. Brown*, 599 F. App'x 188 (5th Cir. 2015) (citing *Corsey v. Louisiana*, 375 So. 2d 1319, 1321–22 (La. 1979); *Carter v. Haygood*, 892 So. 2d 1261, 1268 (La. 2005) (citing Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b), 22 (1996)).  The Supreme Court of Louisiana has recognized four

circumstances where the doctrine of *contra non valentem* is applied to suspend the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) where the cause of action is neither known or reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant ("the discovery rule"). *Marin v. Exxon Mobil Corp*., 48 So. 3d 234, 245 (La. 2010). *Contra non valentem* is only to be applied in exceptional circumstances and "will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." *Id*. at 245-46. "Further, 'prescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, ...even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damages as a result of the completed tortious act.'" *Id*. at 246. Where on the face of the complaint prescription has run, the burden is on the Plaintiffs to prove suspension or interruption of the prescriptive period under *contra non valentum. See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 389 (5th Cir. 2021); *see also Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). Plaintiffs may also invoke the equitable tolling principle of fraudulent concealment by proving that the defendants concealed the conduct complained of and that plaintiff failed, despite due diligence to discover the facts that form the basis of her suit. *State of Tex. v. Allan Const. Co., Inc.,* 851 F.2d 1526, 1528 (5th Cir. 1988). To succeed here, Plaintiffs must plead affirmative acts of concealment, silence is not enough, and the defendant must be guilty of some contrivance. *Id.*. Here, Plaintiffs cannot meet

their burden.

Plaintiffs contend that the third and fourth elements of *contra non valentem* apply to their suit. (Doc. 101, ¶195.)  More specifically, Plaintiffs aver that **all** "Defendants undertook efforts to conceal their failures to timely, effectively, and appropriately" investigate, report, and protect vulnerable students. *Id.* ¶197. Plaintiffs attempt to support this supposed "cover-up" by referencing *Doe, supra.*, and attaching testimony of Jennie Stewart and Jane Cassidy who served in LSU's Title IX office in 2016-2021, and 2021-2022, respectively. *Id.* ¶¶183, 186, 203.  First, the Fifth Circuit has held "'that [t]he mere filing of a similar lawsuit, without more, does not necessarily give good ground [to support a lawsuit] because that suit might well be frivolous or baseless and therefore cannot serve to toll the prescriptive period. *In re Beef Indus. Antitrust Litig.*, MDL Docket No. 248, 600 F.2d 1148, 1171 (5th Cir. 1979)). Second, the plaintiff must exercise due diligence and to discover facts despite any allegations of fraudulent concealment. *See Id.*; *see e.g.*, *Chandler v. Phoenix Servs., L.L.C.*, 45 F.4th 807, 815 (5th Cir. 2022)(citations omitted).  Plaintiffs have made no such showing here.

Further, Plaintiffs' reliance on unauthenticated testimony from an unrelated matter is disingenuous.[9] Plaintiffs clearly alleged concealment by all Defendants in their Original Complaint. (Doc. 1, ¶195.) Thus, Plaintiffs were well aware they had a cause of action against the LSU Presidents that could be tolled by fraudulent concealment well before this testimony surfaced. To allow Plaintiffs to proceed under that theory would lead to absurd consequences. Moreover, just like the reasoning in *In re Beef Indus. Antitrust Litig* about baseless lawsuits, the testimony given could be false or perjury.  Plaintiffs cannot meet their burden regarding the third exception

---

[9]     *See Owens v. Louisiana State Univ.*, No. CV 21-242-WBV-SDJ, 2023 WL 2116030, at *1 (M.D. La. Feb. 17, 2023)(The facts are markedly different in *Owens* than in this matter as the *Owens* focused on the actions and inactions of LSU athletic department not LSU Presidents.)

under *contra non valentem* and their lawsuit against the LSU Presidents is untimely.

Next, Plaintiffs maintain that the fourth exception applies, that they could not have discovered their causes of action because they relied on **all** "Defendants' public representations" and "that [**all**] Defendants would take appropriate measures to supervise Louisiana's public universities…." *Id.* ¶¶198-199. Plaintiffs again allege that their individual attacks did not put them on notice of **all** Defendants' failures to act and they further rely on Doe's lawsuit and the Steward and Cassidy's deposition testimony. *Id.* ¶¶ 200, 202-204. But these allegations cannot save Plaintiffs' untimely claims.

