UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| M.D., ET AL | : | |
| VERSUS | : | CIVIL ACTION NO.: 6:22-CV-02089 |
| LOUISIANA BOARD OF REGENTS, ET AL | : | JUDGE JOSEPH, MAG. JUDGE AYO |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Respectfully submitted,

BORNE, WILKES & RABALAIS, L.L.C.

BY: s/Joy C. Rabalais
JOY C. RABALAIS (26476), T.A.
JORDAN JOHN HENAGAN (36206)
GRANT R. SCHEXNAILDER (40040)
K. ELIZABETH HEINEN (24452)
HUNTER B. AHIA (40251)
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, Louisiana 70502-4305
Telephone: (337) 232-1604 Ext. 232
Facsimile: (337) 232-1837
E-mail: rabalais@bornewilkes.com

ATTORNEYS FOR LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), erroneously referred to as "Lafayette Consolidated Government"

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . ii

I. FACTUAL BACKGROUND . . . . . 1

*i. Factual background pertaining to LCG* . . . . . 3

*ii. Contents of the MOU regarding LCG* . . . . . 5

*iii. Actions of LCG* . . . . . 6

*iv. Facts regarding timeliness of the Complaint* . . . . . 7

*v. Claims against LCG* . . . . . 8

II. LAW AND ARGUMENT . . . . . 10

A. Motion to Dismiss Standard of Review . . . . . 10

B. Plaintiffs' claims are prescribed . . . . . 11

C. State created danger doctrine . . . . . 25

D. Additionally, this Circuit does not recognize a "failure to investigate" claim . . . . . 29

E. Plaintiffs have not established an unconstitutional custom, policy, pattern, or practice of LCG . . . . . 30

F. Plaintiffs' failure to train and supervise claims are wholly conclusory . . . . . 32

G. LCG could not have affected Silva's ability to travel . . . . . 33

III. CONCLUSION . . . . . 33

# TABLE OF AUTHORITIES

**Federal Rules, Statutes and Constitutional Provisions**

14th Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 26, 27, 31, 32

FED R. CIV. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 10, 11, 31, 32

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 17, 18, 27, 29, 30

42 U.S.C. § 1985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Title IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Title IX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22, 23, 26

**State Statutes and Constitutional Provisions**

La. Ch.C. art. 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La. Ch.C. art. 412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La. C.C. art. 3467 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19, 25

La. C.C. art. 3492 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

La. R.S. 17:3399.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

La. R.S. 17:3399.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

La. R.S. 17:3399.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

La. R.S. 17:3399.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

La. R.S. 17:3399.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Federal and State Cases**

*Alexander v. Fulco*, 39,293 (La. App. 2 Cir. 2/25/05), 895 So.2d 668, writ denied, 05-0781 (La. 5/6/05), 901 So.2d 1107 . . . . . 24

*Angelle v. Town of Duson*, 2018 U.S. Dist. LEXIS 167233(W.D. La. Aug. 6, 2018) . . . . . 30

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023). . . . . 32

*Babineaux v. State*, 2004-2649 (La. App. 1 Cir 12/22/05), 927 So. 2d 1121 . . . . . 12, 19, 21

*Bailey v. Khoury*, 04-0620 (La. 1/20/05), 891 So.2d 1268. . . . . 24

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . 10, 11

*Bellard v. Gautreaux*, 675 F.3d 454 (5th Cir. 2012). . . . . 30

*Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004) . . . . . 27

*Burrell v. Adkins*, 2007 U.S. Dist. LEXIS 95899, 2007 WL 4699166 (W.D.La., 2007) . . . . . 30

*Bustos v. Martini Club Inc.*, 599 F.3d 458 (5th Cir. 2010). . . . . 27

*Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502 . . . . . 12, 24

*Carter v. Haygood,* 04-0646 (La. 1/19/05), 892 So.2d 1261 . . . . . 14, 18

*Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808 (3rd Cir.1990) . . . . . 10

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir.2000) . . . . . 10

*Colonial Penn. Ins. v. Market Planners Ins. Agency Inc.*, 157 F.3d 1032 (5th Cir. 1998) . . . . . 21

*Cook v. Hopkins*, 795 F. App'x 906 (5th Cir. 2019) . . . . . 26, 27

*Corsey v. State, Through DOC*, 375 So.2d 1319 (La. 1979) . . . . . 19

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) . . . . . 28, 30

*Cross v. Lucius*, 713 F.2d 153 (5th Cir. 1983). . . . . 14

*Cyrio v. Hunt*, 2007 WL 2772222 (E.D. La. 2007) . . . . . . . . . . 10

*Daigle v. McCarthy*, 444 F.Supp.2d 705 (W.D. La. 2006). . . . . . . . . . 19

*Davidson v. City of Stafford, Tex.*, 848 F.3d 384 (5th Cir. 2017). . . . . . . . . . 32

*DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989) . . . . . . . . . . 26, 28, 29

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681 (5th Cir. 2017) . . . . . . . . . . 27

*Doe v. Roman Catholic Diocese of Lafayette*, 2008-1088 ( La. App. 1 Cir 12/23/08). . . . . . . . . . 20

*Doe v. Doe*, 95-0006 ( La. App. 1 Cir 10/06/95), 671 So. 2d 466 . . . . . . . . . . 21

*Jane Doe v. Board of Supervisors of the Univ. Of La. Sys.*, No. 3:22-cv-00338 (M.D. La, filed May 25, 2022) . . . . . . . . . . 7, 8

*Fisher v. Moore*, 73 F.4th 367 (5th Cir. 2023) . . . . . . . . . . 25, 26

*Gannett River States Publ'g Corp. v. Landry*, 22-452 ( La. App. 3 Cir 03/22/23), 363 So. 3d 580 . . . . . . . . . . 6

*Harrison v. United States*, 708 F.2d 1023(5th Cir.1983) . . . . . . . . . . 13

*Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351(La. 1992) . . . . . . . . . . 18, 21

*Helton v. Clements*, 832 F.2d 332 (5th Cir.1987)), *cert. denied*, 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993) . . . . . . . . . . 13

*Joiner v. United States*, 955 F.3d 399 (5th Cir. 2020) . . . . . . . . . . 27

*Jones v. Orleans Parish School Board*, 689 F.2d 342 (5th Cir. 1982), *cert denied* 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed. 2d 1310 (1983). . . . . . . . . . . 12

*Jordan v. Employee Transfer Corp.*, 509 So.2d 420 (La.1987) . . . . . . . . . . 21

*K & M Enterprises of Slaughter, Inc. v. Richland Equipment Co., Inc.*, 96-2292 (La. App. 1 Cir. 9/19/97), 700 So.2d 921 . . . . . . . . . . 24

*Keller v. Fleming*, 952 F.3d 216 (5th Cir. 2020) . . . . . . . . . . 27

*Laughlin v. Breaux*, 515 So. 2d 480 (La. App. 1st Cir. 1987) . . . . . . . . . . 21

*Lawrence v. Morris*, 2010 WL 1434288 (W.D. La. Mar. 16, 2010) . . . . . . . . . . 11

*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) . . . . . . . . . . 26, 27

*Monell v. Dep't of Soc. Ser.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) . . . . . . . . . . 30

*Moore v. Dall. Indep. Sch. Dist.*, 557 F. Supp. 2d 755 (N.D. Tex. 2008) . . . . . . . . . . 29

*Moore v. Dallas Indep. Sch. Dist.*, 370 Fed.Appx. 455, footnote 1 (5th Cir. 2010) . . . . . . . . . . 28

*Okin v. Village of Cornwall-on-Hudson Police Department*, 577 F.3d 415 (2d Cir. 2009) . . . . . . . . . . 27

*Olabisiomotosho v. City of Houston*, 185 F.3d 521 (5th Cir. 1999) . . . . . . . . . . 30

*Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) . . . . . . . . . . 17, 18

*Papasan v. Allain,* 478 U.S. 265 (1986) . . . . . . . . . . 10, 11

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) . . . . . . . . . . 31

*Piotrowski v. City of Houston*, 51 F.2d 512 (5th Cir. 1995) . . . . . . . . . . 13

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) . . . . . . . . . . 30, 31

