## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **M.D., et al.** | § | **CIVIL ACTION NO. 6:22-cv-002089** |
| | § | |
| **VERSUS** | § | |
| | § | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA BOARD OF REGENTS,** | § | |
| **LOUISIANA STATE UNIVERSITY** | § | **MAGISTRATE JUDGE DAVID J.** |
| **BOARD OF SUPERVISORS, et al.** | § | **AYO** |
| | § | |
| | § | |

---

### PLAINTIFFS' MEMORANDUM IN OPPOSITION
### TO BOARD OF SUPERVISORS OF THE UNIVERSITY OF LOUISIANA
### SYSTEM, JOSEPH SAVOIE, AND LES GUICE'S MOTION TO DISMISS

---

Respectfully submitted,

**DORAN & CAWTHORNE, P.L.L.C.**


_____*s/ Pride Doran*_____
Pride J. Doran (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opelousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
nahshon@doranlawfirm.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    Plaintiffs' claims are timely under the doctrine of *contra non valentem* . . . . . . . . . . . 4

      a.  Plaintiff's complaint is timely because Defendants took steps to prevent
Plaintiffs from availing themselves of their causes of action . . . . . . . . . . . . . . . . 6

      b.  Plaintiffs' complaint is timely because Plaintiffs' claims were not
known or reasonably knowable until they learned of Defendants'
actions and inaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.   Plaintiffs have alleged facts that plausibly set out claims under Title IX and 42
U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      a.  Plaintiffs' Complaint is sufficiently specific and alleges facts supporting
their § 1983 claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      b.  Plaintiffs have alleged facts plausibly establishing claims under Title IX. . . . . . . 16

III.  Defendants are not entitled to qualified immunity, or, alternatively, this
Court should permit limited discovery for the purpose of identifying facts
necessary for the Court to rule on this issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      a.  Defendants' actions violated Plaintiffs' clearly established constitutional
Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      b.  This Court should defer its ruling on qualified immunity and allow
for limited discovery to determine Defendants' subjective knowledge,
what investigating steps they took, and what remedial measures, if
any were implemented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*,
706 F.2d 638 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Browning v. Geren*, 2007 WL 3120080 (W.D. La. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629
(1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452
(M.D. La. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 8, 10

*Doe v. Taylor Indep. Sch. Dist. ("Taylor ISD")*, 15 F.3d 443 (5th Cir. 1994)
(en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

*Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017) . . . . . . . . . . . . . . 11, 13, 16, 17, 18

*Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849
(5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*FloQuip, Inc. v. Chem Rock Techs.*, 2016 WL 4574436 (W.D. La. 2016) . . . . . . . . . . . . . . . 12

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . 17

*James v. Tex. Collin Cty.*, 535 F.3d 365 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383
(5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Olabisiomotosho v. City of Houston*, 185 F.3d 521 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . 11

*Pearson v. Callahan*, 555 U.S. 223 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247
(5th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156
(5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . 8

*Taylor v. Warrior Energy Servs., Corp.*, 2017 WL 1190924 (W.D. La. 2017). . . . . . . . . . . . . . 12

*Tyson v. Sabine*, 42 F.4th 508 (5th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 20

*Webb v. Livingston*, 618 Fed. Appx. 201 (5th Cir. 2015) (unpublished). . . . . . . . . . . . . . . . . . . 22

**State Cases**

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138 (La. Ct. App. 2022). . . . . . . . . . . . . . . . 5, 6, 9

*Ashton v. United Parcel Serv.*, 147 So.3d 748 (La. Ct. App. 2014). . . . . . . . . . . . . . . . . . . . . . . 5

*Carter v. Haygood*, 892 So.2d 1261 (La. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113 (La. Ct. App. 2017). . . . . . . . . . . . . . . 9, 10

*M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312
(La. Ct. App. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wells v. Zadeck*, 89 So.3d 1145 (La. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Federal Statutes**

20 U.S.C. § 1681(a), Title IX of the Educational Amendments Act of 1972. . . . . . . . . . . . . . . 16

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**State Statutes**

La.–R.S. 17:3551(H) (2015) (cited as "Act 172"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**Federal Rules of Procedure**

Fed. R. Civ. P. 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

Plaintiffs respectfully submit this Memorandum in Opposition to Defendant Board of Supervisors of the University of Louisiana System (UL System), Joseph Savoie, and Les Guice's (collectively "Defendants") Motion to Dismiss. Plaintiffs would demonstrate unto this Court that (1) their claims are timely pursuant to the doctrine of *contra non valentem*, (2) Plaintiffs have alleged fact plausibly establishing claims under Title IX and 42 U.S.C. § 1983, and (3) Defendants are not entitled to qualified immunity.

