# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **M.D., et al.** | § | **CIVIL ACTION NO. 6:22-cv-002089** |
| | § | |
| **VERSUS** | § | |
| | § | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA BOARD OF REGENTS,** | § | |
| **LOUISIANA STATE UNIVERSITY** | § | **MAGISTRATE JUDGE DAVID J.** |
| **BOARD OF SUPERVISORS, et al.** | § | **AYO** |
| | § | |
| | § | |

---

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS DR. FIELDON KING ALEXANDER, THOMAS C. GALLIGAN, JR. AND WILLIAM F. TATE, IV'S MOTION TO DISMISS

---

Respectfully submitted,

**DORAN & CAWTHORNE, P.L.L.C.**


_____ *s/ Pride Doran*
Pride J. Doran (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opelousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
nahshon@doranlawfirm.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    Plaintiffs' claims are timely under the doctrine of *contra non valentem* . . . . . . . . . . 4

        a.   Plaintiff's § 1983 claims are timely because Defendants took steps to prevent Plaintiffs from availing themselves of their causes of action . . . . . . . . . 6

        b.   Plaintiffs' § 1983 claims are timely because Plaintiffs' claims were not known or reasonably knowable until they learned of Defendants' actions and inaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.   Plaintiffs have sufficiently alleged claims under § 1983 against Defendants. . . . . . . 11

    III.  Defendants are not entitled to qualified immunity, or, alternatively, this Court should permit limited discovery for the purpose of identifying facts necessary for the Court to rule on this issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        a.   Defendants' actions violated Plaintiffs' clearly established constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        b.   This Court should defer its ruling on qualified immunity and allow for limited discovery to determine Defendants' subjective knowledge, what investigating steps they took, and what remedial measures, if any were implemented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    IV.  Immunities available under state law are inapplicable to federal causes of action including those under 42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**<u>TABLE OF AUTHORITIES</u>**

**Federal Cases**

*Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*,
706 F.2d 638 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brown v. Miller*, 519 F.3d 231 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452
(M.D. La. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 9, 11

*Doe v. Taylor Indep. Sch. Dist ("Taylor ISD")*, 15 F.3d 443 (5th Cir. 1994)
(en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849
(5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Howlett By & Through Howlett v. Rose*, 496 U.S. 356 (1990). . . . . . . . . . . . . . . . . . . . . . 18, 19

*James v. Tex. Collin Cty.*, 535 F.3d 365 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank, PLC*, 594 F.3d 383 (5th Cir. 2010). . . . . . . . . 4

*Martinez v. State of Cal.*, 444 U.S. 277 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Olabisiomotosho v. City of Houston*, 185 F.3d 521 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . 11

*Pearson v. Callahan*, 555 U.S. 223 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247 (5th Cir. 2021). . . . . . . . . . 4

*Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Tyson v. Sabine*, 42 F.4th 508 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Webb v. Livingston*, 618 Fed.Appx. 201 (5th Cir. 2015) (unpublished). . . . . . . . . . . . . . . . . . .  18

**State Cases**

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138 (La. Ct. App. 2020). . . . . . . . . . . . . . . . 5, 6, 10

*Ashton v. United Parcel Serv.*, 147 So.3d 748 (La. Ct. App. 2014). . . . . . . . . . . . . . . . . . . . . . . .  5

*Carter v. Haygood*, 892 So.2d 1261 (La. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Eastin v. Entergy Corp.*, 865 So.2d 49 (La. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113 (La. Ct. App. 2017). . . . . . . . . . . . . . . . . 10

*M.R. Pittman Grp, LLC v. Plaquemines Parish Gov't*, 182 So.3d 322
(La. Ct. App. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wells v. Zadeck*, 89 So.3d 1145 (La. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Williams v. The Library*, 111 So.3d 356 (La. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Statutes**

20 U.S.C. § 1682, Title IX of the Educational Amendments Act of 1972. . . . . . . . . . . . . . . .  Passim

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Passim

**State Statutes**

La.–R.S. 9:2798.1(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

La.–R.S. 17:3551(H) (2015) (cited as "Act 172"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**Federal Rules of Procedure**

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

Plaintiffs respectfully submit this Memorandum in Opposition to Defendant Dr. Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV's (collectively "Defendants") Motion to Dismiss.  Plaintiffs would demonstrate unto this Court that (1) their claims are timely pursuant to the doctrine of *contra non valentem*, (2) they have adequately pleaded their § 1983 claims, (3) Defendants are not entitled to qualified immunity, and (4) state immunities are not applicable to a federal cause of action.  Accordingly, Defendants' motion to dismiss should be denied.

