UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **M.D., et al.** | § | CIVIL ACTION NO. 6:22-cv-002089 |
| | § | |
| **VERSUS** | § | |
| | § | JUDGE DAVID C. JOSEPH |
| **LOUISIANA BOARD OF REGENTS,** | § | |
| **LOUISIANA STATE UNIVERSITY** | § | MAGISTRATE JUDGE DAVID J. |
| **BOARD OF SUPERVISORS, et al.** | § | AYO |
| | § | |
| | § | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT LAFAYETTE CITY-PARISH CONSOLIDATED
GOVERNMENT'S MOTION TO DISMISS**

Respectfully submitted,

**DORAN & CAWTHORNE, P.L.L.C.**

_____*s/ Pride Doran*_____
Pride J. Doran (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opelousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
nahshon@doranlawfirm.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     I.    Plaintiffs' claims are timely under the doctrine of *contra non valentem* . . . . . . . . . . . 4

          a.   Plaintiff's complaint is timely because Defendants took steps to prevent
              Plaintiffs from availing themselves of their causes of action . . . . . . . . . . . . . . . . . 5

          b.   Plaintiffs' complaint is timely because Plaintiffs' claims were not
              known or reasonably knowable until they learned of Defendants'
              actions and inaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     II.   Plaintiffs' have alleged facts plausibly demonstrating their municipal
          liability claims under 42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*,
706 F.2d 638 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). . . . . . . . . . . . . . . . . . . . .  10

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). . . . . . . . . . . . . . . . . .  11

*Doe v. Beaumont Indep. Sch. Dist.*, 2022 WL 2783047, 113 Fed. R. Serv. 97
(E.D. Tex. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452
(M.D. La. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

*Doe v. Taylor Indep. Sch. Dist. ("Taylor ISD")*, 15 F.3d 443 (5th Cir. 1994)
(en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010). . . . . . . . . .  3

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). . . . . . . . . . . . . . . . . . 9

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . 9, 10

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247 (5th Cir. 2021). . . . . . . . . .  4

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11

*Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . .  12, 13

*Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). . . . . . . . . . . . . . . . . . . . .  6, 7

*Tyson v. Sabine*, 42 F.4th 508 (5th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**State Cases**

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138 (La. Ct. App. 2022). . . . . . . . . . . . . . . . 5, 6, 8

*Ashton v. United Parcel Serv.*, 147 So.3d 748 (La. Ct. App. 2014). . . . . . . . . . . . . . . . . . . . . . . . 4

*Carter v. Haygood*, 892 So.2d 1261 (La. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113 (La. Ct. App. 2017). . . . . . . . . . . . . . . . . 8

*M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312
(La. Ct. App. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wells v. Zadeck*, 89 So.3d 1145 (La. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Federal Statutes**

20 U.S.C. § 1682, Title IX of the Educational Amendments Act of 1972. . . . . . . . . . . . . . . . Passim

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**State Statutes**

La.–R.S. 17:3551(H) (2015) (cited as "Act 172"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**Federal Rules of Procedure**

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

Plaintiffs respectfully submit this Memorandum in Opposition to Defendant Lafayette City-Parish Consolidated Government's ("Defendant") Motion to Dismiss. Plaintiffs would demonstrate unto this Court that (1) their claims are timely pursuant to the doctrine of *contra non valentem* and (2) Plaintiffs have pleaded facts plausibly establishing their § 1983 claims.

**INTRODUCTION**

Plaintiffs, M.D., P.P., and J.B. (collectively, "Plaintiffs"), filed suit against the Louisiana Board of Regents, University of Louisiana System Board of Supervisors, Louisiana State University Board of Supervisors, Lafayette City-Parish Consolidated Government, Joseph Savoie, Les Guice, Thomas C. Galligan, Jr., William F. Tate, IV, Fieldon King Alexander, Toby Aguillard, and John/Jane Doe Chiefs of Police asserting claims pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and 42 U.S.C. §1983. In particular, Plaintiffs bring claims stemming from systemic Title IX failures and deprivations of due process, which include events related to sexual assaults perpetrated by Victor Daniel Silva, a former student of LSU, University of Louisiana Lafayette, and Louisiana Tech University from 2014 until 2020.

