# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **M.D., et al.** | § | CIVIL ACTION NO. 6:22-cv-002089 |
| | § | |
| **VERSUS** | § | |
| | § | JUDGE DAVID C. JOSEPH |
| **LOUISIANA BOARD OF REGENTS,** | § | |
| **LOUISIANA STATE UNIVERSITY** | § | MAGISTRATE JUDGE DAVID J. |
| **BOARD OF SUPERVISORS, et al.** | § | AYO |
| | § | |
| | § | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANT BOARD OF REGENT'S MOTION TO DISMISS

Respectfully submitted,

**DORAN & CAWTHORNE, P.L.L.C.**

_____*s/ Pride Doran*
Pride J. Doran (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opelousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
nahshon@doranlawfirm.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    Defendant Board of Regents is a Proper Defendant for Plaintiffs' Title IX Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        a.    Defendant Board of Regents receives and allocates federal funds . . . . . . . . . . . . . 6

        b.    Defendant Board of Regents has a supervisory role over Louisiana universities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    Plaintiffs' claims are timely under the doctrine of *contra non valentem* . . . . . . . . . . . 9

        a.    Plaintiff's complaint is timely because Defendants took steps to prevent Plaintiffs from availing themselves of their causes of action . . . . . . . . . . . . . . . . 10

        b.    Plaintiffs' complaint is timely because Plaintiffs' claims were not known or reasonably knowable until they learned of Defendants' actions and inaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Am. Precision Ammunition, LLC v. City of Mineral Wells*, 90 F.4th 820
(5th Cir. 2024)........................................................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................. 5

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313
(5th Cir. 2022)........................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................... 5

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629
(1999)......................................................................................... 6

*Delahoussaye v. City of New Iberia*, 937 F.2d 144 (5th Cir. 1991)...... 9

*Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452
(M.D. La. 2023)............................................................... 6, 11, 13

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383
(5th Cir. 2010)........................................................................... 5

*Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022)..... 11

*United States v. Louisiana*, 9 F.3d 1159 (5th Cir. 1993).................. 8

**State Cases**

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138 (La. Ct. App. 2022)........... 9, 10, 12

*Ashton v. United Parcel Serv.*, 147 So.3d 748 (La. Ct. App. 2014).................... 9

*Carter v. Haygood*, 892 So.2d 1261 (La. 2005)......................................... 9, 10

*In re Med. Review Panel of Howard*, 573 So.2d 472 (La. 1991)....................... 12

*Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113 (La. Ct. App. 2017)......... 12

*M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312
(La. Ct. App. 2015)............................................................................... 9

*Wells v. Zadeck*, 89 So.3d 1145 (La. 2012)................................................. 9

**Federal Statutes**

20 U.S.C. § 1681(a), Title IX of the Educational Amendments Act of 1972. . . . . . . . . . . . . . . . . . 6

20 U.S.C. § 1682, Title IX of the Educational Amendments Act of 1972. . . . . . . . . . . . . . Passim

**State Constitutional Provisions**

La. Const. art. 8, § 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**State Statutes**

La-R.S. 17:3021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La-R.S. 17:3023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La-R.S. 17:3023.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

La.-R.S. 17:3024.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

La.-R.S. 17:3125. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

La.-R.S. 17:3134. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

La.–R.S. 17:3551(H) (2015) (cited as "Act 172"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**Federal Rules of Procedure**

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

**State Attorney General Opinions**

La. Atty. Gen. Op. No. 94-591 (Jan. 27, 1995) 1995 WL 117098. . . . . . . . . . . . . . . . . . . . . . . 7

Plaintiffs respectfully submit this Memorandum in Opposition to Defendant Board of Regents' ("Defendant Board") Motion to Dismiss. Plaintiffs would demonstrate unto this Court that (1) Plaintiffs' Title IX claims are properly pled against Defendant Board, which both receives federal funds and supervises Louisiana's public universities, and (2) Plaintiffs' claims are timely pursuant to the doctrine of *contra non valentem*. Accordingly, Defendant Board's motion to dismiss should be denied.

## INTRODUCTION

Plaintiffs, M.D., P.P., and J.B. (collectively, "Plaintiffs"), filed suit against the Louisiana Board of Regents, University of Louisiana System Board of Supervisors, Louisiana State University Board of Supervisors, Lafayette Consolidated Government, Joseph Savoie, Les Guice, Thomas C. Galligan, Jr., William F. Tate, IV, Fieldon King Alexander, Toby Aguillard, and John/Jane Doe Chiefs of Police asserting claims pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq*. ("Title IX") and 42 U.S.C. §1983. In particular, Plaintiffs bring claims stemming from systemic Title IX failures and deprivations of due process, which include events related to sexual assaults perpetrated by Victor Daniel Silva, a former student of LSU, University of Louisiana Lafayette, and Louisiana Tech University from 2014 until 2020.

