UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

M.D., ET AL :

VERSUS : CIVIL ACTION NO.: 6:22-CV-02089

LOUISIANA BOARD OF REGENTS, ET AL : JUDGE JOSEPH, MAG. JUDGE AYO

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

## LCG'S REPLY TO PLAINTIFFS' OPPOSITION OF MOTION TO DISMISS

MAY IT PLEASE THE COURT:

Defendant, LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT ("LCG"), submits the following reply to Plaintiffs' Opposition to LCG's Motion to Dismiss [Doc. 118 & 124].

**A.  Plaintiff's burden to show suspension of prescription**

The prescriptive period will commence once the circumstances would lead a reasonable person to investigate further. *Piotrowski v. City of Hous.*, 51 F.3d 512, 516 (5th Cir. 1995). Plaintiffs argue that their Complaint is timely solely under the doctrine of *contra non valentum*, because (a) "defendants took steps to prevent plaintiffs from availing themselves of their causes of action" and because (b) "plaintiffs' claims were not known or reasonably knowable until they learned of defendants' actions and inactions" [Doc. 124, pp. 9-12, 12-13].

*1.  No steps were taken by LCG to prevent plaintiffs from availing themselves of their causes of action*

Plaintiffs' try to support this allegation with improper and wholly conclusory group pleading practices, with many arguments having no record citation supporting the allegations. Plaintiffs claim they "had no opportunity to learn of the harm caused by **Defendants** because **Defendants** took efforts to conceal their malfeasance" [Doc. 124, p. 10]; "**Defendants** failed to abide by internal policies and

procedures related to sexual misconduct, failed to make reports and undertake appropriate investigations, and failed to train and/or supervise its employees to ensure that they were complying with the mandates of Act 172" [*Id*]; "Plaintiffs reasonably relied on **Defendants'** representations that they would abide by Louisiana law, and that Defendant would abide by its responsibility to conduct all appropriate investigations as contemplated by policies, procedures, and other resources" [*Id*]; and "the concerted effort of **Defendants** to misdirect students and others into believing **Defendants** were appropriately enforcing policies and procedures related to sexual misconduct and investigating incidences of assault prevents these Plaintiffs from knowing the existence of any claims, even today" [*Id*, p. 6].[1]

Plaintiffs' Third Amended Complaint merely alleges that "**Defendants** undertook efforts to conceal their failures" without any supportive factual assertions [Doc. 101, ¶¶197, 326(d) & 337(d)]. No additional factual support is given as to how LCG undertook efforts to conceal anything at all. Such conclusory allegations cannot meet the pleading standards required to overcome LCG's 12(b)(6) Motion.

Additionally, plaintiffs state that "Defendants" did not abide by their internal policies related to sexual misconduct, but do not identify the internal policies that were violated. Plaintiffs further allege that "Defendants" failed to make reports and undertake appropriate investigations. This allegation is misguided. Investigations conducted by LPD were submitted to the Court [Doc. 118-6 & 118-7]. Plaintiffs also alleged that LCG failed to train and/or supervise its employees to ensure

---

[1] Regarding Plaintiffs' allegations concerning any improper or faulty investigations, LCG notes that "[t]here is no constitutional right to an investigation," much less a fault-free investigation. *Burrell v. Adkins*, 2007 U.S. Dist. LEXIS 95899, at *29 (W.D. La. Oct. 22, 2007); *Shields v. Twiss,* 389 F.3d 142 (5th Cir. 2004). As such, any claims regarding LCG's alleged failure to undertake "appropriate investigations" fails to state a claim.

that they were complying with the mandates of Act 172. However, as previously briefed LCG is not within the scope of entities/persons to which Act 172 applies. Plaintiffs further provide that they "reasonably relied on Defendants' representations that they would abide by Louisiana law" [Doc. 124, p. 10]. Paragraph 199 of Plaintiffs' Third Amended Complaint states that these "representations" were those related to adopting and implementing policy aligned with state law. LCG can only assume here that plaintiffs are referring to the Campus Accountability MOU [Doc. 118-3]. LCG has previously briefed the facts showing that they did not violate the MOU [Doc. 118-1]. Lastly, plaintiffs provide that the defendants "misdirected students" into believing that they were (a) enforcing policies and procedures related to sexual misconduct and (b) investigating incidences of assault. This assertion is completely unsupported, wholly conclusory, and downright false. Most importantly, none of these allegations rise to the level that would allow plaintiffs' claims to proceed under the third category of *contra non valentum*.

