UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| M.D., et al. | § | CIVIL ACTION NO.  6:22-cv-002089 |
| | § | |
| VERSUS | § | |
| | § | JUDGE DAVID C. JOSEPH |
| LOUISIANA BOARD OF REGENTS, et al. | § | |
| | § | MAGISTRATE JUDGE DAVID J. AYO |

**REPLY TO PLAINTIFF'S OPPOSITION TO THE LSU PRESIDENTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendants, Dr. Fieldon King Alexander ("Alexander"), Thomas C. Galligan, Jr., ("Galligan") and William F. Tate, IV ("Tate") (collectively "Defendants" or "the LSU Presidents"), respectfully submit this Reply brief to Plaintiffs', M.D.'s, P.P.'s, and J.B.'s, Opposition to their Motion to Dismiss the Third Amended Complaint ("Complaint") (Docs. 101 & 112.) For the reasons stated more fully below and in the LSU President's memorandum in support of its motion to dismiss, Plaintiffs' Third Amended Complaint should be dismissed with prejudice for failure to state a claim.

**I.   PLAINTIFFS' HAVE NOT SUFFICIENTLY ALLEGED THAT *CONTRA NON VALENTUM* APPLIES**

Plaintiffs have not met their burden such that Louisiana's doctrine of *contra non valentem* applies to their claims. "[T]he party who asserts the benefit of *contra non valentem* bears the burden of proving its requisite elements and applicability." *See M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 2015-0860 (La. App. 4 Cir. 12/2/15), 182 So. 3d 312, 319.  "The third category of *contra non valentum* applies when the defendant has done some act effectually to lull the victim into inaction and prevent him from availing himself of his cause of action." *Dominion Expl. & Prod., Inc. v. Waters*, 2007-0386 (La. App. 4 Cir. 11/14/07), 972 So. 2d 350, 358) (citing

*Fontenot v. ABC Ins. Co.*, 95–1707, p. 4 (La.6/7/96), 674 So.2d 960, 963. "To trigger application of the third category, [the act] that keeps the victim in ignorance must rise to the level of concealment, misrepresentation, fraud, or ill practices." *Id.* Thus, the plaintiff must plead some affirmative act of concealment by the defendant for the Court to consider in applying *contra non valentem*. *See e.g. Lennie v. Exxon Mobil Corp.*, 17-204 (La. App. 5 Cir. 6/27/18), 251 So. 3d 637, 643, writ denied, 2018-1435 (La. 11/20/18), 256 So. 3d 994.) Further, Federal Rule of Civil Procedure 9 requires Plaintiffs to state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9.  This Plaintiffs have failed to do.

Accordingly, at the pleading stage, the law requires Plaintiffs to plead affirmative acts of concealment by *each* LSU President against *each* Plaintiff and to state such acts of fraud or mistake with particularity. Plaintiffs have not done so here. Instead, they generally allege that *all* Defendants in this case concealed or misrepresented their compliance with federal and state laws and that *all* Defendants excluded Plaintiffs from their internal processes. (Doc. 122, p. 12.) But these statements are overly broad and insufficient under pleading standards. As further proof of their pleading deficiencies, Plaintiffs have offered no particularities such as dates, times or the circumstances that rise to the level of fraud or misrepresentation individually perpetrated by Alexander, Galligan, and Tate against *each* Plaintiff. Notably, Plaintiffs also assert that because "this case alleges that Defendants concealed facts upon which Plaintiffs' claims rest, the focus of the Court's inquiry should not be upon the Plaintiffs." (Doc. 122, p. 13.) While, that is true, Plaintiffs have not provided this Court with any allegations of concealment by Alexander, Galligan, and Tate to consider. Therefore, they have not met their burden that *contra non*

2

*valentem's* third category applies.[1]

