## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**M D**                                 **CIVIL ACTION NO. 6:22-CV-02089**

**VERSUS**                      **JUDGE DAVID C. JOSEPH**

**LOUISIANA BOARD OF REGENTS ET**   **MAGISTRATE JUDGE DAVID J. AYO**
**AL**

### REPORT AND RECOMMENDATION

The following motions have been referred to the undersigned for report and recommendation:

(1) Motion To Dismiss Plaintiffs' Suit Based On Insufficient Service of Process and Lack of Personal Jurisdiction (Rec. Doc. 102) pursuant to Federal Rule of Civil Procedure Rule 12(b)(2) and 12(b)(5) filed by Defendant Board of Supervisors of Louisiana State University and Agricultural Mechanical College ("LSU Board"). M.D., J. B., and P.P. (collectively "Plaintiffs") oppose this motion (Rec. Doc. 123), and the LSU Board filed a reply (Rec. Doc. 139);

(2) Louisiana Board of Regents' Motion to Dismiss Third Amended Complaint (Rec. Doc. 103) filed by Defendant Louisiana Board of Regents ("Board of Regents") pursuant to Rule 12(b)(6) on the grounds that Plaintiffs failed to state a viable cause of action against the Board of Regents and that the claims are time-barred on the face of the complaint. Plaintiffs oppose this motion (Rec. Doc. 125), and the Board of Regents filed a reply (Rec. Doc. 137);

(3) Motion to Dismiss Based on Insufficient Service of Process (Rec. Doc. 105) pursuant to Rule 12(b)(2) and 12(b)(5) filed by Defendant Board of Supervisors of University of Louisiana System ("UL System Board"). Plaintiffs oppose this motion (Rec. Doc. 120), and the UL System Board filed a reply (Rec. Doc. 126);

(4) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Rec. Doc. 106) pursuant to Rule 12(b)(6) filed by the UL System Board, Les Guice, and Joe Savoie.  Plaintiffs oppose this motion (Rec. Doc. 121), and the UL System Board, Guice, and Savoie filed a reply (Rec. Doc. 135);

(5) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Rec. Doc. 115) pursuant to Rule 12(b)(6) filed by the Fieldon King Alexander, Tom Galligan, and William F. Tate.  Plaintiffs oppose this motion (Rec. Doc. 122), and Alexander, Galligan, and Tate filed a reply (Rec. Doc. 140); and

(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Rec. Doc. 118) pursuant to Rule 12(b)(6) filed by the Lafayette City-Parish Consolidated Government ("LCG").  Plaintiffs oppose this motion (Rec. Doc. 124), and LCG filed a reply. (Rec. Doc. 135).

The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636.  Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, this Court recommends that the motions to dismiss pursuant to Rule 12(b)(6) filed by the Board of Regents (Rec. Doc. 103); the UL Systems Board, Guice, and Savoie (Rec. Doc. 106); Alexander, Tate, and Galligan (Rec. Doc. 115);  and LCG be GRANTED and that Plaintiffs' claims against all Defendants be DISMISSED as untimely filed.

## I.    <u>BACKGROUND</u>

The following allegations are drawn from Plaintiffs' Third Amended Complaint (Rec. Doc. 101)[1] and are accepted as true for purposes of the instant motions.

---

[1] Plaintiffs amended the initial complaint on November 4, 2022 (Rec. Doc. 36-1), and filed a motion for leave to file a Second Amended Complaint on July 28, 2023 (Rec. Doc. 76-1).  This Court denied the motion and granted leave to file "a comprehensive amended complaint" (Rec. Doc. 100) and Plaintiffs responded with an amended complaint titled Third Amended Complaint. (Rec. Doc. 101).  The Third Amended Complaint is therefore the operative pleading.

### A. Factual Background

#### i.    Victor Silva

In September of 2014, Victor "Daniel" Silva began his freshman year at LSU.  (Rec. Doc. 101 at ¶ 61).  While he was attending LSU, he was reported to law enforcement in Baton Rouge for assault. (*Id*. at ¶ 62).  LSU was notified by local law enforcement but allegedly did not properly investigate the matter and allowed Silva to transfer to University of Louisiana at Lafayette ("UL").  (*Id*. at ¶¶ 63, 64, 66).  In April of 2015, after his transfer to UL, LSU Police arrested him for sexual assault and reported it to UL. (*Id*. at ¶¶ 64, 66).  Following the April 2015 allegations, UL "placed Silva on probation, ordering that he complete behavior management, but made no other monitoring or reporting requirements." (*Id*. at ¶ 71).  While Silva was not accused of additional on-campus crimes, from 2015 through 2018, Silva was reported for sexual offenses to the Lafayette Police Department ("LPD") on at least three other occasions.  One of the alleged victims was a UL student. (*Id*. at ¶¶ 71, 74).  LPD did not report these offenses to UL. (*Id*. at ¶ 72).  In 2018, a UL student reported Silva to UL indicating that he assaulted her when the two of them were freshmen in high school. (*Id*. at ¶¶ 77, 78).

Silva transferred to Louisiana Tech University ("Tech") in September of 2018 "with a clean record" absent any indication of his prior probationary status at UL and absent any mention of the issues at LSU. (*Id*. at ¶¶ 83, 84).  Less than two months later, he was accused of sexual assault and was reported to Tech's Title IX office as well as to an external police department that declined to press charges. (*Id*. at ¶ 85).  Silva then transferred back to UL. (*Id*. at ¶ 87).

Plaintiffs are the alleged victims of sexual assault by Silva. At the time of the alleged assaults, M.D. was a student at LSU, P.P. was a student at UL, and J.B. was working for a private employer in Arkansas (where Silva also worked) (Rec. Doc. 101, ¶¶ 7, 8, 9).