Plaintiffs' arguments are unsupported by the jurisprudence. In *Owens v. Louisiana State Univ.*, No. CV 21-242-WBV-SDJ, 2023 WL 2116030, at *1 (M.D. La. Feb. 17, 2023), ten former LSU students used the same arguments as the Plaintiffs here. More specifically, the plaintiffs alleged they were subjected to a sexually hostile environment through sexual harassment and sexual assault from 2009-2020 perpetrated by male LSU students, that LSU and its agents concealed their complaints of sexual misconduct and ensured that students did not understand their rights or LSU's obligations under Title IX, and that LSU handled Title IX complaints against student-athletes differently than against non-student athletes. *Id.* The plaintiffs in *Owens* also alleged they were unaware of LSU's failures under Title IX until the Husch Blackwell report was released on March 5, 2021, detailing the supposed inadequacies, and therefore their claims were timely. *Id.* (*See also* Doc. 101, ¶88-93, 182-190.) Like M.D., P.P., and J.B., the plaintiffs asserted § 1983 claims of violations of their substantive and due process rights under the 14th Amendment against several LSU individuals including Jennie Stewart. *Id.* at *2.[10] Stewart then filed a motion

---

[10]     The *Owen's* plaintiffs also sued LSU representatives Verge Ausberry, Miriam Seager, and Jonathan Sanders under Section 1983 alleging the same facts as those against Jennie Stewart. For brevity, the LSU Presidents will only cite the ruling regarding Jennie Stewart since Plaintiffs have incorporated her testimony from *Owens* in their Third Amended Complaint.

to dismiss based on untimeliness of the complaint and that she was entitled to qualified immunity. Pertinent here, to save their untimely claims against Stewart, the plaintiffs in *Owens* asserted *contra non valentem* and invoked the equitable doctrine of fraudulent concealment. *Id.* at *5. The court agreed with Stewart that the individual plaintiffs' claims against Stewart were prescribed on their face. *Id.* Therefore, the court focused on whether or not *contra non valentem* or fraudulent concealment saved each individual plaintiff's claims against Stewart, individually. *Id.* The district court analyzed each of the individual plaintiff's claims of sexual assault, and specifically noting that many of the plaintiffs were aware of their injuries, i.e., they knew they had been sexually assaulted or harassed, and that with the exception of two of the plaintiffs they had reported the incidents to LSU. Thus, the court reasoned that under *contra non valentem* the Husch Blackwell report released in March 2021, could not save the untimeliness of the plaintiffs' claims. *Id.* at *7. The court noted that plaintiffs' claims against Stewart were in her individual capacity and that the majority of the claims and support for *contra non valentem* would most likely only apply against LSU, the institution. *Id.* As the court noted, the inquiry was whether the claims against the Steward as an individual were tolled under *contra on valentum*. *Id.* As for tolling under fraudulent concealment, the court reasoned that *three* of the plaintiffs' claims were tolled by the publication of the Husch Blackwell report against Stewart. *Id.* at *8. Notably, the court reached this conclusion because these three individual plaintiffs sufficiently alleged Stewart's particular affirmative acts of concealment of their reports. *Id.* Therefore, the court granted Stewart's motion to dismiss with prejudice against those plaintiffs who failed to allege specific affirmative acts by Stewart regarding concealment of their reports.

For the reasons set forth in *Owens*, Plaintiffs' claims are untimely. Here, M.D., P.P., and J.B. have failed to allege any affirmative acts by Alexander, Galligan or Tate that could be

reasonably considered fraudulent concealment by them as individuals. Rather, the Plaintiffs here have lumped all the Defendants' acts together.[11] This is insufficient under the law. Additionally, as stated more fully below, Plaintiffs' cannot use the filing of the *Doe* case, the deposition testimony of Cassidy and Stewart, the USA Today article, nor the Husch Blackwell report as further evidence that supports tolling their claims under *contra non valentem* because, as *Owens* demonstrates, each Plaintiff was well aware of their injuries enough so that one Plaintiff, M.D., reported the incident to LSU and P.P. and J.B. knew of Silva's torrid past before or soon after they met Silva. Plaintiffs' claims against the LSU Presidents are untimely and do not survive under any theory of tolling, suspension, or interruption of prescription.