*Ramming v. United States*, 281 F.3d 1338 (5th Cir. 1994) . . . . . . . . . . 10

*Renfroe v. State, Department of Transportation and Development*, 01-1646, (La. 2/26/02), 809 So. 2d 947 . . . . . . . . . . 19, 21

*Restrepo v. Fortunato*, 556 So.2d 1362 (La. App. 5 Cir.), *writ denied*, 560 So.2d 11 (La.1990) . . . . . . . . . . 13

*Rolen v. City of Brownfield*, 182 F. App'x 362 (5th Cir. 2006) . . . . . . . . . . 30

*Russell v. Bd. of Trustees*, 968 F.2d 489 (5th Cir.1992) . . . . . . . . . . 12, 13

*Shields v. Twiss*, 389 F.3d 142 (5th Cir. 2004) . . . . . . . . . . 30

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) . . . . . . . . . . 11

*Stevens v. St. Tammany Par. Gov't*, 2019-1555 ( La. App. 1 Cir 04/08/21), 322 So. 3d 1268 . . . . . . . . . . 19

*Stevenson v. Martin County Board of Education*, 3 Fed. Appx. 25 (4th Cir. 2001) . . . . . . . . . . 29

*Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) . . . . . . . . . . . . . . . . . 11

*Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished) . . . . . . . . . . . . 30

*Terrel v. Perkins*, 96-2679 (La. App. 1 Cir. 11/7/97), 704 So.2d 35 . . . . . . . . . . . . . . . . . . . . . . . . 21

*Terrell v. Town of Woodworth*, No. 1:21-CV-04224, 2023 U.S. Dist. LEXIS 108422, at *28 (W.D. La. June 7, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Watts v. Graves,* 720 F.2d 1416 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . 27

*Wilson v. Garcia*, 471 U.S. 261, 105S.Ct.1938, 85 L.Ed.2d 254 (1985) . . . . . . . . . . . . . . . . . . . 12, 17

*Wimberly v. Gatch*, 93-2361 (La. 4/11/94), 635 So.2d 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Secondary Sources & Treatises**

C. Wright & A. Miller, 5C Fed. Prac. & Proc. 3d § 1216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

MAY IT PLEASE THE COURT:

Defendant, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), erroneously referred to as "Lafayette Consolidated Government", moves for dismissal of plaintiffs' claims against it pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted, since plaintiffs' claims are prescribed, and alternatively, since plaintiffs have not sufficiently plead a claim pursuant to the 14th Amendment of the United States Constitution. Defendant/mover seeks dismissal of Plaintiffs' claims against it, with prejudice, for the following reasons:

## I. FACTUAL BACKGROUND[1]

Plaintiffs M.D., J.B., and P.P. bring claims stemming from events of their respective sexual assaults by Victor Daniel Silva. The relevant facts for this Motion as alleged in the Complaint include the following:

M.D. was assaulted in the Spring of 2015 [Doc. 101, ¶98-101]. P.P. dated Silva from May 2020 through January 2021 [*Id.* at ¶ ¶ 124, 142]. Throughout their relationship, Silva coerced P.P. into having sexual intercourse when she did not want to [*Id.* at ¶ 137]. J.B. was assaulted by Silva in February 2021 [*Id.* at ¶¶148-59]. The Original Complaint was filed on July 13, 2022[Doc. 1].

Plaintiff M.D. was a student at LSU for the 2014-2015 academic year [*Id.* at ¶¶95-99]. During the Spring 2015 semester, she claims that she was sexually assaulted by Silva [*Id.* at ¶98-101]. Act 172, also known as the Campus Accountability and Safety Act, was approved by the governor on June 23, 2015 (***after*** M.D.'s assault). La. R.S. 17:3399.11. Moreover, the Campus Accountability and Safety Act Memorandum of Understanding (MOU) between the University of

[1] The paragraph numbering of Plaintiffs Third Amended Complaint repeats ¶ 135-157. For example, there is a ¶ 139 on page 21 and a different ¶ 139 on page 23.

Louisiana at Lafayette was signed by the Lafayette Police Department on January 17, 2017 [Exhibit A, p. 11]. However, LCG was a party of the Lafayette Parish Sexual Assault Response Team (SART) as early as 2014 and maintains its commitment to SART to this day [Exhibit B]. LCG's collaborative efforts with other Lafayette community-based organizations regarding the Sexual Assault Response Team was also memorialized on the Campus Accountability and Safety Act Memorandum of Understanding [Exhibit A, p. 2].

Plaintiff P.P. became a student at UL Lafayette in 2016 [Doc. 101, ¶117]. P.P. was aware of another sexual assault case against Silva through communications with an acquaintance, but discounted the rumors about him, purportedly due to the lack of official action against him [*Id.* at ¶¶119-120]. P.P. began dating Silva in May 2020 and shortly thereafter received several messages from women previously involved with Silva and from one of Silva's male friends, informing her that Silva was dangerous. One of the women even described Silva as a monster [*Id.* at ¶126]. In August 2020, Silva sexually assaulted P.P.'s friend [*Id.* at ¶¶127-31]. Up to that point, P.P. admittedly ignored other strange and alarming behaviors from Silva [*Id.* at ¶132]. Throughout their relationship, Silva coerced P.P. into having sexual intercourse when she did not want to [*Id.* at 137]. In either August or September 2020, Silva once acknowledged that P.P. "Was not into it" when they were intimate after having consumed alcohol; P.P. had passed out and does not remember consenting or having sexual relations with Silva [*Id.* at ¶ 139].

Around February 2021, Plaintiffs P.P. and J.B. connected and shared their experiences with each other [*Id.* at ¶143]. In March 2021, P.P. was contacted by reporter Kenny Jacoby of USA

Today about the investigation he was conducting on Silva and the Louisiana higher education system [*Id.* at ¶144]. On May 26, 2021, the article was published online.[2]

Plaintiff J.B.'s experience with Silva begins in November 2020, where she was a non-university co-worker of Silva (there are no allegations that Silva was a Louisiana university student at this time, either) [*Id.* at ¶ 135]. In February 2021, Silva raped J.B. [*Id.* at ¶¶148-56]. In February 2021, J.B. and P.P. connected and shared their experiences with each other [*Id.* at ¶143]. In March 2021, Silva admitted he was behaving differently because of an upcoming news article about him [*Id.* at ¶ 169]. Upon hearing this, Plaintiff J.B. investigated Silva on the internet and discovered details on his sexual abuse of others [*Id.* at ¶170]. J.B. then contacted the author of the Twitter thread and got the contact information of P.P.; J.B. then saw how similar her experiences were to Silva's other victims [*Id.* at ¶173].

*i. Factual background pertaining to LCG*

The 2015 version of the Campus Accountability and Safety Act included Louisiana Revised Statutes 17:3399.11 through 17:3399.15 [Exhibit C]. This Act was later amended, in 2021, which now spans from La. R.S. 17:3399.11 to 17:3399.18. The 2015 version of La. R.S. 17:3399.12 titled "Scope" provided that "each public postsecondary education institution that receives any Title IV funding from the United States Department of Education shall be subject to all the provisions of this Part." Further, La. R.S. 17:3399.14 is titled "Coordination with local law enforcement" and provides that each institution and law enforcement agency located in the parish of the campus shall enter into

[2] Jacoby's article, entitled "Six women reported a Louisiana college student for sexual misconduct. No one connected the dots" can be located at https://www.usatoday.com/in-depth/news/investigations/2021/05/26/louisiana-officials-skirted-law-meant-curb-campus-sex-crimes/7048845002/.

a memorandum of understanding. These statutes, when read by their clear language, show that no obligation upon law enforcement agencies was created to coordinate the MOU, because (1) a law enforcement agency is not within the scope of persons subject to the provisions of this act; and (2) R.S. 17:3399.14 provides that the institutions were to coordinate with law enforcement. In their cause of action, Plaintiffs allege that LCG failed to properly apply Act 172, but police departments are outside of the scope of persons that Act 172 applies [Doc. 101, ¶ ¶ 308, 309, 311, 312, 313, 316, 320, 321, 323].