## INTRODUCTION

Plaintiffs, M.D., P.P., and J.B. (collectively, "Plaintiffs"), filed suit against the Louisiana Board of Regents, University of Louisiana System Board of Supervisors, Louisiana State University Board of Supervisors, Lafayette Consolidated Government, Joseph Savoie, Les Guice, Thomas C. Galligan, Jr., William F. Tate, IV, Fieldon King Alexander, Toby Aguillard, and John/Jane Doe Chiefs of Police asserting claims pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq*. ("Title IX") and 42 U.S.C. § 1983. In particular, Plaintiffs bring claims stemming from systemic Title IX failures and deprivations of due process, which include events related to sexual assaults perpetrated by Victor Daniel Silva, a former student of LSU, University of Louisiana Lafayette, and Louisiana Tech University from 2014 until 2020.

As set forth in the Third Amended Complaint, the Louisiana General Assembly passed Act 172 in 2015. This legislation was intended to address significant deficiencies in how Louisiana post-secondary institutions, in conjunction with law enforcement, addressed sexual assault and misconduct involving students. [Doc. 101, Third Amended Complaint, at ¶¶ 1-6; 33-34]. Act 172 mandated that post-secondary institutions and responding law enforcement agencies enter into formal agreements memorializing how these entities would communicate and coordinate with each

1

other related to reports of sexual misconduct. *Id.* at ¶¶ 43-44. The purpose of this communication, and the overarching goal of Act 172, was to prevent and mitigate sexual assault and misconduct on campus and involving students, as well as to prevent students accused of misconduct at these post-secondary institutions from transferring undetected within Louisiana's post-secondary system. *Id.* at ¶ 45 ("Act 172 required institutions, such as universities named in this complaint, and law enforcement, including, without limitation, Defendant Lafayette Consolidated Government by and through LPD, Defendant Aguillard, and John/Jane Doe Chiefs, 'to execute a memorandum of understanding whereby the parties would clearly delineate responsibilities and share information in accordance with applicable federal and state confidentiality laws[.]'").

In their Third Amended Complaint, Plaintiffs allege that Defendants individually and collectively failed to abide by the requisites of Act 172, and the responsibilities incumbent upon them to protect students and foreseeable third parties from harm perpetrated against them by people like Victor Silva. Moreover, because Plaintiffs were not privy to the infrastructure Defendants used to implement Act 172, Plaintiffs allege they had no ability to know of Defendants' willful failures during the timeframe of Silva's assaults. In fact, as set forth in the Third Amended Complaint, the concerted effort of Defendants to misdirect students and others into believing Defendants were appropriately enforcing policies and procedures related to sexual misconduct prevented these Plaintiffs from knowing the existence of any claims, even today. *Id.* at ¶¶ 53-94; 194-204.

As acknowledged in a March 2021 letter written on behalf of Defendant Board of Regents, whatever Defendants' outward efforts to assure students and third parties that Defendants were in compliance with Act 172, internally, Defendants failed. In the letter issued to the Presidents of

Louisiana's top four post-secondary institutions (including Defendants Guice and Savoie), Defendant Board noted:

> More needs to be done to protect students enrolled at Louisiana's post-secondary institutions from sexual misconduct. Specifically, we must all ensure enforcement of all sexual misconduct and related policies, implement sexual misconduct and prevention programs, and provide support services for students who raise allegations of sexual misconduct.

*Id.* at ¶ 41, quoting a letter from Defendant Board of Regents to the Defendant Presidents, March, 2021.

This letter all but confirms that Defendants failed to appropriately adopt and implement sufficient measures during the timeframe that such measures could have prevented harm to the Plaintiffs. Moreover, the letter was directed to the Defendant Presidents, as the heads and chief executive officers of the various post-secondary institutions. Yet, and as alleged in the complaint, despite Defendants' failures, Defendants nevertheless continued to receive Title IX funding during the interim of Plaintiffs' tenure at Defendants Guice and Savoie's respective post-secondary institutions. Defendants also outwardly represented that they were in compliance with Act 172, by, for example, adopting policies and memoranda against "power-based violence." *Id.* at ¶¶ 43–49, 51–53.

Defendants now move to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging (1) that Plaintiffs' action is untimely, (2) that Plaintiffs have failed to properly allege claims under Title IX and 42 U.S.C. § 1983, and (3) that Defendants are entitled to qualified immunity. However, Plaintiffs' action is timely pursuant to the doctrine of *contra non valentem*, Plaintiffs have alleged plausible claims under Title IX and 42 U.S.C. § 1983, and Defendants are not entitled to qualified immunity. Thus, Defendants' motion should be denied.