## **INTRODUCTION**

Plaintiffs, M.D., P.P., and J.B. (collectively, "Plaintiffs"), filed suit against the Louisiana Board of Regents, University of Louisiana System Board of Supervisors, Louisiana State University Board of Supervisors, Lafayette Consolidated Government, Joseph Savoie, Les Guice, Thomas C. Galligan, Jr., William F. Tate, IV, Fieldon King Alexander, Toby Aguillard, and John/Jane Doe Chiefs of Police asserting claims pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and 42 U.S.C. § 1983.  In particular, Plaintiffs bring claims stemming from systemic Title IX failures and deprivations of due process, which include events related to sexual assaults perpetrated by Victor Daniel Silva, a former student of LSU, University of Louisiana Lafayette, and Louisiana Tech University from 2014 until 2020.

As set forth in the Third Amended Complaint, the Louisiana General Assembly passed Act 172 in 2015. This legislation was intended to address significant deficiencies in how Louisiana post-secondary institutions, in conjunction with law enforcement, addressed sexual assault and misconduct involving students. [Doc. 101, Third Amended Complaint, at ¶¶ 1-6; 33-34]. Act 172 mandated that post-secondary institutions and responding law enforcement agencies enter into

formal agreements memorializing how these entities would communicate and coordinate with each other related to reports of sexual misconduct. *Id.* at ¶¶ 43-44. The purpose of this communication, and the overarching goal of Act 172, was to prevent and mitigate sexual assault and misconduct on campus and involving students, as well as to prevent students accused of misconduct at these post-secondary institutions from transferring undetected within Louisiana's post-secondary system. *Id.* at ¶ 45 ("Act 172 required institutions, such as universities named in this complaint, and law enforcement, including, without limitation, Defendant Lafayette Consolidated Government by and through LPD, Defendant Aguillard, and John/Jane Doe Chiefs, 'to execute a memorandum of understanding whereby the parties would clearly delineate responsibilities and share information in accordance with applicable federal and state confidentiality laws[.]'").

In their Third Amended Complaint, Plaintiffs allege that Defendants individually and collectively failed to abide by the requisites of Act 172, and the responsibilities incumbent upon them to protect students and foreseeable third parties from harm perpetrated against them by people like Victor Silva. Moreover, because Plaintiffs were not privy to the infrastructure Defendants used to implement Act 172, Plaintiffs allege they had no ability to know of Defendants' willful failures during the timeframe of Silva's assaults. In fact, as set forth in the Third Amended Complaint, the concerted effort of Defendants to misdirect students and others into believing Defendants were appropriately enforcing policies and procedures related to sexual misconduct prevented these Plaintiffs from knowing the existence of any claims, even today. *Id.* at ¶¶ 194-204.

As acknowledged in a March 2021 letter written on behalf of Defendant Board of Regents, whatever Defendants' outward efforts to assure students and third parties that Defendants were in compliance with Act 172, internally, Defendants failed. In the letter issued to the Presidents of

Louisiana's top four post-secondary institutions (including Defendants Alexander, Tate, and Galligan), Defendant Board of Regents noted:

> More needs to be done to protect students enrolled at Louisiana's post-secondary institutions from sexual misconduct. Specifically, we must all ensure enforcement of all sexual misconduct and related policies, implement sexual misconduct and prevention programs, and provide support services for students who raise allegations of sexual misconduct.

*Id.* at ¶ 41, quoting a letter from Defendant Board of Regents to the Defendant Presidents, March, 2021.