As set forth in the Third Amended Complaint, the Louisiana General Assembly passed Act 172 in 2015. This legislation was intended to address significant deficiencies in how Louisiana post-secondary institutions, in conjunction with law enforcement, addressed sexual assault and misconduct involving students. [Doc. 101, Third Amended Complaint, at ¶¶ 1-6; 33-34]. Act 172 mandated that post-secondary institutions and responding law enforcement agencies enter into formal agreements memorializing how these entities would communicate and coordinate with each other related to reports of sexual misconduct. *Id.* at ¶¶ 43-44. The purpose of this communication, and the overarching goal of Act 172, was to prevent and mitigate sexual assault and misconduct

on campus and involving students, as well as to prevent students accused of misconduct at these post-secondary institutions from transferring undetected within Louisiana's post-secondary system. *Id.* at ¶ 45 ("Act 172 required institutions, such as universities named in this complaint, and law enforcement, including, without limitation, Defendant Lafayette Consolidated Government by and through LPD, Defendant Aguillard, and John/Jane Doe Chiefs, 'to execute a memorandum of understanding whereby the parties would clearly delineate responsibilities and share information in accordance with applicable federal and state confidentiality laws[.]'").

In their complaint, Plaintiffs allege that Defendants individually and collectively failed to abide by the requisites of Act 172, and the responsibilities incumbent upon them to protect students and foreseeable third parties from harm perpetrated against them by people like Victor Silva. Moreover, because Plaintiffs were not privy to the infrastructure Defendants used to implement Act 172, Plaintiffs allege they had no ability to know of Defendants' willful failures during the timeframe of Silva's assaults. In fact, as set forth in the complaint, the concerted effort of Defendants to misdirect students and others into believing Defendants were appropriately enforcing policies and procedures related to sexual misconduct and investigating incidences of assault prevents these Plaintiffs from knowing the existence of any claims, even today. *Id.* at ¶¶ 194-204.

As acknowledged in a March 2021 letter written on behalf of Defendant Board of Regents, whatever Defendants' outward efforts to assure students and third parties that Defendants were in compliance with Act 172, internally, Defendants failed. In the letter issued to the Presidents of Louisiana's top four post-secondary institutions, Defendant Board noted:

> More needs to be done to protect students enrolled at Louisiana's post-secondary institutions from sexual misconduct. Specifically, we must all ensure enforcement of all sexual misconduct and related policies, implement sexual misconduct and

    prevention programs, and provide support services for students who raise allegations of sexual misconduct.

*Id.* at ¶ 41, quoting a letter from Defendant Board of Regents to the Defendant Presidents, March, 2021.

  This letter all but confirms that Defendants failed to appropriately adopt and implement sufficient measures during the timeframe that such measures could have prevented harm to the Plaintiffs. Defendants also outwardly represented that they were in compliance with Act 172, by, for example, adopting policies and entering into memoranda of understanding with Louisiana universities. *Id.* at ¶ 45.

  Defendants now move to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging (1) that Plaintiffs' action is untimely and (2) Plaintiffs have not adequately pleaded their § 1983 claims. Plaintiffs would demonstrate unto this Court that their action is timely pursuant to the doctrine of *contra non valentem*, and that Plaintiffs have pleaded facts plausibly establishing their § 1983 claims. Thus, Defendants' motion should be denied.

## **STANDARD**

  A motion to dismiss for failure to state a claim should be denied where a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."). In other words, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund*, 594 F.3d at 387. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. Plaintiffs' claims are timely under the doctrine of *contra non valentem*

"As a rule, a limitations defense is not favored at the pleadings stage because the dispositive issue of when the plaintiff became aware of her claim involves questions of fact that generally cannot be resolved without evidentiary development." *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452, 472 (M.D. La. 2023). "Indeed, the Fifth Circuit instructs that '[Rule 12] dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling.'" *Id.* (alteration in original) (quoting *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021)). As such, "a defendant may prevail on a limitations defense at Rule 12 only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Id.* (alterations in original) (quoting *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983)).

"In Louisiana, the doctrine of *contra non valentem* is a jurisprudential doctrine under which prescription on a cause of action may be suspended." *Ashton v. United Parcel Serv.*, 147 So.3d 748, 752 (La. Ct. App. 2014); *see also Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) ("To soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit.). Louisiana Courts recognized four categories of *contra non valentem*:

4

>  (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>  (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>  (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
>  (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138, 1149 (La. Ct. App. 2022). "These categories allow 'the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled.'" *M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312, 321 (La. Ct. App. 2015) (internal quotation marks omitted) (quoting *Wells v. Zadeck*, 89 So.3d 1145, 1150 (La. 2012)). Accordingly, the Louisiana Supreme Court has indicated that *contra non valentem* should be viewed through the lens "that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions**, that which favors maintaining, as opposed to barring, an action should be adopted**." *Carter*, 892 So.2d at 1268. (Emphasis added).