As set forth in the Third Amended Complaint, the Louisiana General Assembly passed Act 172 in 2015. This legislation was intended to address what the legislature perceived to be significant deficiencies in how Louisiana post-secondary institutions, in conjunction with law enforcement, addressed sexual assault and misconduct involving students. [Doc. 101, Third Amended Complaint, at ¶¶ 1-6; 33-34]. Act 172 mandated that post-secondary institutions and the law enforcement agencies handling reports on behalf of and including these post-secondary

institutions enter into formal agreements memorializing how these entities would communicate and coordinate with each other related to these reports of misconduct. *Id.* at ¶¶ 43-44. The purpose of this communication, and the overarching goal of Act 172, was to prevent and mitigate sexual assault and misconduct on campus and involving students, as well as to prevent students accused of misconduct at these post-secondary institutions from transferring undetected within Louisiana's post-secondary system.

In their Third Amended Complaint, Plaintiffs allege that Defendants individually and collectively failed to abide by the requisites of Act 172, and the responsibilities incumbent upon them to protect students and foreseeable third parties from harm perpetrated against them by people like Victor Silva. Moreover, because Plaintiffs were not privy to the infrastructure Defendants used to implement Act 172, Plaintiffs allege they had no ability to know of Defendants' willful failures during the timeframe of Silva's assaults. In fact, as set forth in the complaint, the concerted effort of Defendants to misdirect students and others into believing Defendants were appropriately enforcing policies and procedures related to sexual misconduct prevented these Plaintiffs from knowing the existence of any claims, even today. *Id.* at ¶¶ 194-204.

In March, 2021, Defendant Board acknowledged its role in a letter penned to the Presidents of Louisiana's top four post-secondary institutions. In the letter, Defendant Board acknowledged that, whatever Defendants' outward efforts to assure students and third parties about compliance with Act 172, internally, Defendants failed. In the letter, Defendant Board noted:

> More needs to be done to protect students enrolled at Louisiana's post-secondary institutions from sexual misconduct. Specifically, we must all ensure enforcement of all sexual misconduct and related policies, implement sexual misconduct and prevention programs, and provide support services for students who raise allegations of sexual misconduct.

*Id.* at ¶ 41, quoting a letter from Defendant Board of Regents to the Defendant Presidents, March, 2021.

This letter not only confirms Defendants' failures, but also supports Plaintiffs' allegations against Defendant Board. Specifically, and as set forth in the complaint:

10. At all times relevant to this complaint, Defendant Louisiana Board of Regents ("Defendant Board of Regents") has been a state agency, organized and existing pursuant to Louisiana law. Formed in 1974, the Board of Regents is responsible for coordinating all aspects of university life for Louisiana public post-secondary education. One of Defendant Board of Regent's fundamental roles is oversight, input and/or control over the annual budget of Louisiana's post-secondary institutions. As such, Defendant Board of Regents had the ability to and did exercise control over the individual University Defendants as set forth more fully herein…

36. Defendant Board of Regents was among the entities that developed the 2015 policy [to curb sexual assault on or related to students] including by assembling and consulting with national experts who advised on best practices "for providing statewide training opportunities to assist in uniform compliance."

37. Ultimately, the policy contained six critical mandates:

    i. Prevention and awareness programs;

    ii. Confidential advisors;

    iii. Campus climate surveys;

    iv. Coordination with local law enforcement;

    v. Online reporting; and

      vi.    Institutional task forces.

38. Defendant Board of Regents adopted this policy on February 23, 2015, which then became applicable to all Louisiana post-secondary institutions including Defendants LSU, Lafayette, and Tech.

[Doc. 101, Third Amended Complaint, at ¶¶ 10, 36-38]

In a letter from March, 2021, Defendant Board of Regents clearly acknowledged its responsibility in not only creating policies and procedures, but in implementing them, stating that "strong implementation" was a "critical responsibility of management boards." *Id*. at ¶¶ 41-42. Yet, notwithstanding this managerial role, and completely unbeknownst to Plaintiffs, Defendant Board conspicuously failed to create appropriate policies or ensure compliance even after this letter emerged.