Plaintiffs argue that the third category of *contra non valentum* "is implicated 'when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effectually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction.'" This category of *contra non valentum* centers on what actions were taken by the defendant. Outside of plaintiffs' conclusory statements that the defendants took measures to conceal their failures, there are no facts pled to even suggest that LCG took any actions to conceal, misrepresent, or engage in fraud. LCG contends that Plaintiffs' fraud, concealment, and/or misrepresentation claims fall short of Rule 9(b)'s particularity requirement, because the claims against Defendants fail to differentiate the alleged fraud, concealment or misrepresentation claims against any of the individual Defendants from the

claims against any other defendants. Furthermore, the Complaint runs afoul of Rule 9(b) because of group pleading. Though the Fifth Circuit "has never adopted the 'group pleading' doctrine," it does "not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004). The federal courts in this District and throughout Louisiana have consistently found fraud claims that are generic, conclusory, and fail to distinguish among the defendants to be not in compliance with Rule 9(b)'s strict pleading requirements. *Jacques v. Baker Hughes*, 2021 WL 1271027, at *4 (W.D. La. Apr. 6, 2021); *Watson v. Arkoma Dev.*, LLC, 2018 WL 6274070, at *10 (W.D. La. Nov. 15, 2018). In *Jacques*, the court found the Plaintiff's petition lacking particularity because it failed to include "allegations distinguishing among each Defendant and their respective responsibility for the fraudulent activities." *Jacques, supra*; *Budget Constr. Servs. LLC v. Victory Exteriors Roofing & Sheet Metal LLC*, 634 F. Supp. 3d 309, 315 (W.D. La. Oct. 11, 2022). Thus, plaintiffs' claims cannot move forward under the third category of *contra non valentum*, since they are merely conclusory, fail to plead facts with specificity, and fail to comply with FRCP 9.

    2.    *Plaintiffs' claims were reasonably knowable*

Plaintiffs claim they are entitled to tolling of prescription under the fourth category of *contra non valentum*, i.e., the discovery rule. Plaintiffs argue application of the discovery rule, because they were "summarily excluded from Defendant's closed system" [Doc. 124, p. 12]. Moreover, plaintiffs assert that the prescriptive period should only begin to run from the date that a similar lawsuit was filed because that was the first time that they were provided with information about defendants'

conduct in explicit detail [Doc. 101, ¶202]. Importantly, commencement of prescription is not dependent on when a potential-plaintiff actually acquires the knowledge that he or she has a legal cause of action. Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof. *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988).

Plaintiffs claim that the "circumstance" that would lead a reasonable person to further investigate was a Federal Complaint filed in the Middle District of Louisiana on May 25, 2022.[2] However, plaintiffs had notice of the facts forming the basis of this lawsuit as early as March 2021 [*Id* at ¶144]. One month prior to March 2021, plaintiffs P.P. and J.B. connected and shared their experiences regarding Victor Silva with each other [*Id* at ¶¶143, 173]. In March 2021, reporter Kenny Jacoby of USA Today contacted P.P. "About the investigation he was conducting on Silva **and the Louisiana higher education system**" [*Id* at ¶144]. Jacoby published his article on May 26, 2021.[3] The article lays out all of the alleged wrongdoings of the universities and police departments which serve as the basis for the lawsuit brought by plaintiffs here. Plaintiffs P.P. and J.B. were already connected and sharing their experiences with Silva when P.P. was contacted by Jacoby. Moreover, even if P.P.'s pre-publication interview with Jacoby discussing Silva and the failings of the Louisiana higher education system does not suffice to trigger the running of prescription, the publication of the USA Today article itself would certainly lead these plaintiffs to further investigate the facts forming the basis of this lawsuit.

---

[2]That lawsuit alleges that the plaintiff discovered the facts necessary to commence the running of prescription on the date that the USA Today article was published. *Doe v. Bd. of Supervisors of the Univ. of La. Sys.*, No. 3:22-cv-00338 (M.D. La.).

[3]https://www.usatoday.com/in-depth/news/investigations/2021/05/26/louisiana-officials-skirted-law-meant-curb-campus-sex-crimes/7048845002/

Also, "sometime around March 2021," J.B. acquired first-hand information from Silva that there was going to be "an upcoming news article about him" [*Id* at ¶¶168-69]. J.B. then found an abundance of information online from other women "detailing [Silva's] sexual abuse of others" [*Id* at ¶170]. Through reaching out to these other women, J.B. acquired P.P.'s contact information [*Id* at ¶173]. These plaintiffs were aware of the upcoming USA Today article that was to be published on Silva, as well as the general connection with higher education and law enforcement.