Also, the third category of *contra non valentem* encompasses situations where the defendant lulls the plaintiff into some action "because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his right." *See Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 2021-00061 (La. 10/10/21), 333 So. 3d 368, 374(citations and quotations omitted.) The crux of Plaintiffs' suit against the LSU Presidents is that the LSU Presidents allegedly had a legal duty under Act 172 to report Silva's misconduct to other Louisiana universities. The Plaintiffs argue this supposed concealment of Silva's misconduct "allowe[d] him to move in and throughout the University System with [] ease." Therefore, the Plaintiffs opine they were lulled into believing that all the Defendants were abiding by Louisiana law, thus, they took no action to bring their claims earlier. (Doc. 122, p. 11, 13.) However, Act 172 was not the law when Silva was a student at LSU and transferred in 2014. Thus, Alexander, who was the only LSU President during Silva's tenure at LSU, had no legal duty to report anything to any universities about Silva. Ergo Alexander had no legal duty and nothing to conceal and, consequently, neither did Galligan nor Tate when they became LSU Presidents as Silva was not a student at LSU during their tenure. Plaintiffs' arguments otherwise are meritless.

Moreover, Act 172 required communications about transferring students who had disciplinary action taken against them or withholding transcripts were the transferring student was under a pending investigation. La. R.S. 17:3399.15(6)(a)(b) (effective June 23, 2015-June 28, 2021.) Plaintiffs have alleged that Silva was not subject to any disciplinary actions nor to any investigations.[2] Accepting these facts as true and viewing those facts in the light most favorable to

---

[1] Additionally, Plaintiffs do not address nor distinguish the jurisprudence cited by the LSU Presidents in their Motion to Dismiss on this issue. *I.E. Owens v. Louisiana State Univ.,* 2023WL2116030(M.D. La. Feb. 17, 2023) and *Beckwith v. City of Houston*, 790 F. App'x 568 (5th Cir. 2019), cases which are crucially instructive here.
[2] The LSU Presidents aver that these allegations are wholly inaccurate.

Plaintiffs, under these facts, the LSU Presidents were not required by Act 172 to communicate to other universities about Silva because Silva did not fit any of the Acts' requirements. Plaintiffs cannot rely on the third category of *contra non valentem* to save their untimely claims against the LSU Presidents.

Plaintiffs also assert the fourth element of *contra non valentem*, the discovery rule, applies to their case. To avail themselves of the discovery rule the Plaintiffs must allege facts that they were "not aware of the facts giving rise to [their] cause[s] of action against the particular defendant[s], [and therefore] the running of prescription is for that reason suspended" until the Plaintiffs discover or should have discovered the facts upon which their cause of action is based. *See Guerin v. Travelers Indem. Co.*, 2019-0861 (La. App. 1 Cir. 2/21/20), 296 So. 3d 625, 629. "[A]n injured party has constructive notice of his condition when he possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. *Del Vescovo v. Air & Liquid Sys. Corp.*, 2023-0116 (La. App. 4 Cir. 11/15/23), 377 So. 3d 759, 779(quotations cleaned up and citations omitted.)

Plaintiffs briefly argue that they could not have discovered the facts giving rise to their claims against the individual LSU Presidents because of *all* Defendants had a closed system. (Doc. 122, pp. 14-15.) But these assertions are belied by the allegations that M.D. reported Silva to LSU's Title IX office and was unhappy with the results, that LSU did report the April 2015 assault to ULL, that P.P. had discussions with other students and that one of her teachers used Silva as an example of a serial sexual predator in one of her classes, and that J.B. took steps to research Silva online once she discovered his real name. As alleged on the face of the Complaint, a reasonable person could conclude that the Plaintiffs were curious and should have inquired further, especially considering each Plaintiff was suspicious of Silva and/or felt the system had failed them.