### ii.    M.D.

M.D. began attending LSU in the fall of 2014 and met Silva with friends at a dining hall. (*Id.* at ¶¶ 94, 96, 97). During the spring 2015 semester, she once again encountered Silva—who was no longer an LSU student—at an LSU fraternity event. (*Id.* at ¶¶ 98, 90). That night, Silva sexually assaulted M.D. at her dorm on the LSU campus. (*Id.* at ¶ 101). Following the assault, M.D.'s grades fell drastically, she was placed on academic probation, and was eventually expelled for what LSU claims was poor academic performance. (*Id.* at ¶¶ 102, 103). Around the same time, she reported the sexual assault by Silva to the Title IX office who referred the issue to the LSU Police Department. (*Id.* at ¶¶ 104, 106). Although Silva was banned from the LSU campus, M.D. was informed that Silva could access campus by attending paid events. (*Id.* at ¶ 110). M.D. alleges that "LSU used M.D.'s failing grades as a pretext to expel her when, in reality, the expulsion was in retaliation for reporting a sexual assault." (*Id.* at ¶ 112).

### iii.    P.P.

P.P. began attending UL as a freshman in 2016. During her junior year as a chemical engineering major, she met Silva in a physical chemistry class. (*Id.* at ¶¶ 117, 118). P.P. was "aware of another sexual assault case against Silva through communications with an acquaintance who was a sexual assault survivor," but "discounted the rumors about him," purportedly due to the "lack of official action against him." (*Id.* at ¶¶ 119, 120). "During her time as a student at UL, Silva persistently pursued" P.P. "targeting locations and activities" where he knew she would be. (*Id.* at ¶ 123). P.P. and Silva began dating in May of 2020 and

4

moved in together shortly thereafter. (*Id.* at ¶¶ 124, 125). In the summer of 2020, P.P. "received several messages from women previously involved with Silva and from one of Silva's male friends, informing her that Silva was dangerous. One of the women described Silva as a 'monster.'" (*Id.* at ¶ 126). In August of 2020 Silva sexually assaulted P.P.'s friend. (*Id.* at ¶¶ 127-131). Up to that point, P.P. admittedly "ignored other strange and alarming behaviors from Silva." (*Id.* at ¶ 132). Throughout their relationship, Silva coerced P.P. into having sexual intercourse when she did not want to, displayed jealous behaviors, exhibited emotionally abusive behaviors, attempted to drag her down a flight of stairs, and sexually assaulted her while she was "passed out." (*Id.* at ¶¶ 133-139). P.P. ended her relationship with Silva in January of 2021. (*Id.* at ¶ 142). P.P. alleges that she would not have been "exposed to Silva had Act 172 been properly utilized by the higher education and criminal justice systems in Louisiana." (*Id.* at ¶ 157).

      **iv.**     **J.B.**

     J.B. began working in November of 2020 as an environmental safety manager in Searcy, Arkansas. (*Id.* at ¶ 135, p. 23).[2] Silva, who used the name "Daniel" rather than "Victor" in Arkansas, began working at J.B.'s place of employment in late 2020 as a process engineer and pursued a relationship with J.B., repeatedly asking her out on dates while they were co-workers. (*Id.* at ¶¶ 141-145, p. 23). J.B. resigned from her job in early February and agreed to go on a date with Silva on Valentine's Day "believing Silva would leave her alone if she finally relented and went on a date with him." (*Id.* at ¶ 148, p. 24). On the night of that date, Silva raped her. (*Id.* at ¶¶ 149-157, pp. 24, 25). "Although J.B. felt betrayed by Silva, Silva began to act remorseful, and Plaintiff J.B. continued to talk to him via text because she

---

[2] The Third Amended Complaint uses Paragraphs 135-157 twice. It begins with Paragraph 135 on page 20 and goes through Paragraph 157 on page 23. On page 23, Paragraph 135 starts over and goes through ¶345 on page 56. For clarification, the second set of Paragraphs 135-157 will be noted by page number also.

felt sorry for him as he was so young and alone in a place he did not feel comfortable." (*Id.* at ¶ 160).

In March of 2021, Silva and J.B. went to a farmers' market where he introduced himself to another man as Victor Silva. (*Id.* at ¶¶ 163, 165). J.B. also noticed he was "acting more strangely and drinking more alcohol than usual." (*Id.* at ¶ 168). Silva admitted he was behaving differently because of an upcoming news article about him. (*Id.* at ¶ 169). This prompted J.B. to search the internet for Victor Silva[3] where she discovered details on his sexual abuse of others, including P.P., whom she found by contacting the author of a Twitter thread discussing Silva. (*Id.* at ¶ 173). J.B. was "diagnosed with complex post-traumatic stress disorder" and alleges that "Silva's rape exacerbated her symptoms," and that "if Act 172 were enforced properly, Silva would not have been employed at J.B.'s place of employment and Plaintiff J.B. would not have been put in harm's way." (*Id.* at ¶¶ 180, 181).

In March 2021, P.P. was contacted by reporter Kenny Jacoby of *USA Today* about the investigation he was conducting on Silva and the Louisiana higher education system. (*Id.* at ¶ 144). On May 26, 2021, the article titled "Six women reported a Louisiana college student for sexual misconduct. No one connected the dots." was published online. [4]

### B. Procedural Background

On July 13, 2022, Plaintiffs (along with Jane Does 1 – 100), filed this lawsuit asserting claims for damages stemming from their respective sexual assaults by Silva, who as stated above, was a former student at LSU, UL, and Tech.

---

[3] She had previously searched for him as Daniel Silva and only found his LinkedIn profile. (*Id.* at ¶171).

[4] Kenny Jacoby, *Six Women Reported a Louisiana College Student for Sexual Misconduct. No One Connected the Dots.*, USA TODAY (May 26, 2021), https://www.usatoday.com/in-depth/news/investigations/2021/05/26/louisiana-officials-skirted-law-meant-curb-campus-sex-crimes/7048845002/ (last viewed Feb. 25, 2025).