Further, in *Beckwith v. City of Houston*, 790 F. App'x 568, 570 (5th Cir. 2019), the plaintiffs, like M.D., P.P., and J.B., filed suit against a host of defendants including the City of Houston, the CEO of Houston's Forensic Center, four former mayors of Houston, and five former Chiefs of Police of the Houston Police Department ("HPD"). *Id.* The plaintiffs filed suit under § 1983 alleging that the Defendants acted with deliberate indifference and maintained a policy or practice for the past 30 years of not submitting sexual assault kits for testing, reviewing, and failing to preserve evidence that violated their substantive and procedural due process rights. *Id.* at 571. Both the plaintiffs claimed had the City of Houston entered the genetic evidence of their sexual assault attackers prior to their attacks the attackers would have been apprehended and the plaintiffs' attacks would never have occurred. *Id.* at 570-571. The first plaintiff did not file suit until six and a half years from her the date of her assault and the submission of her sexual assault kit to the HPD. *Id.* at 571. The second plaintiff was not added to the suit until six years and three months following her attack and submission of her kit to the police. *Id.* Both plaintiffs alleged that the

---

[11]    Plaintiffs should not be allowed to amend their complaint a fourth time to assert specific acts of concealment as that would a not serve justice and Plaintiffs have had ample opportunity to sufficiently amend.

HPD contacted them approximately five to six years later from the reporting of their assaults to let them know their kits had finally been tested in 2016 and 2017, respectively, and to let them know they had found suspects in their evidence database from the testing of the kits. *Id.* Based on these dates, the plaintiffs filed their suits believing they were well within Texas's two-year statute of limitations for a civil rights action. *Id.* at 571-572.

Thereafter, the defendants filed a motion to dismiss the plaintiffs' claims as untimely which the district court granted. On appeal, plaintiffs argued in relevant part that their claims had not tolled because of the equitable tolling principles of fraudulent concealment and the discovery rule. *Id.* at 572. The plaintiffs argued the defendants intentionally concealed the delay of testing the kits. The Fifth Circuit disagreed. Notably, the Fifth Circuit found that had the plaintiffs investigated the status of their kits they would have learned their sexual assault kits remained untested. Furthermore, the Fifth Circuit found that the defendants had informed the public through presses releases as far back as 2013 about the backlog. *Id.* at 573. Therefore, the Fifth Circuit found the doctrine of fraudulent concealment did not apply. *Id.* at 574. Additionally, the Fifth Circuit reasoned that the discovery rule only applies if the "nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable" and that for the same reasons stated above, the discovery rule did not apply. *Id.* (citations omitted). Basically, the Fifth Circuit reasoned because the plaintiffs were not proactive and because they did nothing for years, even after being contacted the HPD and after the press releases, they could not rely on equitable tolling to save their civil rights claims. The Fifth Circuit affirmed the district court's judgment dismissing the suit *Id.* at 573-576.

Here, *Beckwith* applies with equal force. All the Plaintiffs were well aware of their injuries. M.D. even went so far as to report her claims to LSU's Title IX office and despite her protest that

LSU did nothing about it, M.D. had a duty to follow-up.  Moreover, P.P. and J.B. both knew of Silva's past by researching him on the internet and finding social media and other publications regarding his acts.  Likewise, Plaintiffs allege that the Husch Blackwell report which was publicly released by LSU in March 2021, "made several findings about LSU's deficiencies…[and] made [several] recommendations" which Plaintiffs' allege "should have been addressed in response to Act 172." (Doc. 101, ¶¶88-91, fn. 12.) Even if this Court were to take a leap of faith and determine that the Husch Blackwell report could toll Plaintiffs' claims against the LSU President, their claim is still untimely for the same reasons the plaintiffs' claims in *Beckwith* were untimely. That is the Plaintiffs here were on notice of any "concealment" by the LSU Presidents at the very latest of March 2021. Additionally, Jennie Stewart's deposition testimony is about the Husch Blackwell report and does not reveal any new information which was already available in that published report. (Doc. 101-6.)  Plaintiffs' claims are, accordingly, untimely.