The MOU between LCG and UL Lafayette did not become effective until January 17, 2017, the date that the Lafayette Police Department signed the document [Exhibit A, p. 11]. Thus, LCG could not have breached this agreement prior to said date. Plaintiff makes assertions that "Silva was reported for sexual offenses to LPD on at least three other occasions" and "LPD did not report any of these offenses to Lafayette, although LPD knew Silva was a student at post-secondary institutions." [Doc. 101, ¶ ¶ 71-72]. Plaintiffs also allege, without providing any time reference, that "[a]nother report received by LPD was from a non-student victim who stated she was blackmailed by Silva after they had a consensual encounter. The complaint indicated Silva was pressuring the woman to send nude photographs and threatened to release a video of the two of them having sex if she refused to do so. . . . The incident was not reported to Lafayette." [Doc. 101, ¶¶75-76]. LCG has attached a redacted copy of this report as Exhibit D. Complainant made this report to the Lafayette Police Department on November 16, 2016, prior to the MOU's signing.

Plaintiffs also state that LCG should have told UL Lafayette about a report they received about Silva in 2018 [Doc. 101, ¶¶ 77-79]. This complainant reported an incident between herself and Silva when the two were freshmen in high school. Attached as Exhibit E is a redacted copy of said

report. The reported incident occurred in 2010 when the victim was fourteen years old. The report to Lafayette Police Department was made eight (8) years later, on August 3, 2018 [*Id.*].Thus, this incident occurred while both Silva and the victim were minors, before either Silva or complainant were students at UL Lafayette, before either Silva or complainant were bound by UL Lafayette's Student Code of Conduct, and before the MOU was ever signed.

Plaintiffs additionally allege that on at least four occasions, members of LCG "failed to properly apply Act 172, failed to follow the processes and procedures required under the MOU, and otherwise failed to protect and/or ratified Silva's conduct" [Doc. 101, ¶313; also see ¶71]. The Third Amended Complaint does not explicitly provide these referred to incidents. However, defendant's best inference is that plaintiffs are referring to reports made from (1) ¶¶61-73, (2) ¶¶74-76 [see Exhibit D], (3) ¶¶77-79 [see Exhibit E], and (4) ¶¶83-87. Incidents referred to as #1 and #4 did not occur in Lafayette, thus Lafayette Police Department would not have jurisdiction over these incidents nor did they take these complaints or speak with these complainants.

*ii. Contents of the MOU regarding LCG*

The MOU provides six (6) topics of agreement regarding the Lafayette Police Department [Exhibit A]. The common language used in these bullet points regards "sexually-oriented criminal offenses that may have occurred on its campus or involved a student as a victim or an accused" [Exhibit A, p. 4 bullet points 2, 3, 4, 5, and 6]. Alleged incident #1 occurred in 2014, prior to the MOU becoming effective, [Doc. 101, ¶¶61-74]; alleged incident #2 occurred and was reported in 2016, prior to the MOU becoming effective [Doc. 101, ¶¶74-76; Exhibit D]; alleged incident #3 occurred in 2010 but was reported eight years later in 2018, and concerned high school students not enrolled at post-secondary educational institutions, and the incident did not occur on the campus of

any post secondary educational institution; and alleged incident #4 was not reported to the Lafayette Police Department, occurred in Ruston, Louisiana, did not involve students within Lafayette Parish, and Lafayette Consolidated Government was not involved in this investigation.

*iii. Actions of LCG*

Exhibit D provides the investigation conducted by Officer Jonathan Richard in response to the complaint made on November 16, 2016. The incident report shows that Officer Richard spoke with complainant who advised that she did not wish to pursue charges if Silva would delete a video depicting the two of them having sex, but that if the video ever resurfaced, then she would pursue charges. Officer Richard contacted Silva by telephone whereby Silva agreed to delete the video. Silva was then advised that the complainant will pursue charges if the video ever resurfaces [Exhibit D, p. 4].

Exhibit E provides the investigation conducted by Detective James Gayle in response to the complaint made on August 3, 2018. Detective Gayle audio recorded his interview with complainant and forwarded the entire file to the District Attorney's office for review [Exhibit E, pp. 4, 6]. The report also states that this case was being reviewed by the District Attorney's Office for any possible juvenile charges against Silva for the year 2010 [Exhibit E, p. 6]. The confidentiality laws for juvenile crimes are much stricter than the confidentiality laws for adult crimes. This is because "the legislature intended to keep the records of all juvenile proceedings confidential." *Gannett River States Publ'g Corp. v. Landry*, 22-452 (La. App. 3 Cir 03/22/23), 363 So. 3d 580, 587. Louisiana Children's Code article 404 states that "[j]uvenile cases shall be docketed and handled separately from regular criminal and civil cases, and **juvenile case records shall be confidential and kept separately**." Confidentiality is further echoed in La. Ch.C. art. 412 which provides that "[r]ecords

and reports concerning all matters or proceedings before the juvenile court, except traffic violations, are **confidential** and shall not be disclosed except as expressly authorized by this Code. Any person authorized to review or receive confidential information shall preserve its confidentiality unless a court order authorizes him to share with others."

The MOU includes provisions for situations that are subject to confidentiality requirements. This provision states that "[t]he Lafayette Police Department agrees to: . . . Notify UL Lafayette's Title IX Coordinator, to ***the extent we are able with respect to any confidentiality requirements***, of any report of a sexually-oriented criminal offenses that may have occurred on its campus or involved a student as a victim or an accused is fully investigated." [Exhibit A, p. 4]. Thus, LCG was not even authorized to report this incident to UL Lafayette because of juvenile confidentiality requirements.

*iv. Facts regarding timeliness of the Complaint*

Plaintiffs' Third Amended Complaint, with the section titled "TIMELY FILING OF COMPLAINT," pleads why this lawsuit should be deemed timely filed [Doc. 101, ¶¶194 -204]. Plaintiffs state that this lawsuit was timely filed, because they had no opportunity to know of the accruing harm [Doc. 101, ¶194], defendants concealed their failures [*Id*. at ¶197], and that they could not have known of defendants' acts and failures [*Id.* at ¶199].

Plaintiffs allege that the "trigger" date for the commencement of prescription is May 25, 2022, the date that *Jane Doe v. Board of Supervisors of the Univ. Of La. Sys.*, No. 3:22-cv-00338 (M.D. La, filed May 25, 2022) was filed [*Id*. at ¶ 202]. Plaintiffs further provide that they were provided information for the first time, in explicit detail, about defendants' failures, which were precluded from discovery due to Defendants' conduct [*Id.*]. The lawsuit filed on behalf of these plaintiffs was filed on July 13, 2022 [Doc. 1].

After reviewing 12(b)(6) motions of defendants, the Court in *Jane Doe v. Board of Supervisors of the Univ. Of La. Sys* ruled that prescription commenced against plaintiff when she read the USA Today article titled " Six Women Reported A Louisiana College Student For Sexual Misconduct. No One Connected the Dots" [Exhibit F, p. 38].

Plaintiff P.P. provides that she spoke with the author of this article, Kenny Jacoby, in March 2021, prior to the publication of his May 26, 2021 article [Doc. 101, ¶144]. P.P. states that Jacoby spoke with her about "the investigation he was conducting on Silva and the Louisiana higher education system" [*Id.*].

Additionally, in March 2021, J.B. discovered that there was an upcoming news article that would be published about Silva, because Silva provided this information to J.B. as the reason for his recent strange behavior and more-frequent consumption of alcohol [Doc. 101, ¶¶168-69]. J.B. then researched Silva on the internet and found a Twitter thread from another of his victims, which detailed his sexual abuse of others [*Id.* at ¶170]. J.B. contacted the author of this Twitter thread, got the contact information of P.P., and discovered how similar her experiences were to Silva's other victims [*Id.* at ¶173].

LCG asserts that the prescription period for plaintiffs' claims commenced when they discussed Silva and Louisiana higher education systems with Jacoby or upon the publication of his article, and not at the later time when Doe filed suit in the Middle District of Louisiana.

*v.* *Claims against LCG*

Plaintiffs' claims against LCG are found in Counts VII and VIII of the Complaint, where they assert a violation of 42 USC 1983 by way of the 14th Amendment of the United States Constitution. Plaintiffs claim that under the 14th Amendment, they had a substantive right to be "free from the risk

of serious bodily injury or harm created by or increased by an affirmative act of the State." [Doc. 1, ¶305]. Plaintiffs claim that LCG "maintained a custom and policy and/or pattern and practice of failing to adequately implement, monitor, or enforce policies, practices, guidelines, and other measures related to Act 172, and specifically authorized and allowed Victor Silva to repeatedly and habitually perpetuate crimes against new victims." [*Id.* at ¶308].