## STANDARD

A motion to dismiss for failure to state a claim should be denied where a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff.").  In other words, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund*, 594 F.3d at 387.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.   Plaintiffs' claims are timely under the doctrine of *contra non valentem*[1]

"As a rule, a limitations defense is not favored at the pleadings stage because the dispositive issue of when the plaintiff became aware of her claim involves questions of fact that generally cannot be resolved without evidentiary development." *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452, 472 (M.D. La. 2023).  "Indeed, the Fifth Circuit instructs that '[Rule 12] dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling.'" *Id.* (alteration in original) (quoting

---

[1] As Defendants note, the same statute of limitations analysis applies to Plaintiffs' Title IX claims against Defendant UL System and their 42 U.S.C. § 1983 claims against Defendants Savoie and Guice.  Accordingly, all such claims are timely under the doctrine of *contra non valentem*.

4

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021)).  As such, "a defendant may prevail on a limitations defense at Rule 12 only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Id.* (alterations in original) (quoting *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983)).

"In Louisiana, the doctrine of *contra non valentem* is a jurisprudential doctrine under which prescription on a cause of action may be suspended."  *Ashton v. United Parcel Serv.*, 147 So.3d 748, 752 (La. Ct. App. 2014); *see also Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) ("To soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit.).  Louisiana Courts recognized four categories of *contra non valentem*:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
> (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138, 1149 (La. Ct. App. 2022).  "These categories allow 'the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.'"  *M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312, 321 (La. Ct. App. 2015) (internal quotation marks omitted) (quoting *Wells v. Zadeck*, 89 So.3d 1145, 1150 (La. 2012)).  Accordingly, the Louisiana Supreme Court has indicated that *contra non valentem* should be viewed through the lens "that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished;

5

thus, of two possible constructions, **that which favors maintaining, as opposed to barring, an**

**action should be adopted**." *Carter*, 892 So.2d at 1268. (Emphasis added).

> **a. Plaintiffs' complaint is timely because Defendants took steps to prevent Plaintiffs from availing themselves of their causes of action**

The "third category of *contra non* applies when the defendant engages in conduct which

prevents the plaintiff from availing [herself] of [her] judicial remedies." *Id*. at 1269.  Stated

differently, this category encompasses

> situations where an innocent plaintiff has been lulled into a course of inaction in
> the enforcement of [her] right by reason of some concealment or fraudulent conduct
> on the part of the defendant, or because of his failure to perform some legal duty
> whereby plaintiff has been kept in ignorance of [her] rights.

*Id*.  As such, this category is implicated "when (1) the defendant engages in conduct which rises

to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions

effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have

been reasonable in his or her inaction." *Anding*, 342 So.3d at 1149.

In their complaint, Plaintiffs allege that they had no opportunity to learn of the harm caused

by Defendants because Defendants took efforts to conceal their malfeasance.  Plaintiffs further

assert that Defendants failed to abide by internal policies and procedures related to sexual

misconduct, failed to make mandatory reports and undertake appropriate investigations, and failed

to enforce rules related to sexual misconduct. [Doc. 101, Third Amended Complaint at ¶¶ 53-94].

Plaintiffs have alleged that they had no reason to suspect that Defendants were failing to abide by

the UL System's internal policies and procedures, nor could Plaintiffs have had reason to suspect

that Defendants were not properly reporting or investigating sexual misconduct. Instead, and as

alleged in the pleadings, Plaintiffs reasonably relied on Defendants' representations that they

would abide by Louisiana law, and that relevant parties in the UL System would abide by their

responsibility to conduct appropriate investigations as contemplated by policies, procedures, and other resources. *Id.* at ¶¶ 194-204.

Defendants in the instant action concealed their failures to implement appropriate policies and procedures to prevent sexual misconduct. Defendants' misrepresentations directly inured to Defendants' benefit, as outwardly indicating compliance with Act 172 entitled Defendants' institutions to continued receipt of Title IX funds.  Not only were Plaintiffs made to believe that Defendants were in compliance with state law, but Plaintiffs were also excluded from the internal process, actions, omissions and misapplication of state law. Defendants' system was closed to the Plaintiffs, foreclosing Plaintiffs from participating in critical policy determinations that directly impacted Plaintiffs' well-being. Moreover, and to the extent the Plaintiffs' claims are predicated on Victor Silva's academic escalation in violation of Act 172, Plaintiffs' had no opportunity to know of the misconduct that Defendants' hid from the public. Plaintiffs' theory of the case rests on Defendants' conduct and as set forth in the four-corners of Plaintiffs' complaint, Defendants took measures to ensure that Plaintiffs did not discover Defendants' malfeasance.  *Id.*

Defendants attempt to avoid the application of *contra non valentem* by asserting that Plaintiffs knew of their assaults at the time they were assaulted.  As Plaintiffs have indicated in other memoranda, Victor Silva is not a party to this action. As to Defendants however, the mere fact that Plaintiffs were aware of Silva's attacks does not equate to notice of Defendants' failures to implement a protective system.  *See Doe*, 650 F.Supp.3d at 473 ("[B]ecause a Title IX heightened risk claim pins liability to the university's action or inaction that resulted in the plaintiff's assault, the claim accrues only when the plaintiff should have reasonably discovered that university authorities knew of the abuser's 'conduct and failed to respond appropriately.'"