This letter all but confirms Defendants' failures to appropriately adopt and implement sufficient measures during the timeframe that such measures could have prevented harm to the Plaintiffs. Yet, and as alleged in the Third Amended Complaint, despite Defendants' failures, Defendants Alexander, Tate, and Galligan nevertheless continued to receive Title IX funding during the interim of Plaintiffs' tenure at these Defendants' respective post-secondary institutions. Defendants also outwardly represented that they were in compliance with Act 172, by, for example, adopting policies and memoranda against "power-based violence." *Id.* at ¶¶ 43–46, 50–53.

Defendants now move to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging (1) that Plaintiffs' action is untimely, (2) that Defendants are entitled to qualified immunity, (3) that Plaintiffs' 18 U.S.C. § 1983 claims should be dismissed to the extent that they are brought against Defendants in their official capacities, and (4) that they are entitled to discretionary immunity under Louisiana law.  However, Plaintiffs' action is timely pursuant to the doctrine of *contra non valentem*, Plaintiffs have adequately pleaded their § 1983 claims, Defendants are not entitled to qualified immunity, and state immunities are not applicable to a federal cause of action.  Thus, Defendants' motion should be denied.

3

## STANDARD

A motion to dismiss for failure to state a claim should be denied where a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff.").  In other words, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund*, 594 F.3d at 387.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.  Plaintiffs' claims are timely under the doctrine of *contra non valentem*

"As a rule, a limitations defense is not favored at the pleadings stage because the dispositive issue of when the plaintiff became aware of her claim involves questions of fact that generally cannot be resolved without evidentiary development." *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452, 472 (M.D. La. 2023).  "Indeed, the Fifth Circuit instructs that '[Rule 12] dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling.'"  *Id.* (alteration in original) (quoting *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021)).  As such, "a defendant may prevail on a limitations defense at Rule 12 only if 'it appears beyond doubt that

the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'"

*Id.* (alterations in original) (quoting *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983)).

"In Louisiana, the doctrine of *contra non valentem* is a jurisprudential doctrine under which prescription on a cause of action may be suspended."  *Ashton v. United Parcel Serv.*, 147 So.3d 748, 752 (La. Ct. App. 2014); *see also Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) ("To soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit.").  Louisiana Courts recognized four categories of *contra non valentem*:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
> (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138, 1149 (La. Ct. App. 2022).  "These categories allow 'the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.'"  *M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312, 321 (La. Ct. App. 2015) (internal quotation marks omitted) (quoting *Wells v. Zadeck*, 89 So.3d 1145, 1150 (La. 2012)).  Accordingly, the Louisiana Supreme Court has indicated that *contra non valentem* should be viewed through the lens "that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions**, that which favors maintaining, as opposed to barring, an action should be adopted**."  *Carter*, 892 So.2d at 1268. (emphasis added).

### a. Plaintiffs' § 1983 claims are timely because Defendants took steps to prevent Plaintiffs from availing themselves of their causes of action

The "third category of *contra non* applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." *Id.* at 1269. Stated differently, this category encompasses

> situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.

*Id.* As such, this category is implicated "when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction." *Anding*, 342 So.3d at 1149.

In their Third Amended Complaint, Plaintiffs allege that Defendants Alexander, Galligan and Tate had a responsibility to oversee their respective institutions and to ensure that their institutions complied with legal obligations. [Doc. 101, Third Amended Complaint at ¶¶ 53, 280-299]. Further Plaintiffs have alleged that these Defendants failed in this regard. *Id.* Plaintiffs have alleged that they had no opportunity to learn of the harm caused by these Defendants because of Defendants affirmative efforts to conceal their malfeasance, including, for instance, communications among these Defendants about Silva that were nevertheless protected from other student body members. *Id.* at ¶¶ 54-93. Plaintiffs assert that Defendants failed to abide by internal policies and procedures related to sexual misconduct, failed to make mandatory reports and undertake appropriate investigations, and failed to enforce rules related to sexual misconduct. Plaintiffs have alleged that Defendants were publicly admonished for these acts and omissions, and thereafter did nothing. *Id.* at ¶¶ 50-53.