### a. Plaintiffs' complaint is timely because Defendants took steps to prevent Plaintiffs from availing themselves of their causes of action

The "third category of *contra non* applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." *Id*. at 1269. Stated differently, this category encompasses

> situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.

*Id*. As such, this category is implicated "when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions

5

effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction." *Anding*, 342 So.3d at 1149.

In their Third Amended Complaint, Plaintiffs allege that they had no opportunity to learn of the harm caused by Defendants because Defendants took efforts to conceal their malfeasance. Plaintiffs further assert that Defendants failed to abide by internal policies and procedures related to sexual misconduct, failed to make mandatory reports and undertake appropriate investigations, and failed to train and/or supervise its employees to ensure that they were complying with the mandates of Act 172. Plaintiffs have alleged that they had no reason to suspect that Defendant was failing to abide by Defendant's internal policies and procedures, nor could Plaintiffs have had reason to suspect that Defendant was not properly reporting or investigating sexual misconduct. Instead, and as alleged in the pleadings, Plaintiffs reasonably relied on Defendants' representations that they would abide by Louisiana law, and that Defendant would abide by its responsibility to conduct appropriate investigations as contemplated by policies, procedures, and other resources.

Defendant attempts to avoid the application of *contra non valentem* by asserting that the Plaintiffs knew of their assaults at the time they were assaulted. This fact would be sufficient to conclude that the prescriptive period had run against Plaintiffs' assailant, but Victor Silva is not a party to this action. As to Defendant however, the mere fact that Plaintiffs were aware of Silva's attacks does not equate to notice of Defendant's failures to meaningfully address their reports of sexual assault. *Cf. Doe*, 650 F.Supp.3d at 473 ("[B]ecause a Title IX heightened risk claim pins liability to the university's action or inaction that resulted in the plaintiff's assault, the claim accrues only when the plaintiff should have reasonably discovered that university authorities knew of the abuser's 'conduct and failed to respond appropriately.'" (quoting *Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686, 705 (6th Cir. 2022)). Defendant also asserts that Plaintiffs are not

6

entitled to application of the doctrine because they had information that Silva had assaulted multiple women without consequence and they had been contacted by a reporter regarding USA Today article describing Plaintiffs' experiences. The mere fact that Plaintiffs were aware that Silva had assaulted other women without consequence does not suggest they should have been aware that Defendant wholly disregarded their allegations rather than investigating them. *Cf. id.* at 475 ("Plaintiff's mere discovery that Silva assaulted other women is not sufficient to put her on notice that ULS knew of such attacks yet ignored them."). To the contrary, the fact that Silva had not been punished may have merely suggested that law enforcement did not possess sufficient evidence following thorough investigations to pursue charges, a tragic fact common to many sexual assault cases. *Cf. id.* ("It would be unreasonable to conclude that a plaintiff's knowledge that their individual complaint was mishandled would reveal that the University has a broad de facto policy of deliberate indifference generally." (quoting *Snyder-Hill*, 48 F.4th at 704)). Similarly, the mere fact that Plaintiffs were aware of an article, which generally discusses a central assailant, does not establish that Plaintiffs were aware of facts giving rise to their legal claims against Defendants.

Plaintiffs could not have known, nor could they have suspected that Defendant, in conjunction with educational institutions and law enforcement entities across the state had so utterly failed to abide by state law related to the protection of sexual assault victims. However, when another of Silva's victims instituted an action against Defendants in May, 2022, this action provided insight into potential claims. *Cf. Piotrowski v. City of Houston*, 237 F.3d 567, 577 (5th Cir. 2001) (determining that a jury could conclude that the plaintiff was not aware of and did not have reason to suspect the City's affirmative involvement in the contract on her life until a 1993 deposition which revealed that "the City, as opposed to individual officers, had actively protected

7

and/or assisted" the contract organizer). In any event, because this case alleges that Defendant concealed facts upon which Plaintiffs' claims rest, the focus of the Court's inquiry should not be upon the Plaintiffs. To this day, Defendant has not acknowledged the systemic failures leading to Silva's perpetration of abuse. The Court must therefore focus on Defendant's evasive conduct, which requires a stay to the prescriptive period.