As such, according to the four-corners of Plaintiffs' complaint, Defendant Board was directly responsible for creating the underlying policies and processes at issue in this case as well as to oversee enforcement. As alleged, Defendant Board failed in this regard. Yet, and as alleged in the complaint, despite Defendants' failures, Defendant Board nevertheless continued to receive or empowered the institutional and President Defendants to receive Title IX funding during the course of Silva's assault on Plaintiffs. Defendant Board also outwardly represented its compliance with Act 172.

Plaintiffs filed suit on July 13, 2022. Defendants now move to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that (1) Defendant is not properly pled as a Defendant in Plaintiffs' Title IX action, and (2) Plaintiffs' action is untimely. However, Plaintiffs have properly brought claims against Defendant as a recipient of federal funds and an entity charged with responsibility to supervise Louisiana's institutions of higher education, and

Plaintiffs' action is timely pursuant to the doctrine of *contra non valentem*. Thus, Defendant Board's motion should be denied.

## **STANDARD**

A motion to dismiss for failure to state a claim should be denied where a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."). In other words, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund*, 594 F.3d at 387. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a motion to dismiss for failure to state a claim is based upon an affirmative defense such as statute of limitations, dismissal is only proper where the affirmative defense appears on the face of the complaint. *Am. Precision Ammunition, LLC v. City of Mineral Wells*, 90 F.4th 820, 824 (5th Cir. 2024). "[T]he pleadings 'must reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise entitle them to relief." *Id.*, 90 F.4th at 824, (quoting *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022)). Thus, "[a]s a rule, a limitations defense is not favored at the pleadings stage because the dispositive issue of when the plaintiff became aware of her claim involves questions of fact that generally

cannot be resolved without evidentiary development." *Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 650 F.Supp.3d 452, 472 (M.D. La. 2023).

## ARGUMENT

### I. Defendant Board of Regents is a Proper Defendant for Plaintiffs' Title IX Claims

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has consistently recognized a private right of action under Title IX. *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999).

#### a. Defendant Board of Regents receives and allocates federal funds

Defendant Board argues that it is not subject to a Title IX action because it does not itself receive federal funds. However, Defendant Board receives federal funds as part of its responsibility to direct federal student loan programs and through its authority to guarantee student loans.

Under Louisiana law, Defendant Board "shall **supervise, control, direct, and administer** state and federal programs to provide loans to assist persons in meeting the expenses of higher education, and state and federal scholarship programs for higher education . . . ." La-R.S. 17:3021 (emphasis added). Pursuant to La-R.S. 17:3023(A)(1), Defendant Board has the authority to guarantee student loans.

Under La-R.S. 17:3023(2)(b) when "**federal funds** are available to refund [Defendant Board] for payment of interest on student loans, periodic installment payments of principal may be delayed, and interest may accrue . . . ." (emphasis added). Defendant Board's authority to guarantee student loans is limited such that "the aggregate value of all loans guaranteed and

6

outstanding at any one time shall not exceed fifteen times the total value of funds, investments, properties, and other assets available to the board for such purpose, except **that this guarantee may be further expanded by use of federal credit**." La-R.S. 17:3023.4(A) (emphasis added). Additionally, the legislature appropriates funds to pay eligible claims resulting from the guarantee of student loans by the Defendant Board, "only to the extent that **anticipated federal reinsurance or reimbursement payments . . . and any other monies available to the board for such purpose** are insufficient to pay such claims." La.-R.S. 17.3024.2. (Emphasis added).

Moreover, the Louisiana Office of Student Financial Assistance ("OFSA"), a program of Defendant Board,[1] "will receive the funds in question in its capacity as an escrow agent on behalf of lenders and student borrowers in accordance with the authority granted to OSFA, a 'guaranty agency', by [federal regulation]." La. Atty. Gen. Op. No. 94-591 (Jan. 27, 1995) 1995 WL 117098. The Louisiana Attorney General has also indicated that the OFSA is authorized to "invest loan proceeds and retain for its own use interest and other earning on those investments." *Id*. (citation and internal quotation marks omitted).

As demonstrated above, Defendant Board receives federal funds through its control of Louisiana's federal student loan programs, holds federal funds in escrow for borrowers, and receives federal reimbursements for guaranteeing such loans. Further, Defendant Board is allowed to invest the proceeds of such loans and retain the earnings and interest. As such, Defendant Board falls within the scope of Title IX and its motion to dismiss should be denied.