Plaintiffs' assertion that they only first learned of the facts forming the basis of this lawsuit from the May 2022 Federal Complaint is incompatible with the remainder of the allegations contained in their Third Amended Complaint. Plaintiffs were contacted by Jacoby, who told them what the article was going to be about; plaintiffs were told by Silva himself that there was going to be an upcoming news article about him; plaintiffs connected with each other and shared information about their experiences with Silva; and plaintiffs investigated Silva's past by searching online and finding other instances of sexual assault. Even considering plaintiffs' statement that they only learned the *explicit details* of the facts forming the basis of this lawsuit in May of 2022, "actual knowledge" is not the standard to determine whether plaintiffs' claims are prescribed. Plaintiffs' claims are prescribed, because they had notice of facts which, in the exercise of due diligence, would have led to actual knowledge or at least prompted additional reasonable inquiry.

**B.      Plaintiffs' "state-occasioned damage" to bodily integrity fails to state a viable claim**

Plaintiffs cite *Tyson v. Cnty. of Sabine*, 42 F.4th 508 (5th Cir. 2022) as authority for their constitutional right to be free of state-occasioned damage to a person's bodily integrity [Doc. 124, p. 14]. The facts of *Tyson* are vastly different and distinguishable from plaintiffs' claims, and its holdings are inapplicable to the present case.

In *Tyson,* a state official, himself, sexually assaulted a citizen by visiting the plaintiff while she was alone at her house under the pretense of a welfare check. *Tyson*, *supra* at 518. Plaintiffs' reliance on *Tyson* is misplaced, because this lawsuit is nowhere close to alleging that any officer of LCG assaulted plaintiffs. As plaintiffs admit, Silva is not a party to this action [Doc. 124, p. 10]. Silva was not a state actor. Allowing plaintiffs to proceed under this theory would improperly expand *Tyson* and imply that any private harm not stopped or otherwise prevented by law enforcement would be "state-occasioned damage." *Tyson* simply has no application under these facts.

**C.      Equal Protection - deliberate indifference**

Plaintiffs assert that they are not making a constitutional claim for LCG's failure to investigate. Rather, they claim LCG's failures to investigate reports of sexual assault evidence deliberate indifference to sexual violence [Doc. 124, p. 15 fn. 1]. Plaintiffs failed to plead any underlying constitutional violation against LCG. Plaintiffs' vague and conclusory allegations that LCG was deliberately indifferent to sexual violence are categorically untrue, since the public records show that the complaints of sexual assault were investigated [Doc. 118-3, 118-4, 118-6 & 118-7].

> Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Deliberate indifference implies an official's actual knowledge of facts showing that a risk of serious harm exists as well as the official's having actually drawn that inference. *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks and citations omitted). Deliberate indifference is more than mere negligence or even gross negligence. *City of Canton*, 489 U.S. at 388. Proof of deliberate indifference normally requires a plaintiff to show a pattern of violations and that the inadequate training or supervision is "obvious and obviously likely to result in a constitutional violation." *Estate of Davis*, 406 F.3d at 381 (citations omitted).

*Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010).

First, plaintiffs' Equal Protection claim must fail absent a Constitutional violation. Plaintiffs allege that LCG failed to investigate reports of sexual assault [Doc. 124, p. 15 fn. 1]. Plaintiffs double-down in their Opposition arguing that LCG failed to investigate reports of sexual assault.[4] Plaintiffs' Complaint provides two instances alleging that LCG should have investigated sexual assault reports against Silva [Doc. 101, ¶¶ 74-76 & 77-79]. Contrary to plaintiffs' allegations, the public records show that the sexual assault complaints were fully investigated [Docs. 118-6 & 118-7]. Despite the public records, plaintiffs maintain that LCG did not investigate.

Since plaintiffs have failed to plead sufficient facts alleging that any municipal actor disregarded a known or obvious consequence of his action, and since the public records categorically disprove any such implied allegations, Plaintiffs' claims pursuant to the Equal Protection Clause must likewise fail.

**D.   Equal Protection - treatment of other classes**

Plaintiffs cite *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989) asserting disparate treatment. However, plaintiffs failed to plead a valid Equal Protection claim on this front, because there is no allegation of disparate treatment.[5] The Equal Protection Clause of the 14th Amendment requires all persons similarly situated to be treated alike. *Rolf v. City*

---

[4] See Doc. 124, p. 11 (The mere fact that plaintiffs were aware that Silva had assaulted other women without consequence does not suggest they should have been aware that Defendant **wholly disregarded their allegations rather than investigating them**); p. 14 (One such custom or practice was Defendants' **failure to investigate or report allegations of sexual assault made against Victor Silva**); p. 15 (Defendant **routinely and repeatedly failed to investigate or inadequately investigated allegations of sexual misconduct**); and p. 16 (Defendant **consistently failed to investigate reports of sexual assault** made by female victims against Victor Silva and further failed to report such complaints to Louisiana's universities).