Plaintiffs also misconstrue the unrelated deposition testimony of Dr. Jane Cassidy and Jennie Stewart. The Plaintiffs claim that this testimony reveals that the LSU Police Department ("LSU PD") failed to comply with the mandates of Act 172 by refusing to enter into a memorandum of understanding until 2021("MOU".) (Doc. 122, p. 11.) But that is not what either deponent testified to. A closer reading reveals the deponents stated there was a disagreement between LSU PD and LSU's administration about what personal information of victims LSU PD could legally share with the administration sometime in 2016-2021. Furthermore, the testimony says nothing about the Plaintiffs' inability to discover any supposed illegal conduct by the LSU Presidents. (Doc. 101-6, pp.3-5; Doc. 101-7, pp. 3-4.) Lastly, reading Act 172 closely shows that Act 172 provided immunity to the LSU Presidents if local law enforcement refused to enter into a MOU. *See* La. R.S. 17:3399.14(E), effective June 23, 2015, to June 28, 2021.  There was no MOU and there are no allegations of an MOU between LSU and local law enforcement. Plaintiffs' reliance on the deposition testimony is unavailing and cannot provide support that category four of *contra non valetem* applies here.

## II. PLAINTIFFS SECTION 1983 CLAIMS AGAINST THE LSU PRESIDENTS STILL FAIL.

### A. There are no allegations of Alexander's personal involvement,

Viewing the allegations of Plaintiff's Complaint in the light most favorable to them, Plaintiffs have not pleaded or offered any facts that would lead this Court to conclude Alexander could be held personally liable under Section 1983 above the speculative level. It is axiomatic that to state a viable claim holding Alexander individually liable under Section 1983, the Plaintiffs must allege facts based on Alexander's personal involvement in the alleged constitutional violation and that he was acting under color of state law. *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) ("A plaintiff must establish that the defendant was either personally involved in

the deprivation or that his wrongful actions were causally connected to the deprivation.") (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999); *See e.g. Keim v. City of El Paso*, 162 F.3d 1159 (5th Cir. 1998) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1429-30 (5th Cir.1995) ("Further, § 1983 individual-capacity complaints must be pleaded with 'factual detail and particularity.'") Moreover, to allege a plausible Section 1983 Fourteenth Amendment Section 1983 claim based on substantive due process clause, a plaintiff must allege (1) a deprivation of a cognizable constitutional right, (2) conduct by a state actor, (3) egregious and conscious-shocking behavior that rises above the level of mere improper or illegal behavior, (4) intentionality or deliberate indifference, and (5) causation. *See Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022); see also *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 887 (W.D. Tex. 2019); *see McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002).

What is missing from the Plaintiffs' Complaint are any allegations of Alexander's personal involvement in depriving M.D., P.P., or J.B. of their Fourteenth Amendment right to bodily integrity. For instance, M.D. speculates that Alexander failed to engage in proper oversight of LSU, and this was a direct and proximate cause of her injuries. (Doc. 122, p. 18.) But M.D. doesn't allege any facts that Alexander knew of Silva's past or of the alleged assault against M.D., that he failed to investigate Silva or directed others not to investigate with this supposed knowledge, that he failed to notify ULL of Silva's past, that Alexander acted intentionally or with deliberate indifference in that knew of and disregarded an excessive risk to health and safety of M.D. (or P.P. or J.B.), and that Alexander's conduct shocked the conscience. *See Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) ("A violation of the right to bodily integrity follows from 'behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'")(quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847, n.8, 118

S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Furthermore, P.P. has not alleged any allegations of Alexander's personal involvement in her supposed constitutional deprivation, more particularly she has not alleged that she even reported her alleged assaults to anyone. If P.P. never reported the allegations how could Alexander even know that somehow, someway he was depriving P.P. of her right to bodily integrity? And as for J.B., it is not plausible that she could have a viable Section 1983 claim against Alexander because she wasn't even a student of LSU and Alexander was not a state actor at the time of her alleged assault. Instead, M.D., P.P. and J.B. have not alleged any particular personal involvement by Alexander (or Galligan and Tate) but have alleged group actions by all the Presidents of LSU, ULL, and Tech. (Doc. 112, p. 18.) This is insufficient to survive a motion to dismiss. Moreover, reading the Complaint in its entirety, M.D.'s, P.P.'s and J.B.'s allegations against Alexander, that he failed to engage in proper oversight or failed to investigate or punish Silva, evinces at best a negligence claim against Alexander which cannot support a personal capacity claim against Alexander under Section 1983. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).[3]

### B. There are no allegations of Galligan's personal involvement.

Likewise, M.D.'s, P.P.'s and J.B.'s Complaint is devoid of any factual allegations of Galligan's personal involvement in the deprivation of their substantive or procedural due process rights. More particularly, it is undisputed that Galligan was interim President of LSU for a short period in 2020-2021. Based on the sparse facts alleged by M.D., she was a student at LSU in the Fall of 2014 to Spring of 2015. (Doc. 101, ¶¶94, 107.) Critically, M.D. is missing the element of Galligan being a state actor at the time of her alleged assault. That is, Galligan could not have been

---

[3] To the extent this Court reads Plaintiffs' bare allegations against Alexander, Galligan and Tate as a state created danger, that the state-created-danger theory of substantive due process liability is not legally cognizable in the Fifth Circuit. *See Fisher v. Moore*, 73 F.4th 367, 372 & n.13 (5th Cir. 2023) (collecting cases and noting that the Fifth Circuit has "repeatedly declined to recognize" that theory).

responsible for failures to report or investigate Silva because he was not LSU's President at the time of M.D.'s complaints and therefore, he could not have allegedly set into motion Plaintiffs supposed constitutional due process deprivations over the several years alleged in their Complaint. Additionally, P.P. and J.B. make no mention of Galligan in any of their allegations or that P.P. and J.B. (and M.D.) were even known to Galligan such that this Court could draw a reasonable inference that Galligan is liable for the misconduct alleged or raises a right to relief above the speculative level.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ( "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level.")(citations and quotations cleaned up).  Plaintiffs' claims against Galligan as pled are insufficient to withstand his motion to dismiss.

### C.  There are no allegations of Tate's personal involvement.

Similarly, Plaintiffs' allegations against Tate are also unavailing because the Complaint is without any allegations of his personal involvement in their supposed constitutional deprivations. More particularly, for all Plaintiffs, Tate was not a state actor at the time of their alleged assaults or interactions with Silva. It is undisputed that Tate did not become LSU's President until May 2021, well after M.D. and P.P. matriculated through the Louisiana university systems and well after J.B. encountered Silva. Plaintiffs' attempts to hold Tate liable under section 1983 are utterly meritless under these facts and the claims against him should be dismissed. Plaintiffs' Complaint against all three of the LSU Presidents should be dismissed with prejudice.[4]

---

[4] To the extent Plaintiffs are seeking liability under Section 1983 for supervisory liability, those claims fail as well because Plaintiffs have no allegations the LSU Presidents affirmatively participated in the constitutional deprivation or implemented policies that caused the constitutional injury. See *Porter v, Epps*, 659 F.3d 440, 446 (5th Cir. 2011.)

8

**III.     PLAINTIFFS DO NOT ALLEGE A VIABLE PROCEDURAL DUE PROCESS SECTION 1983 CLAIMS AGAINST THE PRESIDENTS.**

Plaintiffs concede in their opposition that their allegations in the Complaint are mainly limited to the substantive component of the Due Process Clause under the Fourteenth Amendment. (Doc. 122, pp. 16-18.) Further, Plaintiffs' Complaint lacks any factual allegations to support any violations of Plaintiffs' procedural due process claims under the Fourteenth Amendment. To state withstand a motion to dismiss a procedural due process claim under Section 1983, a plaintiff must plead two primary elements, (1) identification of a protected life, liberty or property interest recognized under the Fourteenth Amendment, and (2) deprivation of that interest without due process of law required under the U.S. Constitution. *See Holden v. Perkins*, 398 F. Supp. 3d 16, 22 (E.D. La. 2019). Plaintiffs' procedural due process claims likewise fail for the same reasons as their substantive due process claims. That is, M.D., P.P., and J.B. do not allege any facts that any of the LSU Presidents deprived them of a life, liberty or property interest or denied them opportunity to be heard at a meaningful time and in a meaningful manner. The procedural due process claim against the LSU Presidents is not sufficiently pled, and it therefore must be dismissed as a matter of law.

**IV.     THE PRESIDENTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Alexander, Galligan, and Tate are entitled to qualified immunity under the facts alleged in the Complaint. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Fisher v. Moore*, 73 F.4th 367, 371 (5th Cir. 2023), cert. denied, 144 S. Ct. 569, 217 L. Ed. 2d 303 (2024). Pertinent to this inquiry, the Court must examine the individual actions of the LSU Presidents and Plaintiffs must allege facts that if true would show each President violated each of the Plaintiffs' rights in a

way that they should have known was unlawful. *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 972 F. Supp. 2d 878, 884 (M.D. La. 2013).; *see also Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007)(where defendants are not alleged to have acted in unison, the Court must examine the defendants' entitlement to qualified immunity separately.)

Here, as stated above Plaintiffs' Complaint is devoid of any factual allegations of the LSU Presidents' personal involvement in their constitutional deprivations. And, because the LSU Presidents did not act in unison (different times, different plaintiffs, etc.) the Court is required to analyze their individual actions because only Alexander can be liable for Alexander's actions, Galligan for Galligan's actions, and Tate for Tate's actions. But again, the Court is left with nothing to analyze. Simply alleging that a right was violated without attributing specific actions to each LSU President is not sufficient to overcome the first prong of the qualified immunity defense. The Court does not need to analyze the second prong under these facts.

Finally, contrary to Plaintiffs' assertions, the Court may rule on the LSU Presidents' defense of qualified immunity at the motion to dismiss stage. This is because the Plaintiffs' Complaint is so woefully deficient and there are no factual questions that must be answered to resolve the issue of qualified immunity. *See Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022), cert. denied, 144 S. Ct. 73, 217 L. Ed. 2d 12 (2023) ("today we only hold that where the pleadings are insufficient to overcome QI, the district court must grant the motion to dismiss without the benefit of pre-dismissal discovery.") *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) is inapplicable here and Plaintiffs are not allowed to proceed with a defer-and-discovery approach.

WHEREFORE, Dr. Fieldon King Alexander, Thomas G. Galligan, Jr. and William F. Tate, IV pray that Plaintiffs Third Amended Complaint be dismissed with prejudice at Plaintiffs' cost and for all other further and equitable relief.

| | |
|---|---|
| June 6, 2024, | Respectfully submitted,<br>**LIZ MURRILL**<br>**ATTORNEY GENERAL**<br><br>/s/ Elizabeth Bailly Bloch<br>**CHRISTINE S. KEENAN** (No. 23293)<br>**ERIC R. MILLER** (No. 21359)<br>**ELIZABETH BAILLY BLOCH** (No. 37591)<br>**MARY KATHRYN GIMBER** (No. 38748)<br>Special Assistants Attorney General<br>THE KULLMAN FIRM, APLC<br>4605 Bluebonnet Blvd., Suite A<br>Baton Rouge, Louisiana  70809<br>Telephone:  (225)906-4250<br>Facsimile:  (225)906-4230<br>CSK@kullmanlaw.com<br>EM@kullmanlaw.com<br>EBB@kullmanlaw.com<br>MKG@kullmanlaw.com<br>**Counsel for Defendants, Fieldon King Alexander, Thomas C. Galligan, Jr., and William F. Tate, IV** |

### CERTIFICATE OF SERVICE

I hereby certify that I have, on this 6th day of June 2024, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this case.

*/s/ Elizabeth Bailly Bloch*
Elizabeth Bailly Bloch