Plaintiffs amended the initial complaint on November 4, 2022 (Rec. Doc. 36). On July 28, 2023, Plaintiffs filed a motion for leave to file a Second Amended Complaint (Rec. Doc. 76-1). This Court denied the motion and granted leave to file "a comprehensive amended complaint addressing the deficiencies raised in the defendants' foregoing motions to the extent possible and removing all references to Jane Doe plaintiffs." (Rec. Doc. 100). This Court further stated that the "comprehensive amended pleading shall include all of Plaintiffs' numbered allegations, as revised, supplemented, and/or amended, which will become the operative complaint in this matter without reference to any other document in the record. No further amendments will be permitted." (*Id.*). Plaintiffs responded with an amended complaint it captioned Third Amended Complaint. (Rec. Doc. 101). The Third Amended Complaint alleges that "the failures of the Individual Defendants, Defendant Board of Regents, Defendant Board of Supervisors, Defendant LSU Board of Supervisors, and Defendant Lafayette Consolidated Government, to implement and enforce programs to address and prevent sexual violence against women created an environment on college campuses and throughout the university system where predators, such as Victor Silva, were allowed to pass through undetected, all while continuing to abuse and mistreat women." (Rec. Doc. 101 at ¶ 93). It names only M.D., J.B., and P.P. as plaintiffs and names the following defendants:

1.  the Board of Regents,

2.  the LSU Board,

3.  Galligan, Tate, and Alexander ("the LSU individual defendants"),

4.  the UL System Board[5] as the "governing body of UL and Tech,"

---

[5] While Plaintiffs refer to the governing body of UL and Tech as the Board of Supervisors, the Court refers to it as the UL System Board to distinguish it from the LSU Board.

5.  Savoie, ("the UL individual defendant"),

6.  Guice, ("the Tech individual defendant"),

7.  LCG, and

8.  Toby Aguillard, and John/Jane Doe Chiefs of Police of Lafayette.

In the jurisdiction and venue section of the Third Amended Complaint, Plaintiffs allege violations of Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), 42 U.S.C. § 1983, and negligence. (Rec. Doc. 101 at ¶¶ 27-32). In the section where Plaintiffs specifically allege counts or causes of action, Plaintiffs assert the following:

- COUNT I: VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a) against Board of Regents, LSU Board of Supervisors, and the Board of Supervisors
- COUNT II: VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a) Deliberate Indifference against Board of Regents, LSU Board of Supervisors, and the Board of Supervisors
- COUNT III: VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a) Heightened Risk – Deliberate Indifference to Sexual Misconduct by a Known Perpetrator against Board of Regents, LSU Board of Supervisors, and the Board of Supervisors
- COUNT IV: VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a) Heightened Risk – Institutional Policy of Deliberate Indifference against Board of Regents, LSU Board of Supervisors, and the Board of Supervisors
- COUNT V: VIOLATION OF TITLE IX, 20 U.S.C. § 1681(a) Hostile Environment against Board of Regents, LSU Board of Supervisors, and the Board of Supervisors
- COUNT VI: VIOLATION OF 42 U.S.C. § 1983 AND THE 14TH AMENDMENT SUBSTANTIVE AND PROCEDURAL DUE PROCESS against Savoie, Guice, Alexander, Galligan, and Tate
- COUNT VII: VIOLATION OF 42 U.S.C. § 1983 CUSTOM AND POLICY/ PATTERN OR PRACTICE IN VIOLATION OF DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW against Lafayette Consolidated Government, Aguillard and John/Jane Doe Chiefs
- COUNT VIII: VIOLATION OF 42 U.S.C. § 1983 FAILURE TO TRAIN AND SUPERVISE against Lafayette Consolidated Government, Aguillard, and John/Jane Doe Chiefs.

Plaintiffs assert that the Complaint is timely because

[a]s it relates to the conduct alleged in this complaint, Plaintiffs had no opportunity to know of the accruing harm, and could not have known of the harm, because of the intentional and/or reckless actions, inactions, and omissions of the Defendants,

8

> including failing to abide by internal policies and procedures related to sexual violence and misconduct, failing to make mandatory reports, failing to undertake appropriate investigations, failing to rigorously enforce rules related to sexual misconduct, and willfully disregarding the requirements of Act 172.

(*Id.* at ¶ 194).

Likely expecting a prescription defense, Plaintiffs assert that the doctrine of *contra non valentem* is applicable because

> Plaintiffs could not have known of Defendants' acts and failures. The only information available to Plaintiffs were Defendants' public representations related to adopting and implementing policy aligned with state law. Plaintiffs had no ability to know of Defendants' failures, nor was it unreasonable for Plaintiffs to rely upon Defendants' representations that Defendants would take appropriate measures to supervise Louisiana's public universities, implement policies to prevent sexual assault, and hold universities accountable for failing to maintain a protective system on their campuses.
>
> Moreover, the fact that Plaintiffs were aware of their attacks does not equate to notice of Defendant Board's failures to implement a protective system.

(*Id.* at ¶¶ 199, 200).

Plaintiffs further assert that on May 25, 2022, Jane Doe, a Tech student who alleges she was sexually assaulted by Silva, filed suit against several of the Defendants named in this case due to their "complicity and failures in preventing sexual misconduct and harm throughout the University system."[6]  Thus, Plaintiffs argue that their lawsuit is timely because "for the first time, and in explicit detail, this action in the Middle District provided

---

[6] *Doe v. Board of Supervisors of Louisiana System*, *et al.* Civil Action No. 3:22-cv-00338, United States District Court, Middle District of Louisiana.  Jane Doe, a former student at Tech, filed suit in the Middle District against the LSU Board of Supervisors, Lafayette Consolidated Government, and the Board of Supervisors of the University of Louisiana System for damages arising out of a sexual assault by Victor Daniel Silva.

information about Defendants' failures, which were precluded from discovery due to Defendants' conduct." (Rec. Doc. 101 at ¶ 202).[7]

Defendants each move to dismiss Plaintiffs' claims.  The Board of LSU and the UL System Board argue that Plaintiffs failed to timely and properly serve the original and amended complaint on the their respective boards, the Louisiana Attorney General, and the Office of Risk Management for the State of Louisiana as required by Rule 4, La. R.S. § 13:5107(A)(2), and La. R.S. § 39:1538(4), thereby warranting dismissal of all claims against the respective boards pursuant to Rules 12(b)(2) and (5).

The UL System Board, Les Guice, and Joe Savoie; the Board of Regents; Fieldon King Alexander, Tom Galligan, William F. Tate; and LCG primarily move to dismiss  pursuant to Rule 12(b)(6) on the grounds that Plaintiffs' claims are time-barred on the face of the complaint and that Plaintiffs failed to state a viable cause of action.

## II.    APPLICABLE STANDARDS

Defendants invoke three different mechanisms for dismissal of this case: Rule 12(b)(2), Rule 12(b)(5) and Rule 12(b)(6).  The Court finds the Defendants' motions pursuant to 12(b)(6) regarding the timeliness of Plaintiffs' claims particularly persuasive and will address this ground for dismissal first.  Because the Court finds Plaintiffs' claims were untimely and recommends dismissal, we do not reach whether Plaintiffs have failed to state a viable cause of action.

---

[7] Plaintiffs further assert that in May 2021, ten plaintiffs filed a lawsuit against LSU alleging Title IX and other claims in the matter of *Owens et al. v. Board of Supervisors of Louisiana State University, et al*. Civil Action No. 21-242, United States District Court, Middle District of Louisiana, and that depositions held on November 9, 2022, of Jennie Stewart, who served as LSU's Title IX Coordinator from 2016 to March 2021, and Jane Cassidy, who served as LSU's Interim Title IX Coordinator from March 2021 to September 2022 in connection with this lawsuit revealed LSU's willful failure to comply with Act 172.

However, after an exhaustive review of Plaintiffs' claims and while acknowledging the disturbing allegations of sexually predatory conduct by Silva, the Court also recognizes that Plaintiffs' claims against the Defendants are tenuous.  M.D.'s alleged assault occurred in April of 2015 after Silva had transferred to UL, and *before* Act 172 was implemented.  (Rec. Doc. 115-1, p. 28).  Once the assault occurred LSU did report the incident to UL. (*Id*. at ¶¶ 64, 66).  The Plaintiffs have failed to allege how LSU or any of the named Defendants had a duty to enter into a memorandum of understanding with law enforcement or proceed with any other requirements under the Act or how any of the other named Defendants had a duty to report Silva to UL.

Similarly, regarding P.P, there are no allegations that she participated in any of the alleged university's educational programs or activity.  P.P. was a co-worker of Silva's in Arkansas.  Finally, the Third Amended Complaint clearly states that J.B. was warned by other students and friends that Silva was dangerous.  Yet, she began a relationship with him, moved in with him and stayed with him for months after he assaulted her friend while they were under the same roof.  The Court questions whether Defendants owed a duty to Plaintiffs under the unique circumstances for each Plaintiff, *i.e.*, one Plaintiff who was apparently Silva's first victim and whose assault predated the measures taken by the universities, another who resided in another state with no connection to the universities, and another with knowledge of Silva's dangerousness.  In sum, it appears that Plaintiffs have failed to allege adequate causes of action against the named Defendants.  This Court's prescription discussion below assumes that a duty was owed.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid*

*Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more than a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl.*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore,

12

"[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl.*, 127 U.S. at 556). *See also In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008). Although "[t]he failure-to-state-a-claim inquiry typically focuses on whether the plaintiff plausibly alleges the element of a claim," a "Rule 12(b)(6) dismissal may also 'be appropriately based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint.'" *Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 824 (5th Cir. 2024) (quoting *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). In this situation, it must be apparent from "the plaintiff's own allegations" that a defense is fatal to the claim. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2021). [T]he pleadings must 'reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise entitle them to relief." *Id.* A claim suffering from this kind of facial deficiency warrants dismissal because it has "a built-in defense and is essentially self-defeating." *Id.* (quotation omitted).

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6) a court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004). When reviewing a motion to dismiss, a district court may also consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).

13

A prescription defense, which is asserted in several of the pending motions, can be raised in a motion under Rule 12(b)(6). *Washington v. Allstate Ins. Co.*, 901 F/2d 1281, 1283 (5th Cir. 1990) (noting that Rule 12(b)(6) "speaks to the failure to state a claim upon which relief can be granted and encompasses dismissal on the basis of prescription"). When assessing prescription, the Court is mindful that "prescriptive statutes must be strictly construed against prescription and in favor of the obligation sought to be extinguished." *Million v. Cos-Mar Co.*, 2022 WL 317662 at *1 (E.D. La. Feb. 2, 2022) (quoting *Borel v. Young*, 989 So. 2d 42, 64 (La. 2008)). Under appropriate circumstances, a court may raise prescription *sua sponte*. *See generally Jackson v. Standard Mortgage Corp.*, 2019 WL 6769361 at *6 (W.D. La. Dec. 11, 2019) ("Although the expiration of a statute of limitations (or prescription in Louisiana parlance) is an affirmative defense, a district court is authorized to dismiss a case upon the motion of a litigant or *sua sponte* when it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.").

### III.    STATUTORY AND REGULATORY FRAMEWORK[8]

The following section refers to documents referenced in the Third Amended Complaint[9] or are otherwise subject to judicial notice.

#### A.  Title IX

Title IX prohibits discrimination on the basis of sex at all federally funded universities. 20 U.S.C. § 1681(a). Its purpose is two-fold: "to prevent federal funds from being

---

[8] The relevant and applicable statutory and regulatory framework is fully explained in *Doe v. Board of Supervisors of Louisiana System*, *et al.*, 650 F. Supp. 3d 452, (M.D. La. 2023).

[9] The Court accepts LCG's unopposed invitation to consider the January 17, 2017, Campus Accountability and Safety Act Memorandum of Understanding between UL Lafayette and the Lafayette PD. (Doc. 118-1). This document is referenced repeatedly throughout the Third Amended Complaint and is specifically cited as a source of LCG's duty of care. It is also set forth in contractual form, and therefore susceptible to plain reading, without converting LCG's Rule 12 motion to a motion for summary judgment.

used to support discriminatory practices," and "to provide individuals effective protection against those practices." *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879 (W.D. Tex. 2019) (quoting *Cannon v. Univ. of Chic*ago, 441 U.S. 677, 704 (1979)). Universities that accept federal funding—by, for example, enrolling students who receive federal funds to pay for their education—are subject to the requirements of Title IX. *Id.* (citing *NCAA v. Smith*, 525 U.S. 459, 466 (1999)).

###### B. Act 172

On October 20, 2014, the Louisiana Governor's Office issued Executive Order No. BJ 2014-14 ("EO 2014-14") entitled "Uniformity of Policies Related to the Crime of Sexual Assault."[10] EO 2014-14 mandated that the Louisiana Board of Regents coordinate uniform policies and best practices among the public postsecondary education institutions to implement measures to address the reporting of sexual assault on their campuses, the prevention of such crimes, and the medical and mental health care needed for victims.

Eight months later, on June 23, 2015, the Governor signed Act 172, the "Campus Accountability and Safety Act" into law. La. R.S. § 17:3399.11 (2015), *et seq.*[11] Act 172 codified EO 2014-14's mandate that public universities establish "uniform policies" to address and prevent sexual assault, defined sexual assault to include "any sexual assault offense ... and any sexual abuse offense" under Louisiana law, acknowledged the universities' duty to comply with Title IX, and required universities to develop and implement "training"

---

[10] The Court takes judicial notice of EO 2014-14. *See* Fed. R. Evid. 201(b)(2). EO 2014-14 is available at: https://regents.state.la.us/assets/docs/PRAA/LA_SAFE_Docs/BJ201414UniformityofPoliciesRelatedto theCrimeofSexualAssault(3).pdf (last visited Feb. 25, 2025). EO 2014-14 expressly acknowledged that "sexual assault is a horrendous crime that creates physical and emotional damage to victims," and that Louisiana's public universities had implemented piecemeal measures for reporting and preventing sexual assault, resulting in an outdated and fractured approach to this critical issue.

[11] The Court takes judicial notice of Act 172. See Fed. R. Evid. 201(b)(2). Act 172 is available at: https://regents.state.la.us/assets/docs/PRAA/LA_SAFE_Docs/Act172.pdf (last visited Feb. 25, 2025 ).

consistent with the requirements of Act 172 and Title IX for "each individual who is responsible for resolving complaints of reported sex offenses or sexual misconduct policy violations."

Additionally, Act 172 set forth coordination and reporting requirements among public universities and local law enforcement agencies.  Act 172 states in pertinent part:

F. Inter-campus transfer policy:

> (1) The Board of Regents' Uniform Policy on Sexual Assault shall require that institutions communicate with each other regarding transfer of students against whom disciplinary action has been taken as a result of a code of conduct violation relating to sexually-oriented criminal offenses.
> (2) The Board of Regents' Uniform Policy on Sexual Assault shall require that institutions withhold transcripts of students seeking a transfer with pending disciplinary action relative to sexually-oriented criminal offenses, until such investigation and adjudication is complete.

La. R.S. § 3399.15 (2015) (Campus Security Policy).

Additionally, Act 172 states:

> A. Each institution and law enforcement and criminal justice agency located within the parish of the campus of the institution shall enter into a memorandum of understanding to clearly delineate responsibilities and share information in accordance with applicable federal and state confidentiality laws, including but not limited to trends about sexually-oriented criminal offenses occurring against students of the institution....

> C. Each memorandum of understanding entered into pursuant to this Part shall include:
> (1) Delineation and sharing protocols of investigative responsibilities.
> (2) Protocols for investigations, including standards for notification and communication and measures to promote evidence preservation.
> (3) Agreed-upon training and requirements for the parties to the memorandum of understanding on issues related to sexually-oriented criminal offenses for the purpose of sharing information and coordinating training to the extent possible.
> (4) A method of sharing general information about sexually-oriented criminal offenses occurring within the jurisdiction of

the parties to the memorandum of understanding in order to improve campus safety.
D. The local law enforcement agency shall include information on its police report regarding the status of the alleged victim as a student at an institution as defined in this Part.

La. R.S. § 3399.14 (2015) (Coordination with local law enforcement).

### C. The Uniform Policy

On August 26, 2015, the Board of Regents amended its Uniform Policy on Sexual Misconduct ("Uniform Policy") to comply with Act 172.[12] The Uniform Policy instructed all public universities and their management boards to "begin establishing policies and procedures in full compliance with this Amended Policy immediately and [to] implement those policies no later than October 30, 2015."

The Uniform Policy states in pertinent part,

> If a student accused of a sexually-oriented criminal offense seeks to transfer to another institution during an investigation, the institution shall withhold the student's transcript until such investigation or adjudication is complete and a final decision has been made. Each institution shall inform the respondent of the institution's obligation to withhold the transcript during the investigation.

Management boards were also required to ensure that universities under their supervision complied with the requirements of Title IX and Act 172.

### D. The Lafayette Memorandum of Understanding

Consistent with the requirements of EO 2014-14, Act 172, and the Uniform Policy, on January 17, 2017 the LPD executed a Campus Accountability and Safety Act Memorandum of Understanding with UL (the "Lafayette MOU"). The Lafayette MOU states that it is entered "for the purpose of delineating responsibilities and sharing information specific to

---

12 The Court takes judicial notice of the Uniform Policy. See Fed R Evid 201(b)(2). The Uniform Policy is available at:
https://www.regents.la.gov/assets/docs/PRAA/BORSexualMisconductPolicyAct172FINALAugust24.pdf (last visited Feb. 25, 2025).

[sexually-oriented criminal offenses] involving University of Louisiana at Lafayette as required by [Act 172]," and provides, in relevant part, that LPD agrees to:

> • Notify UL Lafayette's Title IX Coordinator, to the extent we are able with respect to any confidentiality requirements, of any report of a sexually oriented criminal offense that may have occurred on its campus or involved a student as a victim or an accused;
>
> ***
>
> • Share general information about sexually-oriented criminal offenses that may have occurred on its campus or involved a student as a victim or an accused to improve campus safety[.]

(Doc. 118-3 at p. 4).

## IV.    ANALYSIS

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). Neither Title IX nor 42 U.S.C. § 1983 contains their own statutes of limitations. Where Congress does not provide a limitations period, the cause of action is governed by the most analogous state law provision. *Frame v. City of Arlington*, 657 F.3d 215, 236-37 (5th Cir. 2011). LA. CIV. CODE ANN. art. 3492[13] provides a one-year, liberative prescriptive period for tort actions and is the appropriate *de facto* statute of limitations for Title IX and § 1983 claims. *Id.*; *King-White*, 803 F.3d at 758; *Burge v. Parish of St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993). "Where the limitations period is determined with reference to state law, accrual of a cause of action is governed by federal law." *Webster v. Bd. of Supervisors of Univ. of La. Sys.*, 2015 WL 4197589

---

[13] LA. CIV. CODE ANN. art. 3492 was repealed effective July 1, 2024. Pursuant to *La. Civ. Code Ann.* art. 3493.1, effective July 1, 2024, delictual actions are now subject to a two-year liberative prescriptive period. As the events at issue in this case occurred before July 1, 2024, Louisiana's one-year liberative prescriptive period is applicable to Plaintiffs' claims.

*5 (E.D. La. July 10, 2015) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).   Under federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. *Id.* (quotation marks omitted).   A plaintiff's awareness encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. *Id.* (quotation marks and alterations omitted). Even when a Title IX claim has accrued and would otherwise be time-barred, "[e]quitable doctrines may toll the statute of limitations.  When a federal cause of action borrows a state statute of limitations, coordinate tolling rules apply. *Lozano v. Baylor Univ.*, 408 F.Supp. 3d 861, 899 (W.D. Tex. 2019).    Relevant here, Louisiana's doctrine of *contra non valentem* tolls a limitations period "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action." *Lomont v. Bennett*, 172 So. 3d 620, 637 (La. 2015).

As a rule, a limitations defense is not favored at the pleadings stage because the dispositive issue of when the plaintiff became aware of her claim involves questions of fact that generally cannot be resolved without evidentiary development. *See Keenan v. Donaldson, Luflzin & Jenrette, Inc.*, 575 F.3d 483, 486 (5th Cir. 2009). Indeed, the Fifth Circuit instructs that "Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling." *PetrobrasAm., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021). Stated differently, a defendant may prevail on a limitations defense at Rule 12 only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Abdul-Alim Amin Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983) (quotation marks omitted)); accord *Petrobras*, 9 F.4th

19

at 255-56 (citing authorities and noting that at Rule 12 stage the defendant must "conclusively establish that the statute of limitations" expired prior to plaintiff filing suit.). This Court finds that this case is one of those instances.

### A. **Title IX claims**

When addressing the accrual date for a heightened risk claim of the type alleged here, that is, where the Plaintiffs contend that their own assault was the direct result of the universities' deliberate indifference to prior reports of predatory sexual conduct by the same attacker, the Middle District in the *Jane Doe* case[14] determined that the plaintiff's heightened risk claim accrued when she reasonably should have known of the causal connection between her assault and the misconduct of the university staff and officials.[15]

In *Jane Doe*, Doe alleged she was assaulted by Silva on September 18, 2018. (*Doe*, Rec. Doc. 1 at ¶ 8). She filed her complaint on May 25, 2022, alleging that she discovered the

---

[14] *Doe v. Board of Supervisors,* 650 F.Supp. 3d 452, (M.D. La. 2023).

[15] The Middle District in *Doe*, offered a thorough analysis of the discovery rule and its applicability in Title IX cases, including a thorough analysis of *Snyder-Hill v. The Ohio State Univ.,* 8 F.4th 686, 704 (6th Cir. 2022) (Finding that the relevant benchmark for measuring timeliness under Title IX is the date when the plaintiffs knew or should have known "that Ohio State administrators with authority to take corrective action knew of Strauss' conduct and failed to respond appropriately."). The Court also explained that the Sixth Circuit's analysis is consistent with multiple district courts in this circuit. *See Lozano v, Baylor Univ.*, 408 F. Supp. 3d 861, 900 (W.D. Tex. 2019) ("Although Lozano was aware of the existence of an injury when Chafin assaulted her in March and April 2014, it is not evident from the complaint that Lozano was aware of facts that would cause a reasonable person to conclude that there was a causal connection between her assaults and the conduct of Baylor staff and officials, or to seek professional advice on this question."); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 617 (W.D. Tex. 2017) (Plaintiff's knowledge that her attacker had previously assaulted other women was "insufficient to demonstrate that she would have been put on notice to look into Baylor's knowledge of Elliot's [the attacker] history or Baylor's conduct in administering its football program prior to her assault."); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 663 (W.D. Tex. 2017) ("While it is plausible that Plaintiffs were aware of their heightened-risk claims at the time of their assaults, it is also plausible that they did not have reason to further investigate those claims until 2016" (when Baylor's alleged causal connection to their assaults came to light); *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 978 (N.D. Cal. 2020) ("[A] plaintiffs Title IX pre-assault claim accrues when the plaintiff knows or has reason to know of the school's policy of deliberate indifference that created a heightened risk of harassment.").

connection between her assault and the misconduct of the University for the first time on

May 26, 2021

> when she read the USA Today article that revealed publicly (1)
> UL Lafayette knew of Silva's April 2015 rape arrest at LSU; (2)
> UL Lafayette conducted no investigation into Silva's arrest and
> failed to discover that Silva was previously reported for rape at
> LSU in the Fall of 2014; (3) UL Lafayette allowed Silva to remain
> enrolled with minimal sanction (disciplinary probation only)
> despite Silva's arrest; and (4) UL Lafayette allowed Silva to
> transfer to Louisiana Tech with a clean record.

*Doe,* 650 F. Supp. 3d 452, 474 (M.D. La. 2023).

Doe further alleged that "she could not have independently discovered this information even had she tried, particularly given FERPA's[16] general rule that educational institutions may not disclose personally identifying information of their students." (*Id.*) By contrast, UL argued that Doe's claim was time-barred because

> in December 2018 she discovered a sorority group chat stating
> that [Silva] had sexually assaulted other women, and that when
> she reported her assault to Louisiana Tech, a Tech official (Ms.
> Flournoy) told her that the university had been receiving calls
> and reports about Silva and they were waiting  or someone to
> come forward with an accusation against him.

(*Id.* at 475.)

The court held that Doe's mere discovery that Silva assaulted other women was not sufficient to put her on notice that UL knew of such attacks yet ignored them, but that her heightened risk claim accrued on May 26, 2021 when she read the *USA Today* article and discovered the connection between Silva's assault and UL's alleged nonfeasance. *Id.*

In the present matter, Plaintiffs argue that the first time they were aware of Defendants' misconduct was on May 25, 2022,  when Jane Doe filed suit against several of the same defendants named in this case.  Plaintiffs claim that this action is timely because

---

[16] Family Educational Rights and Privacy Act,  20 U.S.C. § 1232g.

"for the first time, and in explicit detail, this action provided information about Defendants'

failures, which were precluded from discovery due to Defendants' conduct." (Rec. Doc. 101 at

¶202).  However, the Third Amended Complaint contains the following allegations:

> 142.  Around January 2021, Plaintiff P.P. ended her relationship with Silva.
> 143.  Around February 2021, Plaintiff P.P. and Plaintiff J.B. connected and shared their experiences with each other.
> 144.  In March 2021, Plaintiff P.P. was contacted by reporter Kenny Jacoby of USA Today about the investigation he was conducting on Silva and the Louisiana higher education system.
> ***
> 168. Sometime around March 2021, Silva began acting more strangely and was drinking more alcohol than usual.
> 169. When Plaintiff J.B. asked about why he was behaving differently, Silva mentioned an upcoming news article about him.
> 170. Upon hearing this, Plaintiff J.B. researched Silva on the internet using his other name ("Victor") and saw a Twitter thread from another of Silva's victims detailing his sexual abuse of others.
> 171. Plaintiff J.B. had searched Silva on the internet before as "Daniel," and she had only found his LinkedIn profile.
> 172.  Plaintiff J.B. and Silva had some contentious text exchanges about his treatment of her and his lying about his history of being investigated for sexual assault.
> 173. Plaintiff J.B. contacted the author of the Twitter thread and got contact information for Plaintiff P.P. Plaintiff J.B. then saw how similar her experiences were to Silva's other victims.

(Rec. Doc. 101).

On May 26, 2021, the *USA Today* article titled "Six Women Reported a Louisiana

College Student for Sexual Misconduct. No One Connected the Dots*."* was published online.[17]

The article clearly accuses LSU, UL, and Tech of failing to communicate with each other and

with local police departments regarding Silva and failing to "connect the dots on a pattern

that might have shaped how they pursued the allegations."  One of the women interviewed

has the initials M.D. and her story fits the description of the allegations in the Third

---

[17] Note 4 *supra.*

Amended Complaint.  Similarly, the chemical engineering student's story fits the description of P.P.  Finally, the Complaint acknowledges that J.B. was in contact with P.P. and was aware of the article being published and that Silva was the subject of the news article.

In the Third Amended Complaint, Plaintiffs—as if expecting a statute of limitations challenge—allege that "[g]iven the Defendants' conduct it would be inequitable for Plaintiffs' claims to be barred by the limitations period under the doctrine of *contra non valentem agree non currit prescriptio*." (Rec. Doc. 101 at ¶ 201).  Plaintiffs further state that they were not aware and could not have been aware of Defendants' misconduct until May 25, 2022 when Jane Doe filed her suit in the Middle District.

The plaintiff bears the burden of showing that a case presents a rare and exceptional circumstance to which equitable tolling applies. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999), *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).  The Fifth Circuit set forth three non-exclusive circumstances which warrant equitable tolling of the limitations period: (1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the Equal Employment Opportunity Commission's misleading the plaintiff about the nature of her rights under Title VII.  *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295, 1302-03 (5th Cir. 1979); *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988) (listing the three potential bases for equitable tolling); *Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874, 880 (5th Cir. 2003) (same); *Melgar v. T.B. Butler Publishing Co., Inc.*, 931 F.3d 375 (5th Cir. 2019) (same).  The Fifth Circuit has left open the possibility "that there may be other bases that warrant equitable tolling." *Melgar*, 931 F.3d at 381 (citing *Hood*. 168 F.3d at 232);

*Blumberg*, 848 F.2d at 644–645.  However, the recognized bases provide important guidance. *Doe #1 v. Board of Supervisors of La. Sys.*, 2022 WL 16701930 at *13 (M.D. La. Nov. 3, 2023).

Plaintiffs do not attempt to argue that their claims were filed within the applicable prescriptive period.  However, in their oppositions to the instant motions, Plaintiffs invoke the equitable tolling doctrines of fraudulent concealment and *contra non valentem* to save their claims from being time-barred.  (Rec. Docs. 121, 122, 124, 125).  In addition, in the Third Amended Complaint Plaintiffs allege that "[g]iven the Defendants' conduct it would be inequitable for Plaintiffs claims to be barred by the limitations period under the doctrine of *contra non valentem agree non currit prescriptio*." (Rec. Doc. 101 at ¶201).  Plaintiffs further state that they were not aware and could not have been aware of Defendants' misconduct until May 25, 2022 when Jane Doe filed her suit.

To find shelter under the doctrine of fraudulent concealment, Plaintiffs must plead facts which plausibly show that, despite due diligence, they were effectively precluded from discovering the facts that form the basis of their claims because Defendants concealed the alleged conduct. *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988).  Concealment must be accomplished by commission as opposed to omission.  "[T]he defendant 'must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry.'" *Id.* at 1528-1529; accord *Rx.com v. Medco Health Solutions*, 322 F. App'x 394, 398 (5th Cir. 2009).  Silence is not enough, and "denial of wrongdoing" is not enough. *Id.* at 1532; *See also*, *In re Pool Prods. Distribution Market Antitrust Litig.*, 988 F. Supp. 2d 696, 723 (E.D. La. 2013).

*Contra non valentem* is a state law equitable tolling doctrine, available only in "exceptional circumstances," that "suspends the prescriptive period [when] the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not

24

induced by the defendant." *Renfroe v. State ex rel. Dep't of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002). Sometimes referred to as the "discovery rule," *contra non valentem* looks to the reasonableness of the tort victim's action or inaction *vis-à-vis* discovery. *Griffin v. Kinberger*, 507 So. 2d 821, 824 n.2 (La. 1987); *See also Jordan v. Emp. Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987) ("[A] plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.").

Construing the facts of the case in the light most beneficial to Plaintiffs, the Court finds that Plaintiffs "reasonably should have known of the causal connection between their respective assaults and the misconduct" of the university staff and officials at the latest on May 26, 2021, when the *USA Today* article was published and that the Plaintiffs have not met their burden that equitable tolling or *contra non valentem* should toll prescription in this matter. Thus, Plaintiffs had one year from the day the *USA Today* article was published to file their claims. The *USA Today* article clearly implicates Defendants, and it is inconceivable to the Court that Plaintiffs—at least one and most likely two of whom were interviewed for the article and the other who was told that the article was coming and conferred with P.P. regarding the article—did not have notice until Doe filed her lawsuit in the Middle District. Plaintiffs filed suit on July 13, 2022, over one year and one-and-a-half months after the *USA Today* article was published. Accordingly, the Court finds Plaintiffs' claims prescribed on or about May 26, 2022.

Considering the foregoing, this Court will recommend the dismissal of all of Plaintiffs' Title IX claims against Defendants the Board of Regents, the LSU Board of Supervisors, and the UL System Board, including: Count I (a general allegation of violation of Title IX), Count II (Deliberate Indifference), Count III (Heightened Risk – Deliberate Indifference to Sexual Misconduct by a Known Perpetrator), Count IV (Heightened Risk – Institutional Policy of

Deliberate Indifference), Count V (Hostile Environment) because these claims have prescribed pursuant to LA. CIV. CODE ANN. art. 3492.[18]

### B. <u>Section 1983 Claims</u>

Plaintiffs assert constitutional claims pursuant to Section 1983 and the Fourteenth Amendment. Specifically, Plaintiffs allege that the individual defendants Savoie, Guice, Alexander, Galligan, and Tate violated their substantive and procedural due process rights and that LCG, Aguillard, and John/Jane Doe Chiefs engaged in a custom policy/pattern or practice in violation of due process and equal protection under the law and that failed to train and/or supervise.

The Court finds that the Section 1983 claims asserted are also prescribed. As with Title IX, "[c]ourts considering claims under § 1983 must borrow the relevant state's statute of limitations for personal injury actions." *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). "The statute of limitations for Section 1983 claims is the forum state's personal-injury limitations period, which in Louisiana is one year." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016). Federal law, however, governs when a Section 1983 claim accrues. *Redburn*, 898 F.3d at 496 (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995)). "The limitations period begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id*. Further, "[a] plaintiff need not realize that a legal cause of action exists; [she] need only know the facts that would support a claim." *Piotrowski*, 51 F.3d at 516. For the same reasons set forth above regarding the Title IX claims, the Court finds Plaintiffs' Section 1983 claims are prescribed and that Plaintiffs have not met their burden that equitable tolling or *contra non*

---

[18] As stated in Note 13, *supra*, LA. CIV. CODE ANN. art. 3492 was repealed effective July 1, 2024. As the events at issue in this case occurred before July 1, 2024, Louisiana's one-year liberative prescriptive period is applicable to Plaintiffs' claims.

*valentem* should toll prescription in this matter. The Court recommends that the claims asserted in: Count VI (Violation of Substantive and Procedural Rights against individual Defendants Guice, Savoie, Alexander and Tate), and Counts VII and VIII (Custom and Policy/Pattern or Practice in Violation of Due Process and Equal Protection under the Law and Failure to train and/or Supervise against LCG Aguillard and John/Jane Doe Chiefs) be DISMISSED with prejudice.

### C. <u>State Law Tort Claims</u>

As stated above, Plaintiffs allege state law negligence claims in the jurisdiction and venue section of the Third Amended Complaint but not in the in the section where Plaintiffs specifically allege counts or causes of action. (Rec. Doc. 101 at ¶¶27-32). It is unclear whether Plaintiffs seek to pursue state law negligence claims; however, to the extent that they do the Court finds that any state law tort claims are likewise prescribed and that Plaintiffs have not met their burden that equitable tolling or *contra non valentem* should toll prescription in this matter for the reasons asserted above and recommends that all state law claims be DISMISSED with prejudice.

### V.    <u>CONCLUSION</u>

For the reasons discussed herein, the Court recommends that the instant motions to dismiss (Rec. Docs. 102, 103, 105, 106, 115, and 118) be GRANTED and that all such claims be DISMISSED as prescribed. To the extent any Defendant did not seek dismissal based on prescription, this Court so recommends *sua sponte*. To the extent the motions seek dismissal on any other basis under Rule 12, the Court recommends the motions be DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may

respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

**THUS DONE** in Chambers, Lafayette, Louisiana on this 14th day of March, 2025.

**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**