Moreover, in *Eastin v. Entergy Corp.*, 2003-1030 (La. 2/6/04), 865 So.2d 49, hundreds of plaintiffs filed age discrimination claims against their former employer, Entergy, arising out of a reduction in force.  With respect to eleven of the plaintiffs, Entergy filed an exception of prescription on the basis that the lawsuit had been filed more than one year after the eleven plaintiffs had been terminated.  In opposition to the exception, the eleven plaintiffs argued that the doctrine of *contra non valentum* applied to suspend prescription on their respective claims because they could not --know that they were discriminated against until they learned of the other discrimination claims by the other plaintiffs.  The Supreme Court rejected this argument finding that "[l]earning of another's lawsuit or discriminatory practices occasioned upon another, do not give rise to one's own rights to or the knowledge that one has a cause of action.  ***On the other hand, learning of one's own termination does give rise to the knowledge of a cause of action***

**and starts the proverbial clock's ticking.**" *Id.* 865 So.2d at 56 (emphasis in original; emphasis added).

Following the reasoning in *Eastin*, the First Circuit has also rejected the "discovery rule" in the LEDL context. In *Williams v. The Library*, 2012-0220 (La. App. 1 Cir. 11/2/12), 111 So. 3d 356, the First Circuit upheld an exception of prescription dismissing a claim of race discrimination as untimely. In *Williams*, the plaintiff fax-filed his lawsuit asserting a claim of race discrimination on July 22, 2011. He had been terminated more than a year earlier on or before July 17, 2010. However, plaintiff argued that *contra non valentum* should save his claim of discriminatory termination because he did not learn that his termination was motivated by racial animus until he saw a post on Facebook several days after his termination indicating that race was a factor in his termination. Relying on *Eastin,* the First Circuit found that "nothing prevented Mr. Williams from asserting his cause of action within one year from his termination when he had learned of an alleged discriminatory reason three hundred and sixty days before the prescriptive period ran." *Id.* at 360.

The reasonings of *Eastin* and *Williams* applies as well. M.D. knew that she was assaulted by Silva in the Spring of 2015. She also believed back in 2015 that LSU's Title IX office failed to provide her with necessary services. (Doc. 101 ¶¶ 99-106). Likewise, P.P. knew about Silva's past before she voluntarily entered into a relationship with him in 2019. Further, she was aware that she had been sexually assaulted by Silva during the course of her relationship which ended no later than January of 2021.[12] *Id.* ¶¶ 124-141. With respect to J.B., she knew that she was sexually assaulted by Silva on February 14, 2021. *Id*. ¶¶1 48-155. She also spoke with P.P. and learned of her issues with Silva by March 2021. *Id.* 101 ¶173. All of the women were interviewed by Jacoby

---

[12] P.P. makes no allegations she reported any of this to ULL's Title IX office or law enforcement such that any of the universities would be on notice of the assault.

in March of 2021 for the USA Today article that was published in May 2021.  Thus, at the latest, all of the Plaintiffs in this case could or should have known of the facts supporting their claims by May 2021 – at the very latest.  Further, Plaintiffs' claim against the LSU Presidents is premised on a failure to fulfill the obligations of Act 172, enacted in 2015.  Act 172 is a public record that is easily researched and has been readily available on the internet since its enactment. Despite being aware of the facts supporting their respective injuries and having access to facts that might articulate a theory of liability, this lawsuit was not filed until July 13, 2022 – more than one year after Kenny Jacoby's article appeared in USA Today. The lawsuit is untimely on its face and the doctrine of *contra non valentum* and fraudulent concealment do not save it.

Further, with respect to Plaintiffs' allegations the LSU Presidents concealed their malfeasance, Plaintiffs have not pleaded any specific factual allegations regarding each individual Presidents' affirmative acts to conceal their malfeasance (because there are none.) Based on the foregoing facts and legal authority, Plaintiffs' claims against the LSU Presidents should be dismissed as untimely as a matter of law.

## III.   PLAINTIFFS HAVE FAILED TO STATE CLAIM UNDER § 1983 AGAINST THE LSU PRESIDENTS

Plaintiffs have been ordered by this Court to amend their Complaint to address the arguments raised by the LSU Presidents in their Motion to Dismiss the First Amended Complaint. (Doc. 100, p. 2.) In their Motion to Dismiss, the LSU Presidents asserted that Plaintiffs failed to make any specific allegation of wrongdoing against either Alexander, Galligan, or Tate individually or that they violated a clearly established *constitutional* right. (Doc. 83-1, p. 20.) In response, Plaintiffs have merely restated the law on § 1983 adding "Plaintiffs had a clearly established right to bodily integrity at the time of the Defendants' malfeasance, as also evidence by the existence of Title IX and Louisiana's recent enactment of the Campus Accountability and

Safety Act [Act 172] bolsters this conclusion." (Doc. 101, ¶ 294.) Plaintiff further added that "the individuals ultimately charged with administering these programs, it would be unreasonable to conclude that Defendants did not know that the failure to prevent, investigate and report sexual misconduct deprived students, including Plaintiffs, of their right to bodily integrity." *Id.* at ¶ 295. Plaintiffs also alleged that the LSU Presidents' failures "to comply with the administrative requirements of Title IX…deprived Plaintiffs of their substantive [and procedural] due process rights to liberty, property, and bodily integrity." *Id.* ¶¶ 289-290.  For the reasons below, these allegations fail to state a claim that Alexander, Galligan, and Tate are liable under § 1983.

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Maze v. Garber*, No. 6:19-CV-00953, 2020 WL 2892174, at *2 (W.D. La. June 1, 2020) (quoting *Collins v. City of Harker Heights, Tex*., 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L.Ed.2d 261 (1992) (citing 42 U.S.C. § 1983). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Id.* (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).) "To state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged violation was committed by a person acting under color of state law." *Id.* (quoting *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008)).

In a nutshell, Plaintiffs are alleging that the LSU Presidents (and UL Presidents) violated their 14th Amendment rights by failing to implement Title IX and Act 172.  These are the unlawful state actions Plaintiffs allege Alexander, Galligan and Tate committed under color of law. However, these allegations are seriously flawed and cannot support a claim that their 14th Amendment rights were violated because: (1) Act 172 did not exist at the time M.D. and Silva

were students at LSU in 2014 and 2015 nor when M.D. alleged the incident with Silva occurred in

March/April 2015; and (2) Title IX does not protect students, like P.P. nor non-students like J.B.,

who do not participate in the defendant university's educational programs or activities. *See Doe v.*

*Brown University*, 896 F.3d 127, 130 (1 Cir. 2018) (quoting 20 U.S.C. § 1681(a)).

        According to the Third Amended Complaint and as stated in footnote 5, Act 172 was signed

into law on June 23, 2015. (Doc. 101, ¶ 3, 33.) At that time, Alexander was LSU's President, Silva

had already transferred to ULL, M.D.'s alleged assault occurred in Spring 2015, and M.D. was

expelled from LSU shortly afterwards. *Id.* ¶¶ 67, 98-99, 107.   According to Plaintiffs' own

complaint, Act 172 did not exist at the time when the alleged actions occurred at LSU. Therefore,

LSU had no duty to report Silva to ULL, enter into a memorandum of understanding with law

enforcement, or proceed with any other requirements under the Act.[13] According to the Louisiana

Supreme Court, the framers of the Louisiana Civil Code "conceived of fault as breach of a

preexisting obligation." *See Pitre v. Opelousas General Hosp.*, 530 So. 2d 1151, 1156 (La. 1988)

(quoting La. Civ. Code art. 2315)). Imposing fault or predicating a state action based on a breach

of an obligation that did not yet exist, as Plaintiffs seek to do here, falls outside of the parameters

of the Civil Code and § 1983. Taking the facts alleged in the Third Amended Complaint as true,

Plaintiffs impermissibly seek to hold the LSU Presidents liable for a breach of obligations and a

violation of law that did not yet exist. Moreover, Galligan and Tate were not Presidents of LSU at

the time of the acts complained of that are attributed to LSU, so the failure to implement Act 172

cannot be Galligan and Tate's unlawful state action. Additionally, "[a] violation of state law is not

---

[13]    Additionally, the same reasoning applies regarding the Board of Regents' 2015 Uniform Policy on Sexual Misconduct, which was adopted by the Board of Regents on February 23, 2015 but required institutions to implement policies in line with the Uniform Policy no later than October 1, 2015. (Doc. 101, ¶¶ 35-36; **See-** The Louisiana Board of Regent's Uniform Policy on Sexual Misconduct.) available at https://house.louisiana.gov/llwc/pdf/2015/0223_15_BoardOfRegentsUniformPolicyOnSexualMisconduct.pdf (last visited May 10, 2024.) Again, the Court may take judicial notice of this policy because this policy is repeatedly referenced in Plaintiffs' complaint.

cognizable under § 1983." *Scott v. Fiesta Auto Ctr. of San Antonio*, 273 F.3d 1095 (5th Cir. 2001) (citing *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994). Plaintiffs' § 1983 claims against the LSU Presidents fail as a matter of law.

Plaintiffs' allegations that LSU Presidents' supposed failure to implement Title IX's protections is also unavailing. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Doe v. Brown University*, 896 F.3d 127, 130 (1 Cir. 2018) (quoting 20 U.S.C. § 1681(a)). The Supreme Court has recognized an implied "private right of action to enforce [Title IX's] prohibition on intentional sex discrimination." *Id.* (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979)). The Supreme Court has also held that, in order for someone "to experience sex 'discrimination under an education program or activity,' that person must suffer unjust or prejudicial treatment on the basis of sex while participating, or at least attempting to participate, in the funding recipient's education program or activity." *Id.* at 131 (quoting *North Have Bd. Of Ed. v. Bell*, 456 U.S. 512, 520 (1982)). This requirement means that although Title IX claims are not limited to students or employees of a particular institution, a plaintiff must allege that she participated in the defendant university's educational programs or activities in order to state a claim. *Id.* at 133. The United States Sixth Circuit Court of Appeals rejected a plaintiff's Title IX claim where the plaintiff was a non-student who claimed she was assaulted by a University of Ohio police officer. *Arocho v. Ohio University*, No. 20-4239, 2022 WL 819734, at *3 (6th Cir. Mar. 18, 2022). The only education activity or program that the plaintiff referenced in her complaint was the career day she attended at the university where she first encountered the police officer. *Id.* The court held that this connection to the University was too attenuated to give rise to a Title IX claim because the

plaintiff was not paying for the University's services, the plaintiff did not assert that she planned to participate in the University's educational services in the future, and did not provide any information about educational opportunities or vocational training from which she was deprived of participating. *Id.* at *4.

In the instant case, P.P. alleges she was a student of ULL not LSU. J.B. makes no allegations that she was a student at any Louisiana university. Accordingly, the LSU Presidents had no duty under Title IX to P.P. and J.B. and therefore could not have violated their constitutionally protected rights under the 14th Amendment.[14] More importantly, "[l]iability under Title IX does not extend to school officials, teachers and other individuals." *Plummer v. Univ. of Houston*, 860 F.3d 767, 776 n.12 (5th Cir. 2017). Nor are there any cases in which the United States Supreme Court or Fifth Circuit have held that a violation of Title IX could be a constitutional violation to support a claim cognizable under § 1983. Thus, all Plaintiffs' claims against the individual LSU Presidents fail as a matter of law.

## IV.   THE LSU PRESIDENTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFFS' §1983 CLAIMS.

Plaintiffs allege violations of 42 U.S.C. § 1983 against Alexander, Galligan, and Tate among others, in their individual capacities. (Doc. 101, ¶ 280). Plaintiffs' §1983 claims should be dismissed, however, as Alexander, Galligan, and Tate are entitled to qualified immunity.

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009). "To achieve this balance, qualified immunity shields government officials from liability when they perform discretionary functions provided

---

[14]     Additionally, Alexander was no longer President of LSU at the time of P.P.'s and J.B.'s complained of acts.

that their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" conceal his specific wrongdoing, not how the Defendants collectively engaged in some "cover-up." *Minnis v. Board of Sup'rs of Louisiana State University and Agricultural and Mechanical College*, 972 F. Supp. 2d 878 at 884 (M.D. La. 2018) (citations omitted). "If an official's conduct was objectively reasonable, it does not matter if that official's conduct violated a constitutional right; he is still entitled to qualified immunity." *Id.* (citing *Nerren v. Livingston Police Dep't.*, 86 F.3d 469, 473 (5th Cir. 1996)). "Thus, in order to defeat the [individual defendants'] qualified immunity defense, [Plaintiffs'] complaint must allege facts that, if true, show that *each* defendant violated [their clearly established] rights by acting in a way that he or she should have known was unlawful." *Minnis*, 972 F. Supp. 2d at 885 (emphasis added). "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that *every* reasonable official would understand that what he is doing violates the law." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (internal quotations and citations omitted) (emphasis in original). Additionally, each defendant's actions must be evaluated individually. *Minnis*, 972 F. Supp. 2d at 885; *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007). Importantly, the purpose of § 1983 is to compensate a person for injuries caused by the deprivation of constitutional rights. *See Carey v. Piphus*, 435 U.S. 247, 254, 98 S. Ct. 1042, 1047, 55 L. Ed. 2d 252 (1978). Plaintiffs' Third Amended Complaint does not meet this standard.

It is axiomatic that the LSU Presidents, who are being sued in their respective individual capacities, can only be held liable under § 1983 for their own conduct as it relates to Plaintiffs' allegations of wrongdoing. *Minnis, supra.* That is, President Alexander can only be held liable for President Alexander's actions (or inactions), President Galligan can only be held liable for

President Galligan's actions (or inactions), and President Tate can only be held liable for President Tate's actions (or inactions). The incidents giving rise to the claims against LSU – the assaults by Silva on LSU's campus – occurred in the Fall of 2014 and the Spring of 2015. Act 172 did not become effective until June 23, 2015. *See* La. R.S. 17:3399.11; effective dates June 23, 2015-June 28, 2021. Thus, LSU had no obligations vis-à-vis Act 172 until June 23, 2015 – *after* the incidents with Silva on LSU's campus had already taken place, *after* Silva transferred from and was no longer a student at LSU, and *after* Silva had been arrested by LSU PD on sexual assault charges related to Plaintiff M.D.'s Spring 2015 assault. Further, Galligan served as LSU's Interim President from January 2020 until May 2021 and Tate became LSU's President in May 2021 – *years* after the incidents with Silva on LSU's campus had taken place. Thus, to the extent that Plaintiffs contend the LSU Presidents "failed to abide by the requisites of Act 172" with respect to the incidents involving Silva on LSU's campus and then attempted to conceal those failures – Plaintiffs' own allegations negate any such finding. Act 172 was not in effect at the time of the LSU incidents and neither Galligan nor Tate were employed at LSU when such incidents occurred.

Furthermore, Plaintiffs have failed to allege any specific actions by the individual LSU Presidents that would hold them personally liable to Plaintiffs under § 1983. Individual capacity claims must be grounded on the defendants' personal conduct because § 1983 does not create supervisory or *respondeat* superior liability. *See Oliver v. Scott*, 276 F.3d 736, 742 & n. 6 (5th Cir. 2002); *Ashcroft v. Iqbal*, 556 U.S. 556 U.S. 622 at 676 (2009). While supervisory officials may be held liable under § 1983, this is only so if they were personally involved in the constitutional deprivation. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). To state a viable claim for supervisory liability Plaintiffs must allege facts that support the supervisor's personal involvement in the constitutional violation or allege a sufficient causal connection between the supervisor's

wrongful conduct and the constitutional violation. *Id.* Plaintiffs do neither here. Instead, the Plaintiffs' general factual allegations lump all of the university Presidents together without identifying each individual's personal involvement in the constitutional violation. As such, Alexander, Galligan, and Tate are entitled to qualified immunity as a matter of law and Plaintiffs' claims against them should be dismissed with prejudice.[15]

Lastly, Count VI is chock full of legal conclusions. "A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). While the LSU Presidents recognize Plaintiffs are not held to heightened pleading standard, they must do more than recite the elements of a 14th Amendment § 1983 claim. After close to two years, they are unable to do so, thus, Plaintiffs' claims against the LSU Presidents do not meet the plausibility test and the claims must be dismissed with prejudice.

## V.    PLAINTIFFS' §1983 CLAIMS ARE BARRED BY DISCRETIONARY IMMUNITY.

Louisiana Revised Statute 9:2798.1(B) provides, "Liability shall not be imposed on public entities *or their officers or employees* based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties. (emphasis added). The Louisiana Supreme Court has held that LSA-R.S. 9:2798.1 is "clear and unambiguous" and applies to "policymaking or

---

[15]    Because Plaintiffs' Third Amended Complaint is not the model of clarity, to the extent that the allegations against the LSU Presidents could be construed to support official capacity claims against them, the LSU Presidents adopt their prior arguments in the Motion to Dismiss the First Amended Complaint. (Doc. 83, 83-1, pp. 21-26.)

discretionary acts when such acts are within the course and scope of ... lawful powers and duties." *Gregor v. Argenot Great Central Insurance Co*., 2002-1138 (La. 5/20/03), 851 So. 2d 959, 967; *Herrera v. First National Insurance Company of America*, 2015-1097 (La. App. 1 Cir. 6/3/16), 194 So. 3d 807, 814, *writ denied*, 2016-1278 (La. 10/28/16), 208 So. 3d 885.

In their lawsuit, Plaintiffs allege that LSU and the LSU Presidents failed to notify ULL of Silva's alleged incidents on LSU's campus in 2014 and 2015. As an initial matter, LSU investigated the first alleged incident and could not corroborate the allegations. In this instance, there was no law that prescribed a certain action by anyone at LSU. Thus, any decision LSU reached or any action the LSU Presidents took (or did not take) was within their discretionary authority and grounded in university policy.

In this regard, the case of *Dominique v. St. Tammany Par.*, 2019-0452 (La. App. 1 Cir. 9/16/20), 313 So. 3d 307, 318, *writ denied sub nom.,* 2020-01202 (La. 12/22/20), 307 So. 3d 1045, is instructive. In *Dominique*, the plaintiffs filed suit against the St. Tammany Parish Sheriff's Department alleging that deputies were negligent in their handling of a complaint against an individual who was making verbal threats of causing harm to a local lawyer. Specifically, the plaintiffs, an employee of the lawyer and her husband, alleged that the deputies were put on notice that a former client, Rist, had made threats of his intent to shoot the lawyer who was his former divorce attorney. The deputies went to Rist's home to speak with him and ascertain his mental condition and the accuracy of the alleged threats. The deputies spoke with Rist and found him to be calm and polite. Rist also denied any intent to cause harm. The deputies left Rist in his home, where several guns were known to be located. The following day, Rist went to the attorney's office, where one of the plaintiff's worked, and began to indiscriminately shoot rounds of gunfire in the office before turning the gun on himself. The plaintiff, who was working in the office but

not harmed, filed suit against the deputies claiming that they were negligent in their dealing with and investigating Rist on the day preceding the attack. The deputies asserted the defense of discretionary immunity, which the trial court granted. On appeal, the First Circuit affirmed the application of discretionary immunity specifically reasoning the deputies had no reason to investigate more following the wellness check and this decision not to investigate squarely fell within the Sheriff's discretion regarding allocation of time and resources. *Id.*

In the present case, LSU had no affirmative obligation to notify ULL of any incident involving Silva during the 2014-2015 school year. Regardless, LSU did notify ULL of Silva's arrest for rape. (Doc. 101, ¶¶ 68-69). Like the deputies in *Dominque*, LSU's decision to investigate allegations relating to Silva, how to investigate those allegations, and what to do with those findings are well within the discretionary authority of LSU and the LSU Presidents for which they are statutorily immune. Because Plaintiffs' Third Amended Complaint fails to contain any specific allegations that would allow Plaintiffs to overcome this defense, they have failed to state a claim for which relief can be granted. On this basis, Plaintiffs' §1983 claims should be dismissed as a matter of law.

## CONCLUSION

Plaintiffs' claims against Alexander, Galligan, and Tate, premised on § 1983 and violations of the 14th Amendment, should be dismissed with prejudice as they are untimely. If the Court finds that these claims are timely (which the LSU Presidents deny), Plaintiffs' §1983 claims should be dismissed with prejudice for failure to plead a plausible claim upon which relief may be granted. Further, the LSU Presidents are entitled to qualified and discretionary immunity. For these reasons, Plaintiffs' claims and suit against Dr. Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV should be dismissed with prejudice without leave to amend.

WHEREFORE, Defendants, Dr. Fieldon King Alexander, Thomas C. Galligan, and William F. Tate, IV pray M.D.'s, P.P.'s, and J.B.'s suit be dismissed with prejudice without leave to amend, attorney's fees be awarded to these Defendants under 42 U.S.C. 1988(b) as the prevailing parties, and for all other general and equitable relief.

Dated: May 10, 2024

Respectfully submitted,
**LIZ MURRILL**
**ATTORNEY GENERAL**

*/s/Elizabeth Bailly Bloch*
**CHRISTINE S. KEENAN** (No. 23293)
**ERIC R. MILLER** (No. 21359)
**ELIZABETH BAILLY BLOCH** (No. 37591)
**MARY KATHRYN GIMBER** (No. 38748)
Special Assistants Attorney General
THE KULLMAN FIRM APLC
4605 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana  70809
Telephone: (225) 906-4250
Facsimile: (225) 906-4230
Email: EM@kullmanlaw.com
        CSK@kullmanlaw.com
        EBB@kullmanlaw.com
        MKG@kullmanlaw.com

**Counsel For Defendants, Dr. Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV**

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this 10th day of May 2024, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

*/s/ Elizabeth Bailly Bloch*
Elizabeth Bailly Bloch