Plaintiffs also assert a "failure to train and supervise" claim against LCG in Count VIII of the Complaint [*Id.* at ¶¶331-33], and again assert a purported 14th Amendment violation under a "state-sponsored" bodily harm theory [*Id.* at ¶344].

Despite the allegations, Mover shows that commencing the prescriptive period for this lawsuit on even the latest of the aforementioned dates would result in this suit being filed untimely. Plaintiffs' assertion of timeliness is that they could not have known of the accruing harm until they learned that a similar lawsuit was filed in the Middle District of Louisiana in May 2022 [*Id.* at ¶¶ 202-04]. Plaintiffs have asserted that LCG is liable to them for deprivations of their Constitutional rights to Due Process and Equal Protection and to be free from "state-sponsored" bodily harm [*Id.* at ¶¶330 & 344]. However, as shown below, plaintiffs claims are either prescribed as untimely, or fail to state a claim upon which relief can be granted, since courts in this Circuit do not recognize the "state created danger" theory doctrine as a viable cause of action. Further, this Circuit does not recognize a "failure to investigate" claim, either. Moreover, plaintiffs' allegations that LCG failed to follow certain policies or the Memorandum of Understanding for reporting purposes fails to state a viable 14th Amendment claim, especially when a majority of the prior complaints of sexual assault occurred ***before*** Act 172 was enacted or ***before*** the MOU was executed. Thus, all claims against LCG should be dismissed, with prejudice.

## II. LAW AND ARGUMENT

### *A. Motion to Dismiss Standard of Review*

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000); FRCP 12(b)(6). However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Cyrio v. Hunt*, 2007 WL 2772222 at *4 (E.D. La. Sept. 19, 2007)(citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990)).[3]

A motion to dismiss for failure to state a claim is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*¸ 281 F.3d 1338, 1343 fn.6 (5th Cir. 1994). In considering such a motion, the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, this principle is subject to some limitations. As explained by the Fifth Circuit court:

> First, conclusory allegations and unwarranted deductions of fact are not accepted as true. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982) citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir .1974); *Collins*, 224 F.3d at 498. Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, ... (2007) quoting *Papasan v. Allain*, 478 U.S. 265, 286 ... (1986).
>
> To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. The plaintiff's obligation is "to provide the 'grounds' of his 'entitlement to relief' [and] requires more than mere labels and conclusions." *Id*. at 1964-1965 citing *Papasan*,

[3]The Memorandum of Understanding between LCG and UL Lafayette referenced in the Complaint is a public record; thus, it is attached hereto as Exhibit A.

> 478 U.S. at 286. The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 1965 citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004). If a plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*. at 1974.

*Lawrence v. Morris*, 2010 WL 1434288, at *2 (W.D. La. Mar. 16, 2010), report and recommendation adopted, 2010 WL 1434286 (W.D. La. Apr. 8, 2010).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation is "to provide the 'grounds' of his 'entitlement to relief' [and] requires more than mere labels and conclusions." *Id.* at 1964-1965 citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986). The allegations must be sufficient "to raise a right to relief above the speculative level"; "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1965 citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-236 (3d ed.2004). If a plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 1974. "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to plaintiff.'" *Taha v. William Marsh Rice Univ*., 2012 WL 1576099, at *2 (S.D. Tex. 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

***B. Plaintiffs' claims are prescribed***

Plaintiffs' Complaint asserts that it is timely based on the equitable doctrine of *contra non valentem* [Doc. 101, ¶¶194-204]. However, even applying this sparingly-used equitable doctrine will

not save Plaintiffs' Complaint, because their filing still falls outside of the prescriptive window.

Typically, "[t]he party raising an exception of prescription has the burden of proving that the claim has prescribed. *Campo v. Correa*, 2001-2707 (La. 06/21/02); 828 So.2d 502, 508. However, when it appears on the face of the pleadings that prescription has run, the burden shifts to the opposing party to show that prescription was suspended or interrupted. *Id.*" *Babineaux v. State*, 2004-2649 (La. App. 1 Cir 12/22/05), 927 So. 2d 1121, 1124. For delictual actions such as the action herein against LCG, the liberative prescription period commences to run from the day injury or damage is sustained is one year. La. C.C. art. 3492. Plaintiffs allege that their injuries occurred in 2015, August or September 2020, and February 2021 [Doc. 1, ¶¶98-101, 137-139 and 148-56]. Because these Plaintiffs' injuries occurred more than one year prior to the filing of this lawsuit on July 13, 2022, Plaintiffs bear the burden of showing that prescription was suspended or interrupted.

The Reconstruction Civil Rights Acts, as codified in 42 U.S.C. §§1981, 1983 and 1985, do not contain a specific statute of limitations. When Congress fails to set a time limitation on a federal action, the settled practice is to borrow the analogous state law prescriptive period. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). It is well settled in Louisiana under La. C.C. art. 3492 that a plaintiff has one year from the date on which the alleged wrong occurred to file a claim for violation of his constitutional rights. *See Watts v. Graves,* 720 F.2d 1416 (5th Cir. 1983); *Jones v. Orleans Parish School Board*, 689 F.2d 342 (5th Cir. 1982), *cert denied* 461 U.S. 951 (1983). Prescription runs against all persons unless exception is established by legislation. La. C.C. art. 3467.

Accrual of a § 1983 claim is governed by federal law: "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.' " *Russell v. Bd. of Trustees*, 968 F.2d 489,

493 (5th Cir.1992)(quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987)), *cert. denied*, 507 U.S. 914 (1993). A plaintiff's awareness encompasses two elements: "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski* I, 51 F.3d at 516. A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. See *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir.1983). ***Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further***." *Piotrowski* I, 51 F.3d at 516.

Under federal law, a cause of action accrues "the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint." *Helton,* 832 F.2d 332, 334-35 (5th Cir. 1986). Based on the allegations of the Complaint, Plaintiffs knew they were wronged. Indeed, even if they did not know they were the victim of a tort at the time of the purported sexual assaults, the factual allegations reveal specific knowledge each plaintiff obtained both before and after the alleged sexual assaults which were more than sufficient to trigger the running of the prescriptive period. Yet, Plaintiffs failed to timely file a lawsuit asserting violations of their federal constitutional rights. As outlined below, this lawsuit was not filed until July 2022, more than one year ***after*** Plaintiffs admittedly had sufficient information and knowledge to incite inquiry for purposes of prescription; therefore, plaintiffs' reliance on the filing of another lawsuit in the Middle District of Louisiana in May of 2022 is misplaced.

Likewise, plaintiffs' inaction is not excused under the doctrine of *contra non valentem agere nulla currit praescriptio.* See *Restrepo v. Fortunato*, 556 So.2d 1362 (La. App. 5 Cir.), *writ denied*, 560 So.2d 11 (La.1990)(Where a claim has prescribed on its face and plaintiff relies upon suspension of prescription, plaintiff bears burden of establishing suspension. If the plaintiff was beaten by

police, he had sufficient facts upon which to file a suit at that time; thus, plaintiff failed to prove prescription was suspended). Because the doctrine of *contra non valentem* is a judicially-created exception to the general statutory rule, the courts have been reluctant to apply the exception. *Cross v. Lucius*, 713 F.2d 153 (5th Cir. 1983).

Here, Plaintiffs specifically attempt to invoke the equitable tolling doctrine of *contra non valentem* in a section of their Complaint entitled "Timely Filing of Complaint" [Doc. 101, ¶¶194-204]. In those paragraphs, they claim:[4]

> 194. As it relates to the conduct alleged in this complaint, Plaintiffs had no opportunity to know of the accruing harm, and could not have known of the harm, because of the intentional and/or reckless actions, inactions, and omissions of the Defendants, including failing to abide by internal policies and procedures related to sexual violence and misconduct, failing to make mandatory reports, failing to undertake appropriate investigations, failing to rigorously enforce rules related to sexual misconduct, and willfully disregarding the requirements of Act 172.
>
> 195. Louisiana Courts have recognized four categories of *contra non valentem*, including "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action" and "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138, 1149 (La. Ct. App. 2022). Courts are instructed "to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.'" *M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312, 321 (La. Ct. App. 2015)(internal quotation marks omitted)(quoting *Wells v. Zadeck*, 89 So.3d 1145, 1150(La. 2012)).
>
> 196. The "third category of *contra non valentem* applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." *Carter v. Haygood*, 892 So.2d 1261, 1269 (La. 2005).

---

[4] Mover notes here that these paragraphs contain inappropriate group pleadings and/or otherwise fail to state a claim upon which relief can be granted as argued more fully below.

197. Upon information and belief, Defendants undertook efforts to conceal their failures related to timely, effectively, and appropriately investigating, reporting, and following up, and to generally protect vulnerable students from harm. Defendants' actions made it impossible for Plaintiffs to know the danger they were in, or that Defendants could have prevented the harm but chose not to do so.

198. "The fourth category of contra non valentem, commonly referred to as the discovery rule, provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Anding*, 342 So.3d at 1149.

199. Plaintiffs could not have known of Defendants' acts and failures. The only information available to Plaintiffs were Defendants' public representations related to adopting and implementing policy aligned with state law. Plaintiffs had no ability to know of Defendants' failures, nor was it unreasonable for Plaintiffs to rely upon Defendants' representations that Defendants would take appropriate measures to supervise Louisiana's public universities, implement policies to prevent sexual assault, and hold universities accountable for failing to maintain a protective system on their campuses.

200. Moreover, the fact that Plaintiffs were aware of their attacks does not equate to notice of Defendant Board's failures to implement a protective system.

201. Given the Defendants' conduct, it would be inequitable for Plaintiffs' claims to be barred by the limitations period under the doctrine of *contra non valentem agree non currit prescriptio*, which translates to mean "no prescription runs against a person unable to bring an action."

202. Moreover, in or around May 2022, an action was filed in this Court against certain of the Defendants related to Defendants' complicity and failures in preventing sexual misconduct and harm throughout the University system. For the first time, and in explicit detail, this action provided information about Defendants' failures, which were precluded from discovery due to Defendants' conduct.

203. On November 9, 2022, and again on April 11, 2023, Plaintiffs learned new information about Defendants' willful misconduct in contravention of Act 172, which they could not have known upon filing their original Complaint on July 13, 2022, or upon filing their First Amended Complaint on November 4, 2022.

204. In short, Plaintiffs – women who experienced sexual assault at the hands of a common perpetrator – could not have known of the Defendants' failures or their

> willful refusal to implement proactive measures, which allowed Victor Silva to sexually assault an unknown number of women with impunity over the course of over six years, across multiple universities in the State of Louisiana, and in multiple states across the country.

As discussed more fully below, these blanket and conclusory assertions are simply insufficient to interrupt or suspend prescription in this case. There are no allegations whatsoever that LCG did anything to prevent plaintiffs from timely pursuing their claims, nor were there any legal barriers to the plaintiffs bringing this action. A close reading of the Complaint shows, at a minimum, that the plaintiffs learned of other women who were allegedly sexually assaulted by Silva in 2015, August or September 2020, February 2021 or at the latest, when they met/spoke with Jacoby in March 2021 and/or the publication of Jacoby's news article in USA Today in May of 2021. Nonetheless, this lawsuit was not filed until **July 13, 2022.**

Plaintiff M.D. claims that she was assaulted in the Spring of 2015. There are no specific allegations whatsoever that LCG or its agencies (including LPD) had any knowledge or reports of Silva's purported sexual assaults which pre-date when M.D. claims she was sexually assaulted. In addition, Act 172 was not even enacted at this time to trigger any purported duty to report; thus, her theories of liability against LCG fail to state a claim upon which relief can be granted.

Moreover, the allegations contained in the Complaint indicate sufficient knowledge to have otherwise incited or prompted Plaintiffs to make further inquiry, thus starting the tolling of the prescriptive period. As this Honorable Court is well aware, Congress failed to provide a specific statute of limitations to govern Section actions. Title 42 U.S.C.A. 1988 endorses the borrowing of state-law limitations provisions where doing so is consistent with federal law; Section 1988 does not,

however, offer any guidance as to which state provision to follow. *Owens v. Okure*, 488 U.S. 235 (1989).

The question before the court in *Owens* was what limitations period should apply to a Section 1983 action, where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions. A unanimous court held that the "residual or general personal injury statute of limitations applies." *Owens, supra*.

In its decision to use a state's residual or general personal injury statute, the High Court relied on *Wilson v. Garcia*, 471 U.S. 261 (1985). In *Wilson*, the Court held that §1988 requires courts to borrow and apply to all §1983 claims a State's personal injury statute of limitations. Based on the legislative history of §1983 and the wide array of claims now embraced by that provision, the Court ruled that §1983 "confers a general remedy for injuries to personal rights." *Owens, supra,* citing *Wilson, supra* at 471 U.S. at 278. The Court further noted that because "§1983 claims are best characterized as personal injury actions," a State's personal injury statute of limitations should be applied to all §1983 claims. *Owens, supra*.

One issue not addressed in *Wilson*, was ***which*** state prescriptive statute a court was to apply in §1983 cases. As the district courts of different States and several Court of Appeals varied over how to determine which statute applied, the *Owens* Court determined the appropriate guidelines for the lower courts to apply in such cases. Therefore, the Court's goal in deciding *Owens* was "to provide courts with a rule for determining the appropriate personal injury limitations statute that can be applied with ease and predictability in all 50 States." *Owens, supra*. The Court noted:

> In marked contrast to the multiplicity of state intentional tort statutes of limitations, ***every State has one general or residual statute of limitations governing personal injury actions***. Some States have a general provision which applies to all personal

> injury actions with certain specific exceptions. Others have a residual provision which applies to all actions not specifically provided for, including personal injury action. ... Indeed, the very idea of a general or residual statute suggests that each State would have no more than one. ***Potential §1983 plaintiffs and defendants therefore can readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a §1983 action.***

*Owens*, 488 U.S. at 245-248 (Emphasis ours). Based on the expansive claims that may be brought under §1983, the Court ruled that "where state law provides multiple statutes of limitations for personal injury actions, courts considering §1983 claims should borrow the **general or residual** statute for personal injury actions." *Id.* at 249-250. Furthermore, the Court directed that "[c]ourts should resort to residual statues of limitations only where state law provides multiple statutes of limitations for personal injury actions and the residual one embraces, either explicitly or by judicial construction, unspecified personal injury actions." *Id*. In Louisiana, the clear "residual" statute for personal injury actions is the one year liberative prescription under La. C.C. art. 3492. The last date plaintiffs' purported knowledge of facts sufficient to prompt further inquiry is in May of 2021 when the USA Today article was published; thus, the original Complaint filed on ***<u>July 13, 2022</u>*** simply comes too late.

Equitable tolling is unavailable to save plaintiffs' claims. *Contra non valentem agree non currit praescriptio* "means that prescription does not run against a person who cannot bring his suit. *Carter v. Haygood,* 04-0646 (La. 1/19/05), 892 So.2d 1261, 1268; *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992). *Contra non valentem* is a jurisprudentially-created exception to the general rules of prescription. The doctrine is based on the premise that, in some circumstances, equity and justice require that prescription 'be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will.' (Citations omitted.)

*Wimberly v. Gatch*, 93-2361 (La. 4/11/94), 635 So.2d 206, 211." *Babineaux v. State*, 2004-2649 (La. App. 1 Cir 12/22/05), 927 So. 2d 1121, 1124. "The doctrine of *contra non valentem*, however, only applies in *exceptional circumstances*. La. C.C. art. 3467, Official Revision Comment (d); *Renfroe v. State, Department of Transportation and Development*, 01-1646, p. 9 (La. 2/26/02), 809 So. 2d 947, 953." *Stevens v. St. Tammany Par. Gov't*, 2019-1555 ( La. App. 1 Cir 04/08/21), 322 So. 3d 1268, 1281. The doctrine of *contra non valentem* recognizes that "prescription does not run against a party who is ***unable*** to act." *Corsey v. State, Through DOC*, 375 So.2d 1319, 1321 (La. 1979). "*Contra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." *Daigle v. McCarthy*, 444 F.Supp.2d 705, 710 (W.D. La. 2006).

The Louisiana Supreme Court generally recognizes four factual situations in which the doctrine of *contra non valentem* applies so as to prevent the running of prescription:

1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;

3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and

4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

The first two categories of the doctrine are not relevant to this case and, therefore, are not further discussed. The third category applies to cases where defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies. The cause of action accrued, but plaintiff was prevented from enforcing it by some reason external to his own will.

Modern jurisprudence also recognizes a fourth type of situation where *contra non valentem* applies so that prescription does not run: Where the cause of action is not

> known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned. This fourth category, commonly known as the discovery rule, provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based.

*Doe v. Roman Catholic Diocese of Lafayette*, 2008-1088 (La. App. 1 Cir 12/23/08)(internal citations omitted).

Plaintiffs point to the third category of *contra non valentum*, where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action [Doc. 101, ¶¶ 195, 196]. Plaintiffs plead that LCG "conceal[ed] knowledge about Victor Silva's misconduct," without more facts or specificity [Doc. 101, ¶¶ 326(d), 337(d)]. Plaintiffs provide no instances to support their claim that LCG undertook efforts to conceal their failures related to timely, effectively, and appropriately investigating, reporting, and following up, as alleged in ¶197 of the Third Amended Complaint. LCG provides Exhibits D and E to defend these claims brought before this Honorable Court to show that they diligently investigated reports and communicated/forwarded files to the District Attorney's office for charging decisions. LCG did not fail, nor did they conceal their actions.

Plaintiffs also point to the "discovery rule" of *contra non valentum*. They assert that they first learned "in explicit detail" of Mover's purported failures in May 2022, when a similar suit was filed in the Middle District of Louisiana; thus, plaintiffs rely upon the discovery rule found in the fourth category of *contra non valentem* that prevents prescription from running against one who did not know or could not have reasonably known of the facts upon which her cause of action is based. However, "[a] plaintiff will be deemed to know what he could have learned through reasonable

diligence. *Renfroe v. State, Dept. Of Transportation and Development*, 01-1646 (La. 2/26/02), 809 So.2d 947, 953. Generally, the prescriptive period commences when there is enough notice to call for an inquiry about a claim, **not when an inquiry reveals the facts or evidence to sufficiently prove the claim**. See *Terrel v. Perkins*, 96-2679 (La.App. 1 Cir. 11/7/97), 704 So.2d 35, 39." *Babineaux v. State*, 2004-2649 (La.App. 1 Cir 12/22/05), 927 So. 2d 1121, 1124-25. Additionally, "[p]rescription runs from the date a plaintiff first suffers appreciable damages, even though he may only later come to a more precise realization of the full damages he has suffered. *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992); see also *Laughlin v. Breaux*, 515 So. 2d 480, 482 (La.App. 1st Cir. 1987)." *Doe v. Doe*, 95-0006 (La.App. 1 Cir 10/06/95), 671 So. 2d 466, 471. The doctrine does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action. Once a claimant learns that he has been injured, the burden is on him to determine whether he should file suit. *Colonial Penn. Ins. v. Market Planners Ins. Agency Inc*., 157 F.3d 1032, 1034 (5th Cir. 1998); see also *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La.1987).

Plaintiffs herein plead that *contra non valentem* should apply and claim that their Complaint is timely, because they had no opportunity to know of the accruing harm until May 2022, when a similar action was filed in the Middle District [Doc. 101, ¶¶194-204]. However, the discovery rule of *contra non valentem* provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Highlighted below are several instances pled in Plaintiffs' Complaint which are more than sufficient to begin tolling of the one-year prescriptive period.

Plaintiff M.D. was a student at LSU for the 2014-2015 academic year [Doc. 101, ¶¶94-98]. During the Spring 2015 semester, she was sexually assaulted by Silva [*Id.* at ¶101]. Plaintiff M.D. subsequently reported the matter to the LSU Title IX office whereby they declined to pursue any genuine investigation of Silva, failed to provide M.D. with her requested services, and essentially told her to resolve the matter herself [*Id.* at ¶¶105-106]. M.D. was concerned that LSU would not appropriately enforce any ban and sought out a psychological professional who diagnosed her with post-traumatic stress disorder [*Id.* at ¶¶111, 114]. The latest of the events regarding Plaintiff M.D. occurred in 2015, and nothing in M.D.'s allegations even imply LCG's involvement, action or inaction.

Plaintiff P.P. was a student at UL Lafayette in 2019 [*Id.* at ¶118]. P.P. was aware of another sexual assault case against Silva through communications with an acquaintance, but discounted the rumors about him due to the "lack of official action" against him [*Id.* at ¶¶119-120]. Furthermore, Plaintiffs contend that a UL psychology professor used Silva as a case study on serial rapists [*Id.* at ¶122]. P.P. began dating Silva in May 2020 and shortly thereafter received several messages from women previously involved with Silva and from one of Silva's male friends, informing her that Silva was dangerous. One of the women even described Silva as a "monster." [*Id.* at ¶¶ 124,126]. In August 2020, Silva sexually assaulted P.P.'s friend [*Id.* at ¶¶127-31]. Up to that point, Plaintiff P.P. admittedly ignored other strange and alarming behaviors from Silva [*Id.* at ¶132]. Before ending her relationship with Silva in January 2021, Silva coerced P.P. into having sexual intercourse when she did not want to [*Id.* at ¶¶137, 142]. Then, and most importantly to the Court's inquiry as to the date prescription began to toll, around February 2021, Plaintiffs P.P. and J.B. connected and shared their experiences with each other [*Id*. at ¶143]. Shortly thereafter in March 2021, Plaintiff P.P. was

contacted by reporter Kenny Jacoby of USA Today about the investigation he was conducting on Silva and the Louisiana higher education system [*Id.* at ¶144]. All of these admissions, combined, show a significant body of knowledge and facts known to Plaintiff P.P. which are certainly sufficient to "incite additional inquiry" to prompt tolling of prescription much earlier than Jane Doe's May 2022 lawsuit filed in the Middle District of Louisiana.

And finally, Plaintiff J.B.'s experience with Silva began in November 2020, where she was a non-university co-worker of Silva in another state [*Id.* at ¶135]. Neither J.B. nor Silva were university students. In February 2021, J.B. claims Silva raped her [*Id*. at ¶¶148-56]. In March 2021, J.B. and P.P. connected and shared their experiences with each other [*Id.* at ¶143]. Also, in March 2021, Silva admitted to J.B. that he was behaving differently because of an upcoming news article about him [*Id*. at ¶169]. Upon hearing this, Plaintiff J.B. investigated Silva on the internet and discovered details on his sexual abuse of others [*Id*. at ¶170].

The Complaint further asserts that on March 3, 2021, the Husch Blackwell report published findings about LSU's Title IX policies and processes [Doc. 101, ¶ 88]. Then, on May 26, 2021, Jacoby published his article on Silva and Louisiana's higher education system.[5] Despite all of this wealth of knowledge, facts and information admittedly known by Plaintiffs, they nonetheless assert that it was not until *May of 2022* that they learned "for the first time" and "in explicit detail" information about defendants' purported failures, "which were precluded from discovery by Plaintiffs due to Defendants' conduct" when Jane Doe filed suit in the Middle District of Louisiana

---

[5]https://www.usatoday.com/in-depth/news/investigations/2021/05/26/louisiana-officials-skirted-law-meant-curb-campus-sex-crimes/7048845002/

[*Id.* at ¶202].[6] However, the specific factual allegations contained in the remaining portions of the Complaint clearly show that there was sufficient knowledge, much earlier than the May 2022 lawsuit, to incite a reasonable person to make additional inquiry.

Prescription commences when a plaintiff obtains "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Bailey v. Khoury*, 04-0620 (La. 1/20/05), 891 So.2d 1268, 1276, citing *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502, 510. The Complaint, containing 345 Paragraphs, goes into explicit detail of facts known to each Plaintiff, which categorically shows that they had actual knowledge that they were the victim of a tort and/or had constructive knowledge that something was amiss which needed further inquiry.

Moreover, an injured party has constructive notice when he or she possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry, and includes knowledge or notice of everything to which that inquiry might lead. *Alexander v. Fulco*, 39,293 (La. App. 2 Cir. 2/25/05), 895 So.2d 668, 671, writ denied, 05-0781 (La. 5/6/05), 901 So.2d 1107; *K & M Enterprises of Slaughter, Inc. v. Richland Equipment Co., Inc*., 96-2292 (La. App. 1 Cir. 9/19/97), 700 So.2d 921, 925. By their own admissions, Plaintiffs made their own inquiry and investigations on the internet, made reports to local law enforcement, connected with other purported victims, heard information from friends who tried to warn them of Silva's past, and submitted to an interview with a reporter (Jacoby) – all of which they claim revealed that they were the victims of wrongful conduct that caused them harm. Furthermore, liberative prescription runs against all

[6] "Defendants' conduct" is not articulated here and constitutes both an improper group allegation and a conclusory allegation.

persons unless exception is established by legislation. La. C.C. art. 3467. No liberative prescription exceptions created by legislation apply here.

Plaintiffs' Complaint establishes that J.B. and P.P. connected with one another, among other victims of Silva via Twitter. It also establishes that both of those Plaintiffs were aware of the article's soon-to-be publication, and P.P. was contacted by the author of the article which was published in May of 2021. Even if we are to apply the sparingly-used doctrine of *contra non valentem* here and accepting Plaintiffs' assertions as fact, it cannot be said that they "had no opportunity to know the accruing harm, and could not have known of the harm." [Doc. 101, ¶194]. At the latest, they had opportunity to know of the alleged harm when the investigative reporter published his article about Silva and the Louisiana higher education system that he interviewed P.P. for. Plaintiffs' claims are prescribed, because (1) the commencement of the prescriptive period begins on the date the loss/ injury was sustained, (2) *contra non valentem* cannot be applied, and (3) even if *contra non valentem* were to be applied, Plaintiffs had constructive knowledge of their cause of action long before Jane Doe filed her suit in the Middle District in May 2022.

***C. State created danger doctrine***

Plaintiffs have earlier admitted and agreed that the doctrine of state-created danger is not recognized in the Fifth Circuit [Doc. 38, p. 8] but have maintained their pleading of the state created danger doctrine in their Third Amended Complaint [Doc. 101, ¶¶ 305, 334 & 344]. Furthermore, plaintiffs requested leave to amend their Original Complaint "to better enunciate their causes of action," yet this claim has been re-plead in the Third Amended Complaint [*Id.*]. Since the filing of Doc. 38, the Fifth Circuit has not changed its position that it "has never adopted a state-created

danger exception to the sweeping 'no duty to protect' rule." *Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023). The *Fisher* Court further went on to provide:

> We hasten to underscore this important point: Our holding today should not be misunderstood to say that the student—or any future plaintiff—lacks any federal redress whatsoever. To the contrary, Title IX provides a cause of action for "student-on-student harassment" under certain circumstances.

*Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023). Moreover, in the per curiam ruling in *Cook v. Hopkins*, 795 F. App'x 906, 914 (5th Cir. 2019), the Court stated:

> The Due Process clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. But the Supreme Court has held that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs*., 489 U.S. 189, 196 ... (1989). And **the "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.**" *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002) (quoting *DeShaney*, 489 U.S. at 197)). However, in "certain limited circumstances," the state can form a "special relationship" with an individual that "imposes upon the state a constitutional duty to protect that individual from dangers, including . . . private violence." *Id.* at 324. Those "certain limited circumstances" are instances where the state affirmatively exercises its powers "to restrain the individual's freedom to act on his own behalf 'through incarceration, institutionalization, or other similar restraint of personal liberty.'" *Id.* (quoting *DeShaney*, 489 U.S. at 200).

*Cook v. Hopkins*, 795 F. App'x 906, 913 (5th Cir. 2019). Here, as in *Cook*, there are no allegations that LCG or its agents or employees restrained Plaintiffs' liberty in any way sufficient to show that a "special relationship" existed between LCG and the plaintiffs.

And while plaintiffs' Third Amended Complaint is replete with allegations that either Silva was emboldened (due to his lack of arrest and prosecution) to continue his assaults and/or that the plaintiffs themselves were somehow led to believe that the rumors they heard about Silva's past were

overlooked (since no type of criminal or disciplinary action was taken against him), such allegations are insufficient to state a viable claim against LCG, since the Fifth Circuit does not recognize a state-created danger theory.[7] And, as recently as June 27, 2022, the Fifth Circuit again affirmed that it has "repeatedly declined to recognize the state-created danger doctrine." *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020). See also, *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020) (dismissing a case on qualified immunity grounds, because the Fourteenth Amendment claim required recognition of the state-created-danger theory); and *Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094 (5th Cir. 2022).

Plaintiffs assert that under the 14th Amendment, they have a "substantive right to be free from the risk of serious bodily injury or harm created by or increased by an ***affirmative*** act of the State," and that Mover is precluded from taking "affirmative acts that directly increase the likelihood of harm perpetuated by third parties." [Doc. 101, ¶¶305, 334-35]. To the contrary, the allegations contained in the Complaint assert that LCG and its agents or employees failed to act by failing to

---

[7]As stated succinctly in *Cook*, *supra* at pp. 913-14:

It's true that Deanna might have a viable claim for violation of her due process rights if this circuit recognized the "state-created danger theory," which can make the state liable under §1983 if "it created or exacerbated the danger" of private violence against an individual. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010). Plaintiffs rely heavily on an out-of-circuit opinion, *Okin v. Village of Cornwall-on-Hudson Police Department*, in which the Second Circuit held that the state-created danger theory gave rise to a substantive due process violation where "police conduct . . . encourage[d] a private citizen to engage in domestic violence, by fostering the belief that his intentionally violent behavior [would] not be confronted by arrest, punishment, or police interference." 577 F.3d 415, 437 (2d Cir. 2009). But, as the district court explained, this circuit does not recognize the state-created danger theory, and we decline to do so today, despite Plaintiffs' urging that "[t]his is that case." See *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) (citing *McClendon*, 305 F.3d at 327-33)("This court has consistently refused to recognize a 'state-created danger' theory of §1983 liability even where the question of the theory's viability has been squarely presented."); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 688 (5th Cir. 2017)(Panels in this circuit have repeatedly noted the unavailability of the state-created danger theory). In sum, the district court did not err in dismissing Plaintiffs' due process claims against Defendants.

investigate and arrest Silva and/or failing to alert the University of Lafayette of the complaints made against Silva (in purported violation of the Memorandum of Understanding (Exhibit A).[8] They claim that with respect to the harm perpetuated upon them, LCG "created and increased" the likelihood of harm by "failing to appropriately investigate a potential serial sexual offender" who was enrolled at the defendants' university institutions [Doc. 101, ¶¶ 325, 336].

It is clear that the Fifth Circuit does not recognize the state-created danger doctrine as a viable theory of liability under which LCG can be found liable. It is also clear and expressly provided that all of plaintiffs' claims against LCG (in Counts VII and VIII of the Third Amended Complaint) allege liability based on claims that LCG's (and/or its employees and agencies) conduct created a danger causing them to suffer harm.

"While it is clear that individuals have a substantive due process right to be free from state-occasioned bodily harm, it is equally clear that the Constitution does not, as a general matter, impose upon state officials a duty of care to protect individuals from any and all private harms." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)(citing *DeShaney v. Winnebago County Dep't of Soc. Servs*., 489 U.S. 189, 196-97 (1989)("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation

---

[8]In Counts VII and VIII, Plaintiffs claim that LCG failed to appropriately investigate a potential serial sexual offender who was enrolled in university; halted or decided against pursuant an investigation into allegations against Silva; allowing Silva to avoid criminal charges; failure to follow its obligations under the MOU with University of Lafayette [Doc. 101, ¶¶325-26 and 336-37]. While Plaintiffs plead, in conclusory fashion, that LCG "concealed" knowledge about Silva's sexual misconduct, there are no allegations that LCG concealed information from plaintiffs themselves. See Doc. 101 at ¶¶326(d) and 337(d). However, reading Plaintiffs' Complaint as a whole, it appears as though their factual assertions are that LCG failed report the sexual allegations against Silva pursuant to the MOU. So again, instead of asserting an affirmative act of LCG, its agents or employees, plaintiffs' allegations simply describe nonfeasance and not "affirmative acts." See *Moore v. Dallas Indep. Sch. Dist.*, 370 Fed.Appx. 455, footnote 1 (5th Cir. 2010)(allegations of nonfeasance, including failure to warn of violence, failure to provide adequate training, and failure to curb violence cannot establish that agency, through affirmative acts, created or rendered plaintiff more vulnerable to the danger of being injured, insufficient to state a viable state-created danger claim).

of the Due Process Clause.")); *Moore v. Dall. Indep. Sch. Dist*., 557 F. Supp. 2d 755, 761-62 (N.D. Tex. 2008). Liability does not arise when the state stands by and does nothing in the face of dangers. Failing to provide protection from danger does not implicate the state in the harm caused by third parties. *Stevenson v. Martin County Board of Education*, 3 Fed. Appx. 25, 31 (4th Cir. 2001)(per curiam)(citing *DeShaney*, 489 U.S. at 203)(citations omitted); *Moore v. Dall. Indep. Sch. Dist*., 557 F. Supp. 2d 755, 766 (N.D. Tex. 2008).

The core of Plaintiffs' state-created danger claim is that LCG, its agencies and/or employees failed to properly investigate or report to the University of Lafayette three (3) complaints of sexual misconduct against Silva over a three (3) year period. Such conduct fails to establish a state-created danger claim (even if the Court would entertain that such a claim is plausible/viable). *DeShaney*, 489 U.S. at 203 ("The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."); see also, *Moore, supra* at 767 (N.D. Tex. 2008). Thus, the general rule that state actors are not constitutionally responsible for injuries inflicted by private acts of violence prevails here, and Plaintiffs' Complaint fails to state a viable claim upon which relief can be granted against LCG. Plaintiffs have no legal entitlement to relief based on this theory of liability, since it is not recognized in the Fifth Circuit; thus, their Complaint fails to state a viable claim upon which relief can be granted, and the claims against LCG must be dismissed.

***D. Additionally, this Circuit does not recognize a "failure to investigate" claim***

Finally, mixed in with Plaintiff's state-created danger theory allegations is a purported claim for failing to properly investigate reported sexual assault complaints. However, the Fifth Circuit has specifically held that Section 1983 does not support such a claim.

Failure to investigate or prosecute an offense does not give rise to §1983 liability. See *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001); *Rolen v. City of Brownfield*, 182 F. App'x 362, 364 (5th Cir. 2006). As stated by the court in *Burrell v. Adkins*, 2007 U.S. Dist. LEXIS 95899, 2007 WL 4699166, at *9 (W.D. La. 2007), "[t]here is no constitutional right to an investigation. Therefore, there is no constitutional basis for a Section 1983 action based on an unreasonable investigation." *Id.*, see also *Shields v. Twiss*, 389 F.3d 142, 146 (5th Cir. 2004). "The due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998); *Angelle v. Town of Duson*, 2018 U.S. Dist. LEXIS 167233, at *19 (W.D. La. Aug. 6, 2018). Therefore, plaintiffs' Complaint, to the extent that it attempts to assert a "failure to investigate" claim, likewise fails to state a claim upon which relief can be granted.

### *E. Plaintiffs have not established an unconstitutional custom, policy, pattern, or practice of LCG*

Municipalities may be held liable under §1983 for constitutional violations if: (1) there is a constitutional violation; (2) an official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation. *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) citing *Monell v. Dep't of Soc. Ser.*, 436 U.S. 658 (1978). However, when there is no underlying individual constitutional violation for which the municipal defendant can be held derivatively liable based on its policies or customs, there can be no liability against the municipality or its employees in their official capacities. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999); *Tejada v. Knee*, 228 F.3d 409 (5th Cir. 2000). *Terrell v. Town of Woodworth*, No. 1:21-CV-04224, 2023 U.S. Dist. LEXIS 108422, at *28 (W.D. La. June 7, 2023).

Plaintiffs here have not identified a written or official policy of LCG, and instead alleges liability on behalf of LCG pursuant to its patterns or customs which led to the violation of their 14th Amendment rights.

Here, plaintiffs allegations of unconstitutional customs, practices or patterns are conclusory and lack specificity. The most particular allegation of LCG's unconstitutional customs states that LCG "had customs and policies and/or patterns and practices of violating citizens' constitutional rights to equal protection, including through numerous failures to abide by Act 172, failure to properly train and supervise officers, failure to conduct fair and impartial investigations, covering up misconduct, and failure to terminate officers who violated citizens' rights." [Doc. 101, ¶320]. Defendant shows that LCG is outside the scope of the parties which Act 172 applied to. Additionally, plaintiffs fail to provide any prior incidents showing that (I) LCG failed to properly train and supervise officers, (ii) LCG failed to conduct fair and impartial investigations, (iii) LCG covered up officers' misconduct, or (iv) LCG failed to terminate officers who violated citizens' constitutional rights. Such conclusory statements cannot meet the standards required for this claim to move past this 12(b) Motion.

As stated in *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009):

> A pattern is tantamount to official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)(quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(en banc)). Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842. It is thus clear that a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citations omitted). A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise

> acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).
>
> A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

Plaintiffs' mere threadbare allegations calling LCG's customs and practices "widespread and notorious" and "numerous" do not meet the required pleading standards to survive a 12(b)(6) motion [Doc. 101, ¶¶323, 324]. Thus, LCG seeks dismissal of the claims brought against it in this lawsuit.

***F. Plaintiffs' failure to train and supervise claims are wholly conclusory***

To survive dismissal on this claim, plaintiffs "must plead 'that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference.'*Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 397 (5th Cir. 2017). A plaintiff may show deliberate indifference by demonstrating either that (a) the 'municipality had notice of a pattern of similar violations,' or (b) 'the constitutional violation was the highly predictable consequence of a particular failure to train.' *Id.*" *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023).

First, plaintiffs have failed to identify who the subordinate officer is who was not properly trained or supervised. Thus, the first element of a failure to train and supervise cannot be met.

Second, plaintiffs' claimed 14th Amendment rights to be free from the risk of serious bodily injury or harm created or increased by an affirmative act of the State are not recognized by the Fifth Circuit, as provided in Section "C" of this Memorandum.

Third, plaintiffs have failed to allege a pattern of similar violations by LCG, let alone LCG's notice of such a pattern. Thus, it cannot be determined that LCG was deliberately indifferent.

### *G. LCG could not have affected Silva's ability to travel*

All three (3) plaintiffs allege that if Act 172 were properly enforced, then they would not have been exposed to Silva [Doc. 101, ¶¶ 116, 157, 181]. Lafayette Police Department diligently investigated the reports made to them to the point where the victim did not want to pursue charges or to the point that they did all that they could do via investigation and submitted the entire case file to the District Attorney's office for charges [Exhibit D and E]. Even if Silva had faced the highest level of discipline from universities, expelled and banned from campus, these incidents occurred before enactment of Act 172, off campus and/or out of state. Absent a prosecution resulting in conviction, Silva was free to travel anywhere at any time. Thus, any purported failure to report cannot be said to have caused plaintiffs' alleged injuries.

## III. CONCLUSION

Based on the foregoing, defendant, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, prays that all of plaintiffs' claims against them be dismissed as a matter of law, as the claims are clearly prescribed, are not saved by equitable tolling and/or fail to plead any cause of action that is recognized in this Circuit.

AND FOR ALL GENERAL AND EQUITABLE RELIEF, ETC.

BORNE, WILKES & RABALAIS, L.L.C.

BY: s/Joy C. Rabalais

JOY C. RABALAIS (26476), T.A.
JORDAN JOHN HENAGAN (36206)
GRANT R. SCHEXNAILDER (40040)
K. ELIZABETH HEINEN (24452)
HUNTER B. AHIA (40251)
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, Louisiana 70502-4305
Telephone: (337) 232-1604 Ext. 232
Facsimile: (337) 232-1837
E-mail: rabalais@bornewilkes.com

ATTORNEYS FOR LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), erroneously referred to as "Lafayette Consolidated Government"