(quoting *Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686, 705 (6th Cir. 2022)).[2]  Moreover, Plaintiffs were not on notice of Defendants' failures because Silva faced no lasting discipline. Rather, it is perfectly reasonable for Plaintiffs to have concluded that Defendants were taking appropriate remedial steps pursuant to Title IX and Act 172, regardless of whether any Plaintiffs were satisfied with their individual results.  *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011) ("Title IX does not require flawless investigations or perfect solutions."); *see also Doe*, 650 F.Supp.3d at 475 ("It would be unreasonable to conclude that a plaintiff's knowledge that their individual complaint was mishandled would reveal that the University has a broad de facto policy of deliberate indifference generally." (quoting *Snyder-Hill*, 48 F.4th at 704)).  As such, the lack of discipline faced by Silva would not put the Plaintiffs on notice that Defendants were wholly disregarding the mandates of Act 172 and failing to engage in meaningful investigations.

In May 2022, a separate Silve victim instated suit, which detailed collusion amongst Defendants, other state universities, and law enforcement to dismiss Plaintiffs' reports and protect Silva from the consequences of his actions.  *Cf. Piotrowski v. City of Houston*, 237 F.3d 567, 577 (5th Cir. 2001) (determining that a jury could conclude that the plaintiff was not aware of and did not have reason to suspect the City's affirmative involvement in the contract on her life until a 1993 deposition which revealed that "the City, as opposed to individual officers, had actively protected and/or assisted" the contract organizer).  This, along with Defendants' acts of willful concealment, justify application of the doctrine of *contra non valentem* and render Plaintiffs' claims timely.

---

[2] Any knowledge regarding attacks on other victims would similarly not put Plaintiffs on notice. *See id.* at 475 ("Plaintiff's mere discovery that Silva assaulted other women is not sufficient to put her on notice that ULS knew of such attacks yet ignored them.").

Plaintiffs could not have known, nor could they have suspected that Defendants, in conjunction with the other chief officers at educational institutions and law enforcement entities across the state, had so utterly failed to abide by state law related to the protection of students on campus.  In any event, because this case alleges that Defendants concealed facts upon which Plaintiffs' claims rest, the focus of the Court's inquiry should not be upon the Plaintiffs. To this day, Defendants have not acknowledged the systemic failures leading to Silva's perpetration of abuse. The Court must therefore focus on Defendants' evasive conduct, which requires a stay to the prescriptive period.

Ultimately, Plaintiffs' complaint plausibly alleges facts that demonstrate Defendants made efforts to conceal the facts underlying their lawsuit, thus, the third category of *contra non valentem* operates to make Plaintiffs' complaint timely.

### b.   Plaintiffs' complaint is timely because Plaintiffs' claims were not known or reasonably knowable until they learned of Defendants' actions and inactions

Alternatively, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

"The fourth category of *contra non valentem*, commonly referred to as the discovery rule, provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Anding*, 342 So.3d at 1149.  "Under the discovery rule, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."  *Id.*; *see also Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113, 116 (La. Ct. App. 2017) (indicating that under the discovery rule, "prescription is suspended until the tort victim discovers or 'should have discovered' the facts upon which his or her cause of action

is based"). "In these 'should have discovered' cases, the Supreme Court has focused on the reasonableness of the claimant's 'action or inaction.'" *Morgan*, 234 So.3d at 119.

Here, Plaintiffs have alleged systemic and deliberate indifference. Plaintiffs could not have known of Defendants' acts and failures because Plaintiffs were summarily excluded from Defendants' closed system. Moreover, Plaintiffs were justified in relying on Defendants' representations that Defendants took appropriate measures to investigate, report, and prevent sexual assault, and to otherwise abide by the mandates of Act 172. Defendants continued to accept Title IX funds and Defendants publicly represented that they had entered into memoranda with law enforcement to mitigate and respond to sexual assault and misconduct involving students, or perpetrated by students. *See Sanches*, 647 F.3d at 170 ("Title IX does not require flawless investigations or perfect solutions."). Yet, unbeknownst to Plaintiffs, Defendants in fact failed to implement any such protective measures. Moreover, none of the Plaintiffs could have independently discovered information regarding the Defendants' failures, as educational institutions are generally precluded from disclosing personally identifying student information. *See Doe*, 650 F.Supp.3d at 474 ("Plaintiff also plausibly alleges that she could not have independently discovered this information even had she tried, particularly given FERPA's general rule that educational institutions may not disclose personally identifying information of their students."). As such, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

## II.   Plaintiffs have alleged facts plausibly establishing claims under Title IX and 42 U.S.C. § 1983.

In their Third Amended Complaint, Plaintiffs allege facts plausibly establishing claims against all Defendants. Thus, when reading the Complaint as a whole, rather than focusing on specific portions of each Count, Plaintiffs allege, *inter alia*, numerous instances of Defendants'

failures to report or investigate sexual assault, failure to communicate with other universities and law enforcement regarding such assaults, and failure to act in a manner consistent with their policies, procedures, Title IX, and Louisiana's Campus Accountability and Safety Act.[3]

>    **a.  Plaintiffs' Complaint is sufficiently specific and alleges facts supporting their § 1983 claims.**

"Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). "Of course, § 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Id.* As such, "[t]o state a claim under 42 U.S.C. § 1983, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

"The substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quoting *Doe v. Taylor Indep. Sch. Dist. ("Taylor ISD")*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc)). "A violation of the right to bodily integrity follows

---

[3] Notably, Plaintiffs do not attempt to bring a cause of action under Act 172, nor do Plaintiffs assert that such a cause of action exists under the statute. To the contrary, Plaintiffs rely on Act 172 to establish Defendants' responsibilities under state law, to demonstrate Defendants' knowledge of the issue of widespread sexual assault on Louisiana campuses, and for other contextual purposes. *Cf. Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 659 (W.D. Tex. 2017) ("While the Court agrees that a school's failure to comply with certain DOE guidelines generally cannot, alone, demonstrate a school's deliberate indifference, . . . it also agrees with numerous courts that DOE regulations may still be consulted when assessing the appropriateness of a school's response to reports of sexual assault." (citation omitted)).

from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' *Id.* at 517 (alteration in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

 *i. Plaintiffs' Complaint is sufficiently specific.*

 Defendants attempt to cast Plaintiffs' complaint as lacking specificity because of references to months or seasons rather than a specific date of assault, but Defendants fail to cite any authority for the proposition that a Complaint is defective where the victim of a sexual assault does not remember the exact date of her attack. Moreover, the employment case law relied on by Defendants for this proposition still does not support dismissal on such grounds. In *Taylor v. Warrior Energy Servs., Corp.*, the Court only dismissed one count under state law after determining it did not grant a private right of action. 2017 WL 1190924, 3* (W.D. La. 2017). Defendants' reliance on *FloQuip, Inc. v. Chem Rock Techs.*, is similarly misplaced, as the Court in that case was ruling on "fraudulent conduct," which requires a heightened standard of pleading. 2016 WL 4574436, at 6* (W.D. La. 2016); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Finally, in *Browning v. Geren*, the Court dismissed the action due to the plaintiff's failure "to plead any facts regarding the events surrounding the adverse employment actions **or** the relevant dates." 2007 WL 3120080, 3* (W.D. La. 2007) (emphasis added). Stated differently, the plaintiff in *Browning* did not provide any bases for her claims that would support a finding of discrimination. Conversely, in their Complaint, Plaintiffs plead facts specific to each of their assaults and the circumstances surrounding them.

*ii. Plaintiffs have alleged facts plausibly establishing claims against all Defendants.*

Plaintiffs have alleged facts plausibly establishing claims against all Defendants. In paragraphs 83 through 87, Plaintiffs allege that Victor Silva transferred from the University of Louisiana-Lafayette to Louisiana Tech without the former providing any information regarding Silva's previous assaults to the latter. [Doc. 101, Third Amended Complaint, at ¶¶ 83–84]. While at Tech, a student reported Silva for yet another sexual assault to Tech's Title IX Office. [*Id.* at ¶ 85]. However, when Silva transferred back to Lafayette following this report, Tech did not notify Lafayette of the allegations. [*Id.* at ¶ 86]. In other words, Silva was able to transfer back and forth between Lafayette and Tech with no issue, and the universities failed to share information regarding his assaults as required by Act 172. Because Silva was never flagged, he was ultimately able to assault Plaintiffs P.P. and J.B. Moreover, by failing to investigate allegations against Silva, Defendants effectively revictimized all of the Plaintiffs. *See Doe 1*, 240 F. Supp. 3d at 659 ("Thus, the discriminatory harm can include the harm faced by student-victims who are rendered vulnerable to future harassment and either leave school or remain at school and endure an educational environment that constantly exposes them to a potential encounter with their harasser or assailant."). Accordingly, Plaintiffs have alleged facts plausibly establishing claims against Defendant UL System under Title IX, and against Defendants Savoie and Guice under 42 U.S.C. § 1983.

*iii. Plaintiff M.D. has pleaded facts demonstrating her claims against Defendants.*

Plaintiffs alleged that, in 2014, Victor Silva was a student at LSU when he was reported to Baton Rouge law enforcement for sexual assault. [Doc. 101, Third Amended Complaint, at ¶¶ 61– 62]. Thereafter, Silva transferred UL-Lafayette. [*Id.*, at ¶ 66]. After transferring to ULL, Silva was arrested in April 2015 by LSU police on charges of sexual assault and the arrest was reported to ULL. [*Id.*, at ¶¶ 67–68]. Following these allegations, ULL merely placed Silva on probation

and ordered that he complete behavior management.  [*Id.*, at ¶ 71].  But ULL did not subject Silva to any additional monitoring or reporting requirements.  [*Id.*, at ¶ 71].

Thereafter, Plaintiff M.D. encountered Silva at a university event hosted by an authorized fraternity of LSU in Spring 2015.  [*Id.*, at ¶ 98].  This event occurred after ULL placed Silva on nominal probation and chose not to subject him to monitoring or reporting requirements. Following the event, Silva sexually assaulted M.D. at her dorm on LSU's campus.  [*Id.*, at ¶ 101]. Thereafter, M.D.'s grades fell drastically, she experienced bouts of anxiety and depression, and she was ultimately expelled from LSU.  [*Id.*, at ¶¶ 102, 107].  Defendant Savoie was ULL's President during this time period.  Defendant Savoie's failure to engage in proper oversight of ULL and his failure to ensure that ULL complied with its legal obligations, as well as ULL's failures under state and federal law, were a direct and proximate cause of M.D.'s injuries, as properly investigating Victor Silva for his prior assaults and subjecting him to proper monitoring and reporting requirements would have prevented Plaintiff M.D.'s assault.  As such, Plaintiffs have pleaded facts plausibly establishing that Defendant Savoie's acts and omissions deprived Plaintiff M.D. of her right to bodily integrity.

*iv. Plaintiff P.P. has pleaded facts demonstrating her claims against Defendants.*

As explained above, while enrolled at Louisiana Tech, a student reported Silva for yet another sexual assault to Tech's Title IX Office.  [*Id*. at ¶ 85].  However, Tech ultimately decided not to investigate the allegations.  [*Id*. at ¶ 85].  Furthermore, when Silva transferred back to Lafayette following this report, Tech did not notify Lafayette of the allegations.  [*Id*. at ¶ 86].  As such, Silva was able to transfer to ULL from Tech with no issue, in part because Tech failed to investigate the allegations against him or share information regarding Silva's assaults with ULL as required by Act 172.  Because Silva was never flagged, he was ultimately able to assault Plaintiff

P.P.  Defendant Guice was Tech's President during this time period.  Defendant Guice's failure to engage in proper oversight of Tech and his failure to ensure that Tech complied with its legal obligations, as well as Tech's failures under state and federal law, were a direct and proximate cause of P.P.'s injuries, as properly investigating Victor Silva for his prior assaults and properly reporting the same to ULL would have prevented Plaintiff P.P.'s assault.  As such, Plaintiffs have pleaded facts plausibly establishing that Defendant Guice's acts and omissions deprived Plaintiff P.P. of her right to bodily integrity.

*v. Plaintiff J.B. has pleaded facts demonstrating her claims against Defendants.*

As explained above, Plaintiffs allege that Victor Silva transferred from the University of Louisiana-Lafayette to Louisiana Tech without the former providing any information regarding Silva's previous assaults to the latter.  [Doc. 101, Third Amended Complaint, at ¶¶ 83–84].  While at Tech, a student reported Silva for yet another sexual assault to Tech's Title IX Office.  [*Id*. at ¶ 85].  However, when Silva transferred back to Lafayette following this report, Tech did not notify Lafayette of the allegations.  [*Id*. at ¶ 86].  In other words, Silva was able to transfer back and forth between Lafayette and Tech with no issue, and the universities failed to share information regarding his assaults as required by Act 172.  Because Silva was never flagged, he was ultimately able to assault Plaintiff J.B.  As previously noted, Defendant Savoie was ULL's President and Defendant Guice was Tech's president during this time period.  These Defendants' failures to engage in proper oversight of their institutions and their failures to ensure that their institutions complied with their legal obligations, as well as UL-System's failures under state and federal law, were a direct and proximate cause of J.B.'s injuries, as properly investigating Victor Silva for his prior assaults, sharing such information with other institutions, and subjecting Silva to proper monitoring, reporting, and discipline would have prevented Plaintiff J.B.'s assault.  As such,

15

Plaintiffs have pleaded facts plausibly establishing that Defendant's acts and omissions deprived Plaintiff J.B. of her right to bodily integrity.

### b.  Plaintiffs have alleged facts plausibly establishing claims under Title IX

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The Supreme Court has consistently recognized a private right of action under Title IX.  *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999).

*i. Deliberate Indifference*

A Title IX recipient "intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of" student to student discrimination.  *Id.* at 643.  "Sexual harassment within a school or school program is a form of sex discrimination when the harassment is so severe, pervasive, and objectively offensive that it deprives the victim of educational opportunities or benefits provided by the school."  *Doe 1*, 240 F. Supp. 3d at 658.  A plaintiff can demonstrate deliberate indifference when "an official who . . . has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Plaintiffs make numerous allegations in their complaint plausibly establishing that Defendant UL System was deliberately indifferent to on campus sexual assaults.  Plaintiffs allege that Defendant UL System failed to properly investigate allegations of abuse, failed to notify other universities of abuse, and failed to act in a manner consistent with their policies, procedures, Title

IX, and Louisiana's Campus Accountability and Safety Act.[4]  Stated differently, Plaintiffs have alleged that Defendants turned a blind eye to sex discrimination by failing to appropriately respond to allegations of sexual assault.

Defendant UL System exercised control over Silva.  *See Davis*, 526 U.S. at 644 ("Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment.").  Defendants argue that UL System had no control over Silva simply because the assaults occurred off campus.  However, Defendant UL System exerted significant control over Silva in its ability to discipline him for instances of abuse, its ability to allow Silva to continue taking classes, and its ability to share information with other universities regarding allegations of abuse against Silva.  *See I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 372 (5th Cir. 2019) (indicating that students were under school district control when the alleged sexual assault occurred at an off-premises house party).

Defendants had actual knowledge of Plaintiffs' abuse because Plaintiffs reported their abuse to the universities and their Title IX offices, and at least one incident of abuse was reported to Lafayette by the LSU police.  In fact, following the 2015 assault reported by the LSU police, Silva was briefly placed on nominal probation.  As such, appropriate individuals possessed actual knowledge of the claims against Silva.  *See id.* (finding a school district had actual knowledge of sexual assault when such assault was reported to a school guidance counselor).

---

[4] Plaintiffs do not allege that the mere failure to follow policy automatically subjects Defendant UL System to Title IX liability.  Rather, Plaintiffs assert that the appropriateness of Defendant UL System's response to allegations of on-campus abuse must be viewed in light of the requirements of Act 172.  *Cf. Doe 1*, 240 F. Supp. 3d at 659 ("While the Court agrees that a school's failure to comply with certain DOE guidelines generally cannot, alone, demonstrate a school's deliberate indifference, . . . it also agrees with numerous courts that DOE regulations may still be consulted when assessing the appropriateness of a school's response to reports of sexual assault."  (citation omitted)).

Finally, the mere fact that each Plaintiff did not leave school or receive lower grades does not lead to the conclusion that they were not deprived educational opportunities. To the contrary, Defendants' failure to adequately investigate Silva or take any remedial action exposed the Plaintiffs to the possibility that they may encounter Silva again, constituting discriminatory harm. *See Doe 1*, 240 F. Supp. 3d at 659 ("Thus, the discriminatory harm can include the harm faced by student-victims who are rendered vulnerable to future harassment and either leave school or remain at school and endure an educational environment that constantly exposes them to a potential encounter with their harasser or assailant.").

Accordingly, Plaintiffs' Complaint states facts plausibly establishing claims for deliberate indifference under Title IX.

*ii. Hostile Environment*

Under Title IX, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] [schooling] and create an abusive [educational] environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (first alteration in original) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). In seeking to dismiss Plaintiffs' hostile environment claims, Defendants make a mere conclusory argument that Plaintiffs' Complaint does not allege that they experienced an actionable hostile environment. To the contrary, and as discussed above, Defendants' failure to adequately investigate Silva or take any remedial action exposed the Plaintiffs to an environment in which they could possibly encounter Silva repeatedly on campus, creating an environment fraught with discriminatory harm. *See Doe 1*, 240 F. Supp. 3d at 659 ("Thus, the discriminatory harm can include the harm faced by student-victims who are rendered vulnerable to future harassment and either leave school or remain at school and endure an educational environment that constantly exposes them to a potential

encounter with their harasser or assailant."). These circumstances unquestionably altered the conditions of Plaintiffs' schooling and created an abusive educational environment.

Accordingly, Plaintiffs' Complaint states facts plausibly establishing claims for hostile environment under Title IX.

### III. Defendants are not entitled to qualified immunity or, alternatively, this Court should permit limited discovery for the purpose of identifying facts necessary for the Court to rule on this issue.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). Thus, "a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Id.*

### a. Defendants' actions violated Plaintiffs' clearly established constitutional rights

In determining whether a defendant is entitled to qualified immunity, courts engage in a two-step analysis. "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown []make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232 (internal citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

19

that right." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (citation omitted). However, "[t]here need not be 'commanding precedent' that holds that the 'very action in question' is unlawful[.]" *Id*. at 236–37 (internal quotation marks omitted). Rather "the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations." *Id*. at 237 (internal quotation marks omitted).

Courts have consistently held that "[t]he substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson*, 42 F.4th at 517 (quoting *Taylor ISD"*, 15 F.3d at 450–51). "A violation of the right to bodily integrity follows from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id*. at 517 (alteration in original) (quoting *Lewis*, 523 U.S. at 847 n.8).

As established above, Plaintiffs had a clearly established right to bodily integrity at the time of the Defendants' malfeasance. The existence of Title IX and Louisiana's recent enactment of the Campus Accountability and Safety Act bolsters this conclusion. As Presidents of public universities, it would be unreasonable to conclude that Defendants did not know that the failure to prevent, investigate and report sexual misconduct deprived students, including Plaintiffs, of their right to bodily integrity.

In arguing that Plaintiffs have not pleaded facts sufficient to demonstrate their § 1983 claim, Defendants narrowly focus on the language of Count VI. In so doing, Defendants wholly ignore Plaintiffs' factual allegations demonstrating numerous instances of Defendants' failures to report or investigate sexual assault, failure to communicate with other universities and law enforcement regarding such assaults, and failure to act in a manner consistent with their policies, procedures, Title IX, and Louisiana's Campus Accountability and Safety Act. Thus, when viewing

the entirety of Plaintiffs' complaint, rather than engaging in a narrow review of Count VI only, it is clear that Plaintiffs have alleged facts demonstrating that Defendants violated Plaintiffs' clearly established rights.  Accordingly, Defendants' motion to dismiss should be denied.

> **b.   This Court should defer its ruling on qualified immunity and allow for limited discovery to determine Defendants' subjective knowledge, what investigatory steps they took, and what remedial measures, if any, were implemented.**

In the alternative, if this Court determines it does not have enough information to rule on Defendants' assertion of qualified immunity, the Court should order limited discovery to determine whether Defendants acted in an objectively reasonable manner.

"When reviewing a well-pleaded complaint and a defendant's motion to dismiss on the basis of qualified immunity, a district court may defer its qualified immunity ruling and order limited discovery when the court remains unable to rule on the immunity defense without further clarification of the facts."  *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).  "In other words, a district court may elect the defer-and-discover approach when the defendant's immunity claim turns at least partially on a factual question that must be answered before a ruling can issue."  *Id*. (internal quotation marks omitted).

In *Hinojosa*, the Fifth Circuit affirmed the district court's determination that it "was unable to rule on Defendants' qualified immunity claim because factual development was needed as to [the defendants'] 'knowledge, actions, omissions and/or policies in regards to TDCJ prison operations in times of extreme heat.'"  *Id*. at 671.  In affirming the district court's decision, the Fifth Circuit found the district court could not determine whether the defendants acted reasonably in light of clearly established law without answering the "factual questions of what [the d]efendants knew, when they knew it, and whether they investigated and considered possible

21

remedial measures." *Id*. Additionally, the Fifth Circuit noted that the defendants' "knowledge is central to the deliberate indifference element of Plaintiff's Eighth Amendment claim[,]" but also found their knowledge was "highly relevant to qualified immunity, because it bears heavily on the reasonableness of their actions." *Id*. The Court further explained that the qualified immunity analysis is "complicated when, as here, the deliberate indifference standard must be reconciled with the second prong's objective reasonableness standard." *Id*. at 672 (internal quotation marks omitted) (quoting *Webb v. Livingston*, 618 Fed. Appx. 201, 210 (5th Cir. 2015) (unpublished)). Thus, "in light of these complexities, [the Fifth Circuit has] observed that [a]dditional facts . . . are particularly important when evaluating the [reasonableness] prong of the qualified immunity test." *Id*. (internal quotation marks omitted) (second alteration in original) (quoting *Webb*, 618 Fed. Appx. at 210).

The considerations which supported limited discovery in *Hinojosa*, also apply to the facts at bar. If the Court determines it does not have enough information to rule on qualified immunity, it will need to resolve factual issues regarding whether Defendants were objectively reasonable in handling sexual violence occurring on UL System campuses, including what Defendants knew, when they knew it, and whether they investigated and considered possible remedial measures. Moreover, Plaintiffs have alleged that Defendants acted with deliberate indifference in the manner in which they addressed sexual violence in the UL System. Thus, as the Fifth Circuit has indicated, because claims of deliberate indifference make the determination of qualified immunity more complex, additional facts are necessary for the Court to evaluate the reasonableness prong of qualified immunity.

22

As such, if the Court determines it does not have enough facts to determine the issue of qualified immunity, it should defer its ruling on the issue and order limited discovery to make necessary factual determinations.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss should be denied.

Respectfully this 30th day of May, 2024.

**DORAN & CAWTHORNE, PLLC**

*s/ Pride Doran*
Pride J. Doren (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opalousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
        nahshon@doranlawfirm.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF FILING

This shall serve as notice that all parties of record have been served with this filing pursuant to CM/ECF.

*s/ Pride Doran*
Pride Doran

This 30th day of May, 2024.