Plaintiffs have alleged that they had no reason to suspect that Defendants were failing to abide by LSU's internal policies and procedures, nor could Plaintiffs have had reason to suspect that Defendants were not properly reporting or investigating sexual misconduct.  Additionally, Plaintiffs had no reason to know that LSUPD was actively refusing to comply with the mandates of Act 172 until the same was revealed in an April 2023 deposition. *Id.* at ¶¶ 182–190].  Instead, and as alleged in the pleadings, Plaintiffs reasonably relied on Defendants' representations that they would abide by Louisiana law, and that relevant parties at LSU would abide by their responsibility to conduct appropriate investigations as contemplated by Title IX, and other policies, procedures, and resources. *Id.* at ¶¶ 194–204.

Defendants cite *Eastin v. Entergy Corp.*, 865 So.2d 49 (La. 2004) in support of their argument that Plaintiffs are not entitled to the third category of *contra non valentem*,.  Defendants' reliance on *Eastin* is misplaced.  In *Eastin*, in response to age discrimination claims brought by eleven plaintiffs, the defendant filed an exception of prescription.  *Id.* at 51.  The Louisiana Supreme Court ultimately found the plaintiffs were not entitled to application of *contra non valentem* because a plaintiff "sustains damage in a non-continuing discrimination case when the discriminatory decision is made **and communicated to the employee**."  *Id.* at 54 (emphasis added).  Thus, "where the plaintiffs alleged absolutely no active role in determining if their terminations were for unlawful reasons and made no inquiry into the reasons for their terminations, the plaintiff's delay in filing suit was not reasonable and does not merit the application of the doctrine of *contra non valentem*."  *Id.* at 56.[1]

---

[1] Defendants' reliance on *Williams v. The Library*, 111 So.3d 356 (La. 2012), is similarly misplaced.  Defendants again fail to appreciate the distinction between a plaintiff who was notified of his firing by the defendant and Plaintiffs who received no notice from Defendants of their malfeasance.

In the instant case, the facts are distinguishable from *Eastin* in at least one key regard. Unlike the plaintiffs in *Eastin* who were notified of their termination by their employer, Defendants in the instant action concealed their failures to implement appropriate policies and procedures to prevent sexual misconduct. Defendants' misrepresentations directly inured to Defendants' benefit, as outwardly indicating compliance with Act 172 entitled Defendants' institution to continued receipt of Title IX funds and prevented Plaintiffs from understanding that a claim existed.

Not only were Plaintiffs made to believe that Defendants were in compliance with federal and state law, but Plaintiffs were also excluded from the internal process, actions, omissions and misapplication of such laws. Defendants promulgated a closed system, within which there was no role for Plaintiffs despite the fact that Defendants' closed system directly impacted Plaintiffs' well-being.  Plaintiffs' theory of the case rests on Defendants' conduct and as set forth in the four-corners of Plaintiffs' Third Amended Complaint, Defendants took measures to ensure that Plaintiffs could not discover the depths of Defendants' misconduct.

Defendants further attempt to avoid the application of *contra non valentem* by asserting that Plaintiffs knew of their assaults at the time they were assaulted.  This fact would be sufficient to conclude that the prescriptive period had run against Plaintiffs' assailant, but Victor Silva is not a party to this action. As to Defendants however, the mere fact that Plaintiffs were aware of Silva's attacks does not equate to notice of Defendants' failures to implement a protective system.  *Cf. Doe*, 650 F.Supp.3d at 473 ("[B]ecause a Title IX heightened risk claim pins liability to the university's action or inaction that resulted in the plaintiff's assault, the claim accrues only when the plaintiff should have reasonably discovered that university authorities knew of the abuser's 'conduct and failed to respond appropriately.'" (quoting *Snyder-Hill v. The Ohio State Univ.*, 48

F.4th 686, 705 (6th Cir. 2022)).[2]  Defendants also assert that *contra non valentem* should not apply for one of the Plaintiffs because she believed she had not been provided with necessary services at the time.  However, this belief would not put Plaintiff M.D. on notice of Defendants' systemic failures to follow their own policies and procedures for preventing, reporting, and investigating sexual violence.  *Cf. id*. at 475 ("It would be unreasonable to conclude that a plaintiff's knowledge that their individual complaint was mishandled would reveal that the University has a broad de facto policy of deliberate indifference generally." (quoting *Snyder-Hill*, 48 F.4th at 704)). Defendants also assert that Plaintiffs are not entitled to application of the doctrine because a USA Today article describing Plaintiffs' experiences was published in May 2021.  The mere existence of an article, however, which generally discusses a central assailant, does not establish that Plaintiffs were aware of facts giving rise to their legal claims against these Defendants. Plaintiffs could not have known, nor could they have suspected that Defendants, in conjunction with the other chief officers at educational institutions and law enforcement entities across the state had so utterly obstructed state law with respect to Victor Silva, allowing him to move in and throughout the University System with such ease. Another of Silva's victims instituted an action against Defendants in May 2022. This action also provided insight into potential claims. In any event, because this case alleges that Defendants concealed facts upon which Plaintiffs' claims rest, the focus of the Court's inquiry should not be upon the Plaintiffs. To this day, Defendants have not acknowledged the systemic failures leading to Silva's perpetration of abuse. The Court must therefore focus on Defendants' evasive conduct, which requires a stay to the prescriptive period.

---

[2] Any knowledge regarding attacks on other victims would similarly not put Plaintiffs on notice. *See id*. at 475 ("Plaintiff's mere discovery that Silva assaulted other women is not sufficient to put her on notice that ULS knew of such attacks yet ignored them.").

Ultimately, Plaintiffs' Third Amended Complaint plausibly alleges facts that demonstrate Defendants made efforts to conceal the facts underlying their lawsuit, the third category of *contra non valentem* operates to make Plaintiffs' § 1983 claims timely.

### b. Plaintiffs' § 1983 claims are timely because Plaintiffs' claims were not known or reasonably knowable until they learned of Defendants' actions and inactions

Alternatively, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

"The fourth category of *contra non valentem*, commonly referred to as the discovery rule, provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Anding*, 342 So.3d at 1149. "Under the discovery rule, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Id.*; *see also Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113, 116 (La. Ct. App. 2017) (indicating that under the discovery rule, "prescription is suspended until the tort victim discovers or 'should have discovered' the facts upon which his or her cause of action is based"). "In these 'should have discovered' cases, the Supreme Court has focused on the reasonableness of the claimant's 'action or inaction.'" *Morgan*, 234 So.3d at 119.

Here, Plaintiffs allege a system of de factor deliberate indifference. Plaintiffs could not have known of Defendants' acts and failures because Plaintiffs were summarily excluded from Defendants' closed system. Moreover, Plaintiffs were justified in relying on Defendants' contrary representations, which Defendants made to continue to receive valuable funding, that Defendants would take appropriate measures to investigate, report, and prevent sexual assault, and to otherwise abide by the mandates of Act 172. Defendants continued to accept Title IX funds and Defendants

publicly represented that they had entered into memoranda with law enforcement to mitigate and respond to sexual assault and misconduct involving students, or perpetrated by students. Yet, unbeknownst Plaintiffs, Defendants in fact failed to implement any such protective measures. Moreover, Plaintiff P.P. and Plaintiff J.B. could not have known that Silva was in position to assault them due in part to LSU's failures to investigate the sexual assault allegations against him and to report the same to his transferee school. Moreover, none of the Plaintiffs could have independently discovered information regarding the Defendants' failures, as educational institutions are generally precluded from disclosing personally identifying student information. *See Doe*, 650 F.Supp.3d at 474 ("Plaintiff also plausibly alleges that she could not have independently discovered this information even had she tried, particularly given FERPA's general rule that educational institutions may not disclose personally identifying information of their students."). As such, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

## II.     Plaintiffs have sufficiently alleged claims under § 1983 against the Defendants.

"Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). "Of course, § 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Id*. As such, "[t]o state a claim under 42 U.S.C. § 1983, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

11

"The substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quoting *Doe v. Taylor Indep. Sch. Dist. ("Taylor ISD")*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc)). "A violation of the right to bodily integrity follows from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' *Id.* at 517 (alteration in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

At the outset, Defendants seem to confuse the standard and arguments for clearly established rights under the qualified immunity analysis with the failure to state facts plausibly establishing a § 1983 claim, as Defendants cite arguments from the "clearly established rights" section of Plaintiff's prior briefs and argue that they were not bound by any duties under Act 172.[3] Defendants further argue that Plaintiffs cannot support a claim under the Fourteenth Amendment because Act 172 did not exist at the time M.D. was a student at LSU in 2014 and 2015 and Title IX does not protect plaintiffs like P.P. or J.B. who did not participate in LSU's educational programs or activities. However, Plaintiffs do not allege that these Defendants violated their rights under Act 172 or Title IX. Instead, Plaintiffs assert these Defendants violated their right to bodily integrity, secured by the substantive component of the Due Process Clause under the Fourteenth Amendment.

---

[3] Notably, in their "clearly established rights" argument, Plaintiffs do not argue that Defendants' are liable solely for failing to comply with Act 172. Rather, Plaintiffs specifically argue that their right to bodily integrity was clearly established at the time of Defendants' malfeasance, a conclusion that is bolstered by the existence of Title IX and the Louisiana Legislature's enactment of Act 172, which was intended to be co-extensive with Title IX and sought to correct deficiencies surrounding the handling of sexual assault among Louisiana's higher education institutions. Stated differently, the enactment of Act 172 was the Legislature's acknowledgement that higher education institutions were failing to protect student's clearly established right to bodily integrity.

Plaintiffs' Third Amended Complaint adequately alleges that Defendants acted under state law in a manner resulting in the violation of their rights to bodily integrity.  Plaintiffs have alleged that Defendants, as presidents of LSU, were responsible for oversight and ensuring that LSU complied with its legal obligations, including its duties to prevent sexual assault and/or misconduct on its campus and among its students.  [Doc. 101, Third Amended Complaint, at ¶¶ 286–287]. These obligations existed independent of Act 172. Plaintiffs further alleged that, in 2014, Victor Silva was reported to Baton Rouge law enforcement for sexual assault, and law enforcement thereafter notified LSU.  [*Id.*, at ¶¶ 61–63].  However, despite knowledge of the allegations, LSU never instituted an investigation.  [*Id.*, at ¶ 64].  Thereafter, Silva transferred without issue to UL-Lafayette, but LSU did not notify ULL about the allegations even though such notification would have been authorized by FERPA.  [*Id.*, at ¶¶ 64–66].  After transferring to ULL, Silva was arrested in April 2015 by LSU police on charges of sexual assault and the arrest was reported to LSU.  [*Id.*, at ¶¶ 67–68].  In response, despite Silva being described by LSU as a "frequent flier," LSU opted only to nominally ban Silva from its campus and did not communicate with ULL regarding the allegations.  [*Id.*, at ¶¶ 69, 110].  Moreover, despite multiple attacks by Silva, LSU did not provide its student body with information regarding how to report Silva, or other potential assailants, to his current university.  [*Id.*, at ¶ 70].

Plaintiff M.D. encountered Silva at university event hosted by an authorized fraternity of LSU in Spring 2015.  [*Id.*, at ¶ 98].  This event occurred after LSU chose not to investigate Silva for the assault that occurred while he was a student at LSU, after LSU chose not to inform ULL about the allegations, after LSU failed to communicate with ULL regarding the April 2015 assault, and after LSU opted to only nominally ban Silva from campus.  Following the event, Silva sexually assaulted M.D. at her dorm on LSU's campus.  [*Id.*, at ¶ 101].  Thereafter, M.D.'s grades fell

drastically, she experienced bouts of anxiety and depression, and she was ultimately expelled from LSU.  [*Id.*, at ¶¶ 102, 107].  As Defendants acknowledge in their memo, Defendant Alexander was LSU's President during this time period.  Defendant Alexander's failure to engage in proper oversight of LSU and his failure to ensure that LSU complied with its legal obligations were a direct and proximate cause of M.D.'s injuries, as properly investigating Victor Silva for his prior assaults and enforcing appropriate consequences against him would have prevented Plaintiff M.D.'s assault.

Defendants assert that they could not have violated Plaintiff P.P. and Plaintiff J.B.'s constitutional rights because the two were not LSU students, and Defendant therefore did not owe them any duties under Title IX.  Notably, however, Plaintiffs have not alleged Title IX violations against Defendants, but have instead alleged deprivations of due process pursuant to § 1983. Similar to Plaintiff M.D., the failure of Defendants to investigate Silva or communicate with other universities regarding the allegations against him, including those made by M.D., ensured that he never faced appropriate consequences for his sexual misconduct.  Had Silva been properly investigated, he would not have been free to transfer between Louisiana institutions and assault women, such as Plaintiff P.P., without consequence.  Furthermore, had Plaintiff been properly investigated and punished for his misconduct, he would not have had the ability to obtain his position in Arkansas which allowed him to rape Plaintiff J.B.

Ultimately, Plaintiffs have alleged sufficient facts plausibly demonstrating their § 1983 claims.

**III.    Defendants are not entitled to qualified immunity or, alternatively, this Court should permit limited discovery for the purpose of identifying facts necessary for the Court to rule on this issue.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).   Thus, "a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Id*.

   **a. Defendants' actions violated Plaintiffs' clearly established constitutional rights**

In determining whether a defendant is entitled to qualified immunity, courts engage in a two-step analysis.   "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown []make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232 (internal citations omitted).   "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*.

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (citation omitted).   However, "[t]here need not be 'commanding precedent' that holds that the 'very action in question' is unlawful[.]"   *Id*. at 236–37 (internal quotation marks omitted).   Rather "the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations."   *Id*. at 237 (internal quotation marks omitted).

As provided above, courts have consistently held that "[t]he substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson*, 42 F.4th at 517 (quoting *Taylor ISD*, 15 F.3d at 450–51). "A violation of the right to bodily integrity follows from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' *Id*. at 517 (alteration in original) (quoting *Lewis*, 523 U.S. at 847 n.8).

Plaintiffs had a clearly established right to bodily integrity at the time of the Defendants' malfeasance. The existence of Title IX and Louisiana's recent enactment of the Campus Accountability and Safety Act bolsters this conclusion. As Presidents of a public university, it would be unreasonable to conclude that Defendants did not know that the failure to prevent, investigate, and report sexual misconduct and their conduct in allowing a sexual predator to leave LSU without issue and continue to prey on young women deprived women, including Plaintiffs, of their right to bodily integrity.

In arguing that Plaintiffs have not pleaded facts sufficient to demonstrate their § 1983 claim, Defendants narrowly focus on the language of Count VI. However, as demonstrated above, Plaintiffs have adequately pleaded facts plausibly establishing their § 1983 claims. Furthermore, when viewing the entirety of Plaintiffs' Third Amended Complaint, rather than engaging in a narrow review of Count VI alone, it is clear that Plaintiffs have alleged facts demonstrating that Defendants violated Plaintiffs' clearly established rights. Accordingly, Defendants are not entitled to qualified immunity.

> **b. This Court should defer its ruling on qualified immunity and allow for limited discovery to determine Defendants' subjective knowledge, what investigatory steps they took, and what remedial measures, if any, were implemented.**

In the alternative, if this Court determines it does not have enough information to rule on Defendants' assertion of qualified immunity, the Court should order limited discovery to determine whether Defendants acted in an objectively reasonable manner.

"When reviewing a well-pleaded complaint and a defendant's motion to dismiss on the basis of qualified immunity, a district court may defer its qualified immunity ruling and order limited discovery when the court remains unable to rule on the immunity defense without further clarification of the facts." *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). "In other words, a district court may elect the defer-and-discover approach when the defendant's immunity claim turns at least partially on a factual question that must be answered before a ruling can issue." *Id.* (internal quotation marks omitted).

In *Hinojosa*, the Fifth Circuit affirmed the district court's determination that it "was unable to rule on Defendants' qualified immunity claim because factual development was needed as to [Defendants'] 'knowledge, actions, omissions and/or policies in regards to TDCJ prison operations in times of extreme heat.'" *Id.* at 671. In affirming the district court's decision, the Fifth Circuit found the district court could not determine whether the defendants acted reasonably in light of clearly established law without answering the "factual questions of what [the d]efendants knew, when they knew it, and whether they investigated and considered possible remedial measures." *Id.* Additionally, the Fifth Circuit noted that the defendants' "knowledge is central to the deliberate indifference element of Plaintiff's Eighth Amendment claim[,]" but also found their knowledge was "highly relevant to qualified immunity, because it bears heavily on the reasonableness of their actions." *Id.* The Court further explained that the qualified immunity analysis is "complicated when, as here, the deliberate indifference standard must be reconciled with the second prong's

objective reasonableness standard." *Id*. at 672 (internal quotation marks omitted) (quoting *Webb v. Livingston*, 618 Fed. Appx. 201, 210 (5th Cir. 2015) (unpublished)).  Thus, "in light of these complexities, [the Fifth Circuit has] observed that [a]dditional facts . . . are particularly important when evaluating the [reasonableness] prong of the qualified immunity test." *Id*. (internal quotation marks omitted) (second alteration in original) (quoting *Webb*, 618 Fed. Appx. at 210).

The considerations which supported limited discovery in *Hinojosa*, also apply to the facts at bar.  If the Court determines it does not have enough information to rule on qualified immunity, it will need to resolve factual issues regarding whether Defendants were objectively reasonable in handling sexual violence occurring at LSU, including what Defendants knew, when they knew it, and whether they investigated and considered possible remedial measures.  Moreover, Plaintiffs have alleged that Defendants acted with deliberate indifference in the manner in which they addressed sexual violence at LSU.  [Doc. 101, Third Amended Complaint, at ¶ 288].  Thus, as the Fifth Circuit has indicated, because claims of deliberate indifference make the determination of qualified immunity more complex, additional facts are necessary for the Court to evaluate the reasonableness prong of qualified immunity.

As such, if the Court determines it does not have enough facts to determine the issue of qualified immunity, it should defer its ruling on the issue and order limited discovery to make necessary factual determinations.

## IV. Immunities available under state law are inapplicable to federal causes of action, including those under 42 U.S.C. § 1983

"The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 375 (1990).  Accordingly, "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law."  *Martinez v. State of Cal.*, 444 U.S. 277, 284, n.8 (1980).  "A

18

construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Id.*; *see also Howlett*, 496 U.S. at 375 ("If the District Court of Appeal meant to hold that governmental entities subject to § 1983 liability enjoy an immunity over and above those already provided in § 1983, that holding directly violates federal law.").

Defendants assert that they are entitled to discretionary immunity from 42 U.S.C. § 1983 claims pursuant to Louisiana law, specifically La.–R.S. 9:2798.1(B).  Defendants further rely on Louisiana case law to support their contention.  However, Defendants' argument is misplaced, as immunity created under state law cannot defeat a federal cause of action.  *See Martinez*, 444 U.S. at 284, n.8 ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law.").

## **CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss should be denied.

19

Respectfully this 30th day of May, 2024.

**DORAN & CAWTHORNE, PLLC**

*s/ Pride Doran*
Pride J. Doren (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opalousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
           nahshon@doranlawfirm.com

*Attorneys for the Plaintiffs*

20

## **CERTIFICATE OF FILING**

This shall serve as notice that all parties of record have been served with this filing pursuant

to CM/ECF.

*s/ Pride Doran*_____
Pride Doran

This 30th day of May, 2024.