Ultimately, Plaintiffs' complaint plausibly alleges facts that demonstrate Defendant made efforts to conceal the facts underlying their lawsuit, the third category of *contra non valentem* operates to make Plaintiffs' complaint timely.

### b. Plaintiffs' complaint is timely because Plaintiffs' claims were not known or reasonably knowable until they learned of Defendants' actions and inactions

Alternatively, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

"The fourth category of *contra non valentem*, commonly referred to as the discovery rule, provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Anding*, 342 So.3d at 1149. "Under the discovery rule, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Id.*; *see also Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113, 116 (La. Ct. App. 2017) (indicating that under the discovery rule, "prescription is suspended until the tort victim discovers or 'should have discovered' the facts upon which his or her cause of action is based"). "In these 'should have discovered' cases, the Supreme Court has focused on the reasonableness of the claimant's 'action or inaction.'" *Morgan*, 234 So.3d at 119.

Here, Plaintiffs could not have known of Defendant's acts and failures because Plaintiffs were summarily excluded from Defendant's closed system. Moreover, Plaintiffs were justified in

8

relying on Defendant's representations that Defendant would take appropriate measures to investigate, report, and prevent sexual assault, and to otherwise abide by the mandates of Act 172. Defendant publicly represented that it had entered into memoranda with universities to mitigate and respond to sexual assault and misconduct involving students, or perpetrated by students. Yet, unbeknownst Plaintiffs, Defendant in fact failed to implement any such protective measures. As such, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

## II. Plaintiffs have alleged facts plausibly demonstrating their municipal liability claims under 42 U.S.C. § 1983.

Plaintiffs' have pleaded facts establishing a policy, custom, or practice on the part of Defendant.

Municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

"Official policy establishes culpability, and can arise in various forms." *Id*. Most notably, official policy can exist in the form of written policy statements, ordinances, or regulations. *Id*. However, "it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id*. (quoting *Piotrowski*, 237 F.3d at 579). Moreover, "[a] pattern could evidence not only the existence of a policy but also official deliberate indifference." *Piotrowski*, 237 F.3d at 582. Thus, "[a] policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body

9

with final policymaking authority over the subject matter of the offending policy." *Peterson*, 588 F.3d at 847 (internal quotation marks omitted) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Finally, a plaintiff must establish that the policy was the moving force behind the violation." *Id.* at 848. Stated differently, a plaintiff must show that the constitutional violation was directly caused by the policy. *Id.* Crucially, courts have found that, "[a]t the 12(b)(6) stage, a plaintiff's burden to allege an unconstitutional policy, practice or custom is not onerous." *Doe v. Beaumont Indep. Sch. Dist.*, 2022 WL 2783047, 11, 113 Fed. R. Serv. 97 (E.D. Tex. 2022).

Courts have consistently held that "[t]he substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quoting *Doe v. Taylor Indep. Sch. Dist. ("Taylor ISD")*, 15 F.3d 443, 450–51 (5th Cir. 1994) (en banc)). "A violation of the right to bodily integrity follows from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' *Id.* at 517 (alteration in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Similarly, courts have consistently held "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

**Deliberate indifference to reports of sexual assault and violation of equal protection.**

One such custom or practice was Defendants' failure to investigate or report allegations of sexual assault made against Victor Silva. Courts have found that local governments may be found liable for a pattern or practice of failing to perform adequate investigations when those failures

10

lead to a separate constitutional injury.[1] *See Piotrowski*, 237 F.3d at 581–82 (considering a failure to investigate as part of the policy or custom prong of the § 1983 analysis and not as a constitutional violation itself).

As alleged in Plaintiffs' Complaint, Defendant routinely and repeatedly failed to investigate or inadequately investigated allegations of sexual misconduct, particularly those made against Victor Silva. In paragraphs 71 through 79, 326, and 337 of Plaintiffs' Complaint, Plaintiffs' allege facts plausibly establishing that Defendant acted with deliberate indifference towards Plaintiffs' reports of sexual misconduct against Silvia by failing to engage in a meaningful investigation, agreeing not to pursue charges against him in exchange for deleting lewd photographs, and failing to report the allegations of abuse to the appropriate universities as set forth in their memoranda of understanding. This deliberate indifference towards reports of sexual misconduct ultimately allowed Silva to remain enrolled at Louisiana universities and sexually assault women, including Plaintiffs. Stated differently the deliberate indifference of Defendant led to the deprivation of Plaintiffs' rights to bodily integrity.

Defendant's custom and practice of failing to investigate reports of sexual assault is also violative of the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court has indicated that a local government may run afoul of the Equal Protection Clause by selectively denying protective services to certain minority groups. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989).

In alleging that Defendant displayed deliberate indifference to the reports of female sexual assault victims, Plaintiffs have plausibly alleged that Defendant has deprived them of equal

---

[1] Contrary to Defendant's assertion, Plaintiffs do not assert a failure to investigate "claim." Rather, Plaintiffs cite to Defendant's failures to investigate reports of sexual assault as evidence of its deliberate indifference to sexual violence.

11

protection under the law. As alleged in paragraphs 71 through 79, 326, and 337 of the Complaint, Defendant consistently failed to investigate reports of sexual assault made by female victims against Victor Silva and further failed to report such complaints to Louisiana's universities. By selectively withholding protection from female sexual abuse victims, Defendant have violated Plaintiffs' equal protection rights in a way that deprived them of their right to bodily integrity. *Cf. Beltran v. City of El Paso*, 367 F.3d 299, 304 (5th Cir. 2004) ("[T]his court [has] acknowledged that certain intentionally discriminatory policies, practices, and customs of law enforcement with regard to domestic assault and abuse cases may violate the Equal Protection Clause."); s*ee also Beaumont Indep. Sch. Dist.*, 2022 WL 2783047, 11, 113 Fed. R. Serv. 97 (E.D. Tex. 2022) (finding the plaintiffs sufficiently alleged that the defendant's policies and practices created a "breeding ground" for sexual predators in violation of the plaintiffs' equal protection rights).

**<u>Failure to train</u>**

Plaintiffs' rights have been similarly violated by Defendant's failure to ensure that its employees adopted customs and practices consistent with those mandated by Act 172. Courts have found that the failure "to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992). Moreover, "the inadequacy of police training may serve as the basis for § 1983 liability []where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) (quoting *City of Canton*, 489 U.S. at 390). For example, "[c]onsider, []a municipality that arms its officers with firearms,

knowing to a moral certainty that the armed officers will arrest fleeing felons." *Rhyne*, 973 F.2d at 392. "The municipality would be deliberately indifferent in failing to train the officers properly in the use of deadly force, because the likelihood of unconstitutional consequences of the municipality's omission is obvious." *Id*.

Defendant's failures to properly train and supervise its employees such that they complied with the mandates of Act 172 rises to the level of deliberate indifference. As in the example provided by the Fifth Circuit, Defendant failed to properly train and supervise its officers in regard to proper handling of sexual assault allegations despite its knowledge that sexual offenders would remain free and likely to reoffend. The likelihood of unconstitutional consequences for Defendant's omissions were obvious, as the Legislature enacted Act 172 in response to and amidst a climate of widespread sexual misconduct among students at Louisiana's institutions of higher education. As a result of Defendant's deliberate indifference, Victor Silva remained free to reoffend and assault Plaintiffs. Defendant's failure to train and supervise its employees has resulted in the deprivation of Plaintiffs' rights to bodily integrity.

As demonstrated above, Plaintiffs' Complaint plausibly establish a *Monell* claim under 42 U.S.C. § 1983 based on Defendant's deliberate indifference, violation of Plaintiffs' rights to equal protection, and failure to train its police officers. Therefore, Defendant's motion to dismiss should be denied.[2]

---

[2] Defendant additionally argues that it could not have affected Silva's ability to travel, so its failure to report Silva to the his universities could not have caused Plaintiffs' injuries. However, it cannot be said that Silva did not have increased access to his victims as a result of being a university student. Moreover, the failure to report Silva resulted in his victims having reduced notice of his prior assaults. As Defendant acknowledges in its brief, Plaintiff P.P. discounted the rumors against Silva, in part, due to the lack of official action against him.

## **CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss should be denied.

Respectfully this 30th day of May, 2024.

**DORAN & CAWTHORNE, PLLC**

*s/ Pride Doran*
Pride J. Doren (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opalousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
  nahshon@doranlawfirm.com

*Attorneys for the Plaintiffs*

## **CERTIFICATE OF FILING**

      This shall serve as notice that all parties of record have been served with this filing pursuant to CM/ECF.

*s/ Pride Doran*
Pride Doran

This 30th day of May, 2024.

16