### b. Defendant Board of Regents has a supervisory role over Louisiana universities

Defendant Board argues that it is not properly pled as a Title IX Defendant because it has no supervisory role over the public universities in Louisiana. To the contrary, and as alleged,

---

[1] https://mylosfa.la.gov/

supervision of the individual universities and their boards is one of Defendant Board's primary responsibilities. [Doc. 101, Third Amended Complaint at ¶ 41-42].

Defendant Board is granted broad powers under the Louisiana Constitution. First, Defendant Board "shall plan, coordinate, and have budgetary responsibility for all public postsecondary education and shall have other powers, duties, and responsibilities provided in this Section or by law." La. Const. art. 8, § 5. Pursuant to article 8, section 5, Defendant Board has the power to revise or eliminate divisions or similar subdivisions at institutions of post-secondary education.[2] Furthermore, in section 17:3134(A)(1) of the Louisiana Revised Statutes, the Legislature expressed its intent "that an accountability process be established and implemented to provide for the systematic, ongoing evaluation of quality and effectiveness in the public institutions of higher education in Louisiana that may be used to initiate curriculum, programmatic, funding, policy, or planning changes in higher education." The Legislature empowered Defendant Board as the responsible agency for the accountability process. La.-R.S. 17:3134(C)(1).

Under the framework of Louisiana law, and under its own acknowledgments, Defendant Board has a significant supervisory role over Louisiana's public universities. Defendant Board is charged with the responsibility to plan and coordinate higher education in Louisiana, and retains budgetary authority. Defendant Board has the power to revise or eliminate programs, divisions, and subdivisions at Louisiana public universities, and is directly responsible for the accountability process. Defendant Board's authority to supervise public universities and their respective boards has led the Fifth Circuit to conclude that "[u]nder Louisiana's governance system, a Board of Regents has **overall authority** . . . ." *United States v. Louisiana*, 9 F.3d 1159, 1166 (5th Cir. 1993)

---

[2] This power is also codified as La.-R.S. 17:3125.

(emphasis added); *see also Delahoussaye v. City of New Iberia*, 937 F.2d 144, 148 (5th Cir. 1991) ("[T]he Board of Regents supervises the general powers of the Board [of Trustees].").

Therefore, because Defendant Board maintains a supervisory role over Louisiana's public universities, Defendant Board is a proper Title IX defendant.

## II. Plaintiffs' claims are timely under the doctrine of *contra non valentem*

"In Louisiana, the doctrine of *contra non valentem* is a jurisprudential doctrine under which prescription on a cause of action may be suspended." *Ashton v. United Parcel Serv.*, 147 So.3d 748, 752 (La. Ct. App. 2014); *see also Carter v. Haygood*, 892 So.2d 1261, 1268 (La. 2005) ("To soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit."). Louisiana Courts recognized four categories of *contra non valentem*:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
> (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Anding o/b/o Anding v. Ferguson*, 342 So.3d 1138, 1149 (La. Ct. App. 2022). "These categories allow the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled." *M.R. Pittman Grp, L.L.C. v. Plaquemines Parish Gov't*, 182 So.3d 312, 321 (La. Ct. App. 2015) (internal quotation marks omitted) (quoting *Wells v. Zadeck*, 89 So.3d 1145, 1150 (La. 2012)). Accordingly, the Louisiana Supreme Court has indicated that *contra non valentem* should be viewed through the lens "that prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished;

9

thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted." *Carter*, 892 So.2d at 1268.

### a. Plaintiffs' complaint is timely because Defendant took steps to prevent Plaintiffs from availing themselves of their cause of action

The "third category of *contra non volantem* applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." *Id*. at 1269. Stated differently, this category encompasses

> situations where an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant, or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.

*Id*. As such, this category is implicated "when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction." *Anding*, 342 So.3d at 1149.

In their complaint, Plaintiffs allege that they had no opportunity to learn of the harm caused by Defendant Board because Defendant Board took efforts to conceal its malfeasance. As alleged, in response to accusations that it had not successfully implemented those actions contemplated under Act 172, Defendant Board plainly stated its critical responsibility to provide appropriate oversight and further acknowledged its failure to do so. [Doc. 101, Third Amended Complaint at ¶ 41-43]. Plaintiffs have alleged they should have had a right to rely on this admission, but that Defendant Board nevertheless failed to correct its errant conduct. [Doc. 101, Third Amended Complaint at ¶¶ 54-93]. Plaintiffs have alleged that they had no reason to suspect that Defendant Board was failing to abide by its constitutional mandate, nor could Plaintiffs have had reason to suspect that Defendant Board was failing to require public universities to conform to state and

10

federal law. Instead, and as alleged in the pleadings, Plaintiffs reasonably relied on Defendant Board's representations that they would implement Louisiana law and require the post-secondary public universities to abide by the law. Accordingly, Plaintiffs have reasonably alleged that Defendant Board knowingly concealed its material complicity and affirmative failures to protect students, including Plaintiffs, from known offenders.

Defendant Board further attempts to avoid the application of *contra non valentem* by asserting that Plaintiffs knew of their assaults at the time they were assaulted. This fact would be sufficient to conclude that the prescriptive period had run against Plaintiffs' assailants, but Victor Silva is not a party to this action. As to Defendant Board however, the mere fact that Plaintiffs were aware of their attack does not equate to notice of Defendant Board's failures to implement a protective system. *Cf. Doe*, 650 F.Supp.3d at 473 ("[B]ecause a Title IX heightened risk claim pins liability to the university's action or inaction that resulted in the plaintiff's assault, the claim accrues only when the plaintiff should have reasonably discovered that university authorities knew of the abuser's 'conduct and failed to respond appropriately.'" (quoting *Snyder-Hill v. The Ohio State Univ.*, 48 F.4th 686, 705 (6th Cir. 2022)).[3] Rather, Plaintiffs could not have known, nor could they have suspected that Defendant Board, in conjunction with the other chief officers at educational institutions and law enforcement entities across the state had so utterly failed to abide by state law.

Ultimately, Plaintiffs' complaint plausibly alleges facts that demonstrate Defendant Board made efforts to conceal the facts underlying their lawsuit, the third category of *contra non valentem* operates to make Plaintiffs' complaint timely.

---

[3] Any knowledge regarding attacks on other victims would similarly not put Plaintiffs on notice. *See id.* at 475 ("Plaintiff's mere discovery that Silva assaulted other women is not sufficient to put her on notice that ULS knew of such attacks yet ignored them.").

11

### b. Plaintiffs' complaint is timely because Defendant Board's concealment rendered Plaintiffs' claims unknowable

Alternatively, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

"The fourth category of *contra nonvalentem*, commonly referred to as the discovery rule, provides that prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Anding*, 342 So.3d at 1149. "Under the discovery rule, prescription begins to run when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Id.*; *see also Morgan v. Entergy New Orleans, Inc.*, 234 So.3d 113, 116 (La. Ct. App. 2017) (indicating that under the discovery rule, "prescription is suspended until the tort victim discovers or 'should have discovered' the facts upon which his or her cause of action is based" (quoting *In re Med. Review Panel of Howard*, 573 So.2d 472, 474 (La. 1991)). "In these 'should have discovered' cases, the Supreme Court has focused on the reasonableness of the claimant's 'action or inaction.'" *Morgan*, 234 So.3d at 119 (quoting *In re Howard*, 573 So.2d at 474).

Here, Plaintiffs could not have known of Defendant Board's acts and failures. The only information available to Plaintiffs were Defendant Board's public representations related to adopting and implementing policy aligned with state law. Plaintiffs therefore had no ability to know of Defendant Board's repeated and continuous failures including after Defendant Board acknowledged it had more work to do to comply with state law. Moreover, it was not unreasonable for Plaintiffs to rely upon Defendant Board's representations that Defendant Board would take appropriate measures to supervise Louisiana's public universities, implement policies to prevent sexual assault, and hold universities accountable for failing to maintain a protective system on

their campuses. Moreover, none of the Plaintiffs could have independently discovered information regarding the Defendants' failures, as educational institutions are generally precluded from disclosing personally identifying student information. *See Doe*, 650 F.Supp.3d at 474 ("Plaintiff also plausibly alleges that she could not have independently discovered this information even had she tried, particularly given FERPA's general rule that educational institutions may not disclose personally identifying information of their students."). As such, Plaintiffs are entitled to application of the fourth category of *contra non valentem*.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss should be denied.

**DORAN & CAWTHORNE, PLLC**

*s/ Pride Doran*
Pride J. Doren (#25035)
Nahshon J. Route (#37848)
521 E. Landry Street (70570)
Post Office Box 2119
Opalousas, LA 70571
Phone: (337) 948-8008
Fax: (337) 948-0098
Email: pride@doranlawfirm.com
            nahshon@doranlawfirm.com

*Attorneys for the Plaintiffs*

14

## CERTIFICATE OF FILING

      This shall serve as notice that all parties of record have been served with this filing pursuant to CM/ECF.

*s/ Pride Doran*
Pride Doran

This 30th day of May, 2024.