[5] The law is well-settled that arguments in a brief are not a substitute for properly plead allegations: "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Becnel v. St. Charles Par. Sheriff's Office*, 2015 U.S. Dist. LEXIS 128461, 2015 WL 5665060, *1 n. 3 (E.D. La. Sept. 24, 2015); *Sheppard v. Cheeks*, 2020 U.S. Dist. LEXIS 82076, *5-6 (W.D. La. April 13, 2020).

*of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). Pleading an equal protection claim does not require a showing that the city acted with illegitimate animus or ill will. *Lindquist v. City of Pasadena,* 525 F.3d 383, 387 (5th Cir. 2008). However, a plaintiff must allege she was intentionally treated differently from others similarly situated and there is no rational basis for that treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Three Legged Monkey, L.P. v. City of El Paso*, 2015 U.S. Dist. LEXIS 185418, at *20 (W.D. Tex. Jan. 8, 2015). Plaintiffs do not allege that LCG handled or investigated reports of sexual assault differently based on the gender of the complainant.

Plaintiffs also rely on *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004). However, *Beltran* cautioned that the Equal Protection Clause should not be used to make an end-run around *DeShaney*'s principle that there is no constitutional right to state protection for acts carried out by a private actor. See *McKee v. City of Rockwall*, 877 F.2d 409, 413 (5th Cir. 1989)(*DeShaney* might easily be circumvented if plaintiffs allowed to convert "every Due Process claim into an Equal Protection claim, via an allegation that state officers exercised their discretion to act in one situation and not another"). *Beltran* does not support plaintiffs' arguments.

Plaintiffs also rely on *Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471 (E.D. Tex. 2022) where the plaintiffs sufficiently alleged that the defendant's policies and practices created a "breeding ground" for sexual predators in violation of equal protection. The *Doe* Court reasoned that plaintiffs' allegations survived defendant's 12(b) motion, because the plaintiffs provided factual allegations spanning four decades that their employer failed to conduct background checks or ignored the criminal records of prospective employees; failed to train staff to observe and report or ignored signs of grooming and child abuse on school premises; failed to report and mischaracterized complaints of sexual misconduct; and transferred predators credibly accused of sexual abuse to other

campuses within the school district rather than terminating them. *Id.* at 491. *Doe* is easily distinguishable, since LCG was not Silva's employer.

Here, plaintiffs have merely alleged that LCG failed to investigate reported incidents of sexual assault, which are belied by the public record [Docs. 118-6 and 118-7], and that LCG did not communicate said reports to UL-Lafayette when they had no obligation to make such communications.

*Doe* outlined the requirements of surviving an Equal Protection 12(b) motion, stating that a plaintiff cannot succeed merely by alleging disproportionate impact alone. Instead, she must allege facts that tend to show she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *Doe, supra* at 490-91. In addition, *Doe* held that the Complaint must allege a discriminatory purpose. More specifically, the alleged facts must show the decision-maker selected or reaffirmed a course of action at least in part "because of," not merely "in spite of" its adverse effects upon an identifiable group. This is a difficult standard to meet. *Id.* at 491. Plaintiffs' claims for Equal Protection in this suit do not meet the pleading standards to survive this 12(b) motion, and likewise should be dismissed.

**E.     Conclusion**

Based on the foregoing, defendant, LCG, prays that all of plaintiffs' claims against them be dismissed as a matter of law, as the claims are clearly prescribed, are not saved by equitable tolling and/or fail to plead any cause of action that is recognized in this Circuit.

Respectfully submitted,

BORNE, WILKES & RABALAIS, L.L.C.

BY:        S/Joy C. Rabalais
JOY C. RABALAIS (26476), T.A.
JORDAN JOHN HENAGAN (36206)
GRANT R. SCHEXNAILDER (40040)
K. ELIZABETH HEINEN (24452)
HUNTER B. AHIA (40251)
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, Louisiana 70502-4305
Telephone: (337) 232-1604 Ext. 232
Facsimile: (337) 232-1837
E-mail: rabalais@bornewilkes.com

ATTORNEYS FOR LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT